IN THE COURT OF COMMON PLEAS
HAMILTON COUNTY, OHIO

| | |
|---|---|
| PHILIP R. MCHUGH, | : |
| | : Case No. A2003792 |
| Plaintiff, | : |
| | : Judge Charles J. Kubicki, Jr. |
| v. | : |
| | : PLAINTIFF PHILIP MCHUGH AND NON- |
| FIFTH THIRD BANCORP, ET AL. | : PARTIES' SUZANNE, PHILIP JR., |
| | : COLLEEN, ERIN, AND PATRICK |
| Defendants. | : MCHUGH'S JOINT MOTION TO QUASH |
| | : AND FOR PROTECTIVE ORDER |
| | : |

Plaintiff Philip McHugh ("McHugh"), together with his wife Suzanne, and their four children—Philip Jr., Colleen, Erin, and Patrick—(Suzanne, Philip, Jr., Colleen, Erin and Patrick collectively referred to as the "McHugh Family") hereby move this Court for (1) an Order quashing the *subpoenas duces tecum* directed to each of them by Defendants Fifth Third Bancorp, Fifth Third Bank, N.A., and Gregory Carmichael, and (2) a Protective Order prohibiting Defendants from directing further discovery toward the McHugh Family absent approval from this Court. The McHugh Family has no relevance to the claims or defenses in this employment discrimination lawsuit, and the subpoenas directed to them are nothing more than an inappropriate attempt to intimidate a former Fifth Third employee into dismissing his age discrimination claims against the Bank. Indeed, Fifth Third's own counsel has admitted that the overly broad and malicious subpoenas were issued to the McHugh Family in retaliation for McHugh's efforts to appropriately depose Fifth Third Board Members whose testimony is directly relevant to this lawsuit, making clear that the subpoenas are for irrelevant information, are inappropriate, and should be quashed.

A Memorandum in Support, and Affidavit of Co-Counsel Peter A. Saba, Esq. (**Exhibit A**), are attached.

1

Respectfully Submitted,

/s/ John J. McHugh (per e-mail auth.)
John J. McHugh, III
McHUGH & McCARTHY, LTD
5580 Monroe Street
Sylvania, Ohio 43560
(419) 885-3597
(419) 885-3861 (fax)
**Co-Counsel for Plaintiff Philip R. McHugh and Non-Parties Suzanne McHugh, Philip McHugh Jr., Colleen McHugh Sweeney, Erin McHugh, and Patrick McHugh**

/s/ Peter A. Saba
Peter A. Saba, Esq. (0055535)
Joshua M. Smith, Esq. (0092360)
STAGNARO, SABA
& PATTERSON CO., L.P.A.
2623 Erie Avenue
Cincinnati, Ohio 45208
(513) 533-2701
(513) 533-2711 (fax)
pas@sspfirm.com
jms@sspfirm.com
**Co-Counsel for Plaintiff Philip R. McHugh and Non-Parties Suzanne McHugh, Philip McHugh Jr., Colleen McHugh Sweeney, Erin McHugh, and Patrick McHugh**

2

**MEMORANDUM IN SUPPORT**

I.     **FACTUAL BACKGROUND**

On October 28, 2020, McHugh filed claims of age discrimination under R.C. § 4112.02 *et seq.* against his former employer, Fifth Third Bancorp, Fifth Third Bank, N.A. (collectively, "Fifth Third"), and its President and Chief Executive Officer, Gregory Carmichael. (*See* Complaint, *supra*). McHugh's claims arise from multiple instances of discriminatory conduct during his employment at Fifth Third, including Defendants' decisions (a) to promote a substantially younger employee, Timothy Spence, over McHugh into the position of President of Fifth Third, despite prior and repeated representations to McHugh that he was the most qualified employee for the role; (b) to demote McHugh from his current position into a position reporting directly to Mr. Spence (and a role which McHugh had previously been promoted from), and (c) to discharge Mr. McHugh from his employment when he refused to accept the requested demotion. (*Id.*). McHugh has also filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") for violations of the Age Discrimination in Employment Act ("ADEA") based upon the same conduct. The EEOC is currently investigating McHugh's pending Charge.

Within two days of McHugh asserting his claims for age discrimination in this Court, Defendants filed an answer and frivolous counterclaim, alleging that McHugh's claims of age discrimination constitute an abuse of process. (*See* October 30, 2020 Answer and Counterclaim). More specifically, the counterclaim baselessly alleges that McHugh filed his R.C. § 4112.02 claims in an attempt to engage in what Fifth Third calls "guerilla litigation tactics," and to "further coerce the Bank and its officers" into promoting him into the position of President and Chief Executive Officer (as if McHugh had such power against the employer who just terminated him). (*Id.*). This allegation is made despite the Complaint only seeking monetary relief for Defendant's

3

discriminatory conduct (i.e., no injunctive relief has been requested regarding the position McHugh was denied). (*See* Complaint, Prayer for Relief).

