IN THE COURT OF COMMON PLEAS
HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| **PHILIP R. MCHUGH**, | ) | Case No. A 2003792 |
| | ) | |
| | ) | Hon. Alison Hatheway |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **AMENDED COMPLAINT WITH** |
| | ) | **ENDORSED JURY DEMAND** |
| **FIFTH THIRD BANCORP, ET AL.**, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

Now comes Plaintiff Philip R. McHugh ("Plaintiff"), and for his Amended Complaint against Defendants Fifth Third Bancorp, Fifth Third Bank, N.A., and Gregory D. Carmichael (collectively, "Defendants") for violations of the Age Discrimination in Employment Act ("ADEA"), 26 U.S.C. Section 621, *et seq*., as well as O.R.C. § 4112, having secured the consent of Defendants to file the same pursuant to Civ. R. 15(A), says that:

1. He is a resident of Cincinnati, Ohio; a citizen of the State of Ohio, and until October 16, 2020, was employed as the Executive Vice President of Fifth Third Bank, reporting directly to Gregory D. Carmichael, its President, Chief Executive Officer, and Chairman of the Board of Fifth Third Bancorp ("Carmichael").

2. Fifth Third Bancorp is a diversified financial services company with its principal place of business in Cincinnati, Ohio, and is the parent company of Fifth Third Bank.

3. Fifth Third Bank, N.A. is now a federally chartered bank, regulated by the Office of the Comptroller of the Currency, and is engaged principally in Commercial Banking, Branch Banking, Consumer Lending, and Wealth and Asset Management. It is one of the largest such banks in the United States, and engages in its business activities in Ohio, Michigan, In

1

Illinois, Kentucky, West Virginia, Tennessee, North Carolina, Georgia and Florida. It employs more than twenty (20) persons, and is subject to both the federal and state laws prohibiting age discrimination in employment.

4. Carmichael is, upon information and belief, a resident of Cincinnati, a citizen of the State of Ohio, and the incumbent Chairman of the Board, President and Chief Executive Officer of Fifth Third Bancorp, having held such position since January, 2018. Carmichael began his career with Fifth Third in 2003, and has held various executive management positions at the bank, including Chief Information Officer, Chief Operating Officer, and President and CEO. At all times relevant herein, Carmichael was McHugh's manager.

5. Carmichael has been a director of the Bank since 2015, and presently serves on ten of the eleven committees of the Board.

6. According to the Fifth Third Bancorp 2020 Proxy Statement, the average annual Chief Executive Officer compensation for 2017-2019 was nearly $10,000,000.00.

7. This court has concurrent subject matter jurisdiction under federal law and original jurisdiction under Ohio law. This court has personal jurisdiction over all named defendants. Venue is appropriate in Hamilton County, Ohio as the events giving rise to the Complaint occurred there.

8. McHugh, now fifty-six (56) years of age, began his career with Fifth Third Bank in Cincinnati in October, 1986. In April, 1994 the Bank requested him to move to Louisville, Kentucky to build the Trust and Investment Division of its then newly acquired affiliate. In March, 2001, he was promoted to run the Commercial Division of the Louisville Affiliate, and in December, 2005, was named President and CEO of Fifth Third Louisville with full responsibility for all business and staff functions.

9. In January, 2010, Carmichael, then the Bank's Executive Vice President and Chief Operating Officer, requested that McHugh return to Cincinnati to lead the Fifth Third Private Bank, Trust and Investment Division. During his tenure then and there, the Trust and Investment

Division substantially grew its assets, revenue, and net income.

10. In April, 2017, Carmichael, then Bank Chief Executive Officer and President, requested that McHugh become head of Fifth Third's Consumer Bank, which included full responsibility for Retail Banking, Mortgage Lending, Business Banking for companies with less than $20.0 million in annual revenues, and for indirect auto lending. Later that year, in December, Carmichael reassigned additional responsibility to McHugh, charging him with oversight of the Wealth and Asset Management division of the Bank.

