# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| PHILIP R. MCHUGH, | : | |
| | : | Case No. 1:21-cv-00238 |
| Plaintiff, | : | |
| | : | Judge Michael R. Barrett |
| v. | : | |
| | : | |
| FIFTH THIRD BANCORP, ET AL. | : | **MOTION TO COMPEL PRODUCTION** |
| | : | **OF DOCUMENTS SUBPOENAED** |
| Defendants. | : | **FROM RHR INTERNATIONAL, LTD** |

Plaintiff Philip McHugh respectfully moves this Court for an Order pursuant to Fed. R. Civ. P. 26, 34 and 45 compelling non-party, RHR International, Ltd. ("RHR"), to electronically produce the documents requested in two subpoenas served upon RHR. RHR has provided executive officer assessment services to Fifth Third, including but not limited to assessment of the individual to succeed Greg Carmichael as President and CEO. RHR has refused to produce any responsive documents, instead resorting to a myriad of blanket, meritless objections.

Plaintiff has exhausted extrajudicial efforts, and now moves this Court for an order compelling RHR to produce the documents requested. A Memorandum in Support is attached, and an Affidavit of Counsel with supporting exhibits is being submitted to chambers for an in-camera review.[1]

Respectfully Submitted,

*/s/ Peter A. Saba*_____
Peter A. Saba, Esq. (0055535)
Joshua M. Smith, Esq. (0092360)
STAGNARO, SABA

---

[1] Contemporaneous with the filing of this motion, Plaintiff is submitting an Affidavit of Counsel with supporting Exhibits 1-16 to the Court for in-camera review. Plaintiff is not filing such exhibits due to confidentiality designations provided by Defendants in such exhibits, and pursuant to Paragraph 8 of the parties' stipulated protective order. (*See* Doc. # 16, PAGEID #1876).

1

& PATTERSON CO., L.P.A.
2623 Erie Avenue
Cincinnati, Ohio 45208
(513) 533-2701
(513) 533-2711 (fax)
pas@sspfirm.com
jms@sspfirm.com

*/s/ John J. McHugh*
John J. McHugh, III
McHUGH & McCARTHY, LTD
5580 Monroe Street
Sylvania, Ohio 43560
(419) 885-3597
(419) 885-3861 (fax)

**Co-Counsel for Plaintiff Philip R. McHugh**

## MEMORANDUM IN SUPPORT

### I. FACTUAL BACKGROUND

**A. Fifth Third utilizes RHR as an executive consultant in vetting executives for the position of President and CEO.**

Following a December 17, 2019 Fifth Third Board of Directors meeting in which CEO succession planning was discussed, Defendants Greg Carmichael and Fifth Third Bank retained RHR to perform executive level assessments on Tim Spence, Phil McHugh, and Tayfun Tuzun for the position of President and CEO. (*See* **Exhibit 1** - Shaffer Dep. 237:22-25 ("RHR is an independent firm that provides executive level assessments of potential candidates for positions like president, CEO, they may have a search arm as well to them, but I can't guarantee that."); **Exhibit 2** - Carmichael Dep. 294:19-295:1 ("There was an ask at some point after the December meeting that we engage RHR at the board's request, communicate the meeting through Marsha [Williams]."); **Exhibit 3** – Carmichael Dep. 300:10-21 ("Q. it was your recommendation that Tayfun Tuzun and Phil McHugh would also be vetted by RHR as a comparison to Spence, correct?

2

A. It was my – it was my thought process. My thought process that that might be helpful."); *See also* **Exhibit 4** (Shaffer March 6, 2020 e-mail to Guy Beaudin, lead RHR consultant). The relationship with RHR was not new—Fifth Third had also utilized RHR to vet Greg Carmichael in 2014-2015. (**Exhibit 5** – Carmichael Dep. 387:13-23).

