## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

PHILIP R. MCHUGH,           )
                                      )
                                      )   Case No. 1:21-cv-00238
                                      )
         Plaintiff,          )   Honorable Michael R. Barrett
                                      )
v.                             )
                                      )
FIFTH THIRD BANCORP, *ET AL.*,  )
                                      )
        Defendants.        )

### NON-PARTY RHR INTERNATIONAL LLP'S RESPONSE TO MOTION TO COMPEL PRODUCTION OF DOCUMENTS

RHR International LLP ("RHR"), a Delaware limited liability partnership located at 233 South Wacker Drive, Suite 9500, Chicago, Illinois, by and through its undersigned counsel, in response to Plaintiff Philip R. McHugh's Motion to Compel Production of Documents (the "Motion"), states as follows:

## I.    INTRODUCTION

This lawsuit centers around McHugh's claims that Defendant Fifth Third Bank (hereinafter referred to as "Fifth Third Bank" or the "Bank"), unlawfully denied him a promotion due to his age. RHR is not a party to this case. Rather, it is a consulting firm composed of behavioral scientists and practitioners. RHR applies behavioral science to organizations to make those organizations, and the individuals who work there, more effective. In 2020, Fifth Third Bank engaged RHR to assess Timothy Spence for the role of President and Chief Executive Officer. RHR did not assess any other candidate, including McHugh. After completing its assessment of Spence, RHR reported its findings to the Board of Directors of Fifth Third Bank.

1

Fifth Third Bank has already produced to McHugh all documents that RHR provided to Fifth Third Bank and, most importantly, every document reviewed or considered by the Fifth Third Bank's board and senior executives relating to RHR's work. This includes draft and final versions of RHR's assessment of Spence—the only materials reviewed or utilized by Fifth Third's board— as well as the Bank's communications with RHR regarding the work RHR performed in 2020. Now, nearly two years after RHR objected to the first subpoena, McHugh seeks an order compelling RHR to *re-produce* those materials, and to produce additional confidential and personal information regarding Spence and other individuals that RHR has not shared with anyone, including the Bank and/or its management.

As a threshold matter, the two subpoenas delivered to RHR at its headquarters in Chicago, Illinois in April 2022 and April 2023 (the "Subpoenas") fail to comply with Rule 45 of the Federal Rules of Civil Procedure, which alone warrants denial of the Motion. But even if the Court were to consider the substance of the Subpoenas, denial is warranted because the Subpoenas demand RHR to produce material that is not relevant to McHugh's claims; that was not provided to the Bank and, therefore, could not have factored into the Bank's decision making; and that is otherwise privileged or protected. Accordingly, the Court must deny Plaintiff's motion.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     RHR International LLP

Founded in 1945, RHR was the first company to apply behavioral science to organizational leadership. *About Us*, RHR International, https://rhrinternational.com/about-us/#mission (last visited Mar. 19, 2024). For 80 years, RHR has used its knowledge of human behavior to improve leader effectiveness and organizational performance. *Id.* Among other services, RHR offers leadership assessment services, a service which utilizes data-driven psychometric tools and behavioral science to counsel clients on executive talent decisions. *Leadership Assessment: Our*

*Focus*, RHR International, https://rhrinternational.com/leadership-assessment/ (last visited Mar. 19, 2024).

RHR's worldwide headquarters, along with its keeper of its records, are located in Chicago, Illinois, more than 300 miles from the Potter Stewart courthouse, where this action is pending. RHR's headquarters are less than a half mile from the Dirksen Center, which houses the United States District Court for the Northern District of Illinois, Eastern Division.

### B.    RHR's Assessment of Fifth Third Bank's Candidate

RHR was hired by Fifth Third Bank in 2020 to assess a candidate, Timothy Spence, for promotion to President and CEO. Mot. at 2-3. Though Fifth Third Bank initially considered engaging RHR to assess multiple candidates (Mot. Ex. 4), ultimately, RHR was only engaged to assess Spence. *Id.*; Mot. Ex. 3 at 300:13-21; Mot. Ex. 6; Mot. Ex. 7. The engagement was staffed by RHR's Senior Partner, International Business, Guy Beaudin, PhD, MBA, ICD.D, and by RHR Partner, Chuck Evans, PhD, CPsych. Both individuals are licensed psychologists. The draft and final proposal, and communications exchanged between RHR and Fifth Third Bank regarding same, have already been produced in this action.

