## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| **PHILIP R. MCHUGH,** | : | |
| | : | Case No. 1:21-cv-00238 |
| Plaintiff, | : | |
| | : | Judge Michael R. Barrett |
| v. | : | |
| | : | **PLAINTIFF'S REPLY IN SUPPORT TO** |
| **FIFTH THIRD BANCORP, ET AL.** | : | **MOTION TO COMPEL RHR TO** |
| | : | **PRODUCE DOCUMENTS** |
| Defendants. | : | |
| | : | |

RHR's Exhibit 1 (Doc # 59-1 PAGEID # 2537-2541) confirms that Fifth Third has failed and/ or refused to produce all relevant documents pertaining to RHR, and that RHR's burden of production is minimal. The Exhibit 1 contract between RHR and Fifth Third makes clear that the Bank is paying all RHR's attorney's fees, expenses, and costs in connection with these subpoenas. (*Id.* at PAGEID # 2540, ¶ 11(d)("If RHR is the subject of a subpoena…which arises out of or relates to RHR's performance of Services pursuant to these Business Terms, the Company agrees to reimburse RHR for all costs incurred by RHR (including attorneys' fees and the time of RHR Consultants at regular rates) in connection with such proceeding."). RHR cannot claim that there is *any* burden associated with its production of documents responsive to this subpoena (electronically or otherwise), when Fifth Third is advancing all costs associated with it. Additionally, the subpoenas are validly issued, seek relevant information for discovery purposes, and are adequately protected by the Court's Stipulated Protective Order (Doc # 16).

**I.     RHR's Exhibit 1 (Doc # 59-1) makes clear that Fifth Third has not produced all RHR-related documents in its possession.**

RHR's memorandum in opposition confirms that Fifth Third has failed, or otherwise refused, to produce all relevant documents pertaining to RHR. Exhibit 1 to RHR's memorandum

1

in opposition, Doc. # 59-1, which is identified by RHR as the "Business Terms" and the "contract between RHR and Fifth Third Bank" (Doc. #59 at PAGEID #: 2521) was never produced by Fifth Third, despite numerous requests for the document. Ultimately, Fifth Third resorted to blatantly misrepresenting that the document does not exist.

Plaintiff first requested production of the document in November 2020 (*See* Smith Aff., Exhibit 1)(RFP 13)("Please produce for inspection and/or copying the engagement letter signed by or on behalf of the Bank with the consulting firm described in No. 12 above."). After Fifth Third finally responded several months later with some document production (*Id.* at Exhibit 2), Plaintiff noted in a letter to Defense counsel on September 8, 2021 that no such signed engagement had been produced (*Id.* at Exhibit 2).  Fifth Third responded on October 11, 2021 that:

> The Bank has produced the only engagement letter in its possession, custody, or control pertaining to the 2020 CEO succession and evaluation process completed by RHR International as part of its July 30, 2021 document production. Contrary to your contentions, **there is no engagement letter "signed by or on behalf of the Bank" or any "Client Relationship Agreement."**). (Emphasis added.)

(*Id.* at Exhibit 3).

This is just another example of the obstructive discovery tactics used by Fifth Third throughout this litigation.[1] Such tactics necessitate that subpoenas be served upon third parties and that RHR be compelled to produce responsive documents. Given Fifth Third's agreement to

---

[1] The ongoing saga of Defendants' discovery obstruction, gamesmanship, and intimidation tactics all in an effort to stall this case is apparent from the record, but by way of example it includes (1) Defendants' immediate frivolous and retaliatory countersuit for abuse of process, two days after Plaintiff filed an age discrimination lawsuit; (2) initial subpoenas to Plaintiff's wife and four children; (3) attempts to unilaterally impose a limit of 5 total depositions allowed to Plaintiff; (4) a refusal to produce relevant texts, eventually requiring an all-day review of hard copies in Defense counsel's office, only to be refused production after flagging relevant pages; (5) a disorganized, jumbled, and incomplete production of Plaintiff's own outlook calendar, followed by a refusal to produce the calendar in a simple .pst format which would allow Plaintiff or his counsel to open it in Outlook; (6) an ongoing refusal to produce additional relevant witnesses for deposition beyond 10, despite agreeing from the outset that the deposition limits should be extended from 10 to 20; (7) delays of over six months for half day board of director depositions, with Defendants now saying that no more than 2 are available before the Fall.

reimburse RHR for its production (and the costs associated with it), any burdens associated with the production is minimal. (*See* Doc. #59-1 ¶ 14d).

