UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| PHILIP R. McHUGH, | : |
| Plaintiff, | : |
| vs. | : Case No. 1:21-cv-00238-MRB |
| | : Judge: Hon. Michael R. Barrett |
| FIFTH THIRD BANCORP, *et al.*, | : |
| Defendants. | : |

**DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND/OR TO LIMIT DISCOVERY UNDER RULE 26(B)(2)(C)
PRECLUDING ADDITIONAL DIRECTOR DEPOSITIONS**

I. **INTRODUCTION**

Having already exceeded the presumptive ten deposition limit and having spent more than 32 hours deposing six of Defendant Fifth Third Bank's Board directors, including the Chairman of the Board and the Lead Independent Director during the relevant time period, Plaintiff now seeks to depose an additional eight directors (for a total of 14 director depositions).[1] Neither the Federal Rules of Civil Procedure nor the case law permit this type of duplicative and burdensome discovery. To the contrary, courts have long recognized the unique threat of undue burden to a defendant corporation caused by excessive, unnecessary and duplicative discovery of the

---

[1] Plaintiff has so far deposed six current and former Fifth Third Bank directors: Marsha Williams (former Lead Independent Director) for five hours, Gary Heminger for six hours, Michael McCallister for 3.5 hours, Nicholas Akins for 3.4 hours, Elieen Mallesch for 2.2 hours, and Defendant Gregory Carmichael for 12 hours. Plaintiff has also deposed five current and former Fifth Third Bank employees: Timothy Spence (current CEO and President) for 5.8 hours; Robert Shaffer (former CHRO) for 6.9 hours; Nancy Pinckney (current CHRO) for 3.3 hours; Elizabeth McKay for three hours, and Paula Hennard for 1.4 hours. Plaintiff now seeks to depose eight additional Directors: B. Evan Bayh III, C. Bryan Daniels, Emerson L. Brumback, Jorge L. Benitez, Linda W. Clement-Holmes, Katherin B. Blackburn, Mitchell S. Fieger, and Thomas H. Harvey.

1

defendant's corporate executives and that "permitting unfettered discovery of corporate executives would threaten disruption of their business and could serve as a potent tool for harassment in litigation." *Wertheim Schroder & Co. v. Avon Prods.*, 1995 U.S. Dist. LEXIS 79, *4 (S.D.N.Y. Jan. 9, 1995); *Schwendimann v. Arkwright Advanced Coating*, 2016 U.S. Dist. LEXIS 179462, *15 (D. Minn. Jan. 8, 2016) (same); *see also Goldblum v. Univ. of Cincinnati*, 62 F.4th 244, 257 (6th Cir. 2023) (finding deposition of university president unduly burdensome given the unlikely chance that president's deposition would prove beneficial in providing relevant testimony); *Pizzuti v. Nashville Hospitality Capital, LLC*, 2018 U.S. Dist. LEXIS 183247, **12-15 (S.D. Ohio Oct. 25, 2018) (precluding deposition of company's CEO and chairman as unduly burdensome and unreasonably duplicative where party previously deposed company's president and two senior vice presidents).

Given the extensive existing record as to the Board's process and conduct in appointing Mr. Spence, Plaintiff's demand for eight additional depositions is exactly the type of redundant and disproportionate discovery that Civil Rule 26 was designed to prevent. Without the Court's protection, Plaintiff will drag another eight directors through the wasteful muck of duplicative depositions for no legitimate purpose, but only to further annoy, harass and burden Defendants and the non-party director witnesses. Accordingly, Defendants request that the Court limit discovery under Rule 26(b) or enter a Protective Order under Rule 26(c) preventing Plaintiff from taking any further Director depositions.

## II. BACKGROUND

The sole Plaintiff in this action, Philip R. McHugh, brought suit against Defendants Gregory D. Carmichael, Fifth Third Bank, and Fifth Third Bancorp[2] under the Age Discrimination

---

[2] For purposes of this Motion, Defendants Fifth Third Bank and Fifth Third Bancorp are herein collectively referred to as "Fifth Third Bank" or "Bank."