Shortly after receiving the answer and counterclaim, Plaintiff began to engage Fifth Third in initial discovery regarding his age discrimination claims. On November 6, 2020, Plaintiff submitted requests for the production of documents, including committee board minutes and other documents related to the decision to promote Mr. Spence and demote McHugh. (*See* Requests for Production of Documents, attached as **Exhibit 1** to Counsel Affidavit). On November 12, 2020, Plaintiff also issued subpoenas to two of Fifth Third's Directors, Gary R. Heminger and Eileen Mallesch, seeking testimony and documents relating to their roles on the Human Capital and Compensation Committee, and role in the decision to select Spence over McHugh. (*See* **Exhibits 2-3** of Counsel Affidavit). These two Board members and documents in their possession are clearly relevant to McHugh's age discrimination claims, as they are part of the committee that Fifth Third's Chief Legal Counsel has identified as the decision making body with respect to McHugh's lack of promotion, demotion and ultimate discharge.

In response to Plaintiff's pursuit of appropriate and reasonable discovery, Fifth Third's counsel falsely accused Plaintiff's counsel of "vexatious" and "sanctionable" "litigation tactics", and correspondingly sought to dissuade Plaintiff's pursuit of discovery by serving , frivolous and overly broad subpoenas to the McHugh's Family on November 24, 2020 (two days prior to Thanksgiving). (*See* **Exhibits 4-8** of Counsel Affidavit). The subpoenas sought not only to depose McHugh's wife and four children over the period of December 16-17, 2020 (immediately prior to Christmas), but also ordered them to produce 12 broad categories of documents, including:

1. Every email, letter, text message, or other written communication received by you from—or sent by you to—Plaintiff Phil McHugh in which "Fifth Third Bank," "Fifth Third," "5/3," or any similar term referring to Fifth Third Bank

is mentioned for the period beginning on August 1, 2019 and continuing until the time of your deposition.

2. Every email, letter, text message, or other written communication received by you from—or sent by you to—Plaintiff Phil McHugh regarding his employment with Fifth Third Bank for the period beginning on August 1, 2019 and continuing until the time of your deposition.

3. Every email, letter, text message, or other written communication received by you from—or sent by you to—any family member or relative (other than Plaintiff Phil McHugh) in which "Fifth Third Bank," Fifth Third," "5/3," or any similar term referring to Fifth Third Bank is mentioned for the period beginning on August 1, 2019 and continuing until the time of your deposition.

4. Every email, letter, text message, or other written communication received by you from—or sent by you to—any family member or relative (other than Plaintiff Phil McHugh) regarding Plaintiff Phil McHugh's employment with Fifth Third Bank for the period beginning on August 1, 2019 and continuing until the time of your deposition.

5. Every email, letter, text message, or other written communication received by you from—or sent by you to—any current or former employee of Fifth Third Bank (other than Plaintiff Phil McHugh) in which "Fifth Third Bank," Fifth Third," "5/3," or any similar term referring to Fifth Third Bank is mentioned for the period beginning on August 1, 2019 and continuing until the time of your deposition.

6. Every email, letter, text message, or other written communication received by you from—or sent by you to—any current or former employee of Fifth Third Bank (other than Plaintiff Phil McHugh) regarding Plaintiff Phil McHugh's employment with Fifth Third Bank for the period beginning on August 1, 2019 and continuing until the time of your deposition.

7. Every audio or video recording received by you from—or sent by you to—any current or former employee of Fifth Third Bank (other than Plaintiff Phil McHugh) relating to Plaintiff Phil McHugh and/or his employment with Fifth Third Bank for the period beginning on August 1, 2019 and continuing until the time of your deposition.

8. Every document received by you from—or sent by you to—any current or form employee of Fifth Third Bank (other than Plaintiff Phil McHugh) regarding Plaintiff Phil McHugh's employment with Fifth Third Bank for the period beginning on August 1, 2019 and continuing until the time of your deposition.

9. Every email, letter, text message, or other written communication received by you from—or sent by you to—any person regarding the subject matter of the Complaint (attached hereto as Exhibit A1).

10. Every email, text message, or other written communication received by you from—or sent to you by—any person regarding any fact set forth in the Complaint.