11. In August, 2018, Carmichael, in his first year as Board Chairman, assigned McHugh responsibility for leadership of all fourteen of the Bank's regional presidents, noting that this additional assignment involved a much larger role, greater responsibility, and a more significant impact on Fifth Third Bank. The advance now gave McHugh responsibility for Business Banking, Wealth and Asset Management, as well as Regional Banking.

12. At that time, Carmichael appointed Timothy N. Spence ("Spence"), succeeding McHugh, to be head of the Consumer Bank, but McHugh kept Business Banking, Wealth and Asset Management, and overall responsibility for Regional Banking.

13. In late June, 2019, Carmichael delegated further responsibility to McHugh, directing that he accept the Public Relations and Community and Economic Development Groups, as well as retaining all prior assignments.

14. In each and every successive position at Fifth Third Bank, McHugh excelled in his performance, and was rewarded with additional compensation, greater responsibility and a higher profile within the Bank. At no time did Carmichael ever communicate to McHugh that his performance was lacking, inadequate, insufficient, or less than expected.

15. On August 15, 2019, during McHugh's mid-year performance review, Carmichael, the Chairman of the Board, President and Chief Executive Officer, told McHugh that he, Carmichael, would be pursuing other matters, and that he, Carmichael, promised that he would

recommend McHugh to be the next President and Chief Executive Officer, for a term of three to five years, until Spence was ready for the assignment. Carmichael told McHugh that he was the most qualified officer on the executive team to take the President and Chief Executive Officer positions, and that Spence was not only too young but also lacked necessary banking experience, having been at that point at Fifth Third only four years.

16. Following an off-site meeting on August 18, 2019, Robert Shaffer ("Shaffer"), then the Bank's Chief Human Resources Officer, confirmed to McHugh what Carmichael had earlier promised him, that McHugh would be the next President and Chief Executive Officer, and confided to McHugh his opinion that McHugh was the most qualified executive to acquire such responsibility.

17. On February 14, 2020, during his annual performance review, Carmichael told McHugh that the Board of Directors had requested that Carmichael extend his term for one to two years, and suggested to McHugh that McHugh might then be too old to hold that position, but did not indicate that Carmichael's change of plans would adversely impact McHugh.

18. Shortly thereafter, Shaffer informed McHugh that with his then assigned responsibilities, he would be one of the five most-highly compensated employees at the Bank, and as a Named Executive Officer, would be identified in the 2021 proxy statement issued in connection with the 2021 Annual Meeting of the Shareholders of Fifth Third Bank.

19. In February, 2020, Carmichael requested that McHugh take on additional responsibility for Middle Market Banking (for companies with revenues ranging from $20 - $500 million), and Fifth Third Insurance, resulting in McHugh having twenty direct reports, substantially more than any other senior executive.

20. On March 9, 2020, the Bureau of Consumer Financial Protection ("CFPB") filed its second misconduct complaint against Fifth Third Bank, this time in Chicago, Illinois, in Case No. 1:20-cv-01683, asserting that the Bank had unlawfully and illegally opened deposit accounts

in consumers' names without their authorization to do so, transferred funds from existing accounts to new accounts, without authorization, issued credit cards, enrolled consumers in online banking services, and opened lines of credit on consumers' accounts. In doing so, the CFPB alleged that Fifth Third Bank had engaged in repeated violations of the Consumer Financial Protection Act, the Truth in Lending Act, and the Truth in Savings Act, together with their implementing regulations, and sought injunctive and monetary relief.

21. The assignment of this additional responsibility required that McHugh commit substantial time to resolution of then serious credit issues in the Middle Market Banking Portfolio, as well as supervise the Bank's SBA lending response in light of the COVID-19 pandemic. In the first and second iterations of the Paycheck Protection Program, Fifth Third Bank made loans of $5.5 billion, against an average SBA loan year with $400 million extended.