While the initial proposal from RHR was to assess all three candidates (Spence, McHugh, Tuzun) against the Bank's CEO Profile, in June 2020 Carmichael and his Chief HR Officer, Robert Shaffer, limited the assessment to just Spence. (**Exhibit 6** - Carmichael Dep. Exhibit 46). Carmichael was also adamant that the Board had already determined that they would not consider the two older employees as legitimate successors, and accordingly the Board, along with Carmichael, did not want them assessed in comparison to Spence. (*Id.*)

Thereafter, RHR lead consultant Guy Beaudin and his assistant Chuck Evans conducted the assessment of Spence according to a revised proposal submitted to Fifth Third, including:

(i) Working with Carmichael and Shaffer to update the Bank's "CEO Profile;"

(ii) Conduct leadership/personality surveys of Tim Spence;

(iii) Conduct a "three-hour in-person, structured, behavioral interview" with Tim Spence;

(iv) Conduct interviews with "stakeholders" (manager, peers, and direct reports);

(v) Provide a "full developmental assessment report with feedback organized around the leadership profile," and

(vi) Conduct a "debrief" of assessments with Carmichael, Shaffer, and the Board of Directors.

(*Id.* at **Exhibit 7**).

On September 21, 2020, RHR provided a "summary" to the Board of Directors regarding its assessment of Tim Spence. (*Id.* at **Exhibit 8**). A month later, the Board signed a resolution to promote Spence to President. (*Id.* at **Exhibit 9**)

3

## II. PROCEDURAL HISTORY AND EXTRAJUDICIAL EFFORTS

On April 1, 2022, Plaintiff served a subpoena on RHR for the production of documents related to its executive assessment planning work. The categories of documents are provided in Exhibit A to the subpoena (*Id.* at **Exhibit 10**), but primarily seek documents and communications related to executive assessments performed on Spence, McHugh, and any other candidates for the position of President or CEO of Fifth Third between January 1, 2016 to the present.

On April 14, 2022, RHR's counsel sent a brief letter claiming the subpoena was improper because it was outside the 100-mile geographic limit under Rule 45(c)(2), and making additional blanket objections that the documents are "necessarily in the possession of named parties," "calls for the production of information and documents that are privileged," "irrelevant to the named parties' claims and defenses," and "disproportionate to the needs of the case." (*Id.* at **Exhibit 11**). The letter closed asking Plaintiff to confirm he would withdraw the subpoena. (*Id.*).

Plaintiff's counsel responded on April 25, 2022, confirming that the requested documents could be produced via mail or e-mail as indicated in the subpoena, rendering the 100-mile limitation inapplicable. (*Id.* at **Exhibit 12**); *See also United States v. Brown,* 223 F. Supp.3d 693, 703 (N.D. Ohio 2016)(Finding the 100-mile limit "does not apply where documents can be mailed and do not require personal appearance."); *Walker v. Cener for Food Safety,* 667 F. Supp.2d 133, 138, (D.D.C. 2009)("[T]he 100 mile limit applies to travel by a subpoenaed person, but a person commanded to produce documents need not appear at the place of production or inspection.").

Moreover, Plaintiff disputed (and still disputes) that the requested documents are in the possession of Plaintiff or Defendants, or that this is a valid objection. *See Kasper v. AAC Holdings*, 2017 U.S. Dist. LEXIS 231826 at *23-24 (M.D. Tenn. 2017)("Neither is the Court convinced that Avondale may avoid the request simply because Plaintiffs have sought the same documents from

4

Defendants. Although there is a risk of some duplicate production, it is entirely possible that relevant and responsive documents exist that Defendant do not now, or perhaps did not ever, have in their possession.").

Finally, Plaintiff responded that he was not aware of any applicable privilege to the documents, and that the documents are relevant and discoverable, given that Defendants claim to have made their decision to promote Spence over Plaintiff based in part upon assessments performed by RHR. Plaintiff closed by re-iterating his request for compliance with the subpoena.