In "Phase 1" of its work, RHR created a "CEO Profile" in collaboration with Fifth Third Bank. Mot. Ex. 7 at 3, 5. This profile was used by RHR to ensure it had a full understanding of the cultural nuances, leadership behaviors, and skills required by Fifth Third Banks's next President and CEO. *Id.* at 3. The draft and final version of the CEO Profile, and communications exchanged between RHR and Fifth Third Bank regarding same have already been produced.

RHR assessed Spence in "Phase 2" of the project. *Id.* This process uses a rigorous, objective approach that includes multiple sources of data for the candidate. It includes a "360 review" (a process in which RHR interviews a variety of stakeholders at Fifth Third Bank, including Mr. Spence's peers and direct reports) and a three-hour, structured, behavioral interview of Spence.

The interviews were conducted with the guarantee of complete anonymity and confidentiality for the interviewees. Specifically, when RHR conducts interviews of peers and direct reports, it promises the interviewees that RHR will not include in its deliverables to the client any responses that would allow a reader to identify the commenter and further that RHR will not include any feedback that cannot be attributed to three or more sources. RHR also performed a career and track record benchmarking analysis of Spence's experience.

In addition, Spence responded to three widely-recognized online instruments: a Hogan Assessment Test, which is a psychometric assessment of an individual's personality, cognitive abilities, and leadership skills; the Watson-Glaser Test, which assesses an individual's critical thinking skills and evaluates a person's ability to identify assumptions, dissect arguments, and draw conclusions; and Raven's Progressive Matrices, a nonverbal test used in measuring abstract reasoning and regarded as a non-verbal estimate of fluid intelligence. These diagnostic questionnaires pose a standard set of questions to the individual, and a third party analyzes and scores the individual's responses. The scored results are then provided to RHR. RHR did not share these results or Spence's responses with Fifth Third Bank or anyone else.

RHR prepared two documents for Fifth Third Bank's management: (i) an Executive Assessment Development Report analyzing these inputs against the CEO Profile and high-level, anonymized results from the stakeholder interviews that RHR performed and (ii) a Board Summary of that report (the "Deliverables"). Mot. Ex. 8. The draft and final versions of these documents, as well as the communications it exchanged with RHR regarding this process, have already been produced in this litigation.

The Deliverables only included aggregated, non-detailed summaries of the results of the tests and interviews. RHR purposefully did not share with Fifth Third Bank any detailed results of

any test or interview, or RHR's notes regarding its assessment due to the sensitive nature of the psychological assessments, the anonymity that is required of the interviews in order to protect the interviewees and the integrity of the assessment, and RHR's ethical obligations to the participants. Indeed, the agreement between Fifth Third Bank and RHR anticipated and acknowledged that there would be information that RHR collected in connection with its assessment of Spence that it *would not* share with the company:

> The Company [Fifth Third Bank] acknowledges that RHR may not, as a matter of law or professional responsibility, be able to disclose certain Personal Information to the Company. RHR shall not be obligated to provide such information to the Company or include such information in any Deliverable.

*See* Business Terms ¶¶ 5, 2 (the contract between RHR and Fifth Third Bank contemplates that RHR will receive confidential information that "may not be disclosed except in compliance with applicable laws, regulations and industry or professional standards"), a copy of which is attached hereto as Exhibit 1.

### C. McHugh Delivers Two Deficient Subpoenas to RHR and Files its Motion in the Wrong District

On April 1, 2022, McHugh caused a subpoena to be delivered to RHR at its headquarters office in Chicago, Illinois, purporting to command RHR to produce documents 300 miles away, at the offices of McHugh's counsel in Cincinnati, Ohio (the "First Subpoena"). Mot. Ex. 10. The First Subpoena sought sweeping categories of documents including, among other documents, the following: (1) "Any and all Assessments of Timothy Spence . . ."; (2) "Any and all draft Assessments of Timothy Spence . . ."; (3) "Any and all Correspondence with Fifth third Bank regarding Timothy Spence . . ."; (4) All Documentation used or consulted in your preparation of any Assessment of Timothy Spence . . ."; and (5) "All Documentation used or consulted in your preparation of an Assessment of any candidates other than Timothy Spence, including, but not limited to, for the position of President or Chief Executive Officer (CEO) of Fifth Third Bank from

January 1, 2016, to the present." Mot. Ex. 10 at Ex. A. RHR objected to the First Subpoena by letter dated April 14, 2022 to McHugh, informing McHugh that the First Subpoena did not comply with Fed. R. Civ. P. 45's mandate that the place of compliance for any subpoena be within 100 miles of the recipient and informed McHugh that a substantial amount of the material sought had previously been produced by Fifth Third Bank. Mot. Ex. 11. McHugh refused to cure the deficiencies contained in the First Subpoena. Mot. Ex. 12.