Another example of documents requested in the RHR subpoena which have been withheld and/ or not produced by Defendant, is the 2015 assessment of Greg Carmichael. RHR has made no effort to explain the lack of production of the 2015 assessment. Again, these are just examples of the documents in RHR's possession which have not been provided by Defendants.

Thus, RHR's claim that all documents have been produced by Fifth Third is meritless, belied by its own exhibit, and should be rejected as a basis to refuse enforcement of the subpoenas.

## II.    Sixth Circuit case law is clear that electronic or mail production, which has been repeatedly offered and agreed to by Plaintiff for purposes of RHR's production, renders the 100-mile geographic limitations in Rule 45(c) inapplicable.

Contrary to RHR's arguments, this Court, the Northern District of Ohio, and innumerable other courts have all confirmed that where a non-party can readily comply with a document subpoena via electronic and/or mail production and/or the requesting party has agreed or otherwise stipulated to the same, the 100-mile geographic restrictions under Rule 45 do not apply. *See, e.g., Atlas Indus. Contrs. LLC v. In2Gro Technologies LLC*, S.D. Ohio No. 2:19-cv-2705, 2020 U.S. Dist. LEXIS 63183 (Apr. 10, 2020)(finding subpoena to third party in New Jersey to produce documents in Michigan was not procedurally defective where moving party has made clear it will accept service of responsive documents electronically); *Pidcock v. Goodard,* N.D. Ohio Bankr. Case No. 10-60702, 2015 Bankr. LEXIS 901, *9 ("The court views the compliance contemplated by Rule 45(c)(3)(A)(ii) as the accumulation, dissemination, via mail or electronic transmission, of the requested discovery, which likely can occur from [the third party's] office in Naples or a nearby post office. Consequently, [the third party] will not be required to venture more than 100 miles to fulfill the request."); *United States v. Brown*, 223 F. Supp.3d 697, 703 (N.D. Ohio 2016)("[C]ourts

generally find that the rule does not apply where documents can be mailed and do not require personal appearance."); *Kacmarik v. Michell*, N.D. Ohio No. 1:15CV2062, 2017 U.S. Dist. LEXIS 5372, at *13 (Jan. 13, 2017)("[This] Court finds this issue effectively moot in light of [the requesting party's] stipulation that the subpoenaed documents may be produced electronically or by U.S. mail."); *Pictsweet Co. v. R.D. Offutt Co.*, No. 3:19-cv-0722, 2020 U.S. Dist. LEXIS 262109, at *11 (M.D. Tenn. Apr. 23, 2020)(finding that the geographic limitation does not apply, and no facial defect exists where a subpoena does not require personal appearance and the requested documents can be produced electronically or by other means).

This is a reasoned, practical approach to Rule 45, which recognizes the realities of modern-day discovery where traveling over 100 miles to produce documents is simply not an issue nor burden. The entire point of the geographic restriction is to protect a non-party from the burden of needing to travel over 100 miles to deliver requested documents or tangible items (such as originals). But if a requesting party has agreed that production can be made via mail or e-mail (as is almost always the case in 2024), no travel is required, thus rendering the burdens non-existent. As the court in *Henry Schein* aptly put it:

> The reality is that in today's age, the purpose of the 100-mile limit is minimized. The practicality of modern electronic document production and the efficiency of mail means a subpoenaed party is less likely to travel to comply with a subpoena. This is particularly true in this case where the subpoena does not require the nonparty to travel…but only to produce the documents, which can be done by electronic means. Additionally, the plain language of Rule 45 as well as the Advisory Committee Notes would certainly support this position. Fed. R. Civ. P. 45 (Advisory Committee Notes 2013) ("Under the current rule, parties often agree that production, particularly of electronically stored information, be transmitted by electronic means. Such arrangements facilitate discovery, and nothing in these amendments limits the ability of parties to make such arrangements.").

*Henry Schein, Inc. v. Drea,* S.D.Iowa No. 4:21-cv-00192-RGE-HCA, 2022 U.S. Dist. LEXIS 237418, at *9-10 (May 31, 2022).