2

in Employment Act, 26 U.S.C. Section 621, *et seq.*, as well as O.R.C. Section 4112. *See* Amended Compl., Doc. No. 9, PAGEID 1778, 1784-87. Plaintiff alleges that the fifteenth largest financial institution in the United States,[3] Fifth Third Bank, discriminated against him on the basis of his age when Fifth Third Bank's Board of Directors ("Board"), pursuant to their fiduciary duty to the Bank's shareholders and in the exercise of their business judgment, selected Timothy Spence to be the Bank's next President. As every director deposed has testified, they never considered the Plaintiff to be a viable candidate because he was not qualified. Each director then articulated at length why the Board—unanimously—found that the Plaintiff was not qualified. *See* Ex. A, Williams Dep. at. 32:10-33:12, 65:5-11; Ex. B, McCallister Dep. at 163:14-19; Ex. C, Carmichael Dep. Vol. I at 189:12-191:19; Ex. D, Akins Dep. at 53:9-54:22; Ex. E, Mallesch Dep. at 102:1-21; Ex. F, Heminger Dep. at 210:13-23.

For more than three years, Plaintiff has been engaged in a massive fishing expedition. During 2023, Plaintiff deposed nine individuals, including the former Chief Human Resources Officer Robert Shaffer; current Chief Human Resources Officer Nancy Pinckney; former Human Resources employee Elizabeth McKay; current President and Chief Executive Officer Timothy Spence; former President, Chief Executive Officer and Board Chairman Gregory Carmichael; and three additional Bank directors: Michael McCallister, Gary Heminger, and Marsha Williams.

In the midst of this burdensome discovery, Plaintiff requested to schedule depositions of ten remaining directors, to which Defendants repeatedly objected. *See* C. Hart Letter of August 8, 2023, pp. 1-2, attached hereto as Exhibit G; C. Hart Email of Dec. 5, 2023 at 12:51PM, attached hereto as Exhibit H. Plaintiff's request to exceed the presumptive deposition limit was discussed

---

[3] Per U.S. News and World Report's 2024 ranking of the largest U.S. banking institutions by assets controlled. *See* Casey Bond, *20 Biggest Banks in America*, https://www.usnews.com/banking/articles/biggest-banks-in-america.

3

at the December 15, 2023 Discovery Conference at which Plaintiff's counsel argued as follows in support of Plaintiff's alleged need for ten additional director depositions:

> Judge, our position would be, based on the representation that they're making . . . That if they're all equal decisionmakers and they're rendering their own independent decision, then what becomes relevant to that is: What's the basis for that? Where did they derive that information from? What did they use for that decision? What was provided to them? What was not provided to them?

Tr. of Dec. 14, 2023 Discovery Conf., Doc. No. 38, PAGEID 2323-2324. Plaintiff's counsel also assured the Court that any additional director depositions were "certainly going to be shorter" and "far more targeted" than the four depositions of directors McCallister, Heminger, Williams and Carmichael. *Id*. at PAGEID 2332. The Court ultimately authorized Plaintiff to "take two [additional director depositions] and see where we are." *Id*.

Thereafter, Plaintiff's counsel completely reneged on their commitment and refused to negotiate a reduced deposition length. In addressing Defendants' complaints as to the potential length of the additional director depositions at a follow-up discovery conference, the Court specifically noted that the additional depositions should be "really simple. Was there any discussion of age? What information did you rely on? I mean, it's not complex." Tr. of Feb. 5, 2024 Discovery Conf., Doc. No. 42, PAGEID 2394. In response, Plaintiff's counsel assured the Court that they would "make every effort to make these [future director depositions] as efficient as possible . . . ." *Id*.

Nicholas Akins sat for deposition on July 2, 2024. His deposition lasted approximately three hours and twenty-three minutes. Eileen Mallesch sat for deposition on July 10, 2024. Her deposition lasted approximately two hours and twelve minutes.