11. Every document received by you from—or sent by you to—any person regarding the subject matter of the Complaint.

12. Every document received by you from—or sent by you to—any person regarding any fact set forth in the Complaint.

(*Id.*).

On November 27, 2020, Fifth Third's counsel sent follow-up correspondence to McHugh's counsel, indicating that the two subpoenaed board members would not be appearing for their depositions because they did not receive fees for travel at the time of service (contrary to counsel's representations, the witnesses received travel fees one day after service of the subpoenas), and claiming that requiring the witnesses' travel to Cincinnati (where they serve on Fifth Third's board) would be an undue burden on the Fifth Third board members. (*See* **Exhibit 9** to Counsel Affidavit).

Within the same letter, Fifth Third's counsel outright acknowledged the retaliatory nature of his November 24, 2020 subpoenas to the McHugh Family. Specifically, counsel stated that he had engaged in such retaliation tactics as a direct response to McHugh's "unilateral" requests for production and valid subpoenas to the two board members. (*See Id.*)("You have decided to begin this litigation with a unilateral approach to conducting discovery…As you can see, we have followed the precedent that you have set by noticing the Plaintiff's deposition <u>and subpoenaing Suzanne McHugh, Colleen McHugh Sweeney, Erin McHugh, Patrick McHugh, and Philip McHugh, Jr., without any consultation with you</u>.").

6

On December 2, 2020, McHugh's counsel responded, offering to reschedule to Board member depositions for January 6 and 7, 2021, and confirming that the payment of fees and mileage were sent shortly after the subpoenas were issued, thus resolving the travel fee issue. (*See* **Exhibit 10** to Counsel Affidavit). Counsel also noted the abusive and retaliatory nature of the subpoenas directed to McHugh's wife and children, and explicitly requested that Fifth Third's counsel cure the same. (*Id.*). Finally, McHugh's counsel offered to work with counsel to adopt an accelerated discovery schedule. (*Id.*).

On December 3, 2020, Fifth Third's counsel responded via e-mail, but failed to acknowledge any withdrawal of the retaliatory subpoenas or how he intended to handle the same. (*See* **Exhibit 11** to Counsel Affidavit). Fifth Third's counsel also attempted to assert "protocol" for COVID-19 concerns in the upcoming depositions.

McHugh's counsel responded the following day (December 4), requesting that all parties and counsel at the deposition be masked (including McHugh and counsel conducting the deposition), and they could address the issue further at the depositions. (*See* **Exhibit 12** to Counsel Affidavit). Rather than confer further, however, Fifth Third's counsel responded the same day with a long-winded e-mail that ended with a cancellation of McHugh's deposition. (*See* **Exhibit 13** to Counsel Affidavit).

On December 7, 2020, McHugh's counsel sent additional correspondence to counsel for Fifth Third, acknowledging the postponement of Mr. McHugh's deposition and reiterating his request that the retaliatory subpoenas issued to McHugh's wife and children be withdrawn. (*See* **Exhibit 14** to Counsel Affidavit). McHugh's counsel also proposed alternative dates for the depositions of relevant board members, this time pushing back further to January 19-21, 2021, and offered dates for McHugh's deposition. (*Id.*). Counsel also offered an alternative COVID-19

protocol (a plexiglass shield) in response to Fifth Third's counsel's refusal to wear a mask during questioning. (*Id.*).

On December 10, 2020, Fifth Third's counsel responded, indicating for the first time that he still intended to proceed forward with the family member depositions. (*See* **Exhibit 15** to Counsel Affidavit). However, Fifth Third's counsel made no effort to explain the relevance of such family members' testimony, simply indicating that "the facts and case law clearly establish that the deponents possess relevant, discoverable information." (*Id.*).

McHugh's counsel responded the following day (December 11), reiterating that these depositions have no relevance to the age discrimination lawsuit or the abuse of process counterclaim, and that the family members would not be attending such depositions given the lack of relevance and retaliatory nature of the subpoenas:

> Mr. Cioffi:
>
> I am disappointed but not at all surprised by your unwillingness to address the abusive use of subpoenas to Phil's family. They simply have no evidence relevant to the age discrimination claim, or to the counterclaim, and your walking back of your concession as to their retaliatory purpose is not persuasive. I write, as a courtesy, to advise you that will be representing Phil's wife, Suzanne, and his four children. They will not appear at the depositions, and we will be filing on their behalf a joint motion for a protection order to shield them from the obvious and intentional harassment, especially during the holidays.
>
> You will recall that I first asked your client for discovery at the time I filed the complaint, suggesting that it had until mid-December to arrange schedules. In the absence of any response, I noticed two of the HC&C members for depositions, in Cincinnati, intending to accommodate you. In response to your most recent "meet and confer" comments, I proposed an entire schedule. In exchange, you have simply insisted on deposing Phil's family, then Phil, without affording any firm dates for your client's representatives. I would like depositions from your HC&C members; then you can depose Phil, and I am prepared, as I said before, to try to coordinate a workable schedule beyond then.