22. Shortly before the Board of Director meetings of September 21 and 22, McHugh discussed with Carmichael McHugh's presentation to the Board regarding the Bank's performance, and was explicitly directed by Carmichael to indicate that, across all lines of business for the Bank, the Regional Banking contributed 63% of the Bank's net income. This representation underscored the significance of McHugh's role, and reemphasized Carmichael's promise to endorse McHugh for the President and Chief Executive Officer position.

23. On October 13, 2020, Carmichael met with McHugh, and, for the first time, advised McHugh that he was to be demoted to head of Consumer Banking, a role from which he had previously been promoted, and was to report to Spence, who would assume McHugh's responsibilities for Regional Banking, and Wealth and Asset Management. McHugh was also informed that he would lose his responsibilities for Middle Market Banking.

24. Carmichael voiced no criticism of McHugh's performance. He did not express any cause for such action.

25. Surprised by this turn of events, McHugh inquired whether there were any

alternatives available to him. Carmichael said that was not McHugh's only option, but offered no other alternatives. McHugh requested that he have a few days to consider demotion to head of Consumer Bank. McHugh next met with Carmichael on October 15, 2020.

26. McHugh informed Carmichael that he believed that it was in the best interest of the Bank and its shareholders that he remain in his incumbent position. Carmichael told McHugh that McHugh had consistently delivered excellent results in every management position he had held. Carmichael said that his reputation for honesty and integrity within the Bank was unchallenged.

27. Carmichael told him that his position, and most of its significant duties and responsibilities, were being given to Spence to enable Spence to acquire the experience he needed to become the next President and Chief Executive Officer. Carmichael told McHugh that he made the decision to advance Spence, and acknowledged that it came at McHugh's expense. Spence is forty-one (41) years old.

28. Carmichael acknowledged that he had never suggested to McHugh that McHugh was no longer to be considered for President and Chief Executive Officer, and twice apologized that he had not discussed this with McHugh. He agreed that this change in assignment came at McHugh's expense, and was made to enable Spence, an individual substantially younger than and less qualified than McHugh, to get the experience needed to become Chief Executive Officer.

29. Later that day, Shaffer called McHugh, and informed him that his only choice was to accept the demotion, failing which he was not to return to work. McHugh suggested he and Shaffer meet face to face Monday morning to discuss the matter; Shaffer told McHugh that if he did not accept the demotion, he should not to return to work on Monday. McHugh called Carmichael to confirm such an instruction; but Carmichael refused to take the call or to return the call. McHugh's employment with Fifth Third Bank was terminated on Monday, October 26, 2020.

30. On October 26, 2020, Carmichael and Fifth Third Bank announced the appointment of Spence as President of the Bank. Fifth Third disingenuously announced that McHugh had left

6

the Bank.

31. McHugh was discriminated against in his employment by the Bank because of his age.

32. McHugh commenced this action seeking relief on October 28, 2020.

33. McHugh's filing of this action was an exercise of protected activity, including an opposition to unlawful discriminatory practices by Defendants, and the participation in a proceeding.

34. Two days after McHugh's filing of this action, Defendants engaged in unlawful retaliation against McHugh on the basis of his protected activity, including by filing a retaliatory counterclaim against McHugh for abuse of process

35. Defendants' retaliatory acts have continued, including attempts to immediately harass McHugh's wife and four children through subpoenas for documents and testimony which have no relation to McHugh's claims or employment at Fifth Third.

36. McHugh filed a timely charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC"), on November 5, 2020.

37. On December 18, 2020, McHugh received a notice of dismissal and right to sue from the EEOC. A true and accurate copy of the same is attached hereto as Exhibit A. McHugh has satisfied all conditions precedent to exercise his rights under federal and state law.

38. As a direct result of such discrimination and retaliation, in violation of both federal and state law, McHugh has sustained financial losses in base pay, variable compensation, long term incentive compensation, equity awards, stock options, and health coverage for himself and his family, all to his detriment in an amount exceeding $12,500,000.00.