Following initial director and bank employee depositions, on April 21, 2023 Plaintiff served a supplemental subpoena on RHR, with a courtesy copy to RHR's counsel. (*Id.* at **Exhibit 13**). This subpoena sought additional documents specific to RHR's executive assessment work relating to Fifth Third, including:

- (i) Survey questions provided to Spence, along with answers to the same;
- (ii) Draft and final assessments of Greg Carmichael, and correspondence related to the same;
- (iii) Draft and final versions of the CEO Profile created for the assessment work performed by RHR on Carmichael and Spence, and correspondence relating to the same;
- (iv) Documents relating to materials RHR presented to the Bank's Board of Directors in September 2020;
- (v) Draft and final proposals/invoices submitted to Fifth Third relating to the executive assessment and development work performed by RHR; and
- (vi) All completed surveys and assessments with respect to Spence or Carmichael.

(*Id.*).

On May 3, 2023, RHR's counsel responded, reiterating its blanket objections as to the 100-mile limit, privacy/confidentiality, relevance, and that the documents are in the parties' possession. (*Id.* at **Exhibit 14**). As to privilege, RHR now asserted that the documents are subject to the

therapist-patient privilege, citing to *Jaffee v. Redmond*, 518 U.S. 1 (1996)( ("…that confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment are protected from compelled disclosure[.]"). Yet again, RHR produced no documents.

On January 30, 2024, in a final effort to extrajudicially resolve the issue, Plaintiff sent further correspondence to RHR's counsel, again pointing out that RHR's objections were baseless and informing him that due to the complete lack of production, Plaintiff would be seeking court enforcement. (*Id.* at **Exhibit 15**). No response was received.

### III. LAW AND ARGUMENT

#### A. Legal Standard

Fed. R. Civ. P. 34(c) and 45 permit subpoenas to non-parties for the production of documents relevant to the litigation. *See* Fed. R. Civ. P. 34(c) ("As provided in Rule 45, a nonparty may be compelled to produce documents and tangible things or to permit an inspection."). "[T]he scope of discovery under a [Rule 45] subpoena is the same as the scope of discovery under Rule 26." *Hendricks v. Total Quality Logistics, LLC*, 275 F.R.D. 251, 253 (S.D. Ohio 2011); *See also* Fed. R. Civ. P. 45 advisory committee notes to 1991 amendment ("The non-party witness is subject to the same scope of discovery under this rule as that person would be as a party to whom a request is addressed pursuant to Rule 34.").

Fed. R. Civ. P. 26(b) provides that a party may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "[T]he scope of discovery under the Federal Rules of Civil Procedure is traditionally quite broad." *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 402 (6th Cir.

6

1998); *See also* Fed. R. Civ. P. 26(b)(1) ("Information within this scope of discovery need not be admissible in evidence to be discoverable.").

### B. The subpoenaed documents are relevant and discoverable.

Here, the documents subpoenaed from RHR regarding their assessment work with Fifth Third are clearly relevant to the litigation. Indeed, RHR was intimately involved in assessing Spence (40) for the position of President and CEO of Fifth Third and, until Carmichael and Shaffer intervened, was intending to assess Plaintiff (55) and Tuzun (55) for the same role. This assessment work occurred months after the December 2019 Board meeting in which CEO succession planning was discussed. Additionally, weeks after the assessment work was completed, Spence was promoted to President. Defendants have confirmed that they relied at least in part on RHR's assessment in promoting Spence. (*See* Smith Aff., **Exhibit 16**, Response to Interrogatory No. 5 (Identifying RHR assessment report as one of the "criteria which Fifth Third considered in selecting Timothy N. Spence for the position of President of Fifth Third Bancorp in 2020.")).

As this Court is well aware, Plaintiff's claims against Defendants are for age discrimination, including for failing to promote Plaintiff in favor of a substantially younger employee, Tim Spence. The assessment performed on Spence during this time period, and all correspondence, notes, and other documentation related to it, are obviously relevant and discoverable. (*See White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232, 242 (6th Cir. 2005)(emphasizing that in age discrimination cases "it is incumbent upon the plaintiff to establish that [he] and the non-protected person who ultimately was hired for the desired position had similar qualifications."); *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 814 (6th Cir. 2011)(holding that in failure to promote cases, the emphasis is on the relative qualifications of the plaintiff and the employee who actually received the promotion); *LeVine v. Dejoy*, 64 F.4th 789, 799 (6th Cir.