A year later, on April 21, 2023, McHugh caused a second subpoena to be delivered to RHR (the "Second Subpoena"). Mot. Ex. 13. Again, the Second Subpoena purported to require RHR to produce documents at the office of McHugh's counsel in Cincinnati, Ohio, beyond the 100-mile limit set by Fed. R. Civ. P. 45. *Id.* The Second Subpoena requested an additional 13 categories of documents from RHR, including the following: (1) "All Documents which contain, include, or otherwise refer to questions asked of Timothy N. Spence for purposes of assessment work performed by RHR International"; (2) "All Documents which contain, include, or otherwise refer to answers provided by Timothy N. Spence for purposes of assessment work performed by RHR International"; and (3) "All completed surveys and Assessments with respect to Timothy N. Spence or Gregory D. Carmichael, including Watson-Glaser, Raven's [*sic*], or Hogan Insight Reports." Mot. Ex. 13 at Ex. A. Counsel for RHR again objected to the Second Subpoena by letter directed to McHugh dated May 3, 2023. Mot. Ex. 14.

RHR heard nothing further from McHugh for eight months. Then, McHugh sent RHR a letter dated January 30, 2024, addressing some of the objections raised in RHR's May 3, 2023 letter and demanding a conferral by the close of business on the following day. Mot. Ex. 15. Plaintiff's Motion, filed in the Southern District of Ohio rather than the District in which RHR resides, followed one week later.

### III.    LEGAL STANDARD

Rule 45 of the Federal Rules of Civil Procedure governs non-party subpoenas and sets the requirements for validity, service, objection, and compulsion thereof. *See generally* Fed. R. Civ. P. 45. A subpoena may command the production of documents, including electronically stored information, within 100 miles of where the person resides, is employed or regularly transacts business (Fed. R. Civ. P. 45(c)(2)(A)) and this Court may only hear motions relating to such subpoenas where the place of compliance is within the District, or motions that have been transferred to this Court by another District. *See* Fed. R. Civ. P. 45(f); *Thacker v. Ethicon, Inc.*, 572 F. Supp. 3d 319, 322-23 (E.D. Ky. 2021) (court lacked jurisdiction to compel compliance with subpoena that sought otherwise relevant and discoverable information where motion was filed more than 100 miles from the recipient).

Courts are especially sensitive to the burdens of discovery when they would be placed on third parties. *Seven Bros. Painting, Inc. v. Painters & Allied Trades Dist. Council No. 22*, No. 09-12506, 2010 WL 11545174, at *3 (E.D. Mich. June 7, 2010), *objs. overruled sub nom. Seven Bros. Painting, Inc. v. Painters Dist. Council No. 22 of Int'l Bhd. of Painters & Allied Trades (AFL-CIO)*, No. 09-12506, 2010 WL 3385313 (E.D. Mich. Aug. 24, 2010). Pursuant to Rule 26(b)(1), information sought by a subpoena must be "relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). The Court must limit the frequency or extent of discovery that is outside the scope of these parameters, or if "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." *Id.* at

7

26(b)(2)(C)(i). The party who moves to compel "bear[s] the burden of persuasion on [its] motion." *Whitlow v. Martin*, No. 04–3211, 2008 WL 2414830, at *4 (C.D. Ill. June 12, 2008).

## IV. ARGUMENT

The Court should deny McHugh's Motion for each of the three reasons detailed below. *First*, the Subpoenas do not comply with the geographic limitations set by Fed. R. Civ. P. 45 and, as a result, this Court does not have authority to compel compliance with the Subpoenas. *Second*, McHugh has not established the relevancy of the materials sought. *Third*, the Subpoenas should be quashed on account of the undue burden that would fall on the non-party Fifth Third Bank employees by requiring production of these confidential, sensitive, and privileged materials.