It is telling that RHR makes no effort to explain the burden associated with electronic production of the requested documents (there is none), instead resorting to mischaracterized, unpersuasive case law that is nearly all outside the Sixth Circuit. The only two Sixth Circuit cases RHR does cite are mischaracterized, not from this Court, and readily distinguishable.

In *Thacker,* for example, the court's denied a motion to compel a purported Rule 45 subpoena attached to a notice of deposition sent via U.S. Mail to the non-party in Chicago, for production of documents in Chicago. The denial was based on jurisdictional grounds, particularly where the subpoena called for production of documents in Chicago, Illinois, where the non-party witness resides, and where the deposition was anticipated to take place. *See Thacker v. Ethicon, Inc.,* 572 F. Supp. 3d 319, 322-323 (E.D.Ky.2021)("Here, the subpoena is to Dr. Rosenzweig, who resides in Chicago, Illinois, commanding him to produce documents in Chicago, Illinois. Simply put, Ethicon must seek information from Dr. Rosenzweig in the Northern District of Illinois.").

In this case, Plaintiff is not seeking a deposition with the document production, and it is seeking the document production in Cincinnati (S.D. Ohio) via mailing or electronic production.

The other case, *South Point Wholesale, Inc. v. Vilardi,* No. 1:17-CV-00052, 2017 WL 9285528, at *1 (W.D. Ky. Oct. 6, 2017) is an unreported decision which makes no indication that the requesting party agreed to production by mail or electronically, and certainly not an indemnification provision covering all the costs of production. It also fails to cite any of the above case law from the Sixth Circuit regarding the inapplicability of Rule 45(c)'s geographic limitations where mail or e-mail production is offered.

The lack of burden to RHR is reason enough to compel production, when considering the impracticality, delay, and waste of resources if RHR's logic were to be followed. Indeed, to receive production of documents within 100 miles of RHR's place of business would require Plaintiff to

travel to Chicago or otherwise retain an agent to do so simply to retrieve the documents (in paper form or on a flash drive), and then drive them back to Cincinnati. All this, when someone on RHR's end can simply send an e-mail with a zip file to Plaintiff's counsel in Cincinnati to complete their subpoena obligations. That is the penultimate example of elevating form over substance and should be rejected by this Court.

### III.   This Court has jurisdiction over the subpoena.

It is undisputed that the place of compliance listed on the face of the subpoena is Cincinnati, Ohio, given that is where the production will ultimately be completed. For that reason alone, this Court has jurisdiction under the rules to enforce the subpoena. See *Henry Schein, Inc.* at *6-7 (recognizing that the phrase 'the court for the district where compliance is required' is ambiguous, but the correct way to interpret the 'place of compliance' is to look at the place where compliance is identified on the face of the subpoena); *Lymon v. UAW Local Union #2209*, N.D. Ind. No. 1:20-cv-000169-HAB-SLC, 2021 U.S. Dist. LEXIS 233909, at *2 (Dec. 7, 2021)("While the definition of the phrase 'where compliance is required' is unclear, this Court and others within this District have interpreted the phrase to mean the place where delivery of the subpoenaed documents is required."); *CSS, Inc. v. Herrington*, 354 F. Supp. 3d 702,709-10 ("At the time of deciding where such a motion must be filed, then, the place named in the subpoena as required by Rule 45(a)(1)(A)(iii) is the place where compliance is required. This is so even if the subpoenaed non-party has objected based on Rule 45(c) to a subpoena's named place of compliance, because the determination that the subpoenaed non-party and not the subpoenaing party has the better of a Rule 45(c) dispute must await decision on a Rule 45(d)(2) or 45(d)(3) motion."); *Ellis v. Arrowood Indemn. Co.*, S.D. W.Va. No. 2:14-mc-00146, 2014 U.S. Dist. LEXIS 121913, at *7 (Sep. 2, 2014)("Most courts look to the subpoena to determine where compliance is required.); *Tomelleri*

*v. Zazzle, Inc.*, No. 13-cv-02576-EFM-TJJ, 2015 U.S. Dist. LEXIS 9438, 2015 WL 400904, at *2 (D. Kan. Jan. 28, 2015) (stating that the "district where compliance is required" was the district in which the documents are to be produced); *Bennett v. Hyatte*, N.D. Ind. No. 3:21-cv-00550-RLM-MGG, 2022 U.S. Dist. LEXIS 152022, at *33 (Aug. 24, 2022)("[C]ourts in this district have routinely held that the district where compliance is required under Rule 45 is governed by the place where delivery of the subpoenaed documents is required.").