Six directors, including the only personal Defendant, Mr. Carmichael, have now been asked the exact same questions about the Board's executive succession planning process, all information and factors considered, the source of such information and factors, all board

discussions, all individuals considered, all outside consultants utilized, and the Board's ultimate conclusion to appoint Mr. Spence. As noted above, Plaintiff also served numerous requests for production of documents and other written discovery requests seeking all documentation and communication by or between all Board directors and other relevant Bank employees concerning the Board's executive succession planning process and decision to appoint Mr. Spence as Bank President.

### III. LEGAL STANDARD

Pursuant to Rule 26(b)(2), a district court "must limit the frequency or extent of discovery" if the discovery sought by a party is "unreasonably cumulative or duplicative," "can be obtained from a more convenient or less expensive source," or is otherwise "outside of the scope permitted by Rule 26(b)(1)." FED. R. CIV. P. 26(b)(2)(C); *see also Scales v. J.C. Bradford & Co.*, 925 F.2d 901, 906 (6th Cir. 1991) ("[The] desire to allow broad discovery is not without limits and the trial court is given wide discretion in balancing the needs and rights of both plaintiff and defendant."). Rule 26(b)'s discovery limits are specifically designed to "guard against redundant or disproportionate discovery by giving the court authority to reduce the amount of discovery that may be directed to matters that are otherwise proper subjects of inquiry." FED. R. CIV. P. 26 (advisory committee's note to 1983 amendment); *see also id*. (the spirit of the Civil Rules is "violated when advocates attempt to use discovery tools as tactical weapons rather than to expose the facts and illuminate the issues by overuse of discovery").

Beyond the district court's authority to limit discovery under Rule 26(b), a party may also move and a "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." FED. R. CIV. P. 26(b)(2)(C); *see also Goldblum*, 62 F.4th at 256 ("Indeed, district courts have significant discretion to limit the scope of

discovery where the information is overly broad or would prove unduly burdensome to produce." (internal quotations omitted)).

With respect to deposition discovery, a party must seek and obtain leave of the court to take more than 10 depositions unless otherwise stipulated to by the parties or ordered by the court, and a court may only authorize a party to take more than 10 depositions "to the extent consistent with Rule 26(b)(1) and (2)." FED. R. CIV. P. 30(a)(2). A purpose of this presumptive limit is to "emphasize that counsel have a professional obligation to develop a mutual cost-effective plan for discovery in the case." FED. R. CIV. P. 30 (advisory committee's note to 1993 amendment). Such limit and focus on cost-effective discovery furthers the Civil Rules' aim to prevent "excessive discovery." FED. R. CIV. P. 26 (advisory committee's note to 1983 amendment). However, to further combat excessive discovery, a district court may alter the limits on depositions, including their length, as permitted by Rule 26. *See* FED. R. CIV. P. 26(b)(2)(A); FED. R. CIV. P. 30 (advisory committee's note to 1993 amendment) ("Leave to take additional depositions should be granted when consistent with the principles of Rule 26(b)(2), and in some cases the ten-per-side limit *should be reduced* in accordance with those same principles." (emphasis added)).

IV.  ARGUMENT

  A. **Further Depositions Are Not Proportional to the Needs of the Case and Are Unreasonably Cumulative and Duplicative Under Rule 26(b)**

Plaintiff's current demand to depose an additional eight directors is the exact type of "excessive discovery" Rule 26(b) is designed to prevent. The previous six director depositions, along with Plaintiff's numerous requests for production and other written discovery requests,[4] have

---

[4] Plaintiff has now served on Defendants 16 separate requests for production of documents under Rule 34 encompassing 287 separate requests, including ten sets of requests specifically targeting individual directors, along with Rule 33 and 36 interrogatories and requests for admission. Pursuant to these numerous discovery requests, Defendants have now produced over 215,000 pages of documents, including all relevant Board materials and minutes, emails, text messages, communications, and performance reviews.

definitively established the executive succession process, all information and factors considered (and not considered), the source of all information and facts considered, all Board discussions, all individuals considered (and not considered), and all outside consultants utilized by Fifth Third Bank's Board of Directors in appointing Mr. Spence to the position of Bank President in October 2020—facts that are not unique to any specific director given the full Board's joint responsibility for executive succession planning. *See* Ex. A, Williams Dep. at 20:3-14, 20:17-21:4; Ex. B, McCallister Dep. at 61:9-13.