(*See* **Exhibit 16** to Counsel Affidavit).

8

Fifth Third's counsel responded the following Monday, December 14, 2020 (two days prior to the depositions), asserting for the first time that all of the family members purportedly "interjected themselves" into the lawsuit through supposed e-mails and texts to Fifth Third employees (though never explaining what those e-mails or text messages were, or how they are relevant to the lawsuit). (*See* **Exhibit 17** to Counsel Affidavit). Counsel also claimed that Fifth Third would proceed forward with the depositions regardless of being notified that the deponents would not appear. (*Id.*).

## II. LAW AND ARGUMENT

### A. Civ. R. 26(C) and Civ. R. 45

Rule 26(C) permits any party to a lawsuit, or person from whom discovery is sought, to seek a protective order from the Court protecting such party or person from annoyance, embarrassment, oppression, or undue burden or expense. This includes a remedy that such discovery not be had, or only be had on such terms as ordered by the court. *Id.* Like the Federal rule, Ohio Civ. R. 26(C) is designed to limit the abuse of discovery by balancing Rule 26(B)'s broad scope of discovery provisions with equally broad protective order provisions. *See* Ohio Civ. R. 26(C) Staff Notes and Commentary (1970).

Similarly, material subpoenaed pursuant to Civ.R. 45 "'must have some relevance to [the proceeding] and be reasonably necessary[.]'" *Martin v. The Budd Co.*, 128 Ohio App.3d 115, 119, 713 N.E.2d 1128 (9th Dist.1998), quoting *McMillan v. Ohio Civ. Rights Com.*, 39 Ohio Misc. 83, 94, 315 N.E.2d 508 (C.P.1974). Consequently, a motion to quash under Civ.R. 45(C) may also be granted if the material is not relevant to the underlying proceeding. *Byrd v. Lindsay Corp.*, 9th Dist. Summit No. 29491, 2020-Ohio-3870, ¶ 8. In considering discovery motions seeking to either compel or limit discovery, courts routinely prohibit the same where it seeks the production of

9

information irrelevant to the lawsuit. *See, e.g., Knecht v. Knecht,* 12th Dist. Clinton No. CA2011-06-010, 2012-Ohio-3316, ¶ 15 (affirming trial court's denial of husband's request to test wife for herpes in divorce action, finding that such testing would only produce irrelevant information under Civ. R. 26(B)(1)). *Byrd v. Lindsay Corp.*, 9th Dist. Summit No. 29491, 2020-Ohio-3870, ¶ 13 ("Given that Lindsay characterized Mr. Durkos' alleged relationship with Mr. Eimers as tortious conduct and that document requests one through five pertain to events that occurred after the date of Wilbert Byrd's death, the trial court did not err by concluding that those documents were not relevant to the underlying litigation.").

### B. McHugh's wife and children's testimony and documents in their possession are not relevant to this employment discrimination lawsuit.

Here, there is simply nothing that the McHugh Family would possess that is any way relevant to McHugh's claims or Defendants' counterclaims or proportional to the needs for litigating such claims and counterclaims. None of them were employees of the Bank, and none of them had any involvement in Fifth Third or Carmichael's discriminatory actions directed against McHugh. Likewise, they have no relation to Fifth Third's defenses to such claims, nor to Fifth Third's ridiculous claims for abuse of process. Indeed, despite the detailed and numerous paragraphs throughout Defendants' pleadings, they make zero reference to McHugh's wife or children having any involvement.

Fifth Third's only assertion of relevance is a claim that the individuals "interjected themselves" by sending communications to Fifth Third employees. But Fifth Third provides nothing further—none of the communications themselves, none of the context surrounding those communications, and no attempt to explain how such communications relate to McHugh's claims of discrimination nor Fifth Third's defenses to the same.