**COUNT I: FAILURE TO PROMOTE, ADEA**

39. The allegations of Paragraphs 1 through 38 are hereby incorporated by reference as if fully restated herein.

7

40. McHugh was 56 years old at the time of his termination from Fifth Third.

41. McHugh was highly qualified for the positions of President of Fifth Third and CEO of Fifth Third, and expressed a willingness to accept the positions after Carmichael informed McHugh that he would be recommended for them.

42. Despite the positions of President and CEO being promised to McHugh, he was later rejected for the promotion.

43. Instead, Defendants promoted Spence, a substantially younger and less qualified individual, to the position of President. Defendants' articulated reasons for promoting Spence over McHugh are false, and a mere pretext for age discrimination.

44. Defendants above-referenced discriminatory acts are willful violations such that McHugh is entitled to liquidated damages.

## COUNT II: FAILURE TO PROMOTE, O.R.C. § 4112

45. The allegations of Paragraphs 1 through 45 are hereby incorporated by reference as if fully restated herein.

46. The allegations which state a cause of action under the "Count I: Failure to Promote" under the ADEA also state a cause of action for failure to promote under O.R.C. § 4112.02(N), 4112.14, and 4112.99.

47. Defendants committed the above-referenced discriminatory acts with malice and/or reckless indifference to the rights to Plaintiff such that Plaintiff is entitled to punitive damages.

## COUNT III: WRONGFUL TERMINATION, ADEA

48. The allegations of Paragraphs 1 through 47 are hereby incorporated by reference as if fully restated herein.

49. Plaintiff was 56 years old at the time of his termination.

50. Plaintiff was highly qualified for the Executive Vice President position he held at Fifth Third.

51. In October 2020, Defendants deliberately created intolerable working conditions for McHugh, with the intention of forcing McHugh to leave his employment. This included requiring McHugh to accept a demotion to Head of Consumer Banking, a position he previously held, and to report directly to Spence, a substantially younger and less qualified individual who, until that point, reported directly to McHugh.

52. When McHugh did not accept the demotion, Fifth Third terminated his employment, and promoted Spence to the position of President, taking on substantially all of McHugh's responsibilities.

53. Defendants' attempts to demote McHugh, and termination of McHugh when he did not accept, were discriminatory on the basis of McHugh's age.

54. Defendant's articulated reason for Plaintiff's termination is a pretext for age discrimination.

55. Defendant's above-referenced discriminatory acts are willful violations such that Plaintiff is entitled to liquidated damages.

## COUNT IV: WRONGFUL TERMINATION, O.R.C. § 4112

56. The allegations of Paragraphs 1 through 55 are hereby incorporated by reference as if fully restated herein.

57. The allegations which state a cause of action under "Count III: Wrongful Termination" under the ADEA also state a cause of action for wrongful termination under O.R.C. § 4112.02(N), 4112.14, and 4112.99.

58. Defendants committed the above-referenced discriminatory acts with malice and/or reckless indifference to the rights to Plaintiff such that Plaintiff is entitled to punitive damages.

## COUNT V: RETALIATION, ADEA

59. The allegations of Paragraphs 1 through 58 are hereby incorporated by reference as if fully restated herein.

9

60. McHugh engaged in protected activity under O.R.C. § 4112, including by initiating this action on October 29, 2020 for age discrimination.

61. Within two days of engaging in this protected activity, Defendants took adverse actions against McHugh through the filing of a frivolous counterclaim asserting abuse of process, which seeks awards of punitive damages and attorney's fees against McHugh for the mere filing of an age discrimination lawsuit.

62. Since that time, Defendants have engaged in further unlawful retaliatory acts, including abusive subpoenas directed to McHugh's wife and four children.

63. Defendants' abuse of process counterclaim has no basis in fact, and is nothing more than a retaliatory tactic in response to Plaintiff engaging in protected activity under the ADEA, including his opposition to Defendants' unlawful conduct and participation in this action.

64. Defendants committed the above-referenced retaliatory acts with malice and/or reckless indifference to the rights of Plaintiff.