2023)("[C]omparative qualifications may be probative of whether the employer's reasons are pretexts for discrimination.")(citations omitted).

C. **RHR's blanket objections have no merit.**

As discussed above (*See* Section II), RHR raises a number of blanket objections in their efforts to obstruct discovery and defy compliance with the subpoena. None of those have any merit, and each are addressed below.

1. *The 100-mile geographic limit is inapplicable to documents requested by mail or e-mail.*

First, RHR's objection relating to the 100-mile geographic limitation is baseless because the documents have been requested by mail or e-mail. (*See* Smith Aff., **Exhibits 10, 13**) This fact alone renders the geographic limits inapplicable. *See, e.g., Pidcock v. Goddard (In re SII Liquidation Co.)* Nos. 10-60702, 14-6016, 2015 Bankr. LEXIS 901, at *9 (Bankr. N.D. Ohio Mar. 20, 2015) ("[C]ourts generally find that the ability to mail the documents, without requiring a personal appearance, eliminates the geographic obstacle."). In *Pidcock*, the court reasoned that the "compliance contemplated by [Rule 45(c)(2)] [is] the accumulation and dissemination, via mail or electronic transmission, of the requested discovery" and that such compliance would "likely occur from [the producing party's] office…or nearby post office," meaning that the producing party "will not be required to venture more than 100 miles to fulfill the request." *Id*.

Moreover, even if RHR's procedural objection had any merit, which it does not, the appropriate remedy would be for the Court to simply modify the procedural requirements of the subpoena. Indeed, Fed. R. Civ. P. 45(d)(3)(A)(ii) provides the courts with the ability to modify a subpoena – as an alternative to simply quashing – to allow service of the responsive documents via e-mail in an attempt to promote efficiency and further the practicality of electronic document production. *See Dyno Nobel, Inc. v. Johnson*, 586 F.Supp. 657, 661-62 (E.D. Ky. 2022)(modifying

8

subpoena to permit service via e-mail to promote efficiency and further the practicality of electronic document production); *See also CresCom Bank v. Terry*, 269 F. Supp. 3d 708, 713-14 (D.S.C. 2017) (even if the 100-mile rule applies to document subpoenas, the proper remedy is not to quash the subpoena but to modify the subpoena to allow the recipient "to produce the records either electronically or at a physical location closer to" the recipient); *Sams v. GA W. Gate, LLC*, 316 F.R.D. 693, 696-97 (N.D. Ga. 2016) (although party violated the 100-mile rule when issuing document subpoenas, "this violation does not require that the subpoena be quashed; the court may modify the subpoena ... to allow service of responsive documents by email").

Here, both the original subpoena and supplemental subpoena provided that the requested documents could be provided to Plaintiff via electronic production. RHR had – and still has – the ability to comply with the subpoenas simply by sending copies of the requested documents either by mail or e-mail, neither of which would require RHR, or any of its attorneys or agents, to travel beyond the 100-mile limit. Thus, RHR's objections as to the geographic limitations under Rule 45 should be rejected.

    2. *The subpoenaed documents are not subject to the therapist-patient privilege.*

Next, RHR asserts that the therapist-patient privilege adopted by the U.S. Supreme Court in *Jaffee v. Redmond* applies to RHR's assessment work on Tim Spence. This objection fails because RHR's assessment work does not fall within the privilege espoused in *Jaffee*.

*Jaffee* concerned the admissibility of notes taken by a therapist during extensive confidential counseling sessions with her client, a police officer, who sought such counseling after her involvement in a fatal shooting. 518 U.S. 1, 3 (1996). The counseling sessions were confidential, and between the police officer and her counselor only (i.e., not requested by her employer). *Id.* at 5. In denying the discovery of the counselor's notes, the Court held that

9

"<u>confidential</u> communications between a licensed psychotherapist and her<u> patients in the course of diagnosis or treatment</u> are protected from compelled disclosure[.]") *Id.* at 15 (emphasis added).