### A. The Subpoenas and Motion do not Comply with Fed. R. Civ. P. 45

#### 1. The Subpoenas do not comply with Fed. R. Civ. P. 45(c)(2)'s geographic limitation

Rule 45 limits the power of federal subpoenas in several key respects. One of these limitations is geographic, as the rule requires that the place of compliance be within 100 miles of where the recipient "resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(2)(A). For a corporation, the "place of compliance" is within 100 miles of where [i] the corporation is headquartered or [ii] the custodian of records resides, is employed, or regularly transacts business in person. *Europlay Cap. Advisors, LLC v. Does*, 323 F.R.D. 628 (C.D. Cal. Feb. 5, 2018); *see also Tapjets Inc. v. United Payment Servs., Inc.*, No. 19-cv-3740, 2020 WL 13581674 (E.D.N.Y. Sept. 17, 2020) (collecting cases and citing 9 James Wm. Moore, Moore's Fed. Prac. § 45.25[1], at 45-54 (3d ed. 2015)).

A subpoena that demands compliance in a "place" outside of Rule 45(c)'s geographic limits is "invalid on its face." *Westfield v. Simpson*, No. 1:20-cv-01747, 2022 WL 4131681, at *2 (S.D. Ind. Sept. 12, 2022) (quoting *AngioScore, Inc. v. TriReme Med., Inc.*, No. 12–cv–03393, 2014 WL

6706873, at *1 n.1 (N.D. Cal. Nov. 25, 2014)); *see also, e.g.*, *Thacker*, 572 F. Supp. 3d at 322 ("Rule 45(c) makes clear that the "district where compliance is required" is any district within 100 miles of where that person resides, is employed, or regularly does business."); *In re Byrd, Inc.*, 927 F.2d 1135, 1136-37 & n.1 (10th Cir. 1991) (affirming sanctions against a party seeking to enforce a subpoena outside the geographic limits because the subpoena was "invalid" and "could not be enforced," even though the non-party "never objected"); *Selee Corp. v. McDanel Advanced Ceramic Tech., LLC*, No. 1:15-cv-00129, 2016 WL 4546446, at *4 (W.D.N.C. Aug. 31, 2016) (subpoena commanding "production of documents at location greater than 100 miles" was unenforceable); *Nieman v. LinkedIn Corp.*, No. 12–cv-80258, 2013 WL 685203, at *2 (N.D. Cal. Feb. 25, 2013) ("nonparties cannot be required to produce documents at a location more than 100 miles from their home or business"). Some courts have determined that, in addition to being presumptively invalid, subpoenas that do not comply with this rule present an undue burden and should not be enforced. *See, e.g.*, *Thomas v. DeLong*, No. 3:18-CV-033, 2018 WL 10689466, at *2 (W.D.N.C. Sept. 6, 2018). By any measure, the Subpoenas, which purport to compel compliance at the office of McHugh's counsel in Cincinnati, 295 miles away from RHR's headquarters in Chicago, are "invalid on [their] face." *Westfield*, 2022 WL 4131681, at *2.

McHugh contends that the 100-mile limit should not apply to the production of documents because (1) the Subpoenas seek *electronic* production of documents; and (2) courts have the power to modify subpoenas. *See* Mot. at 8-9. With regard to the first argument, Rule 45 makes no such distinction between documents that are produced by mail or by electronic means (*see* Fed. R. Civ. P. 45(c)(2)), and Courts have rejected parties' attempts to circumvent the Rule based on this distinction. *See, e.g.*, Order Denying Motion to Compel Subpoena Compliance, *Berkelhammer et al. v. Voya Inst. Plan Servs., LLC et al.*, Case No. 3:22-mc-00099 (D. Conn. *filed* Jan. 30, 2023)

(ECF No. 28) ("As a practical matter, the Court is aware that electronic production is common. It is not the Court's intention to elevate form over substance. However, the Court views this is a jurisdictional question.").

With regard to the second point, McHugh overstates the case law he relies upon. In both *Dyno Nobel, Inc. v. Johnson*, and *CresCom Bank v. Terry*, the courts concluded that the subpoena productions *would* be made within the 100-mile limitation. In *Dyno*, the court even agreed that the *respondants* had the "better reasoned" argument (that subpoenas could not be enforced beyond their 100-mile limitation) and modified the subpoenas at issue so that they complied with the limitation, something the court noted that the issuing party had previously offered to do. 586 F. Supp. 3d 657, 662 (E.D. Ky. 2022). In *CresCom*, the court declined to "choose between these two lines of cases" because the issuing party offered to modify the terms of the subpoena to allow the recipient to produce the documents "at any place convenient for [him]." 269 F. Supp. 3d 708, 713-14 (D.S.C. Aug. 31, 2017).