The "place of compliance" can be Cincinnati, Ohio where production is electronic, even if it is ultimately sent to a location more than 100 miles away from RHR. This is not a jurisdictional question nor has RHR raised any jurisdictional arguments. Rather, the only question is whether there are any applicable restrictions under Rule 45(c). Because production can be completed without travel of over 100 miles, the rule does not apply.

## IV.  RHR's blanket relevance objections are meritless, particularly under the broad parameters of discovery under Rule 26.

RHR next claims that none of the requested records are relevant. *See* Response pg. 13 (Doc. 59, PAGEID #2529-2530)("RHR's records are not relevant because they do not speak to any of the *relative* qualifications of McHugh and the employee who actually received the promotion. Instead, the assessment addresses only the qualifications of a single non-party candidate, Spence.").

Employment discrimination cases are not decided in a vacuum as RHR would suggest. Even if McHugh was not ultimately assessed by RHR (despite initial proposals to assess McHugh and Spence equally), the RHR assessment remains relevant for purposes of comparing Spence to McHugh. *See LeVine v. DeJoy*, 64 F.4th 789, 802 (6th Cir. 2023)(finding the plaintiff "has put forward evidence that, in comparison with Peare, she has: (1) more relevant education; (2) more relevant experience; (3) superior professional accomplishments; and (4) superior performance as

demonstrated in her evaluations. This is sufficient to create disputed material issues of fact as to the reasonableness of USPS's decision, and whether its proffered reasons for promoting Peare was its actual motivation."); *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1022 (6th Cir. 2000)("[I]n failure to promote cases a plaintiff does not have to establish that he applied for and was considered for the promotion when the employer does not notify its employees of the available promotion or does not provide a formal mechanism for expressing interest in the promotion. Instead, the company is held to a duty to consider all those who might reasonably be interested in a promotion were its availability made generally known."). RHR's assessment and the documents supporting it will, by way of example, provide evidence of Spence's qualifications or lack thereof, and although McHugh was subsequently excluded from the same assessment by Defendants, the evidence regarding Spence will be compared to the objective evidence of McHugh's superior qualifications, including, but not limited to, relevant education, experience, professional accomplishments, and performance as demonstrated in yearly evaluations.

RHR also argues that only the records that the Board received and considered in making a decision would bear on this case. Yet again, however, this adopts a narrow, unsupported view of proof of discrimination. In the cases where the decision maker is an independent Board for whom information is filtered and controlled, the information that is provided to the Board for decision making purposes is just as important as the information that is intentionally withheld. *See Bledsoe v. TVA Bd. Of Dirs.,* 42 F.4th 568, 582 (6th Cir. 2022)("When a decisionmaker relies on a biased employee's knowledge about the employee subject to an adverse action, a jury may reasonably infer that the biased employee proximately caused the adverse action."); *Sloat v. Hewlett-Packard Enter. Co.*, 18. F.4th 204, 212-213 (6th Cir. 2021)(holding that a biased employee proximately

caused an adverse action when a supervisor who had little knowledge about the plaintiff's capabilities relied upon the biased employee's information).

Finally, the documentation withheld from the Board further establishes the extent that RHR and Defendants collaborated in an exercise of pre-selection versus actual assessment of potential candidates, providing further evidence of discriminatory intent. *See, e.g., Fijalkowski v. Belmont Cty. Bd. of Commrs.*, S.D.Ohio No. 2:17-cv-0195, 2021 U.S. Dist. LEXIS 92840, at *19 (May 17, 2021)("The Sixth Circuit has found that 'evidence of irregularities in the application and selection process' can raise a genuine issue of pretext when combined with other indicators of discriminatory motivations….[this] also includes evidence that the chosen candidate was preselected for the position, and 'pre-selection alone can refute a defendant's proffered reason.'"); *Vinson v. MTD Consumer Group, Inc.*, N.D.Ohio No. 1:11-CV-1259, 2013 U.S. Dist. LEXIS 27424, at *38 (Jan. 24, 2013)( "Evidence of preselection operates to discredit the employer's proffered explanation for its employment decision.").