Courts routinely prohibit additional depositions of corporate executives, officers and *directors* where the party seeking discovery has already deposed numerous other company executives and where further depositions would be unreasonably cumulative or duplicative in light of existing discovery. *See Pizzuti*, 2018 U.S. Dist. LEXIS 183247, at **12-15; *Gallus ex rel. AXP New Dimension Fund v. Am. Express Fin. Corp.*, 2006 U.S. Dist. LEXIS 68052, **6-7 (D. Minn. June 21, 2006) (denying plaintiff's request to depose an additional five of defendant's directors where plaintiff had already deposed two directors); *Office Depot, Inc. v. Elementum Ltd.*, 2020 U.S. Dist. LEXIS 167215, **8-10 (precluding plaintiff from deposing seven of defendant's current and former directors because such depositions would be unduly burdensome in light of plaintiff's ability to depose defendant's CEO who was central to plaintiff's allegations); *Wertheim Schroder & Co.*, 1995 U.S. Dist. LEXIS 79, at **15-17 (precluding plaintiff from deposing three additional members of a special committee of defendant's board of directors because plaintiff had already deposed three members of the special committee).

Furthermore, the Southern District of Ohio has limited deposition discovery in this specific circumstance. In *Pizzuti v. Nashville Hospitality Capital, LLC*, the defendant sought to depose the chairman and chief executive officer of a real estate company (Pizzuti) regarding his involvement

with a Nashville hotel development, in addition to deposing the real estate company's president and two senior vice presidents. 2018 U.S. Dist. LEXIS 183247 at **11-15. In framing its decision, the *Pizzuti* Court noted that the question was "not whether Pizzuti ha[d] *any* discoverable information relevant to [defendant's] claims and defenses," but whether such information was cumulative and duplicative of the information discoverable through the president and senior vice presidents. *Id.* at *11-12. Ultimately, the Court prohibited Pizzuti's deposition reasoning that "Pizzuti's testimony would be duplicative of any testimony that [the president and senior vice presidents] could provide." *Id.* at 13. In so ruling, the court rejected defendant's argument that "it is entitled to test the memories of all witnesses, including [] Pizzuti, regarding the events that are the subject of the underlying litigation." *Id*.

The Southern District of New York reached a similar conclusion in *Wertheim Schroder & Co. v. Avon Prods.*, 1995 U.S. Dist. LEXIS 79. In *Wertheim*, the defendant sought to depose three members of a special committee of plaintiff's board of directors regarding what information was provided to the special committee and the reasoning behind its decision to approve certain changes to the company's quarterly dividend, including how each member of the committee reacted to the provided information. *Id*. at *15. The *Wertheim* Court concluded that such depositions would be unduly burdensome and duplicative given that defendant had already deposed the other three members of the special committee while noting that "a party has no absolute right to depose every person who has discussed a subject, even if that subject is central to the litigation" and "where other witnesses have the same knowledge, it may be appropriate to preclude a redundant deposition of a highly-placed executive." *Id*. at **5, 15.

As both the *Pizzuti* and *Wertheim* courts recognize, the question is not whether the remaining directors have *any* discoverable information, but whether such information is

unnecessarily cumulative and duplicative of the existing director testimony. Here, there is no question that any relevant information possessed by the remaining directors is plainly cumulative and duplicative of the information testified to by the six directors already deposed given that all relevant succession planning information was uniformly provided to, discussions were had amongst, and decisions were made by the full Board of Directors.