10

The fact is, the only purported communication was an attempt by McHugh's family to prepare a surprise tribute video to McHugh by former co-workers following his termination from the Bank he had worked at for decades. This occurred after Defendants had already terminated McHugh's employment, and, as far as McHugh is aware, played no role in the Defendants decision to do so. Beyond that, as soon as McHugh became aware that his family members had engaged in this tribute effort, he put a stop to it given the now pending litigation. Regardless of the circumstances, however, this innocuous communication has nothing to do with McHugh's age discrimination claims, and certainly does not provide Fifth Third with a license to depose McHugh's entire family and obtain all of their purported text, e-mail, and other communications that simply reference "Fifth Third."

Fifth Third's counsel's concession of the retaliatory nature of these subpoenas is also telling and makes clear that Fifth Third knows these family members have no relevance to the suit. Indeed, counsel concedes that the only reason these subpoenas were issued with such immediacy was in response to Plaintiff's subpoenas to board members and request for production of documents. This acknowledgement of a retaliatory motive alone is sufficient to indicate that the discovery is inappropriate, malicious, and should not be permitted or at a minimum should be severely limited to what the Court may specifically allow.

C. **Beyond irrelevance, Defendants' subpoena duces tecum directed to Suzanne McHugh implicates the spousal communications privilege (O.R.C. § 2317.02(D)).**

Finally, beyond the complete lack of relevance and retaliatory nature of the subpoenas to McHugh's family, the subpoena directed to McHugh's wife in particular implicates significant concerns of privileged spousal communications. Ohio law is clear that a husband or wife cannot be compelled to testify regarding confidential communications with their spouse. See O.R.C. § 2317.02 ("The following persons shall not testify in certain respects...(D) "Husband or wife,

11

concerning any communication made by one to the other, or an act done by either in the presence of the other, during coverture, unless the communication was made, or act done, in the known presence or hearing of a third person competent to be a witness; and such rule is the same if the marital relation has ceased to exist[.]"). In *Sessions v. Trevitt* (1883), 39 Ohio St. 259, the Ohio Supreme Court held that the reason for the privilege is because public policy requires that a husband and wife not be allowed to betray the trust and confidence which are essential to the happiness of the marital estate.

Here, Fifth Third seeks not only to depose McHugh's spouse, but also demands the production of communications (including but not limited to text messages) between her and McHugh. These documents directly implicate the spousal communications privilege of O.R.C. § 2317.02, and as such cannot be compelled via subpoena.

### III. CONCLUSION

Fifth Third's gamesmanship tactics of intimidation and bullying of a terminated employee are inappropriate, unprecedented, and should be quashed by this Court immediately. If they are not, future employees of the company will certainly be deterred from attempting to bring claims against a discriminating employer, for fear of their entire family being subjected to scrutinization and examination without any basis for it.

For the foregoing reasons, Plaintiff Philip McHugh, his wife Suzanne, and four children Philip Jr., Colleen, Erin, and Patrick, request that this Court:

(1) Order that the Subpoenas directed to (a) Suzanne McHugh, (b) Philip Raymond McHugh Jr., (c) Colleen Theresa McHugh Sweeney, (d) Erin Marie McHugh, and (e) Patrick McHugh, be quashed in their entirety; and

(2) Issue a Protective Order a Protective Order prohibiting Defendants from directing further discovery toward Plaintiff McHugh's direct family members absent approval from this Court.

Respectfully Submitted,

/s/ John J. McHugh (per e-mail auth.)
John J. McHugh, III
McHUGH & McCARTHY, LTD
5580 Monroe Street
Sylvania, Ohio 43560
(419) 885-3597
(419) 885-3861 (fax)
**Co-Counsel for Plaintiff Philip R. McHugh and Non-Parties Suzanne McHugh, Philip McHugh Jr., Colleen McHugh Sweeney, Erin McHugh, and Patrick McHugh**

/s/ Peter A. Saba
Peter A. Saba, Esq. (0055535)
Joshua M. Smith, Esq. (0092360)
STAGNARO, SABA
& PATTERSON CO., L.P.A.
2623 Erie Avenue
Cincinnati, Ohio 45208
(513) 533-2701
(513) 533-2711 (fax)
pas@sspfirm.com
jms@sspfirm.com
**Co-Counsel for Plaintiff Philip R. McHugh and Non-Parties Suzanne McHugh, Philip McHugh Jr., Colleen McHugh Sweeney, Erin McHugh, and Patrick McHugh**

## CERTIFICATE OF SERVICE

The undersigned hereby certified that a copy of the foregoing was served on Michael L., Cioffi, David J. Oberly, Thomas H. Stewart, and Liza J. Brackman, of Blank Rome, LLP, on this 16th Day of December, 2020 via ordinary and/or electronic mail.

/s/ Peter A. Saba, Esq.
Peter A. Saba, Esq. (0055535)