### COUNT VI:   RETALIATION, O.R.C. § 4112

65. The allegations of Paragraphs 1 through 65 are hereby incorporated by reference as if fully restated herein.

66. The allegations which state a cause of action under "Count V: Retaliation" under the ADEA also state a cause of action for retaliation under O.R.C. § 4112.02(I).

67. Defendants committed the above-referenced discriminatory acts with malice and/or reckless indifference to the rights to Plaintiff such that Plaintiff is entitled to punitive damages.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, consistent with Civil Rule 8(A), for damages in excess of $25,000.00, together with the following relief:

   A. Lost Wages (back pay)
   B. Lost benefits;

C. Reinstatement, or front pay in lieu thereof;

D. Compensatory damages

E. Punitive damages

F. Liquidated damages

G. Pre-judgment and post-judgment interest

H. Attorneys' fees and expenses; and

I. All other relief to which Plaintiff is entitled.

## JURY DEMAND

Plaintiff hereby demands trial by jury on all issues on all issues triable to a jury

Of Counsel for Plaintiff:

| | |
|---|---|
| Stagnaro, Saba & Patterson Co., L.P.A.<br>2623 Erie Ave<br>Cincinnati, Ohio 45208 Stagnaro, Saba & Patterson Co., L.P.A.<br>2623 Erie Ave<br>Cincinnati, Ohio 45208 | */s/ Joshua M. Smith*<br>Peter A. Saba, Esq. (0055535)<br>Joshua M. Smith, Esq. (0092360)<br>Stagnaro, Saba & Patterson Co., L.P.A.<br>2623 Erie Avenue<br>Cincinnati, Ohio 45208<br>pas@sspfirm.com<br>jms@sspfirm.com |
| McHugh & McCarthy, Ltd.<br>5580 Monroe Street<br>Sylvania, Ohio 43560 | John J. McHugh, III<br>5580 Monroe Street<br>Sylvania, Ohio 43560<br>Telephone:  (419) 885-3597<br>Facsimile:   (419) 885-3861<br>Co-Counsel for Plaintiff |

11

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing Amended Complaint with Endorsed Jury Demand was duly served by electronic mail upon the following attorneys for defendants, in compliance with Civ. R. 5(B)(2)(f) of the Ohio Rules of Civil Procedure, this 18th day of March, 2021:

| | |
|---|---|
| Michael L. Cioffi, Esq.<br>cioffi@blankrome.com | Thomas H. Stewart, Esq.<br>stewart@blankrome.com |
| Liza J. Brackman, Esq.<br>LBrackman@blankrome.com | David J. Oberly, Esq.<br>doberly@blankrome.com |

*/s/ Joshua M. Smith*
Attorney for Plaintiff

EEOC Form 161 (11/2020)         **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Philip McHugh<br>8000 Finley Lane<br>Cincinnati, OH 45242 | From: | Cincinnati Area Office<br>John W. Peck Fed. Bldg<br>550 Main Street, Suite 10-191<br>Cincinnati, OH 45202 |
|---|---|---|---|

☐ On behalf of person(s) aggrieved whose identity is *CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 473-2021-00174 | Matthew G. Meisman,<br>Investigator | (513) 914-6009 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☐ The EEOC issues the following determination: The EEOC will not proceed further with its investigation, and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☒ Other *(briefly state)*  **To be determined in a court of competent jurisdiction**

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

Matthew Meisman *Digitally signed by Matthew Meisman, DN: cn=Matthew Meisman, o=EEOC, ou, email=matthew.meisman@eeoc.gov, c=US Date: 2020.12.17 09:15:21 -05'00'*                12/18/2020

Enclosures(s)       **Richard Burgamy,**       *(Date Issued)*
                    **Acting Area Office Director**

cc:
Trevor Gillette, Esq.                          Smith, Esq, Joshua M
Vice President and Counsel, Legal Dept.        Staganaro, Saba, & Patterson
FIFTH THIRD BANCORP                            2623 Erie Avenue
Fifth Third Bank, N.A.                         Cincinnati, OH 45208
38 Fountain Square Plaza, Mail Drop 10at83
Cincinnati, OH 45263