Here, neither RHR nor its employees provided any psychological treatment to any Fifth Third employees, and Spence was not a patient of RHR nor Mr. Beaudin. For that simple reason, the objection based upon *Jaffee* is inapplicable.

Notwithstanding that the RHR employment assessments do not constitute psychological diagnosis and treatment of Tim Spence, the objection also fails because the assessment was not confidential. *See Phelps v. Coy*, 194 F.R.D. 606 (S.D. Ohio 2000)(holding that psychiatrist/patient privilege did not protect information learned by a psychologist where she evaluated the officer at the behest of his municipal employer and disclosed the information to the employer); *Kamper v. Gray*, 182 F.R.D. 597, 599 (E.D. Mo. 1998)("Since [plaintiff] was aware that his evaluations would be reported to his employer, Gray had no reasonable expectation of confidentiality regarding his communications with Colarelli, Meyer, and Associates.").

The therapist-patient privilege does not apply to RHR's assessment work on Tim Spence or any other executive at Fifth Third. These are documents created by an employer's third-party consultant at the employer's direction, for purposes of assessing an employee for promotion. They are not related to psychological diagnosis or treatment, nor were they confidential between Tim Spence and RHR.

### 3. *The subpoenaed documents are not subject to the work-product privilege.*

RHR also claims that the requested documents fall under the work product privilege. (*See* **Exhibit 11**, at p. 2 ("[t]o the extent the documents sought include drafts and other internal documents not provided to Fifth Third Bank or any other person, these documents contain internal work product and the mental impressions of RHR's consultants."). This objection fails for the

simple reason that the work product privilege under Rule 26 is limited to parties to the litigation. *See Arkwright Mut. Ins. Co. v. Natl. Union Fire Ins. Co.*, 6th Cir. No. 93-3084, 1994 U.S. App. LEXIS 3828, at *12-13 (Feb. 25, 1994), quoting C. Wright & A. Miller, Federal Practice and Procedures § 2024, at 201-02 (holding that the protection of Rule 26(b)(3) is limited to one who is a party to the litigation in which discovery is sought and that "[d]ocuments prepared for one who is not a party to the present suit are wholly unprotected."); *See also In re California Pub. Util. Com.*, 892 F.2d 778, 781 (9th Cir.1989) ("Although some courts have extended the work product privilege outside the literal bounds of the rule, we conclude that the rule, on its face, limits its protection to one who is a party (or a party's representative) to the litigation in which discovery is sought."). Simply put, the objection is baseless.

4. *The subpoenaed documents do not seek any confidential or proprietary information.*

RHR objects to the subpoenas on the basis of privacy and confidentiality concerns. However, RHR provides no particularized facts or law to support this objection, and even if they had, the simple solution is to designate the documents confidential under the Court's Stipulated Protective Order.

When a party raises an objection based on confidentiality, the court will apply a three-part test:

> (1) whether the objecting party has shown that the information sought is proprietary and that its disclosure might be harmful;
> (2) whether the party seeking discovery has established that the information is relevant and necessary to the underlying action; and
> (3) whether the need for discovery outweighs the harm that will result from disclosure.

*Worldwide Distribution, LLLP v. Everlotus Indus. Corp.*, No. 1:16 MC 67, 2017, U.S. Dist. LEXIS 19160, at *4-5 (N.D. Ohio Feb. 9, 2017), citing *Med. Ctr. at Elizabeth Place, LLC v. Premier Health Partners*, 294 F.R.D. 87, 92 (S.D. Ohio 2013); *See also id*. at *5 ("When discovery is

11

sought from a non-party, a court should be particularly sensitive to weighing the probative value of the information sought against the burden of production on the non-party.")(citations omitted).

Here, RHR's only reasoning for raising a confidentiality objection is that "the documents sought contain the personal information of individuals who are not parties to this case and who have not consented to disclosure." RHR has not provided any additional explanation as to which of the requested documents may be implicated under this objection, nor any explanation as to why its compliance with the subpoenas would be harmful in any way. This is simply not enough to prevent disclosure of such documents, particularly given their relevance as described above, and the Stipulated Protective Order under which they could be produced.