Moreover, to follow the line of cases cited by McHugh would render the text of Rule 45(c)(2)(A) as mere surplusage. *See* Fed. R. Civ. P. 45, at Adv. Comm. Notes to 2013 Amend. ("Rule 45(d)(3)(A)(ii) directs the court to quash any subpoena that purports to compel compliance beyond the geographical limits specified in Rule 45(c).").[1] The better—and majority—view should be followed here, which adheres to Rule 45's plain language and meaning regarding the limitations of federal subpoenas. *See, e.g.*, *Europlay*, 323 F.R.D. at 630 ("[T]he current version of Rule 45

---

[1] Plaintiff's interpretation is particularly unreasonable given the recency of the last amendment to Rule 45. In 2013, "after the public comment period," "[t]he place of compliance in new Rule 45(c)(2)(A) was changed to a place 'within 100 miles of where the person resides, is employed, or regularly conducts business.'" Fed. R. Civ. P. 45, adv. comm. note to 2013 amend. Before, the proposal was "compliance" "at a place *reasonably convenient* for the person who is commanded to produce." *See id.* (old version; emphasis added). Plaintiff thus urges a construction that the Committee expressly rejected. *Cf.* Mot. at 8-9.

clearly requires that the 'production of documents [or] electronically stored information' must be 'at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person.'") (addressing contrary authority and quoting the Rule).

2.   <u>Plaintiff's Motion was not filed in the correct District</u>

McHugh's failure to comply with Rule 45(c)(2)'s geographic limitation creates a related though separate problem for his Motion. Under the Federal Rules, as amended in 2013, "on notice to the commanded person, the serving party may move the court for the district *where compliance is required* for an order compelling production or inspection." Fed. R. Civ. P. 45(d)(2)(B)(i) (emphasis added). That District may transfer the motion to the issuing court on consent of the parties, or a showing of "exceptional circumstances." Fed. R. Civ. P. 45(f). One wrong turn does not justify another, and McHugh's failure to comply with Fed. R. Civ. P. 45(c)(2) should not allow him to evade the protections afforded to non-parties under Rule 45(d) & (f).

Stated differently, because the Subpoenas list the wrong place of compliance, this Court does not have jurisdiction to grant the relief the Motion seeks. Courts within the Sixth Circuit and elsewhere have denied motions to compel for this reason. *See South Point Wholesale, Inc. v. Vilardi*, No. 1:17-CV-00052, 2017 WL 9285528, at *1 (W.D. Ky. Oct. 6, 2017) (court did not have the jurisdiction under Rule 45 to compel compliance with subpoenas that commanded production of documents in Louisville, Kentucky, where the subpoenaed party was located outside of the 100-mile radius of Louisville, and directing issuing party to "pursue this motion in the Florida federal district court where [recipients] are domiciled"); *Thacker*, 572 F. Supp. 3d at 323 ("Rule 45(c) makes clear that the 'district where compliance is required' is any district within 100 miles of where that person resides, is employed, or regularly does business. This means that any motion to compel production of documents requested by subpoena must be made in the court where compliance is required" and declining to enforce compliance of a non-party subpoena)

(collecting authority); *Music Grp. Macao Com. Offshore Ltd. v. Does*, 82 F. Supp. 3d 979, 982, 984 (N.D. Cal. 2015) (holding that there is "no question" that the proper district to hear a motion to compel compliance with a Rule 45 nonparty subpoena is where the nonparty is headquartered); *Garden City Emps.' Ret. Sys. v. Psychiatric Sols., Inc.*, No. 13–238, 2014 WL 272088, at *3-4 (E.D. Pa. Jan. 24, 2014) (recognizing that forcing a nonparty and its counsel to travel out of their home district to address a Rule 45 motion to compel "unduly burdens" the nonparty).