**V.      RHR makes no effort to argue that the assessment of Greg Carmichael in 2015 is irrelevant.**

RHR makes no effort to address the subpoena for records relating to Carmichael's assessment and coaching in 2015. *See* ¶¶ 18-22, 27-28 from Exhibit A of the Supplemental Subpoena; *See also* Carmichael Dep., 305:17-22 ("The board wanted to use the firm RHR, because they were very pleased with the process that they went through prior with me in 2015[.]"); 387:8-389:14 (Carmichael was introduced to RHR in 2015 when the Board hired RHR to assess Carmichael for the CEO role. He was interviewed by Guy Beaudin and the Board kept Beaudin on for a year following Carmichael's CEO appointment to serve as Carmichael's coach/mentor). The assessment of Carmichael by RHR is relevant to this case, particularly given it may show irregularities in the process utilized by Fifth Third / RHR in 2020 when assessing Spence.

9

### VI. No undue burden to produce purportedly privileged, proprietary, and confidential materials.

RHR also objects on the basis that such documents are generally "privileged, proprietary, and confidential," and claims it would be too much of a burden on RHR to produce them. In doing so, RHR yet again cites to no authority for this proposition, other than the inapplicable psychotherapist-patient privilege in *Jaffee.*

The documents are not privileged including under *Jaffee*, and the contract between RHR and Fifth Third produced by RHR in its opposition makes this clear. *See* Doc. 59-1 ("In connection with its Services, RHR Consultants may administer to Company Personnel certain psychometric preference and other questionnaires, tests and instruments, which shall be used solely to assist RHR in providing advice for the benefit of the Company. **RHR does not provide direct psychological or counseling services to any individual, including Company Personnel**."). As a threshold matter, the privilege under *Jaffee* does not apply where psychological treatment or counseling is not provided.

Moreover, the general 'proprietary' or 'confidential' nature of interviews between Spence or other Fifth Third employees and RHR is not a basis for prohibiting disclosure, particularly where a Stipulated Protective Order is in place to protect RHR or Fifth Third from such disclosure causing harm. The fact is, individual responses to interview questions during an assessment of Spence for the role of President and CEO are relevant to this employment discrimination case, and identifying the individuals associated with that feedback is necessary to confirm the integrity of the assessment. RHR's feelings about such responses being "sensitive" is not a basis to deny production in response to a validly issued subpoena. Rather, at best it may be a basis to produce such documents pursuant to the Court's Stipulated Protective Order, which would adequately protect RHR and Fifth Third against confidentiality concerns.

## VII. RHR's request for attorneys' fees

RHR's request for attorney's fees is meritless for the reasons discussed above, but it is particularly egregious given RHR already has a right of indemnity from Fifth Third for all fees and expenses incurred in connection with the subpoenas. If anything, RHR should be compelled to reimburse Plaintiffs for their attorney's fees given the lack of any factual or legal basis for the blanket refusal to produce relevant documents.

## VIII. Conclusion

For the foregoing reasons, Plaintiff respectfully requests that the Court Order non-party RHR International LLP to comply with the subpoenas, and issue any other relief the Court may find appropriate.

Respectfully Submitted,

*/s/ Peter A. Saba*
Peter A. Saba, Esq. (0055535)
Joshua M. Smith, Esq. (0092360)
STAGNARO, SABA
& PATTERSON CO., L.P.A.
2623 Erie Avenue
Cincinnati, Ohio 45208
(513) 533-2701
(513) 533-2711 (fax)
pas@sspfirm.com
jms@sspfirm.com

*/s/ John J. McHugh*
John J. McHugh, III
McHUGH & McCARTHY, LTD
5580 Monroe Street
Sylvania, Ohio 43560
(419) 885-3597
(419) 885-3861 (fax)

**Co-Counsel for Plaintiff Philip R. McHugh**

11

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that a copy of the foregoing motion was served on all counsel of record this 10th day of April, 2024 via the Court's CM/ECF system.

*/s/ Peter A. Saba*
Peter A. Saba, Esq. (0055535)