In addition to being improperly duplicative, Plaintiff has also failed to demonstrate a sufficient need to nearly double the presumptive deposition limit. The ten-deposition limit is "intended to curb discovery abuse." *Talismanic Props., LLC v. Tipp City*, 309 F. Supp. 3d 488, 497 (S.D. Ohio 2017) (cleaned up). Therefore, a party seeking more than ten depositions "must make a particularized showing why extra depositions are necessary" and "the mere fact that more than ten individuals may have discoverable information in a case does not mean that taking more than ten depositions makes sense." *Id.* (cleaned up).

Here, Plaintiff has never made a particularized showing that he needs to depose every director about matters that are common to the entire Board. Plaintiff's counsel previously asserted that additional depositions were necessary to determine (1) the basis of the Board's decision, (2) what information was utilized by the Board in making its decision, (3) the sources of such information, and (4) what information was not provided to the Board. See Tr. of Dec. 14, 2023 Discovery Conf., Doc. No. 38, PAGEID 2323-2324. However, each of these matters has been conclusively established by the existing director testimony because none of this information is unique to any individual director given the fact that all directors received the same succession planning materials, had the same access to the executive team, and attended the same meetings at which these matters were discussed and decided jointly by the full board. As such, there is simply no "particularized need" to permit Plaintiff to ask eight more directors the exact same questions

about the exact same issues discussed at the exact same meetings. "A party has no absolute right to depose every person who has discussed a subject, even if that subject is central to the litigation." *Wertheim Schroder & Co. v. Avon Prods.*, 1995 U.S. Dist. LEXIS *15.

> **B. Additional Depositions Would Subject Defendants and Their Directors to Improper Annoyance, Embarrassment, Oppression, and Undue Burden or Expense Under Rule 26(c)**

Rule 26(c)(1) provides that a district court may "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense by, *inter alia*, barring the deposition of that individual." *Serrano v. Cintas Corp.*, 699 F.3d 884, 901 (6th Cir. 2012) (internal quotations omitted). The Sixth Circuit has further articulated that "discovery has limits and these limits grow more formidable as the showing of need decreases" such that "even very slight inconvenience may be unreasonable if there is no occasion for the inquiry and it cannot benefit the party making it." *Id*. (cleaned up).

First, Defendants are entitled to a protective order because eight additional director depositions are unduly burdensome on Defendants. Excessive discovery of senior executives can "serve as a potent tool for harassment in litigation" due its expense, burden and disruption to the business. *Schwendimann*, 2016 U.S. Dist. LEXIS 179462, at *15; *Wertheim Schroder & Co.*, 1995 U.S. Dist. LEXIS 79, at *4. That burden is particularly significant for senior executives that maintain significant executive responsibilities and oversight and for those that live outside the jurisdiction in which the litigation takes place. *See Wertheim Schroder & Co.*, 1995 U.S. Dist. LEXIS 79, *17.

Here, Plaintiff's demand would significantly burden Defendants and eight senior business leaders all of whom maintain significant executive responsibilities and oversight related to Fifth Third Bank and other organizations and businesses. By way of an example, Plaintiff seeks to force Katherine Blackburn, Executive Vice President of the Cincinnati Bengals, to suspend her

10

responsibilities with the Bengals and sit for deposition as the NFL season is underway, which clearly carries a significant burden to Ms. Blackburn and the Bengals in addition to the significant cost to Defendants. Furthermore, many of the eight directors reside outside of Cincinnati or Ohio. Given Plaintiff's insistence that all depositions must take place in Cincinnati, these depositions carry an even higher burden as the directors must travel to Cincinnati for deposition, at significant cost to both the directors and Defendants.