   5. *The subpoenaed documents are not already in the parties' possession.*

Finally, RHR has twice claimed that all of the requested documents are already in the possession of the parties to this lawsuit. *See* Smith Aff., **Exhibit 11** ("[T]he requests for production…are for documents necessarily in the possession of the named parties to the case."); **Exhibit 14** ("[A]ny documents prepared by RHR that were provided to Fifth Third Bank…obviously would be in the possession of Fifth Third Bank."). However, Plaintiff is not in possession of the subpoenaed documents, and has made multiple requests for them from Fifth Third to no avail.

Moreover, many of the requested documents would be exclusively in the possession of RHR, including draft assessments, survey reports, notes from interviews, and similar documents internal to RHR. Indeed, RHR's work product objection makes clear that some documents are exclusively in RHR's possession.

Last, regardless of whether Fifth Third may have some of the requested documents in its possession, pointing to the opposing party in a lawsuit as potentially having such documents is not a basis to ignore a validly issued subpoena in its entirety, particularly where the documents are

more readily obtainable by a non-party like RHR. *In re New Eng. Compounding Pharm., Inc.*, 2013 U.S. Dist. LEXIS 161652 (D. Mass. 2013)("The mere availability of the documents from another source, however, does not preclude a subpoena directed to a nonparty if the party serving the subpoena can show that it is more expeditious to obtain the documents from a witness."); *Carson v. Kanazawa*, 2016 U.S. Dist. LEXIS 199440 (D. Haw. 2016)("Although there is the potential for duplicate production, discovery has revealed that there may be relevant documents in Robert's possession that are not in RNI or Plaintiffs' possession and have not been produced from those individuals or entities."); *Kasper v. AAC Holdings,* 2017 U.S. Dist. LEXIS 231826 at *23-24 (M.D. Tenn. 2017)("Neither is the Court convinced that Avondale may avoid the request simply because Plaintiffs have sought the same documents from Defendants. Although there is a risk of some duplicate production, it is entirely possible that relevant and responsive documents exist that Defendant do not now, or perhaps did not ever, have in their possession." ); *Wilemon Found., Inc. v. Wilemon,* 2021 U.S. Dist. LEXIS 80402 at *16 (N.D. Miss. 2021)("'While it is conceivable that some of the documents responsive to this subpoena may be in the plaintiffs' possession, custody, or control, the majority of the documents requested exclusively involve communications or documents between the defendant and Phelps [third party].").

RHR is in possession of the documents requested, and in many cases are in exclusive possession. Their objection is baseless, particularly when used in such a blanket fashion.

### IV.     CONCLUSION

Plaintiff is seeking to move discovery forward in this case, including by obtaining documents he has requested from RHR over the last two years. RHR has refused to comply and has ignored repeated extrajudicial efforts to resolve their objections. As such, Plaintiff respectfully requests that this Court exercise its authority under Rule 45 to compel production.

Respectfully Submitted,

*/s/ Peter A. Saba*_____
Peter A. Saba, Esq. (0055535)
Joshua M. Smith, Esq. (0092360)
STAGNARO, SABA
& PATTERSON CO., L.P.A.
2623 Erie Avenue
Cincinnati, Ohio 45208
(513) 533-2701
(513) 533-2711 (fax)
pas@sspfirm.com
jms@sspfirm.com
**Co-Counsel for Plaintiff Philip R. McHugh**


*/s/ John J. McHugh*_____
John J. McHugh, III (0019750)
McHUGH & McCARTHY, LTD
5580 Monroe Street
Sylvania, Ohio 43560
(419) 885-3597
(419) 885-3861 (fax)
**Co-Counsel for Plaintiff Philip R. McHugh**

14

## **CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that a copy of the foregoing motion was served on all counsel of record this 15th day of June, 2022 via the Court's CM/ECF system and that, pursuant to Fed. R. Civ. P. 45(d)(2)(B)(i), notice and a copy of the motion was provided to RHR International, LTD., via ordinary and electronic mail.

      */s/ Peter A. Saba*
      Peter A. Saba, Esq. (0055535)