In *Europlay*, the plaintiff issued a subpoena to a non-party (Google) directing it to produce documents in the Central District of California and then moved to compel in the same District. 323 F.R.D. at 629. The Central District court held that it lacked jurisdiction to compel compliance because Google's headquarters and its custodian of records were in the Northern District of California, and the motion should have been filed in that District. *Id.* at 620. Similarly, in *Westfield*, the issuing party did as McHugh did in this matter, and purported to require the recipient to produce documents at the offices of the issuing party's counsel in Indianapolis, regardless of the fact that the office was "well beyond 100 miles" from the recipient's headquarters in Los Angeles. 2022 WL 4131681, at *2. In denying the issuing party's motion to compel compliance with a subpoena that ran afoul of the 100-mile limitation of Fed. R. Civ. P. 45(c), the court noted that "Fed. R. Civ. P. 45 protects nonparties from additional burdens of litigating outside of where the non-party lives or conducts business. In other words, the rules require that when a party seeks to compel a non-party's action pursuant to a subpoena *duces tecum*, the party must file its motion to compel in the district where the sought documents are located, not in the district where the subpoena was issued." *Id.* And because the motion to compel was not filed "in the proper district of compliance under Fed. R. Civ. P. 45," the Southern District of Indiana court "[could not] order . . . compliance . . ." *Id.*

Here, RHR's headquarters and custodian of records are located in Chicago, Illinois, blocks from the United States District Court for the Northern District of Illinois, and McHugh was required to seek enforcement there. An order compelling production with the Subpoenas outside of the 100-mile limitation strips RHR of Rule 45's protections against undue burden. *See* Fed. R. Civ. P. 45(f) at Adv. Comm. Notes to 2013 Amend. ("To protect local nonparties, local resolution of disputes about subpoenas is assured by the limitations of Rule 45(c) and the requirements in Rules 45(d) and (e) that motions be made in the court in which compliance is required under Rule 45(c)."). As a result, the Motion should be denied.

### B.      McHugh Seeks Material Not Relevant to the Dispute

Rule 45 governs discovery from non-parties and discovery is permitted only of relevant, non-privileged materials. *See Taylor v. Universal Auto Grp. I, Inc.*, No. 14–mc–50, 2015 WL 1810316, at *4 (S.D. Ohio Apr. 17, 2015). Here, the materials sought by McHugh are not probative of any party's claims or defenses, and requiring RHR to produce these documents would be unduly burdensome and not proportional to the needs of the case. This is illustrated in several different ways.

*First*, the dispute between McHugh and Fifth Third Bank stems from McHugh's claim that he was denied a promotion due to his age. In the Motion, McHugh claims that, in order to meet his burden in this case, "it is incumbent upon [him] to establish that [he] and the non-protected person who ultimately was hired for the desired position had similar qualifications." Mot. at 7-8 (collecting authority). Assuming, *arguendo*, that McHugh has adopted the correct legal standard, RHR's records are not relevant because they do not speak to any "*relative* qualifications of McHugh and the employee who actually received the promotion." *Id.* (emphasis added). Instead, the assessment addresses only the qualifications of a single non-party candidate, Spence.

McHugh acknowledges that RHR did not evaluate other candidates. *See* Mot. at 3 (while the initial proposal from RHR was to assess three against the Bank's CEO Profile, ultimately RHR was engaged only to assess a single individual, Spence).[2] Because RHR did not assess McHugh, it cannot have any evidence regarding Spence and McHugh's "relative qualifications." For this reason, the records that exist (those that relate to Spence) are not probative of McHugh's claims and are, therefore, outside the proper scope of discovery.

*Second*, even if records that speak to only a single, non-party candidate's qualifications were relevant, only those records that the Board received and considered in making its decision would bear on this case. It defies imagination how materials that RHR did not provide to the Bank's management—or anyone else—could be relevant to McHugh's claims because the materials could not have been part of the decision to promote Spence. These materials shed no light on the Board's process or its consideration of the various candidates.

Moreover, and contrary to McHugh's blanket assertions (Mot. at 12-13), the materials that the Board did consider are already in the possession of the parties. Fifth Third Bank has previously produced the correspondence exchanged between RHR and Fifth Third Bank and/or Spence, and draft and final versions of RHR's proposals, CEO Profile, executive assessment, and Board Summary, among other materials. *See* facts and procedural background *supra* Section II.B.; Mot. Ex. 11 at Ex. A, Nos. 1-3, 13 (seeking the same materials). McHugh has also obtained substantial deposition testimony regarding the same. McHugh has not identified any subset of materials that are only in RHR's possession.