The burden of Plaintiff's request is also increased given the lack of uniquely relevant information possessed by the additional directors. As explained in *Serrano*, the burden of discovery moves on a sliding scale inversely related to the need of the proposed discovery such that as the need for discovery decreases the associated burden increases. Here, Plaintiff has already discovered all relevant information concerning the Board's succession planning process and decision to appoint Mr. Spence as Bank President. The remaining eight directors do not possess any new or uniquely relevant information regarding Plaintiff's claims and defenses. All of the directors received exactly the same materials, attended the same meetings and participated in the same discussions about executive succession. They also all voted unanimously regarding the selection of Mr. Spence. In light of Plaintiff's, at best, significantly diminished need for additional discovery, the burden to the directors and Defendants increases such that "even very slight inconvenience may be unreasonable." *See Serrano*, 699 F.3d at 901; *see also Goldblum*, 62 F.4th at 257 (finding deposition of university president unduly burdensome given the unlikely chance that president's deposition would prove beneficial in providing relevant testimony). Clearly eight time consuming and expensive depositions constitutes more than a "very slight inconvenience" to Defendants.

Second, Defendants are entitled to a protective order because Plaintiff's conduct establishes that future depositions would be improperly annoying, embarrassing, and harassing. Over Defendants' objections, this Court permitted Plaintiff to take two additional director depositions thereby exceeding the ten-deposition limit under Rule 30(a)(2). However, the Court instructed that Plaintiff's counsel "need to get right to the point . . . I don't think you need to go around the weeds on these guys" and that the two additional Director depositions should be "really simple. Was there any discussion of Age. What information did you rely on." *See* Tr. of Feb. 5, 2024 Discovery Conf., Doc. No. 42, PAGEID 2381, 2394. Plaintiff's counsel in-turn committed to "make every effort to make these [two depositions] as efficient as possible . . . ." *Id*. at PAGEID 2394.

Despite the Court's instruction and counsel's commitment, the depositions of Nicholas Akins and Eileen Mallesch were anything but simple or efficient.[5] Rather, these depositions were a clear attempt by Plaintiff to waste the time and resources of Defendants and to annoy and harass their directors with hours of irrelevant, unnecessary, and at-times hostile questions. For example, at Mr. Akins' deposition Plaintiff's counsel asked approximately 460 total questions over more than three hours,[6] including 31 general background questions,[7] 30 questions regarding his prior employment with American Electric Power,[8] 28 questions confirming his prior, sworn responses

---

[5] To the contrary, Plaintiff's counsel completely rejected that the depositions Mr. Akins and Ms. Mallesch were limited in any way by the Court. *See* Ex. D, Akins Dep. at 4:23-6:17. This is not the only unreasonable position that Plaintiff has taken. For example, the parties agreed on a deposition date for Susan Zaunbrecher of April 1, 2024 only for Plaintiff's counsel to cancel the deposition, after agreeing and noticing the deposition, and later accuse Defendants of failing to cooperate in scheduling her deposition. *See* C. Hart Email of May 31, 2024 at 9:41AM, attached hereto as Exhibit I (summarizing Defendants' attempt to scheduling Susan Zaunbrecher's deposition).

[6] Mr. Akins' deposition lasted approximately three hours and twenty-two minutes, which was longer than Michael McCallister's deposition despite Plaintiff's counsel's prior commitment to the Court that any future Director depositions are "certainly going to be shorter than the four we had." *See* Tr. of Dec. 14, 2023 Discovery Conf., Doc. No. 38, PAGEID 2332.

[7] *See* Ex. D, Akins Dep. at 7:3-10:22, 18:22-19:9, 24:1-25:2.

[8] *See* Ex. D, Akins Dep. at 119:10-23:25, 25:3-26:19.