---

[2] The Motion further alleges that one member of the Board and defendant, Carmichael, was also adamant that the Board had already determined that they would not consider the two employees as legitimate successors, and accordingly the Board, along with Carmichael, did not want them assessed in comparison to Spence. *Id.*

Rule 45 directs the issuer of subpoenas to look to the parties for discovery rather than burden a non-party with the production of duplicative information. The Subpoenas do not take Fifth Third Bank's productions into account, and, as a result, they are unduly burdensome and overbroad. *See* Fed. R. Civ. P. 45(d)(1) ("[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."); *see also* Fed. R. Civ. P. 26(b)(2)(C)(i) (the Court must limit the frequency or extent of discovery that is outside the scope of these parameters, or if "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive"). The remainder of the documents in RHR's possession do not bear on Fifth Third Bank's decision regarding promotion because Fifth Third Bank did not receive or consider them in making its decision to promote Spence. The Motion can be denied for this reason.

*Third*, McHugh's delay of over two years in pursuing enforcement of (or any meaningful conferral regarding) the Subpoenas is a tacit acknowledgement that the materials sought from RHR are not truly relevant to the dispute. The Motion provides no explanation for the delay. As a result, one can only assume that McHugh is fishing for information that may be damaging to or disparaging of Spence personally in lieu of finding evidence of discrimination. *See Taylor*, 2015 WL 1810316, at *4 ("[I]n assessing the proper scope of discovery, the Court should balance a party's 'right to discovery with the need to prevent 'fishing expeditions.'"). McHugh has not established the relevance of the materials he seeks, and should not be allowed to access highly sensitive information regarding non-party Bank employees that are irrelevant to the issues before the court.

**C.      The Motion should be Denied because the Materials not Previously Produced contain Privileged, Proprietary, and Confidential Information**

Even if McHugh had established the relevance and need for the materials he seeks from RHR, the Court may and should nonetheless deny the Motion because the materials contain privileged, proprietary, and confidential information, and the burden on RHR and other non-party Fifth Third Bank employees outweighs any likely benefit of the material. *See* Fed. R. Civ. P. 26(b)(1).

Here, the materials sought in the Subpoenas—those that have not already been produced by Fifth Third Bank—constitute confidential and privileged information that are protected from discovery. The evaluation of Spence was performed by a licensed psychologist, a process that included the use of psychometric examinations. RHR's psychologists also conducted detailed, probing interviews with both Spence and other interviewees, all of whom are Fifth Third employees. None of these individuals are parties to this action. All of these interviews were conducted on the condition of complete confidentiality and, in the case of employees other than Spence, anonymity. McHugh seeks, among other categories of documents, RHR's notes and other documents that would detail these confidential communications, including but not limited to RHR's notes from interviews with Spence and other Fifth Third Bank employees, a list of RHR's interview questions and the interviewees' responses, and the data underlying the instruments that were performed by a third party. Mot. Exs. 10, 13 at Ex. A. These materials can and do contain information that is protected from disclosure due to its highly personal nature. *See* Fed. R. Civ. P. 45 at Adv. Comm. Notes to 1991 Amend. (Rule 45(d)(3)(B)(i) authorizes federal courts to quash subpoenas to protect the person subject to or affected by the subpoena from unnecessary or unduly harmful disclosures because Rule 45 is intended "to protect the person subject to or affected by the subpoena from unnecessary or unduly harmful disclosures of confidential information").

16

RHR's notes and data are also protected by the therapist-patient privilege recognized in *Jaffee v. Redmond*, 518 U.S. 1, 15-17 (1996) (contents of conversations that took place between the defendant police officer and a clinical social worker employed by the officer's employer, as well as the notes from their sessions, were protected from disclosure). The two cases cited by McHugh, *Phelps v. Coy*, 194 F.R.D. 606 (S.D. Ohio Mar. 22, 2000), and *Kamper v. Gray*, 182 F.R.D. 597 (E.D. Mo. Oct. 30, 1998), are instances in which trial courts found that the therapist-patient privilege did not apply to the documents at issue based on the circumstances of the cases before them. Neither case is applicable to the present situation. In *Phelps*, the Court found that the material sought did not constitute "confidential communications" because the discovering party sought only those materials that had been "disclosed to [the individual's] employer." 194 F.R.D. at 608. As detailed above in Section II.B., the information that was "disclosed to [Spence's] employer" has already been produced by Fifth Third Bank. McHugh is seeking information that RHR *did not share* with Fifth Third Bank. RHR does not provide the information sought by the Subpoenas to its clients in order to protect the confidentiality of the interviewees and the integrity of the assessment. And, notably, the agreement between Fifth Third Bank and RHR explicitly contemplates that there will be information that RHR will be unable to share with Fifth Third. *See* Ex. 1, ¶ 5 ("The Company acknowledges that RHR may not, as a matter of law or professional responsibility, be able to disclose certain Personal Information to the Company. RHR shall not be obligated to provide such information to the Company or include such information in any Deliverable."); *see id.* ¶ 2.) By contrast, the materials that were shared with Fifth Third Bank (and subsequently produced to McHugh) contain only high-level findings based on aggregated data relating to the leadership style of a non-party.