12

to requests for production,[9] and numerous questions reviewing the Board's succession planning process, information reviewed, and interaction with the executive team—all information that was already conclusively established by the existing director testimony. Notably, Plaintiff did not ask a **single age or discrimination-related question** of either Mr. Akins or Ms. Mallesch. *See generally* Ex. D, Akins Dep.; Ex. E, Mallesch Dep. Defense counsel, however, did follow the Court's clear direction and asked whether age was ever a factor discussed, raised, or otherwise considered by the Board. The answer was an unequivocal "no." *See* Ex. D, Akins Dep. at 127:16-25; Ex. E, Mallesch Dep. at 99:5-100:13.[10]

Most egregiously, Plaintiff's counsel questioned Mr. Akins on the Larry Householder/House Bill 6 investigation and AEP's potential involvement—matters that are plainly irrelevant to Plaintiff's claims and serve only as a means of personally harassing Mr. Akins. *See* Ex. D, Akins Dep. at 25:7-26:19. Plaintiff also spent nearly 30 minutes and more than 50 questions asking Mr. Akins to read and confirm for every Board meeting's minutes whether he, Plaintiff or Mr. Spence were present—information that is plainly stated at the beginning of each meeting's minutes. *See* Ex. D, Akins Dep. at 102:8-112:17. Such blatant time wasting and dirt digging is plainly harassing and oppressive and in violation of the Court's clear direction to Plaintiff's counsel "to get right to the point."

The time and expense of eight additional depositions alone constitutes undue burden. However, the burden to Defendants is further heightened given the significant existing director testimony, the unlikelihood that any future director depositions would yield new, relevant

---

[9] *See* Ex. D, Akins Dep. at 11:2-18:21.
[10] Such testimony was again consistent with the prior director testimony. *See* Ex. A, Williams Dep. at 154:7-25; Ex. F, Heminger Dep. at 210:13-23; Ex. B, McCallister Dep. at 160:1-5; Ex. C, Carmichael Dep. Vol. I at 63:16-64:12, 65:8-19. Again, the record clearly proves that the prior director and other fact depositions are not only consistent but cumulative and duplicative as to both questions posed and answers given.

information, and the likelihood that Plaintiff will use future depositions to personally harass the directors. *See Goldblum*, 62 F.4th at 257 ("Given the unlikely chance of President Pinto's deposition proving beneficial, the district court properly found that even a 'slight inconvenience' imposed by a deposition would 'amount to unreasonable harassment' under Rule 26.") (quoting *Serrano*, 699 F.3d at 901).

## V. CONCLUSION

For the foregoing reasons, Defendants' Motion should be granted and Plaintiff should be barred from future fact depositions.

## VI. CERTIFICATION

Undersigned counsel hereby certifies that the movant has in good faith conferred or attempted to confer with Plaintiff's counsel in an effort to resolve the dispute without court action.

Dated: August 2, 2024

Respectfully submitted,

*/s/ Michael L. Cioffi*
Michael L. Cioffi (0031098)
Thomas H. Stewart (0059246)
Collin D. Hart (0099869)
1700 PNC Center
201 E. Fifth Street
Cincinnati, Ohio 45202
Tel.: (513) 362-8701
Fax: (513) 362-8702
Email: michael.cioffi@blankrome.com
Email: tom.stewart@blankrome.com
Email: collin.hart@blankrome.com

*Attorneys for Defendants/Counterclaimants Fifth Third Bancorp, Fifth Third Bank, National Association, and Gregory D. Carmichael*

14

## CERTIFICATE OF SERVICE

I, Michael L. Cioffi, hereby certify that on August 2, 2024, a copy of the foregoing Motion for Protective Order and/or to Limit Discovery was served by electronic email via the Court's CM/ECF system to all counsel of record, including:

John J. McHugh
McHugh & McCarthy, LTD
5580 Monroe Street
Sylvania, Ohio 43560
mchugh@mchughlaw.com

Peter A. Saba
Joshua M. Smith
Stagnaro, Saba & Patterson Co., L.P.A.
2623 Erie Avenue
Cincinnati, Ohio 45208
pas@sspfirm.com
jms@sspfirm.com

*Counsel for Plaintiff,*
*Philip McHugh*

**BLANK ROME LLP**

 *s/ Michael L. Cioffi*
Michael L. Cioffi (0031098)

*Attorney for Defendants/Counterclaimants*
*Fifth Third Bancorp, Fifth Third Bank,*
*National Association, and Gregory D.*
*Carmichael*