Similarly, the trial court in *Kamper* held that the therapist-patient privilege did not apply to communications and other documents relating to the county police officers' counseling sessions with mental health professionals where the county had required officers to undergo psychological evaluations on two occasions as part of their employment, and the evaluation results were subsequently submitted to their employer. 182 F.R.D. at 599. There, the Court assumed that the police officers had no expectation of confidentiality when they undertook the evaluations. *Id.* By contrast, as detailed above, RHR treats the data underlying its evaluations as strictly confidential and does not disclose it to the Fifth Third, or any client.[3]

Finally, it is also worth noting that *Phelps* and *Kamper* sought records relating to the counseling, assessment, or treatment provided to police officers in connection with claims asserted against those same police officers alleging the use of excessive force in the course of duty. Here, neither Spence nor the other Fifth Third Bank employees interviewed are parties to this litigation or accused of any wrongdoing. The implications of requiring RHR to turn over its records relating to its psychological assessments of Spence are quite different. McHugh has not provided any justification for the disclosure of the sensitive third-party information, information which was not provided to Fifth Third Bank. Given the harm that could result to these individuals (as well as the

---

[3] There are additional distinguishing factors, including the fact that the Court found that the records of one individual, Officer Gray, did not fall under the protection of the therapist-patient privilege because Officer Gray did not speak to a licensed therapist. 182 F.R.D. at 599. And, with regard to a subset of the materials sought regarding Officer Gray, the Court limited the production to "the information that [a third party] reviewed concerning this investigation, namely, the report . . . that became part of Gray's Franklin County employment file." *Id.* at 600. The records of the second individual, Officer Hammack, were excluded in part on relevance grounds because the Court found that Officer Hammack had not put his mental state at issue in the litigation. *Jaffee* contains no limiting language that supports *Kamper*'s holding that an employee can't have confidential communications with a third party therapist where the evaluation was required by his employer. In fact, this holding may be at odds with the holding of the Supreme Court, but the *Kamper* decision was not appealed.

disclosure of RHR's proprietary information), the Subpoenas seek information that is not proportional to the needs of the case. *See* Rule 45(d)(3)(B)(i). For this reason and those set forth above, the Motion should be denied.

## V.    REQUEST FOR ATTORNEYS' FEES PURSUANT TO FED. R. CIV. P. 37(a)(5)(B)

Pursuant to Rule 37(a)(5)(B), RHR respectfully requests an order from the Court directing McHugh to pay the expenses incurred by RHR in responding to the Motion. As detailed above, the Subpoenas are unenforceable (an issue that RHR raised to McHugh on two separate occasions prior to McHugh filing this Motion), the Motion is meritless, and RHR has been required to expend substantial resources and expenses in responding to both, including but not limited to those costs necessitated by McHugh in requiring RHR to appear in the wrong court. An order requiring McHugh to pay RHR's reasonable attorneys' fees is appropriate here.

## VI.   CONCLUSION

For the foregoing reasons, RHR International LLP respectfully requests that the Court deny McHugh's Motion to Compel Compliance with the Subpoenas, awarding RHR International LLP the attorneys fees and costs incurred in responding to the Motion, and for any other relief the Court may find appropriate.

Dated:    March 20, 2024                    Respectfully submitted,

                                            By:  */s/ Nicole C. Mueller*
                                            Nicole C. Mueller *(Pro Hac Vice)*
                                            nicole.mueller@klgates.com
                                            Christopher A. Bloom *(Pro Hac Vice)*
                                            christopher.bloom@klgates.com
                                            **K&L Gates, LLP**
                                            70 West Madison Street, Suite 3100
                                            Chicago, Illinois  60602
                                            Telephone: (312) 372-1121
                                            Fax: (312) 827-8000

                                            *Attorneys for Defendant*
                                            *RHR INTERNATIONAL LLP*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed with the Clerk of Court via the Court's CM/ECF system on March 20, 2024, which will serve all counsel of record.

By:    */s/Nicole C. Mueller*
Nicole C. Mueller