# EXHIBIT E

```
 1              UNITED STATES DISTRICT COURT

 2               SOUTHERN DISTRICT OF OHIO

 3                    WESTERN DIVISION

 4

 5

 6      ----------------------------:
                                     :
 7      PHILIP R. MCHUGH,            :
                                     :
 8           Plaintiff,             :
                                     :
 9        vs.                        :  CASE NO.
                                     :  1:21-cv-00238
10      FIFTH THIRD BANCORP, et      :
        al.,                         :
11                                   :
             Defendants.            :
12      ----------------------------:

13

14           Videotaped
             Deposition of:   EILEEN A. MALLESCH
15
             Taken:          By the Plaintiff
16
                             Pursuant to Notice
17
             Date:           July 10, 2024
18
             Time:           Commencing at 9:53 a.m.
19
             Place:          Fifth Third Center
20                           511 Walnut Street
                             Cincinnati, Ohio  45202
21
             Before:         Pamela L. Jackson
22                                 and
                             Connie Adkins-Ihle,
23                           Videographer
                             Notaries Public-State of Ohio
24

25
```

```
 1      APPEARANCES:

 2

                On behalf of the Plaintiff:
 3
                Peter A. Saba, Esq.
 4              Joshua M. Smith, Esq.
                        and
 5              Bailey E. Sharpe, Esq.  (Via Videoconference)
                        of
 6              Stagnaro, Saba & Patterson Co., L.P.A.
        .       2623 Erie Avenue
 7              Cincinnati, Ohio  45208
                Phone:  (513) 533-2701
 8              Email:  Pas@sspfirm.com
                        Jms@sspfirm.com
 9                      Bes@sspfirm.com

10

                On behalf of the Defendants and the Deponent:
11
                Michael L. Cioffi, Esq.
12                      and
                Collin D. Hart, Esq.
13                      of
                Blank Rome LLP
14              1700 PNC Center
                201 East Fifth Street
15              Cincinnati, Ohio  45202
                Phone:  (513) 362-8700
16              Email:  Michael.cioffi@blankrome.com
                        Collin.hart@blankrome.com
17

18              Also Present:

19              Philip R. McHugh
                Phenise Poole, Esq., Fifth Third Bancorp
20              Brian Thomas, Esq., Fifth Third Bancorp

21
                                   - - -
22

23

24

25
```

```
 1                        I N D E X

 2

 3   EILEEN A. MALLESCH                              PAGE

 4       Examination by Mr. Saba                        5
         Examination by Mr. Cioffi                      96
 5       Further Examination by Mr. Saba               103

 6

 7   EXHIBITS                    MARKED     REFERENCED

 8       Deposition Exhibit 1       10          10

 9       Deposition Exhibit 2       47          47

10       Deposition Exhibit 3       54          54

11       Deposition Exhibit 4       55          55

12       Deposition Exhibit 5       73          73

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Deposition of Eileen A. Mallesch                                                                  Philip R. McHugh v. Fifth Third Bancorp, et al.

Page 4

1    THE VIDEOGRAPHER: We're on
2 videotape record. Today is Wednesday, July
3 the 10th, 2024. The time is 9:53 a.m. We're
4 here today to take the deposition of Eileen
5 A. Mallesch in the case styled Philip R.
6 McHugh versus Fifth Third Bancorp, et al.,
7 United States District Court, Southern
8 District of Ohio, Western Division, Case No.
9 1:21-cv-00238.
10    Would the attorneys now introduce
11 themselves and say who you represent?
12    MR. SABA: Peter Saba for the
13 Plaintiff, Philip R. McHugh.
14    MR. SMITH: Joshua Smith for the
15 Plaintiff, Phil R. McHugh.
16    MR. CIOFFI: Michael Cioffi and
17 Collin Hart of Blank Rome on behalf of the
18 Defendants. We also represent Eileen
19 Mallesch, the witness, personally pursuant to
20 a joint representation agreement. Also
21 representing the Defendants are Brian Thomas
22 and Phenise Poole.
23    THE VIDEOGRAPHER: Would the court
24 reporter please swear in the witness?
25

Page 5

1    EILEEN A. MALLESCH
2 of lawful age, a witness herein, being first duly
3 sworn as hereinafter certified, was examined and
4 deposed as follows:
5    EXAMINATION
6 BY MR. SABA:
7    Q    Ms. Mallesch, can you go ahead and
8 state your name for the record, please, and spell your
9 last name?
10    A    **Eileen Ann Mallesch,**
11 **M-a-l-l-e-s-c-h.**
12    Q    Have you ever had your deposition
13 taken before?
14    A    **No.**
15    MR. CIOFFI: Hey, Counsel, one --
16 one more thing for the record before you get
17 into your questioning. It's my understanding
18 that this is being broadcast simultaneously
19 on Zoom; is that correct?
20    MR. SABA: That's my understanding.
21    MR. CIOFFI: And who is watching
22 it?
23    MR. SABA: Just Bailey A. Warden
24 from our office.
25    MR. CIOFFI: If she's the only one

Page 6

1 then she's within -- she's -- she's a lawyer,
2 paralegal, in your office?
3    MR. SABA: Lawyer in my office,
4 correct.
5    MR. CIOFFI: Okay. So as you know
6 there is some confidential information you
7 may or may not use. I just want to make sure
8 no one else who's not within that privilege
9 will not see or listen to those questions,
10 No. 1. No. 2, is it my understanding -- is
11 my understanding correct that this is also
12 being recorded somehow on Zoom?
13    MR. SABA: That I don't know.
14    MR. CIOFFI: Is the -- Do you know?
15    THE VIDEOGRAPHER: From what I
16 understand.
17    THE REPORTER: I didn't know it was
18 and I tried to get ahold of Wendy and I'm not
19 able to, but she's the host so I can't cancel
20 it, the recording.
21    MR. CIOFFI: I just want to make
22 the record clear that there's only one
23 official video of this and it's by this
24 particular videographer and we'll ask you to
25 deliver your video to us, and in this day and

Page 7

1 age as you know, you know, video media can be
2 manipulated so we want to make sure that this
3 is -- everyone agrees that this is the
4 official video of the deposition?
5    MR. SABA: We agree.
6    MR. CIOFFI: All right. Thank you.
7 BY MR. SABA:
8    Q    Ms. Mallesch, I am going to be
9 asking you a series of questions today. If there's
10 anything you don't hear or don't understand please
11 feel free to ask me to repeat or rephrase the
12 question. For the sake of the court reporter,
13 notwithstanding that this is being taken via video, I
14 do need you to answer verbally, no shaking or nodding
15 of the head or unh-unhs or uh-huhs. It's difficult to
16 take that down for the record.
17    A    **I understand.**
18    Q    Additionally if you could wait for
19 me to finish my question before you answer and I'll
20 try and do the same before I ask another question and
21 it also makes for a clearer record. Do you understand
22 all those instructions?
23    A    **I do.**
24    Q    Can you go ahead and give me your
25 address, please?

Deposition of Eileen A. Mallesch                                      Philip R. McHugh v. Fifth Third Bancorp, et al.

Page 8

1    A        1217 Sanctuary Place, Gahanna,
2  Ohio, 43230.
3    Q        How long have you lived there?
4    A        18 years.
5    Q        Who do you live there with?
6    A        My husband.
7    Q        How long have you been married?
8    A        23 years.
9    Q        What's the extent of your
10 education?
11   A        Bachelor's Degree -- Bachelor of
12 Science Degree in Accounting.
13   Q        When did you receive that?
14   A        1985.
15   Q        Where did you receive that from?
16   A        City University of New York,
17 Herbert H. Lehman College.
18   Q        The litigation that brings us here
19 today have you discussed this litigation with any of
20 the other board members from Fifth Third Bank?
21   A        No.
22   Q        Have you discussed this litigation
23 with any of the employees of Fifth Third Bank?
24   A        No.
25   Q        Have you reviewed the video or

Page 9

1  transcript of Michael McCallister's deposition?
2            MR. CIOFFI:  Objection.  Whatever
3        this witness has viewed she viewed at my
4        request as her counsel.  It, therefore,
5        reflects my attorney-client judgment as to
6        what she should or should not review and is
7        privileged, so I'm going to instruct her not
8        to answer that.  I'll allow her to answer if
9        she's -- she's reviewed any material other
10       than the material I directed her to review.
11 BY MR. SABA:
12   Q        Other than Mr. Cioffi's instruction
13 to review Mr. McCallister's video or transcript have
14 you -- have you reviewed Mr. McCallister's video or
15 transcript?
16           MR. CIOFFI:  Just so the record's
17       clear I didn't say I directed her to review
18       that transcript.  I did instruct her to
19       review a lot of material and again all of
20       that's protected by the attorney-client
21       privilege.
22 BY MR. SABA:
23   Q        Have you reviewed or -- the video
24 or read the transcript of Gary Heminger's deposition?
25           MR. CIOFFI:  Same objection.

Page 10

1        Instruct her not to answer.
2  BY MR. SABA:
3    Q        Have you reviewed the video or
4  transcript of Marsha Williams' deposition?
5            MR. CIOFFI:  Same objection.
6        Instruct her not to answer.
7  BY MR. SABA:
8    Q        Have you reviewed the video or
9  transcript of Nicholas Akins' deposition?
10           MR. CIOFFI:  Same objection.
11       Instruct her not to answer.
12 BY MR. SABA:
13   Q        Have you reviewed the video or
14 transcript of Greg Carmichael's deposition?
15           MR. CIOFFI:  Same objection.
16       Instruct her not to answer.
17 BY MR. SABA:
18   Q        Was there any testimony in
19 Mr. McCallister's deposition that you disagree with?
20           MR. CIOFFI:  Same objection.
21       Instruct her not to answer.
22           (Deposition Exhibit 1 was marked
23           for identification.)
24 BY MR. SABA:
25   Q        Ms. Mallesch, I'm handing you

Page 11

1  what's been marked as Exhibit No. 1 which is the
2  Amended Notice for your deposition today and a
3  Request For Production Of Documents.  Have you ever
4  seen Exhibit 1 before?
5    A        Yes.
6    Q        Do you have any documents with you
7  today?
8    A        No.
9            MR. CIOFFI:  Counsel, I'll say on
10       the record as I have in other depositions
11       when you have asked this question and showed
12       a similar Notice that to the extent these
13       documents exist and are within the custody
14       and control of Fifth Third they have been
15       produced.  You may continue.
16 BY MR. SABA:
17   Q        Ms. Mallesch, I am going to refer
18 you to Page 6 of Exhibit No. 1 --
19   A        Yes.
20   Q        -- and in the middle of the page
21 No. 14 there's a definition for the words
22 "Communications" or "Communicate" -- Do you see that?
23   A        I do.
24   Q        And that reads, "The words
25 'Communications' or 'Communicate' mean any

Deposition of Eileen A. Mallesch                                    Philip R. McHugh v. Fifth Third Bancorp, et al.

Page 12

1  correspondence, disclosure, transfer or exchange of
2  information, whether oral or written, and whether in
3  person, by telephone, mail, email, telecopy, text
4  message, or other 'Document' form, including but not
5  limited to discussions, statements, negotiations,
6  inquiries, requests, notices, responses, or demands"
7  -- Do you see that?
8      A      I do.
9      Q      Do you understand that definition?
10     A      I do.
11     Q      The first request asked for,
12  "Communications between You and any other Director or
13  Officer of Fifth Third which refers to, mentions, or
14  otherwise relates to:  Succession planning for the
15  position of President and/or CEO of Fifth Third Bank."
16  Do you have any documents responsive to that request?
17     A      No.
18     Q      1(b) asks for, "Communications
19  identified and/or selected candidates for the position
20  of President and/or CEO of Fifth Third."  Do you have
21  any documents responsive to that request?
22     A      No.
23     Q      1(c) asks for, "Processes or
24  timelines, whether proposed or final, with respect to
25  the identification and/or selection of candidates for

Page 13

1  the position of President and/or CEO of Fifth Third
2  Bank."  Do you have any documents responsive to that
3  request?
4      A      No.
5      Q      1(d) requests, "Development of
6  potential candidates for the position of President
7  and/or CEO of Fifth Third."  Do you have any documents
8  responsive to that request?
9      A      No.
10     Q      1(e) asks for, "Any facts upon
11  which you or any other Director relied upon when
12  identifying and/or selecting candidates for the
13  position of President and/or CEO of Fifth Third Bank."
14  Do you have any documents responsive to that request?
15     A      No.
16     Q      1(f) asks for with respect to Phil
17  McHugh in terms of communications between you and any
18  board members.  Do you have any documents responsive
19  to that request?
20     A      No.
21     Q      1(g) asks for communications
22  between you and any other board member regarding
23  Timothy Spence.  Do you have any documents responsive
24  to that request?
25     A      No.

Page 14

1      Q      No. 2 asks for, "Any Communications
2  between You and Philip McHugh."  Do you have any
3  documents responsive to that request?
4      A      No.
5      Q      Request 3 asks for, "Any
6  Communication between You and Tim Spence."  Do you
7  have any documents responsive to that request?
8      A      No.
9      Q      No. 4 asks for, "All Documents
10  created, received, or obtained by You which refer,
11  mention, or otherwise relate to," and under 4(a) it
12  says, "Succession planning for the position of
13  President and/or CEO of Fifth Third."  Do you have any
14  documents responsive to that request?
15     A      No.
16     Q      4(b) asks for, "Identified and/or
17  selected candidates for the position of President
18  and/or CEO of Fifth Third."  Do you have any documents
19  responsive to that request?
20     A      No.
21     Q      4(c) asks for, "Processes or
22  timelines, whether proposed or final, with respect to
23  the identification and/or selection of candidates for
24  the position of President and/or CEO of Fifth Third."
25  Do you have any documents responded to that --

Page 15

1  responsive to that request?
2      A      No.
3      Q      1(d) -- Excuse me -- 4(d) asks for,
4  "Development of potential candidates for the position
5  of President and/or CEO of Fifth Third."  Do you have
6  any documents pursuant to that request?
7      A      No.
8      Q      4(e) asks for, "Any facts upon
9  which You or any other Director relied upon when
10  identifying and/or selecting candidates for the
11  position of President and/or CEO of Fifth Third."  Do
12  you have any documents responsive to 4(e)?
13     A      No.
14     Q      4(f) refers to Philip McHugh.  Do
15  you have any documents responsive to 4(f)?
16     A      No.
17     Q      And 4(g) asks for Timothy Spence.
18  Do you have any documents responsive to 4(g)?
19     A      No.
20     Q      Are you currently employed?
21     A      No.  I'm retired.
22     Q      Where did you last work?
23     A      Nationwide Insurance.
24     Q      When did you last work for
25  Nationwide Insurance?

Deposition of Eileen A. Mallesch                                                Philip R. McHugh v. Fifth Third Bancorp, et al.

Page 16

1    A    Retired the end of 20 -- 2009 to
2    effective first day of 2010.
3    Q    What was the last position you held
4    with Nationwide Insurance?
5    A    Chief Financial Officer of the
6    Property/Casualty Insurance Segment.
7    Q    Have you ever been the President or
8    CEO of a publicly traded company?
9    A    No.
10   Q    Do you sit on any boards currently?
11   A    I do.
12   Q    Which boards do you currently sit
13   on?
14   A    Sit on Brighthouse Financial and I
15   sit on Arch Capital Group, both public companies, in
16   addition to Fifth Third, of course.
17   Q    How long have you been on the board
18   of Brighthouse Financial?
19   A    Since 20 -- let's see, 2018.
20   Q    How long have you been on the board
21   of Arch Capital Group?
22   A    Since 2021.
23   Q    When did you first join the board
24   of Fifth Third?
25   A    2016, September.

Page 17

1    Q    Between September of 2016 and
2    October of 2020 did you sit on any other boards that
3    you have not identified today?
4    A    Yes.
5    Q    Upon which boards did you sit?
6    A    I was sitting on Bob Evans Farms.
7    Q    When were you on the Bob Evans'
8    board?
9    A    I joined that board in 2008 and
10   based off of an M&A transaction stepped off in 2018.
11   It was 10 years.
12   Q    Any other boards?
13   A    Yes, State Auto Financial.
14   Q    And when were you a board member of
15   State Auto Financial?
16   A    Starting 2010 and stepped off that
17   board in 2021.
18   Q    Any others?
19   A    Libbey Glass.
20   Q    When were you a board member of
21   Libbey Glass?
22   A    That was 2016 until 2020 when COVID
23   hit the -- that sector and was restructured.
24   Q    Any other boards?
25   A    No, other than nonprofit boards,

Page 18

1    Columbus College of Art & Design.  I was previously on
2    that board as well and other nonprofits throughout my
3    career.
4    Q    When were you on the board of
5    Columbus College of Art & Design?
6    A    I believe that started in 2010 or
7    '11 and I stepped off that when I was -- other boards
8    were conflicting with it around 2019-ish.
9    Q    Any other nonprofit boards that you
10   served on during the time period of September of 2016
11   through October, 2020?
12   A    No.
13   Q    Who first contacted you about
14   joining the board at Fifth Third?
15   A    A recruiting firm connected with me
16   and then it was Marsha Williams and Greg Carmichael as
17   board members of Fifth Third.
18   Q    When were you first contacted about
19   joining the board of Fifth Third?
20   A    Oh, let's see now, if I joined in
21   '16 -- It was beginning of -- beginning of '16.  It
22   took a few months to go through the process, so
23   probably mid '16 sometime.
24   Q    What do you mean by it took a few
25   months to go through the process?

Page 19

1    A    The most humbling thing of when you
2    transition your career to serving on public boards is
3    it's not -- it doesn't move as quickly as when you're
4    on the management side of the table.  It typically
5    takes a long process because of the importance of the
6    role of a public board member that they want to ensure
7    that no matter what your background as you will add
8    value on the two most important roles of a board of
9    director which is CEO succession as well as oversight
10   of the strategy.
11   Q    And what specifically was done to
12   make sure that you could add to the processes of CEO
13   succession and oversight of the strategy?
14   A    Well, as a public company CFO you
15   partner deeply with the CEO and it's always about the
16   strategy and over a course of my CFO roles, prior ones
17   as well with GE and Genworth as a CFO, I had strategy
18   as oversight as I did at Nationwide Insurance.  I was
19   the one that developed a strategy leader for the
20   Property/Casualty Team there and hired in an
21   individual from Mackenzie to be the strategy leader,
22   not unlike what Greg Carmichael did in bringing
23   Tim Spence in from Oliver Wyman.
24   Q    What specifically was done to
25   determine that you were in line or added value with

Deposition of Eileen A. Mallesch          Philip R. McHugh v. Fifth Third Bancorp, et al.

Page 20

1  respect to CEO succession and oversight strategy at
2  Fifth Third?
3        A      It's just part of your business
4  judgment and your experience and where you're bringing
5  your wisdom from your years of experience.
6        Q      Is there an onboarding process for
7  individuals that become members of the board at
8  Fifth Third Bank?
9        A      Great question.  In fact, every one
10 of the boards that I just referenced I'm a
11 National Association of Corporate Directors member and
12 they are continually doing training and discussions
13 around all the roles of a board member, so
14 Fifth Third, for example, provides that membership
15 with National Association of Corporate Directors.  I
16 go annually to their global summit where I sit with a
17 non-governance, for example, our Audit Committee as an
18 Audit Committee Chair for one of the most current
19 trends, so you are constantly getting continual
20 education similar to what I do as a CPA in getting
21 continuing professional education credits there as
22 well.
23       Q      My question specifically what does
24 Fifth Third Bank do with respect to onboarding its new
25 board members?

Page 21

1        A      Oh, well, you're onboarding as well
2  as equally robust in how you meet with each of the
3  leaders and you are taken through the business and
4  then you are equally onboard for the regulatory
5  element of Fifth Third which is quite significant as
6  you know in the banking sector, and all that plays
7  into how you want to evaluate CEO succession too.
8        Q      And so you said you meet with each
9  of the leaders?
10       A      Yes.
11       Q      Which leaders?  Who are you
12 referring to?
13       A      Anyone that's in the Enterprise
14 Committee at that time because that moves depending on
15 the point in time you're asking the question.  Back in
16 2016 you would have to look up who were the Enterprise
17 Committee leaders at that point in time.
18       Q      And what is the nature of that
19 meeting that you had with Enterprise Committee
20 members?
21       A      You're starting your most important
22 role as a public company director and gaining an
23 understanding of the strengths and capabilities of
24 each of the leaders, so you're seeing how well they
25 can articulate their business, what's their strategy,

Page 22

1  so it's not just learning about the business which
2  they're helping the new director understand
3  Fifth Third.  You're starting to build your -- your
4  foundation as a public company director in assessing
5  the talent and capability of each leader.
6        Q      How many different Enterprise
7  Committee members did you meet with?
8        A      I cannot recall right now to be
9  honest with you.  I don't remember off the top of my
10 head.  But it's typically each of the functions,
11 operational, finance, risk, legal.  You're meeting
12 with each of the key functions and operational
13 leaders.
14       Q      When did those meetings take
15 place?
16       A      It's -- It occurs initially over a
17 couple of days.  You're brought into Fifth Third to
18 just meet with folks to kick off the orientation and
19 then based on each person's background -- Like for
20 myself I -- by being a finance executive I will spend
21 extra time with the finance leaders as well as with
22 the risk leaders just to ensure I'm understanding the
23 uniqueness of the business as I'm evaluating the
24 financial performance.
25       Q      Do you recall who you specifically

Page 23

1  met with with respect to the financial time --
2  financial side?
3        A      No.
4        MR. CIOFFI:  Objection, asked and
5       answered, but --
6  BY MR. CIOFFI:
7        Q      What about with respect to the risk
8  side, who did you meet with?
9        MR. CIOFFI:  Same objection.  You
10      may answer if you can.
11       A      Yeah, that was Frank Forrest at the
12 time, so I do remember him.
13       Q      And how much time did you spend
14 meeting with Mr. Forrest?
15       A      Well, again at least an hour, a
16 couple of hours, with each person.
17       Q      When you say a couple hours how
18 many hours is that?
19       A      Anywhere from an hour to two hours.
20       Q      Did you meet with Phil McHugh?
21       A      I don't recall.
22       Q      Did you meet with Tim Spence?
23       A      Yes.
24       Q      Who determined who you would meet
25 with?

Deposition of Eileen A. Mallesch                                    Philip R. McHugh v. Fifth Third Bancorp, et al.

Page 24

1      A      Legal team as part of where they
2  administratively oversee onboarding new directors.
3      Q      How much time did you spend meeting
4  with Mr. Spence?
5      A      I think it was about an hour.
6      Q      Did you keep notes from that
7  meeting?
8      A      No.  They provide the materials and
9  it's really asking questions off the materials
10  provided to help onboard you.
11      Q      What were the nature of the
12  materials that they provided you?
13      A      I am not going to recall all the
14  details in each of the materials, but it follows that
15  Tim Spence would be strategy, Frank Forrest would be
16  risk, legal would be governance and regulation, so I
17  don't recall the exact specifics.
18      Q      If you first came on in September
19  of 2016 how long after were these meetings that you
20  would have had with different representatives of the
21  Enterprise Committee?
22      A      Can you repeat that question?
23      Q      Yes.  If -- Relative to your start
24  date as a board member in September of 2016 when would
25  these meetings have taken place?

Page 25

1      A      I think I already answered that,
2  but it would be within -- before the first board
3  meeting you're already meeting with folks as soon as
4  you're brought on board, so it's within a month or two
5  of you're sworn in as a board member.
6      Q      Okay.  The first board meeting that
7  there's a record of you attending is in September
8  of --
9      A      Yes.
10      Q      -- 2016.  Do you recall if those
11  meetings were prior to that board meeting?
12      A      Yes.
13      Q      As you sit here today do you recall
14  how long prior to that board meeting that these
15  meetings took place?
16      A      It was around that board meeting.
17      Q      Other than meeting with some of the
18  members of the Enterprise Committee what else was
19  involved in the onboarding process for you to become a
20  board member of Fifth Third?
21      A      That's it.
22      Q      As you sit here today other than
23  Mr. Spence and Frank Forrest do you recall the names
24  of any other enterprise board members --
25      A      I do.

Page 26

1      Q      -- that you met with?
2      A      Tayfun, the CFO, Mark Hazel, the
3  Controller at the time.  I'm horrible with names
4  because the person's gone, so whomever was meeting
5  legal because they were going through a lot of
6  transition at that point.  And then the operation
7  folks because I'm bad with names I would have to look
8  at an enterprise chart to share with you at that point
9  in time who else I met with.
10      Q      As a board member of Fifth Third
11  what was your understanding of your role with respect
12  to President and CEO succession?
13      A      I -- Can you just phrase that
14  question one more time, please?
15      Q      Sure.  As a board member of
16  Fifth Third what was your understanding of your role
17  with respect to President and CEO succession?
18      A      So in order to properly respond to
19  that by virtue of all the public company boards I
20  listed that I serve on you should know that I have
21  served on CEO transition of five out of those six
22  boards, and I do not think of one particular company's
23  basis for how I think of CEO succession.  I view it as
24  the most critical role of a board director is CEO
25  succession and the strategic oversight, so it's truly

Page 27

1  assessing, just always assessing in every interaction
2  I have with each of the leaders.  To your good point
3  on starting on Day 1 when it's onboarding, that's like
4  I'm starting to assess the capabilities of each leader
5  so I can provide credible challenge back to management
6  as management is asking questions and have a view of
7  who might be potential CEO successors, so it's not
8  unique to Fifth Third.  I'd have that process with
9  every public company board I serve on.
10      Q      And specific to Fifth Third you
11  referred to with respect to your interaction with each
12  of the leaders you're assessing whether or not they
13  have the capabilities --
14      A      Correct.
15      Q      -- to be a President and CEO?
16              With respect to Fifth Third in
17  particular who are the leaders you're referring to?
18      A      When I come in as a new board
19  member it can be any leader and I do not bias which
20  leader it would be.  It's based off of the
21  interactions and observing the capabilities of each of
22  the leaders.
23      Q      Is Phil McHugh included in the
24  description of the leaders that you would be assessing
25  with respect to having the capabilities to be a CEO or

Deposition of Eileen A. Mallesch                                    Philip R. McHugh v. Fifth Third Bancorp, et al.

Page 28

1  President of Fifth Third Bank?
2       A       He was.
3       Q       And when did that assessment
4  process begin?
5       A       Again Day 1 and whenever I started
6  to interact so -- because I couldn't remember what
7  operation leaders would be there -- whenever I saw
8  Phil at a board meeting or interacted with him at a
9  board dinner.
10      Q       Other than interactions at a board
11 meeting or board dinner what other interactions did
12 you have with Phil McHugh in order to assess him for
13 the roles of President and/or CEO of Fifth Third Bank?
14      A       I would just get in a cocktail hour
15 in between -- between the board meeting and the board
16 dinner.
17      Q       Anything else?
18      A       No.
19      Q       Did you ever observe Phil McHugh in
20 the workplace?
21      A       I'm not understanding your
22 question.
23      Q       Did you ever observe Phil McHugh at
24 work at Fifth Third Bank?
25      A       No, other than a board meeting

Page 29

1  which is work.
2       Q       Outside of the board meeting?
3       A       No.
4       Q       Did -- Do you have a recollection
5  of what Phil McHugh's role was when you came on in
6  September of 2016?
7       A       Retail Consumer Bank, something
8  along those lines, because the segments had been
9  realigned so you'll have to forgive me if I can't
10 recall the exact title. We now just have three
11 segments for commercial, consumer, and retail banking
12 and WAM, and those are the ones I focus on as I'm
13 reviewing current financials, so something within the
14 consumer -- and he had WAM too as an element.
15      Q       Did you ever meet with or interview
16 any of Phil McHugh's direct reports?
17      A       No.
18      Q       Did you ever participate in or
19 perform any of Phil McHugh's annual reviews or
20 mid-year reviews?
21      A       No.
22      Q       Did you review any of the
23 documentation from Phil McHugh's annual reviews?
24      A       Expand your question to make sure
25 I'm answering. Are you referencing what we do

Page 30

1  annually as a board looking at each of the executives'
2  performance as prepared by the CEO? Is that what
3  you're referencing?
4       A       I am specifically asking for did
5  you review any of the documentation that were from the
6  annual reviews that were done by Phil McHugh from his
7  immediate supervisor?
8       A       No, unless you're referencing what
9  we look at as succession planning.
10      Q       Okay. You're -- You're referring
11 to something called the talent deck?
12      A       Yes.
13      Q       Have you ever heard that phrase?
14      A       Yes.
15      Q       Is that correct?
16              All right. And just to be clear
17 that -- the talent deck is something the board would
18 review at December meetings --
19      A       Correct.
20      Q       -- each year; is that right?
21              Okay. And so the talent deck would
22 be a document that you would review as part of your
23 assessment of an individual to be a President or CEO
24 at Fifth Third Bank; is that right?
25      A       No.

Page 31

1       Q       That would not be?
2       A       No.
3       Q       What would you use the talent deck
4  for?
5       A       I would look at the talent deck
6  even in my assessment of the existing CEO's
7  capabilities of how you're evaluating talent because
8  that's the opinion of management when I review that.
9  I immediately look at it to see if it's lining up to
10 how I'm thinking about the individual and then during
11 the discussion I provide credible challenge to ask
12 where I don't agree necessarily with what's on the
13 page and that's again part of the role of a board of
14 director.
15      Q       Did you ever review any of
16 Phil McHugh's employee engagement surveys?
17      A       No.
18      Q       Did you ever review any of
19 Phil McHugh's customer experience surveys?
20      A       No.
21      Q       Did you ever review the financial
22 performance relative to the goals for Phil McHugh's
23 divisions?
24      A       Yes.
25      Q       And when did you review those?

Deposition of Eileen A. Mallesch        Philip R. McHugh v. Fifth Third Bancorp, et al.

Page 32

1    A    When he presents them at the board
2 meetings.
3    Q    Okay.  And what -- what
4 specifically was presented at the board meetings?
5    A    He presented a summary of his line
6 of business operations.
7    Q    Okay.  And what is your
8 recollection of what he provided?
9    A    Performance of his area at that
10 point in time.
11    Q    And was there anything that you
12 were critical of with respect to the financial
13 performance of the areas that were managed by
14 Phil McHugh?
15    A    I was in listen mode only.  When
16 you talk in executive session is when we talk about
17 how we felt certain leaders performed during their
18 presentation.
19    Q    With respect to the financial
20 performance of the divisions managed by Phil McHugh
21 were there any criticisms of the financial performance
22 of the divisions managed by Phil McHugh?
23    A    No, because again I am audit chair
24 and I look at the financial statements for the
25 segments.  He's reflecting only a management report

Page 33

1 that does not necessarily tie to the financial
2 statements, so that's a limited view of the total
3 financial story of Fifth Third Bank, so I'm just
4 gaining a better understanding so I can ask questions
5 when I see the total rollup if it's consistent to what
6 Phil may have said in a board meeting to how the
7 finance team is reflecting the financial result in a
8 10-Q or a 10-K.
9    Q    Other than a more global view that
10 you're taking with respect to what the financial
11 rollup is --
12    A    Uh-huh.
13    Q    -- are you assessing any candidates
14 based on their specific divisions of the bank and the
15 financial performance of those divisions?
16    A    Always.
17    Q    And what are you using to do that?
18    A    In part their presentation at a
19 board meeting and then all of their capabilities
20 associated with communicating what's performing at the
21 -- at their particular line of business so their
22 communication skills in addition to what they're
23 showing as the results.
24    Q    And your only observation or
25 communication skills is what you indicated before --

Page 34

1 It's either at a board meeting where they may have
2 presented, at a dinner that they may have attended, or
3 at a cocktail party in between the dinner and a board
4 meeting --
5    A    Correct.
6    Q    -- is that right?
7         Do you recall specifically how many
8 times you observed Phil McHugh at a board meeting?
9    A    I don't believe he presented at
10 every single meeting, so you would have to shave off a
11 couple, but if you just do 5 meetings a year times 4
12 from the '16 to '19 point we're talking here or mid
13 '20, 2020, I mean they can just do the math on that,
14 and that's how many times I interacted with Phil as a
15 board member observing his presentation.
16    Q    Okay.  So -- And that's if he would
17 have attended every meeting?
18    A    If he was at every meeting because
19 sometimes he was not there.
20    Q    Correct.  So it would be a maximum
21 of 20 interactions --
22    A    Yes.
23    Q    -- over a four-year period --
24    A    Yeah.
25    Q    -- is that correct?

Page 35

1    A    Yes.
2    Q    Did you ever make a determination
3 that Phil McHugh was not a suitable candidate for
4 either President or CEO at Fifth Third Bank?
5    A    I never saw him as a candidate for
6 CEO succession at a certain point during my time
7 interacting with Phil.
8    Q    And at what point in time did you
9 determine that he was not a candidate for President or
10 CEO of Fifth Third Bank?
11    A    The better way to -- to -- for me
12 to answer that is that I just stopped putting my
13 energy and focus on the person who's exhibiting the
14 highest potential, and so let me just pause and give
15 you a full quadrant view of how I think about this.
16 I'm always looking at every leader as having either
17 oversight, hindsight, foresight, or insight.
18 Oversight and hindsight is a traditional leader who
19 nuts and bolts very valuable for the organization but
20 not strategic.  I look at a strategic leader with over
21 -- with insight and foresight.
22         Phil is a traditional banker with
23 deep Fifth Third internal knowledge for many years,
24 but in any of the board presentations I observed he
25 did not exhibit any strategic perspective.  He really

Deposition of Eileen A. Mallesch                                    Philip R. McHugh v. Fifth Third Bancorp, et al.

Page 36

1   just was giving -- reading off the slide, telling us
2   what occurred in the business, not really giving us
3   insight as to what is it that he was seeing based off
4   of what's occurred, and it -- really we're all assumed
5   to have read the slide so he needs to come in and
6   really just make it a dialogue and give us some color
7   to help bring that page alive even further than we --
8   what we read on data on a pre-read of what is a
9   performance review effectively.
10      Q       So with respect to that did you
11  make that determination after the first presentation
12  made by Phil McHugh?
13      A       No.  I always give someone for
14  additional opportunity because you have a bad day.  It
15  was just his personal style.
16      Q       Okay.  And how many -- how many
17  opportunities did you give Phil McHugh before you
18  determined that he was not a suitable candidate for
19  President or CEO of Fifth Third Bank?
20      A       I would say of the 20 that --
21  number that you estimated I was about around 10 I was
22  already making that decision.
23      Q       And that's assuming you had 10
24  interactions with him over that time period; is that
25  correct?

Page 37

1       A       Yes.
2       Q       Ms. Mallesch, how many board
3   meetings did you attend in 2016?
4       A       Well, in 2016 I would have just
5   joined that board so that's September and then we
6   would have had a December meeting, so really it was
7   only a partial year.
8       Q       And do you recall if you had any
9   interactions with Phil McHugh during those?
10      A       I -- Frankly it's a blur when
11  you're starting to meet people for the first time, so
12  I do not remember.
13      Q       And with respect to the meetings
14  where Phil McHugh was in attendance did you interact
15  with him at each of those meetings?
16      A       Not an interaction.  He would come
17  in and folks would say "hello" to each other, but that
18  would be it.
19      Q       So at these meetings you wouldn't
20  necessarily be having a conversation with him at
21  dinner or at the cocktail party; is that correct?
22      A       I only recall one dinner where we
23  sat next to each other and really talked at length.
24      Q       When was that dinner?
25      A       One of the last dinners Phil was

Page 38

1   there quite frankly.  It was either in late '19 or mid
2   2020.  I don't remember which one.
3       Q       By that point in time had you
4   already determined that Phil McHugh was not a suitable
5   candidate to be the next President and CEO of
6   Fifth Third Bank?
7       A       Yes, because we were already well
8   down the path of watching Tim Spence develop as the
9   future CEO.
10      Q       You said you were already well down
11  the path of watching Tim Spence becoming next
12  President and CEO of Fifth Third Bank.  When did that
13  path begin?
14          MR. CIOFFI:  Objection to the form
15      of the question.  It misstates her prior
16      testimony.  If you can answer you may answer.
17      A       Repeat the question.
18      Q       Sure.  You indicated that, "We were
19  already well down the path of determining that Fifth
20  -- that Tim Spence would be the next President and CEO
21  of Fifth Third Bank."  My focus is really on your
22  reference to the path with respect to Tim Spence.
23  When did that path begin?
24          MR. CIOFFI:  It's the same
25      objection.

Page 39

1       A       Again my path is what I shared with
2   you, so if we did 20 meetings and I said into No. 10 I
3   didn't see Phil as a CEO successor the logical
4   follow-through is that I was seeing another internal
5   candidate, so I was already watching.  This would be
6   where we're in executive session as a board and I
7   would say, "I cannot believe how Tim Spence can just
8   answer these questions off the cuff, gives us insight
9   on the strategy.  How are we making sure we're
10  developing this guy and we're preserving him?"
11          That's the type of well on your
12  path example that was occurring.  There was nothing in
13  writing.  It was executive session discussions.
14  Because again if as a director our most important role
15  is ensuring we have CEO succession it's critical we're
16  talking about this as part of every one of our
17  executive sessions as a way to recap the meeting, who
18  did we see perform well, who did we see that, gosh,
19  what -- how are you coaching this individual, I need
20  more help.  There's -- The one thing I will say that
21  was always frustrating with a number of the leaders at
22  Fifth Third is we'd say in executive session, "Please
23  coach them not to read off their slides.  They know
24  their business.  Help us see what they know and get us
25  more comfortable with their capabilities."

Deposition of Eileen A. Mallesch                                    Philip R. McHugh v. Fifth Third Bancorp, et al.

Page 40

1    And quite frankly Phil fell in that
2  camp of where we were asking for, "Give him feedback.
3  Don't just read off the slide.  Help us better
4  understand where your insights are about the
5  business."
6    Q      With respect to Tim Spence when did
7  those executive sessions occur during which it was
8  commented that, "Tim Spence, we need to develop this
9  guy to be the next President and CEO"?
10   A      Quite frankly from my entire time
11 at Fifth Third we were always just so impressed with
12 him that I was even surprised to hear how being a
13 brand new board member that he was already being
14 referenced as a potential long-term -- Remember this
15 is 2016 -- as having years to develop that I said, "I
16 got to pay attention here," because, yeah, it -- it
17 was impressive to hear so many board members speak so
18 highly about a particular leader, and Greg was equally
19 a proponent of saying, "Tim was a quick study, always
20 seeking feedback, wanted to grow and learn."  That's
21 how -- and he would even caution, "We just got to help
22 develop him."
23   Q      By Greg you're referring to
24 Greg Carmichael; is that right?
25   A      Yes.

Page 41

1    Q      What was the nature of your
2  relationship with Greg Carmichael?
3    A      Professional.
4    Q      How often did you communicate with
5  Greg Carmichael during the period of September, 2016,
6  through October of 2020?
7    A      Infrequently until it was April of
8  2020 because then I was asked to be the audit chair
9  and it was COVID and there was a lot going on, but it
10 was entirely related around the pay -- paycheck
11 protection plan and all of the efforts that were going
12 on across Fifth Third because, of course, there were a
13 lot of concerns that we were doing it right and
14 ensuring we weren't making mistakes and how that
15 translated into internal control, so prior to April of
16 2020 very rarely because I was not in a leadership
17 role outside of the board meetings or a board dinner
18 or a cocktail hour.
19   Q      Okay.  So just so I understand your
20 answer outside of a board meeting, board dinner, or
21 cocktail hour you didn't have much conversation or
22 communications with Mr. Carmichael until April of
23 2020; correct?
24   A      Correct.
25   Q      During your time period on the

Page 42

1  board between September of 2016 and October of 2020
2  who ran the board meetings?
3    A      Well, in 2016 Marsha Williams would
4  have been the chairperson at that point in time.  I'm
5  failing to recall at what point we gave Greg
6  Carmichael the chairmanship, so it would be up until
7  that date, but she was still quite active in running
8  the board meetings as the lead independent director.
9    Q      Okay.  And after Greg Carmichael
10 took over as the chairman of the board he ran the
11 board meetings; is that correct?
12   A      Well, he -- the chairman --
13 chairman always kicks off the meeting and does that,
14 but still this is a very engaged active -- active
15 board.  It was more a formality than anything else by
16 Marsha's style and Greg's style.  This was a very
17 engaged board.  So why I am expanding on that is
18 because a good board is always providing credible
19 challenge, so just not letting a CEO who's now an
20 executive CEO chairman run the board because you have
21 to have that healthy skepticism to ensure you're
22 protecting all the shareholders.
23   Q      Who would determine the agenda for
24 the board meetings?
25   A      Oh, in the executive session we

Page 43

1  would say to Marsha as the lead director once Greg was
2  chair, "Please make sure this is included on the next
3  agenda," and there would be quite verbal as part of
4  our closing executive session in how she would give
5  him feedback.
6    Q      And who would determine the
7  documents that would be presented at a board meeting?
8    A      Oh, management is ultimately
9  replying to the best of their ability to any requests
10 from management.
11   Q      Who would determine who would --
12 who would present from management at the board
13 meetings?
14   A      I don't know because I'm not
15 chairman, so that might have been a discussion between
16 the chairman and the lead independent director.
17   Q      But you don't know one way or
18 another; is that right?
19   A      No.  That would not be part of what
20 I'm doing as a postmortem as a -- as an audit chair.
21   Q      You mentioned the one meeting you
22 had with Tim Spence when you were being onboarded?
23   A      Uh-huh.
24   Q      Did you have any other meetings
25 with Tim Spence outside board meetings, cocktail

Deposition of Eileen A. Mallesch          Philip R. McHugh v. Fifth Third Bancorp, et al.

Page 44

1   hours, and board dinners?

2       A     No.

3       Q     Did you ever meet with any of Tim

4   Spence's direct reports?

5       A     The only one is Ben -- What's Ben's

6   last name again? I'm trying to remember Ben's last

7   name.

8       Q     Are you referring to Ben Hoffman?

9       A     Ben Hoffman. Thank you.

10      Q     And when did you meet with Ben

11  Hoffman?

12      A     At a cocktail hour that was a skip

13  level so that's why to answer your question, but that

14  was still a cocktail hour.

15      Q     And did you specifically discuss

16  Tim Spence with Ben Hoffman?

17      A     No.

18      Q     Did you ever -- ever observe

19  Tim Spence in the workplace outside a board meeting,

20  cocktail hour, or board dinner?

21      A     No.

22      Q     Did you ever participate in or

23  perform any of Tim Spence's annual reviews or mid-year

24  reviews?

25      A     No.

Page 45

1       Q     Have you seen any of the

2   documentation from Tim Spence's annual reviews?

3       A     Other than what you referenced

4   earlier as the talent deck, no.

5       Q     Did you ever see Tim Spence's

6   employee engagement surveys?

7       A     No.

8       Q     Did you ever see Tim Spence's

9   customer experience surveys?

10      A     No.

11      Q     Did you ever see the individual

12  financial performance relative to goals for Tim

13  Spence's divisions?

14      A     Well, when he had line of business,

15  yes, but he was strategy initially so it was more

16  about executing on strategic initiatives that crossed

17  all of the lines of business, so the performance would

18  be KPIs to a strategic initiative and that would be

19  yes.

20      Q     You mentioned the Audit Committee;

21  correct?

22      A     Correct.

23      Q     That you were an audit chair

24  beginning in April of 2020; is that right?

25      A     Yes.

Page 46

1       Q     Upon which other committees did you

2   sit for Fifth Third Bank?

3       A     Human Capital & Compensation,

4   Risk & Compliance, and then once I became audit chair

5   for the Audit Committee you also serve on the

6   Finance Committee as that represents all chairs of all

7   other committees.

8       Q     With respect to being on the

9   Human Capital/Compensation Committee did you have any

10  involvement in determining the emergency successor

11  process for President/CEO at Fifth Third?

12      A     Other than observing management's

13  recommendation and being a committee member, no.

14      Q     Do you recall if the HCCC had a

15  responsibility for determining the emergency successor

16  process for President and CEO of Fifth Third Bank?

17      A     Rephrase that question, please.

18      Q     Sure. The Human Capital/

19  Compensation Committee, do you recall if they had a

20  responsibility for determining the emergency

21  successor process for President and CEO at Fifth Third

22  Bank?

23      A     Okay. So let me just provide some

24  context. If the board member's primary responsibility

25  is CEO succession, one of the two primary that I have

Page 47

1   referenced continually, the second being strategic

2   oversight, then the work, the heavy lifting, is done

3   in a committee. The Human Capital & Compensation

4   Committee in its governance and fiduciary role has the

5   oversight of ensuring there is a CEO succession, so

6   that committee is who pushes management to say, "We

7   need your perspective of who you think would be

8   interim CEO and any of several CEO Interim Emergency

9   Succession Plans," and based off of that we as a

10  committee review it and because that's a full board

11  responsibility it's why it's part of equally the

12  December discussion that occurs on the overall talent

13  review and we then speak in executive committee

14  amongst ourselves whether we agreed fully or not with

15  what management proposed.

16             (Deposition Exhibit 2 was marked

17             for identification.)

18  BY MR. SABA:

19      Q     Ms. Mallesch, I have handed you

20  what's been marked as Exhibit No. 2. I will represent

21  to you this document is Bates stamped, and by Bates

22  stamped I'm referring to the numbering in the bottom

23  right-hand corner --

24      A     Uh-huh.

25      Q     -- of the first page. The first

Deposition of Eileen A. Mallesch                                    Philip R. McHugh v. Fifth Third Bancorp, et al.

Page 48

1  page is Bates stamped FIFTHTHIRD-MCHUGH-006592 and the
2  last page should be Bates stamped
3  FIFTHTHIRD-MCHUGH-006604 -- Do you see that?
4      A    I do.
5      Q    Is that accurate for the document
6  that you have in front of you?
7      A    It is.
8      Q    Okay.  Are you able to identify the
9  first two pages of Exhibit No. 2 for me, please?
10     A    The first page it looks like an
11 email from Saema to it looks to me to be the committee
12 members at the time of Human Capital & Compensation,
13 yeah, an email.
14     Q    And your email's one of the emails
15 we see there, is that correct, on the first page,
16 emallesch@gmail.com; is that correct?
17     A    That's why I said it's the
18 Human Capital Committee members, Mike, myself, Nick,
19 Gary.
20     Q    And this is from September 11th,
21 2018; is that correct?
22     A    Correct.
23     Q    Okay.  And the email indicates,
24 "Attached please find the materials for the CEO
25 Emergency Succession Plan discussion"; is that

Page 49

1  correct?
2      A    Correct.
3      Q    And then can you identify for me
4  what we see marked as FIFTHTHIRD-MCHUGH-006594 through
5  the balance of Exhibit 2, FIFTHTHIRD-MCHUGH-006604?
6      A    It appears to be the various
7  scenarios I have referenced on what we do at our
8  oversight role of interim CEO succession on an
9  emergency basis and scenarios provided.
10     Q    Beginning with 006594 through
11 006597 the title page for those pages is
12 Communication Elements -- Do you see that?
13     A    I do.
14     Q    Can you explain to me what that
15 particular document is?
16     A    This is as its subsequent pages
17 reflect where we have to provide regulatory
18 notification on any of the scenarios and how many days
19 we have to do that.
20     Q    And by the scenarios you're
21 referring to the different scenarios where a CEO may
22 leave suddenly and have to be replaced; is that
23 correct?
24     A    And to be very explicit on your
25 Page 006597 the scenarios are provided, yes.

Page 50

1      Q    Thank you.
2           Beginning at 006598 through 006604
3  that portion is entitled "Human Capital & Compensation
4  Committee Executive Session 'Break The Glass' Toolkit"
5  dated September 17th, 2018 -- Do you see that?
6      A    Yes.
7      Q    Okay.  Can you explain to me
8  what -- what this document sets forth?
9      A    Again it's -- If you're a director
10 and you're looking at the Communication Elements that
11 were reflected in the prior pages of 006594 through
12 006597 now the next logical question a director wants
13 to see is, Okay.  How are you thinking that through?
14 What's your logic thread of what occurs, and that's
15 why management responded to our request by providing
16 those subsequent pages.
17     Q    And so these subsequent pages, do
18 these set forth the Emergency CEO Succession Process
19 at Fifth Third?
20     A    It's my understanding, yes.
21     Q    Take me through the process of how
22 this was adopted as the Emergency CEO Succession
23 Process of Fifth Third Bank in 2018?
24     A    It's right on the pages.
25     Q    No.  My question more goes to you.

Page 51

1  This was obviously presented to the Human Capital &
2  Compensation Committee in September, 2018; is that
3  correct?
4      A    Yes.
5      Q    And so what does the Human Capital/
6  Compensation Committee do?  They review this packet;
7  is that right?
8      A    Yes.
9      Q    All right.  And you would determine
10 if you agree with all the information set forth in the
11 packet; is that right?
12     A    We just review this and say,
13 "Management has a plan," and that's all we do is then
14 we go into private session and we discuss whether we
15 support fully how they're thinking of -- Like, for
16 example, why don't we go to 006603 on Scenario 2,
17 Potential Management Candidates, Tayfun and Frank
18 Forrest.
19     Q    Okay.
20     A    So we're just going to review and
21 say, "Does that make sense?"  It makes sense at that
22 point in time.
23     Q    Okay.  And so Human Capital &
24 Compensation Committee does that in executive session.
25 Is this then presented to the full board for review

Deposition of Eileen A. Mallesch                                                          Philip R. McHugh v. Fifth Third Bancorp, et al.

Page 52

1   and approval?
2        A        In December.
3        Q        Okay.  And did that happen?
4        A        The minutes would reflect if it
5   happened.
6        Q        As you sit here today do you recall
7   that?
8        A        I don't recall.
9        Q        Okay.
10       A        We'd have to go to the minutes.
11       Q        Okay.  You referred specifically to
12  the Potential Management Candidates we see on
13  FIFTHTHIRD-MCHUGH-006603, correct --
14       A        Yes.
15       Q        -- Tayfun Tuzun and Frank Forrest?
16                Did you review anything else with
17  respect to the Emergency CEO Succession Plan?
18       A        No.  This is the document we review
19  as a committee doing the work before it's presented to
20  the full board.
21       Q        And my question is you -- you
22  highlighted the information of Tayfun Tuzun and
23  Frank Forrest.  I'm asking is that the only thing that
24  you look at or do you look at the entire plan?
25       A        Oh, the entire document.

Page 53

1        Q        Okay.  Do you know if the
2   Emergency CEO Succession Plan, is that approved in
3   executive session or is that approved in resolutions
4   at a board -- at the final board meetings in December?
5        A        I do not recall.  You'd have to go
6   to the minutes.
7        Q        How long did you remain on the
8   Fifth Third Human Capital & Compensation Committee?
9        A        I was on that from 2016 until --
10  Let's see, we're in 2024.  I think I came off last
11  year, either April of 2023 or the prior year -- I'm
12  forgetting which -- but it was well after Phil left.
13       Q        Would the -- How -- How frequently
14  would the Human Capital & Compensation Committee
15  review the Emergency Successor Plan for Fifth Third
16  Bank?
17       A        Annually.
18       Q        And would that be in preparation
19  for the December meeting each year?
20       A        Correct.
21                MR. SABA:  We can go off the
22  record.
23                THE VIDEOGRAPHER:  Off the record
24  10:56.
25

Page 54

1                (Deposition stood in recess at
2   10:56 a.m.)
3                (Deposition reconvened at
4   11:15 a.m.)
5                THE VIDEOGRAPHER:  We are back on
6   the record.  This is Media 2 of today's
7   deposition.  The time is 11:15.
8   BY MR. SABA:
9        Q        Ms. Mallesch, you mentioned there
10  would have been cocktail parties where you observed
11  Phil McHugh.  At how many of the cocktail parties did
12  you speak to Phil McHugh?
13       A        I do not recall.
14       Q        Do you recall anywhere you spoke to
15  Phil McHugh?
16       A        I only really recall the dinner I
17  referenced where we were sitting next to each other.
18       Q        Other than that you have no other
19  specific recollection of Phil McHugh at a dinner or a
20  cocktail party?
21       A        Correct.
22                MR. SABA:  Mark that as 3, please.
23                (Deposition Exhibit 3 was marked
24                for identification.)
25                MR. SABA:  And 4.

Page 55

1                (Deposition Exhibit 4 was marked
2                for identification.)
3   BY MR. SABA:
4        Q        Ms. Mallesch, I have handed you
5   what's been marked as Exhibits 3 and 4.  Exhibit 3 is
6   Bates stamped 001104.  Can you identify that document
7   for me, please?
8        A        It's an email communicating the
9   final executive talent management update it looks like
10  dated 2019.
11       Q        And that wow for the board meeting
12  on September 17, 2019; is that correct?
13       A        Correct.
14       Q        And Exhibit No. 4 is titled "Board
15  of Directors Human Capital and Executive Talent
16  Management and Succession Plan Updates" Bates stamped
17  FIFTHTHIRD-MCHUGH-001105 through
18  FIFTHTHIRD-MCHUGH-001154; is that correct?
19       A        Correct.
20       Q        Can you identify Exhibit 4 for me,
21  please?
22       A        It's the referenced email, the
23  attachment of the Human Capital and Executive Talent
24  Management and Succession Plan Update, for the
25  December, 2019, meeting.

Deposition of Eileen A. Mallesch                                     Philip R. McHugh v. Fifth Third Bancorp, et al.

Page 56

1     Q     And this is what we have referred
2 to as the talent deck; is that correct?
3     A     Correct.
4     Q     You have heard that reference
5 before; is that right?
6     A     That is correct.
7     Q     Okay.  And this would have been for
8 the particular board meeting on December, 2000 --
9 December 17th, 2019; is that right?
10     A     Correct.
11     Q     Okay.  How is this document,
12 Exhibit No. 4, used at a board meeting?
13     A     We will all have pre-read it before
14 coming and by virtue of our primary role in CEO
15 succession look at each of the leaders and assess how
16 management -- because this is entirely a management
17 document how management views each of the executives.
18     Q     And do you review the entire talent
19 deck packet?
20     A     I do.
21     Q     What will the board then do with
22 this talent deck after reviewing it for the
23 information provided by management?
24     A     We dedicate a whole morning with
25 the CEO and the head of Human Capital & Compensation

Page 57

1 at the time, and I am failing to remember if it was
2 Teresa Tanner at that -- still at that time or someone
3 else.  I don't think on the email it would say who was
4 the HR leader, so forgive me for forgetting who was
5 the HR leader at this -- for this meeting.  But,
6 though, Greg and the -- that individual takes us
7 through their perspective and we provide credible
8 challenge.  We do it for each of the Executive
9 Committee, Enterprise Committee, I think is the way
10 Fifth Third phrases it, and we then will by virtue of
11 who's a big talent on a skip level perhaps talk about
12 a next level down.
13            Like, for example, as audit chair I
14 care passionately about that who's going to succeed
15 Mark Hazel as the Controller even though he's not on
16 the Enterprise Committee as the CFO and how we think
17 about financial controls as one example.
18     Q     By way of clarification the email
19 does rep -- reckon -- Excuse me -- identify
20 Bob Shaffer --
21     A     Okay.
22     Q     Is that who would have been the --
23     A     Correct.  Thank you.  That's
24 correct.
25     Q     -- head of Human Resources at that

Page 58

1 time, Chief Human Resources Officer; correct?
2     A     Correct.
3     Q     Okay.  And that's who would have
4 gone through this information, the talent deck, with
5 the board, Mr. Shaffer, and Mr. Carmichael; correct?
6     A     Correct.
7     Q     Okay.  Is that done in executive
8 session or is that done in the regular part of the
9 board meeting?
10     A     It's a special executive session
11 that kicks off the whole day.  It's considered part of
12 the board meeting, but it's -- the only management
13 there is Greg Carmichael and as you corrected me
14 Bob Shaffer for his role at the time as the people
15 leader.
16     Q     If I can refer you to
17 FIFTHTHIRD-MCHUGH-001151 --
18     A     I am there.
19     Q     Are you on that page?
20     A     (Nodding head.)
21     Q     And FIFTHTHIRD-MCHUGH-001151 refers
22 to the Emergency CEO Succession Plan Communication
23 Elements; is that correct?
24     A     Correct.
25     Q     And that goes through

Page 59

1 FIFTHTHIRD-MCHUGH-001154; is that right?
2     A     Correct.
3     Q     And similar to what we reviewed for
4 2018 that would have been a communication plan
5 reviewed and approved out by the Human Capital/
6 Compensation Committee; is that correct?
7     A     Correct, for submission and review
8 with the full board.
9     Q     Okay.  And that's what's taking
10 place here in December, 2019, is the review and
11 submission by the whole board; is that correct?
12     A     Correct.
13     Q     Okay.  If I could refer you to
14 FIFTHTHIRD-MCHUGH-001143.
15     A     I am there.
16     Q     And that is titled "Emergency CEO
17 Succession Plan"; is that correct?
18     A     Correct.
19     Q     And that Emergency CEO Succession
20 Plan runs through FIFTHTHIRD-MCHUGH-001150; is that
21 right?
22     A     That is correct.
23     Q     And this is the Emergency CEO
24 Succession Plan that would have been reviewed and
25 approved out and recommended by the Human Capital/

Deposition of Eileen A. Mallesch                                      Philip R. McHugh v. Fifth Third Bancorp, et al.

Page 60

1  Compensation Committee; is that correct?

2      A      It was reviewed and approved for

3  submission for the full board to review.

4      Q      Okay.  And that review and

5  submission was by the Human Capital/Compensation

6  Committee; is that correct?

7      A      Correct.

8      Q      Okay.  And I think you -- you

9  indicated before you were part of the Human Capital/

10 Compensation Committee that would have reviewed and

11 approved of this Emergency CEO Succession Plan; is

12 that right?

13     A      That's correct.

14     Q      Okay.  Referring to

15 FIFTHTHIRD-MCHUGH-001148 --

16     A      I am there.

17     Q      -- in the category of

18 Potential Management Candidates it refers to

19 Tayfun Tuzun and Phil McHugh; is that correct?

20     A      Correct.

21     Q      Okay.  Had you determined that

22 Phil McHugh would have been the appropriate emergency

23 CEO successor?

24     A      No.  I observed it from my personal

25 view and was comforted to see the CFO was also listed

Page 61

1  because that's how I would have been looking at it for

2  an emergency successor.

3      Q      Did you oppose Phil McHugh as an

4  emergency CEO successor?

5      A      No, because I respect the views of

6  my peers and if someone who's more operationally

7  focused because my filter is audit chair and thinking

8  of external communications that I am biased towards a

9  CFO always and an interim unless the CFO is

10 demonstrating some sort of incapability of being an

11 interim.  I always respect the view of other board

12 members, did not know the view of other board members,

13 but it was understandable that an operation leader

14 would equally be listed here.

15     Q      Why is that?

16     A      Because it's normally you're

17 evaluating the CEO for their capabilities and of his

18 assessing or if it's a she they're assessing their

19 team.  It's their duty and their role of what we

20 expect from them to be coming to these meetings with

21 proposed candidates, but ultimately it's a board

22 responsibility.

23          So say a Scenario 1A or 1B occurred

24 we would meet as a board likely perhaps starting with

25 that Finance Committee that's established which I

Page 62

1  think in an emergency if you can't get ahold of board

2  members a Finance Committee would meet with all of the

3  chairs of all the committees to start the process to

4  say, "Dust this off, pull it out," and say, "Who did

5  management propose," and then, "What -- What do we

6  think?"  It would not necessarily automatically be

7  assumed that the names on this page -- And it's why

8  quite frankly I have been on boards where they won't

9  be even put this as a document so they don't mislead

10 another person in the organization to think they're

11 potentially CEO successor.  They call it a white

12 envelope that only the chair holds because they don't

13 want to create that distraction with certain leaders

14 in the organization because I believe we're sitting

15 here because someone thought his name was on the page

16 and he should be the CEO and that's not the process.

17          The CEO successor is the board's

18 responsibility and only the board, and even though

19 Greg Carmichael was the Chairman the Chairman is one

20 voice out of what, we have 15 people, so today

21 Tim Spence is one voice and he only has one voice in

22 that vote for how we're going to think about who's CEO

23 succession even in today's environment.

24     Q      Was this Emergency CEO Succession

25 Plan approved by the board?

Page 63

1      A      Approved for review and to say we

2  have a document to show good governance hygiene, that

3  we're thoughtful about how we think about it at a

4  point in time, but again it's in a -- when you pull

5  the trigger for any of these scenarios it's that point

6  in time.

7          Think of it like a balance sheet.

8  A balance sheet is nothing more than that day that you

9  printed it.  And so this report is nothing more than

10 the views on that day, but the day you have to make

11 these decisions drives what's going on in the

12 environment.

13          For example, look what happened

14 last year with March -- March -- They call it

15 March Madness in the banking sector.  If we were an

16 SVB that was -- what happened with SVB you would be

17 pulling out to say -- If you have your regulator

18 saying, "Your CEO is not operating effectively," you

19 would have to say, "What's going on in the current

20 environment and who would you pick then as that

21 potential successor as you're driving an interim," so

22 it's truly a point in time and this is just your

23 governing document to show you have got good

24 governance hygiene.

25     Q      Who would have indicated that they

Deposition of Eileen A. Mallesch          Philip R. McHugh v. Fifth Third Bancorp, et al.

Page 64

1  felt Phil McHugh was appropriate to be an emergency
2  CEO successor?
3       A     I --
4          MR. CIOFFI: Objection to the form
5  of the question --
6       A     I do not --
7          MR. CIOFFI: -- assumes facts not
8  in evidence if -- that someone did say that
9  he was a potential emergency successor.
10 BY MR. SABA:
11      Q     Are you aware of any board members
12 who testified that Phil McHugh was an appropriate
13 emergency CEO successor?
14      A     **I am not aware of anyone who's**
15 **testified to that.**
16      Q     Did you voice an opinion that
17 Phil McHugh is not an -- an appropriate emergency CEO
18 successor?
19      A     **No, because I took comfort to see**
20 **Tayfun's name there and I said, "If the day ever came**
21 **I'll be quite vocal about who should be the**
22 **successor," based off of the needs at that moment.**
23      Q     And could those needs have
24 demonstrated that Phil McHugh should be the emergency
25 CEO successor?

Page 65

1       A     **I doubt it because communication**
2  **skills were critical and you have to be able to do**
3  **more than read your slides, and by virtue of those**
4  **type of scenarios it's even more critical to have**
5  **strong communication skills.**
6       Q     Did any board member indicate to
7  you that Phil McHugh should not be an emergency CEO
8  successor?
9       A     **Rephrase that question, please.**
10      Q     Did any board members indicate to
11 you that Phil McHugh should not be listed as an
12 emergency CEO successor?
13      A     **In executive session all I heard**
14 **was where folks felt strongly that the CFO is the**
15 **right choice for a potential successor. There**
16 **wasn't -- I did not -- I do not recall hearing anyone**
17 **voice pro or negative on Phil.**
18      Q     Do you recall any discussion
19 regarding Phil McHugh as emergency CEO successor?
20      A     **No.**
21      Q     Are you aware if the bank is
22 required to have an Emergency CEO Succession Plan?
23      A     **Every company is required to have**
24 **an Emergency Succession Plan.**
25      Q     Do you know if those requirements

Page 66

1  require that specific individuals be identified with
2  respect -- with respect to emergency succession?
3       A     **I am not understanding your**
4  **question.**
5       Q     Do you have any understanding
6  whether or not the requirements for an Emergency CEO
7  Succession Plan require that a specific individual or
8  individuals be identified for that Succession Plan?
9       A     **No.**
10      Q     You don't know one way or another?
11      A     **I -- I don't believe there's any**
12 **framework for an emergency CEO succession that would**
13 **indicate that a particular role has to be in that as**
14 **one of the individuals or roles that are required to**
15 **be there. It's based off of evaluating off of what**
16 **the board views at the moment of where that need is**
17 **who's in the best capabilities to serve in that role.**
18      Q     Who prepared the Emergency CEO
19 Succession Plan that we see identified
20 FIFTHTHIRD-MCHUE-001143 through FIFTHTHIRD-MCHUGH-
21 001150?
22      A     **Management.**
23      Q     Who from management specifically?
24      A     **I would guess it would be**
25 **Bob Shaffer with his team primarily with oversight**

Page 67

1  **from Greg Carmichael.**
2       Q     Are there any minutes from the
3  executive session where the Emergency CEO Succession
4  Plan was discussed?
5       A     **I'm sure there are, but I don't**
6  **have them nor recollect them.**
7       Q     You're sure there are minutes from
8  that meeting?
9       A     **Well, there would be minutes that**
10 **would at a minimum say, "The board reviewed CEO**
11 **succession, emergency succession." I'm not -- at all**
12 **have a recollection of what sort of depth would be in**
13 **those minutes because being in executive session it is**
14 **not unusual just to make reference that the board**
15 **exercised its duty performing that review.**
16      Q     Can you identify FIFTHTHIRD-MCHUGH-
17 001141 through 1142 for me, please?
18      A     **That is CEO Succession Plan.**
19      Q     Do you know who prepared
20 FIFTHTHIRD-MCHUGH-001141 through 001142?
21      A     **Again I would say management,**
22 **Bob Shaffer, and after review of by Greg Carmichael**
23 **would have been provided as a draft to the board.**
24      Q     Did the board approve of the
25 CEO Succession Plan that's identified

Deposition of Eileen A. Mallesch                                    Philip R. McHugh v. Fifth Third Bancorp, et al.

Page 68

1  FIFTHTHIRD-MCHUGH-00141 through 00142?
2          MR. CIOFFI:  Objection to the form
3  of the question.
4      A      The board reviewed it and discussed
5  it in executive session.
6      Q      And what were those discussions?
7      A      We supported Tim Spence as
8  performing extremely well and that he was likely going
9  to be CEO successor and again not much on emergency
10  successor because the majority of the board that were
11  vocal on the discussion were happy to see the CFO was
12  reflected for purposes of external communications
13  because Tayfun was a fabulous communicator.
14      Q      What was the discussion regarding
15  Brian Lamb?
16      A      Brian Lamb is an individual who --
17  an amazing communicator so much so the joke was that
18  even Greg didn't want to follow him in a presentation,
19  and he just had an amazing runway that he was viewed
20  as long-term potential as a potential successor to the
21  CEO by virtue of his amazing strategic and
22  communication skills but needed more -- more deeper
23  operational experience within the bank.
24      Q      You referred to he had an amazing
25  runway.  What do you mean an amazing runway?

Page 69

1      A      Leadership is always -- I mean he
2  -- he effectively had a charisma.  There was a
3  charisma about Brian Lamb that created followship.  He
4  in -- He had an inspired leadership in how his
5  operating style was, and that's a big part of what any
6  leader of a company has to do.  They have to be an
7  aspiring leader, especially in the challenges the
8  banking sector faces.  He -- He was nothing short of
9  impressive.
10      Q      What -- What did you base that
11  determination on that he inspired leadership?
12      A      Again I am sure you have your
13  personal views of somebody that's inspired you just by
14  listening to them and that's how Brian Lamb was and to
15  the point that your CEO didn't even want to follow him
16  in a presentation.
17      Q      So again that determination that --
18  that Brian Lamb had inspired leadership, that was just
19  limited to whatever presentations he may have made
20  during board meetings?
21      A      When he -- he -- Equally when he --
22  So that's a great question because when he -- I always
23  remembered him in a board meeting because he didn't
24  speak to his slides.  He came in and was passionate
25  about what he had done and what he wanted to do.  He

Page 70

1  painted a picture for the board beyond what you were
2  reading on the page.
3      Q      Other than presentations Brian Lamb
4  may have made at board meetings what other evidence
5  did you have of his inspired leadership?
6      A      His associates.  It was one where
7  folks would come up to me who when you're in a
8  cocktail hour and just say what a pleasure it was to
9  work with Brian and how Brian inspired them.  It was
10  highly unusual to have that.
11      Q      Who specifically indicated that?
12      A      I don't know.  They were skip-level
13  folks that you have at cocktail hours when Greg would
14  expand a board dinner that would include beyond the
15  Enterprise Committee.
16      Q      How often did that occur?
17      A      Oh, once a year I think we had
18  those larger board dinners where there were folks
19  beyond the Enterprise Committee, so it wasn't
20  frequently, but when you're a board member you
21  remember because of the fact that it's unusual to have
22  those type of interactions.
23      Q      How many interactions did you have
24  regarding Brian Lamb?
25      A      Oh, several.  Brian Lamb was one

Page 71

1  who equally sought out the directors and made it --
2  He -- He just understood what it meant to be a leader.
3  It was building relationships and he would go out of
4  his way to ensure at a cocktail hour he was meeting
5  with different people on -- on the board, and he
6  would recall -- This is other was inspiring -- he
7  would just recall your prior conversation and ask
8  about details in your life.  That's -- That's really
9  impressive with how many people he was interacting
10  with.
11      Q      Other than those cocktail party
12  interactions and the presentations made by Brian Lamb
13  anything else that -- any other evidence you had that
14  he was an inspired leader?
15      A      No.  It was communication again
16  which is a critical aspect of being a CEO.
17      Q      Other than Exhibit 4 what other
18  documentation would the board have at the December
19  board meeting?
20      A      For evaluating?
21          MR. CIOFFI:  Objection to the form
22  of the question.
23          THE WITNESS:  Yeah.
24          MR. CIOFFI:  About what?
25          THE WITNESS:  Thank you.

Deposition of Eileen A. Mallesch                                         Philip R. McHugh v. Fifth Third Bancorp, et al.

Page 72

1   BY MR. SABA:
2       Q       Referring specifically to December,
3   2019, other than the talent deck that we have marked
4   as Exhibit No. 4 what other documentation would you
5   receive for that meeting?
6               MR. CIOFFI:  Same objection.  You
7       can answer.
8       A       **I'm pausing because the only other**
9   **documents I would look at as by being audit chair and**
10  **serving on Risk Committees would look at the**
11  **performance documents of the risk leader, the**
12  **internal audit leader, and the credit leader because**
13  **that's a governance requirement within the banking**
14  **sector, so to make sure I'm complete in my answer this**
15  **was the only document for the individuals we're**
16  **talking about is Phil, Brian Lamb, Tim Spence, that I**
17  **would have looked at on their performance.**
18      Q       Nothing else?
19      A       **Nothing else.**
20      Q       Okay.  And to describe my question
21  nothing other than Exhibit 4 with respect to the
22  performance of Phil McHugh, Tim Spence, and Brian
23  Lamb; correct?
24      A       **Correct.**
25      Q       Do you recall how frequently Brian

Page 73

1   Lamb would attend board meetings?
2       A       **No.  I would do the same math as**
3   **how I described Phil.**
4               (Deposition Exhibit 5 was marked
5               for identification.)
6   BY MR. SABA:
7       Q       You would defer, though, to the
8   board minutes for an indication of who was actually
9   present at a particular board meeting; is that right?
10      A       **Correct.**
11      Q       Ms. Mallesch, I have handed you
12  what's been marked as Exhibit No. 5 which is
13  Bates stamped FIFTHTHIRD-MCHUGH-000253 through
14  FIFTHTHIRD-MCHUGH-000265.  Can you identify that
15  document for me, please?
16      A       **Yes.  It's the minutes of the board**
17  **meeting of December 17th, 2019.**
18      Q       And with respect to that board
19  meeting Mr. Spence was present, but Mr. Lamb and
20  Mr. McHugh were not present; is that correct?
21      A       **Correct.**
22      Q       If you could turn to the second
23  page of Exhibit No. 5, FIFTHTHIRD-MCHUE-000254.
24      A       **I am there.**
25      Q       Referring to the paragraph roughly

Page 74

1   two-thirds down the page it begins, "Thereafter,
2   Mr. Carmichael and Mr. Shaffer initiated a review of
3   potential succession timelines and candidates for the
4   Chief Executive Officer ("CEO") position.  They
5   reviewed top succession candidates, including
6   Mr. Spence, and discussed the potential timelines for
7   their readiness and key development priorities for
8   each such candidates" -- Do you see that there?
9       A       **I do.**
10      Q       Who were the candidates that they
11  discussed other than Mr. Spence?
12      A       **I don't recall because the board**
13  **was already in their mind, myself included, that**
14  **the -- the talent of Mr. Spence was such that the**
15  **focus of the discussion was always about how are we**
16  **developing him.**
17      Q       Do you know why it refers to plural
18  candidates that were discussed by Mr. Carmichael and
19  Mr. Shaffer?
20      A       **I do and I'm chuckling because of**
21  **my vast public company experience.  Every CEO likes to**
22  **think they have multiple candidates by virtue of how**
23  **they're being assessed in developing talent and**
24  **leadership, so I have yet to see a CEO ever propose**
25  **only one candidate and not any others, so it's more of**

Page 75

1   **where they're trying to demonstrate their capabilities**
2   **which is always evaluated by a board over the depth of**
3   **talent that a CEO can present as potential successors**
4   **because it's a great luxury.  I have only had it**
5   **happen once on one of my public company boards where**
6   **we had three potential candidates and that is a luxury**
7   **most companies don't have, so that's more management**
8   **and because management crafts the minutes nobody**
9   **edited it beyond to say what was going on because I**
10  **can see the executive session below.  We talk in**
11  **executive session and the focus was on Tim's**
12  **development.**
13      Q       You said you have yet to see a CEO
14  present only one candidate?
15      A       **Correct.**
16      Q       So who were the other candidates
17  that Mr. Carmichael would have presented?
18      A       **It's what you referenced in your**
19  **succession -- whatever one of your exhibits the**
20  **succession shared where you were asking me about whose**
21  **names are there presented is Tayfun and Phil is how**
22  **Greg Carmichael would present potential other**
23  **candidates.**
24      Q       Here's --
25      A       **Go ahead.**

Deposition of Eileen A. Mallesch                                    Philip R. McHugh v. Fifth Third Bancorp, et al.

Page 76

1    Q    No. I'm just trying to understand
2    what you just said. So you're saying Greg Carmichael
3    would have presented Tayfun and Phil --
4        A    Yes.
5        Q    -- as well as Tim Spence; correct?
6        A    Correct, but again by virtue of
7    being able to have plural in that minutes.
8        Q    And with respect to Tayfun and Phil
9    what were Mr. Carmichael's comments regarding their
10   potential timelines and their -- and their readiness
11   and key development priorities -- priorities?
12       A    He always would call them just
13   potential. They were never ever emphasized by him
14   either. His energy would be more in developing Tim
15   too.
16       Q    I'm just referring to the minutes
17   where it says, "They reviewed top succession
18   candidates," which you indicated were -- would have
19   been Phil and Tayfun in addition to Tim Spence, "and
20   discussed the potential timelines for their readiness
21   and key development priorities for each such
22   candidate."
23       A    Yeah, it's a management -- that's a
24   management written document that we did not challenge
25   in approving these minutes because management, in

Page 77

1    fact, did do that. Again the responsibility is the
2    board. There's nothing management can do to change
3    that otherwise, so that's just their performing the
4    work we asked to provide potential candidates and
5    develop timelines.
6        Q    And my specific question is
7    recognizing you said management did do that, they
8    developed potential timelines and the readiness and
9    key development priorities, what specifically were
10   those with respect to Tayfun and Phil McHugh?
11       A    We would have to --
12           MR. CIOFFI: Objection to the form
13       of the question as to whether you're talking
14       about CEO, a permanent position, or going
15       back to 1142 and emergency successor.
16           MR. SABA: Just an objection for
17       the record, Michael. You don't need to make
18       it a speaking objection.
19   BY MR. SABA:
20       Q    Going back again to the management
21   doing what they were supposed to do with respect to
22   developing potential timelines and with respect to the
23   readiness and key development priorities what did
24   Mr. Carmichael present with respect to Mr. Tuzun and
25   Mr. McHugh regarding their potential timelines and

Page 78

1    their readiness?
2           MR. CIOFFI: Same objection. You
3       may answer if you can.
4        A    Again my focus was on Tim to ensure
5    he was developing Tim. Whatever they said I don't
6    recall.
7        Q    Had you decided in your mind at
8    that time that Tim Spence would be the next President
9    and CEO of Fifth Third Bank?
10       A    I decided at that time that the
11   person who was on the trajectory to ultimately be CEO
12   because the President role that you're referencing was
13   another interim step. It wasn't CEO at that point in
14   time. He was given another expanded role. So it was
15   not -- It was I was just viewing that, yeah, this is
16   the talent. If we're going to say there's an internal
17   talent to develop rather than going externally
18   Tim Spence was that talent.
19       Q    And you had already made that
20   decision as of December, 2019; is that correct?
21       A    I made the decision as one director
22   that where I felt the development should -- efforts
23   should be placed is with Tim Spence.
24       Q    Did Greg Carmichael ever
25   communicate to you that as of August of 2019 he had

Page 79

1    some personal issues and may have to step down earlier
2    than his desires or the board's desires would have
3    been?
4        A    He made reference in executive
5    session to the full board that he was looking to
6    develop his successor sooner. Now, Marsha or -- who
7    was the lead independent director or other directors
8    may have had conversations with. I do not know. I
9    just know that Greg was feeling we should be really
10   developing his successor.
11       Q    When was the executive session
12   wherein Greg Carmichael indicated that he wanted to
13   develop his successor sooner?
14       A    He was always a very unique CEO
15   from my experience. Most CEOs never want to let go of
16   their power. He was one that even when we were
17   looking at M&A transactions if it was for the good of
18   the company he said, "I will step down as the CEO. I
19   would step down or just be -- serve on the board for
20   an interim transition period," quite unique. It was
21   refreshing quite frankly. So it wasn't surprising to
22   me that if there was someone who felt that way that he
23   was always just looking at any alternative and if he
24   felt Tim was going to be ready sooner he didn't want
25   to hold back Tim nor risk losing Tim because at the

Deposition of Eileen A. Mallesch                                    Philip R. McHugh v. Fifth Third Bancorp, et al.

Page 80

1    end of the day the financial services overall, banking
2    in particular, there's been a structural shift that's
3    being disrupted by Fintech, digital, shadow banks,
4    that you -- A strategic leader was going to be the
5    reason Fifth Third could be successful and it's
6    demonstrated.  Just look what's going on.
7            Tim is getting accolades.  We chose
8    the right leader by how the market is performing
9    against what Tim Spence has been executing against and
10   we're making differences that Fifth Third is getting
11   noticed every day, so it's proof that we chose the
12   right person, and for Greg to be willing to want to
13   step down said a lot about he was thinking about the
14   bank first and the success of the bank.  So I was very
15   proud to serve on a board with a CEO with that
16   perspective.
17       Q      You indicated there was an
18   executive session wherein Greg Carmichael specifically
19   indicated he wanted to develop a successor sooner.
20   When did that executive succession occur?
21       A      When I reference --
22           MR. CIOFFI:  Objection to the form
23   of the question, When did that executive --
24           MR. SABA:  -- succession occur?
25           MR. CIOFFI:  -- succession occur?

Page 81

1    BY MR. SABA:
2        Q      When did that executive --
3            MR. CIOFFI:  Discussion?
4        Q      -- session --
5            MR. CIOFFI:  Discussion about it?
6            MR. SABA:  Yeah.  He said he had --
7    that it was during --
8    BY MR. SABA:
9        Q      Do you understand the question?
10           MR. CIOFFI:  I don't understand the
11   question.
12       A      Rephrase your question.
13       Q      You indicated earlier that there
14   was an executive session of the board during which
15   Greg Carmichael indicated he wanted to develop his
16   successor sooner?
17       A      Because Tim was showing and
18   exhibiting a level of capability that he didn't want
19   to hold him back.  I gave an M&A example that he was
20   willing to step down and say -- Most folks only want
21   to do an M&A if they're going to be the overall CEO.
22   I'm trying to give you color about Greg, that Greg was
23   always about the success of the bank first, and by
24   virtue of having that style about him it wasn't
25   surprising to me that he wanted to let the board know.

Page 82

1    We're all thinking Tim's going to be the successor.
2    He's moving at a rate faster and he's noticed in the
3    street.  He was being written up in -- I think it was
4    American Banker as digital -- for his digital
5    capabilities back in 2018, so he was already being
6    recognized in the community.
7            We lost Brian Lamb.  You saw what
8    happened when Brian Lamb went to JPMorgan Chase,
9    another great talent.  This is an industry where that
10   occurs often and we had a unicorn in Tim Spence.  He's
11   like a whiz kid because I am always in awe of his
12   capabilities.
13       Q      Going -- Going back to the unicorn
14   for a second in terms of him being digital banker of
15   the year --
16       A      Uh-huh.
17       Q      -- American Banker, is that one of
18   the reasons that you selected him as --
19       A      No.
20       Q      -- as far as CEO?
21       A      No.  That just validated why I
22   felt -- It's always great when you read something that
23   validates what you're observing.
24       Q      Why did that validate what you were
25   thinking?

Page 83

1        A      American Banker is a -- is a
2    respected periodical in the banking sector.
3        Q      Do you have any understanding of
4    what the process is for him to be selected as digital
5    banker of the year?
6        A      I have no idea what the process is,
7    but when you're put on a -- any of the periodicals --
8    He's -- He's written up in the Wall Street Journal.
9    He's continually written up to -- now in his current
10   role.  You just have to go do your research on that
11   too.  He -- He is -- Quite frankly let's just put it
12   out there.  I see him as what Jamie Dimon was like
13   when Jamie Dimon was that age quite frankly.  He's
14   amazing.  Jamie Dimon was doing the things that
15   Tim Spence is doing except Jamie Dimon wasn't digital
16   so why Tim is a unicorn in my view is he brings the
17   depth and breadth of understanding the competitive
18   landscape of what's going on with the disruption by
19   virtue of Fintech and shadow banks.  All due respect
20   to Phil, solid traditional banker, but never heard any
21   of those conversations from Phil of how we stay
22   competitive.
23       Q      So to be fair you did not view Phil
24   as a young Jamie Dimon; correct?
25       A      Quite frankly --

Deposition of Eileen A. Mallesch                                     Philip R. McHugh v. Fifth Third Bancorp, et al.

Page 84

1          MR. CIOFFI: Objection to the form
2   of the question.
3       **A**      **Quite frankly I don't -- I don't**
4   **look at anything on age because I would bring in**
5   **Jamie Dimon if he wanted to work at Fifth Third and**
6   **Jamie Dimon is my age, 68, so there you go.**
7       Q      But you view Tim Spence as a young
8   Jamie Dimon; isn't that right?
9          MR. CIOFFI: Objection to the form
10   of the question, asked and answered, but --
11   BY MR. SABA:
12       Q      Go ahead.
13          MR. CIOFFI: -- you can answer it
14   again if you want.
15   BY MR. SABA:
16       Q      That was your comparison?
17       **A**      **I'm using that more to say, "Did**
18   **you think Jamie Dimon was a talent when he was that**
19   **age too?" I mean Jamie Dimon is a unique talent.**
20       Q      All right. Tim Spence was a young
21   Jamie Dimon. Phil McHugh was not a young Jamie Dimon;
22   is that right?
23          MR. CIOFFI: Objection to the form
24   of the question --
25       **A**      **I disagree.**

Page 85

1          MR. CIOFFI: -- argumentative.
2       **A**      **I disagree. I -- That is not --**
3       Q      Are you saying Phil McHugh was a
4   young Jamie Dimon?
5       **A**      **That's not even relevant. Help me**
6   **understand how that's relevant.**
7       Q      You specifically identified
8   Tim Spence as a -- You said, "Let's say it. Let's
9   call it out. Tim Spence is a Jamie Dimon at his -- at
10   his age. He's a young Jamie Dimon."
11       **A**      **Okay. So, yes.**
12       Q      And Phil McHugh is not a young
13   Jamie Dimon; is he?
14       **A**      **He's a solid traditional banker**
15   **just like I'm a solid traditional CFO. I'm no**
16   **Jamie Dimon or a young Jamie Dimon either.**
17       Q      My earlier question was whether or
18   not you were aware in August of 2019 that Greg
19   Carmichael indicated that he had some personal issues
20   which might cause him to step down earlier than
21   anticipated?
22       **A**      **I am not aware of that.**
23       Q      Okay. Are you aware of any time
24   that he indicated anything like that?
25       **A**      **No.**

Page 86

1       Q      Are you aware of any conversation
2   wherein Greg Carmichael indicated to Phil McHugh that
3   Tim Spence was not ready and that Greg Carmichael
4   needed to step down earlier than anticipated and he
5   wanted Phil McHugh to step in as an interim President
6   and CEO?
7       **A**      **No.**
8       Q      Do you know who RHR is?
9       **A**      **Yes.**
10       Q      Who is RHR?
11       **A**      **They were the external consultant**
12   **to provide an external view of what was the candidate**
13   **slate as well as to assess Tim Spence for readiness as**
14   **a CEO.**
15       Q      Why did Fifth Third retain RHR?
16       **A**      **I would not have been the one who**
17   **would have decided RHR. That would have been most**
18   **likely the lead independent director in coordination**
19   **with the CEO and the chair of Human Capital &**
20   **Compensation, Mike McCallister. That is the role of**
21   **those folks to do that when you're getting -- just**
22   **inform the board of who they chose.**
23       Q      Were you aware that RHR was first
24   retained to assess Tim Spence, Phil McHugh, and Tayfun
25   Tuzun?

Page 87

1          MR. CIOFFI: Objection to the form
2   of the question, assumes facts not in
3   evidence. If you -- If you know you can
4   answer.
5       **A**      **My recollection is that it was only**
6   **Tim Spence because even the board -- That's where I**
7   **referenced earlier some boards like to have multiple**
8   **candidates even though if a second and third potential**
9   **candidate that management offers up is a big distance**
10   **and gap to what the first potential candidate**
11   **exhibits -- This board for the reasons I indicated**
12   **earlier unanimously said off of being informed that**
13   **there was a decision made, I think, again by Mike**
14   **McCallister, Marsha, and Greg that just keep it to who**
15   **they really believe was the CEO successor, and so**
16   **Tayfun and Phil came off. There was like early, early**
17   **indicators that they may -- might have been part of**
18   **the process.**
19       Q      When did that communication occur?
20       **A**      **I don't recall.**
21       Q      Was there ever a point in time
22   where you considered Phil McHugh to be a viable
23   candidate for President and CEO of Fifth Third Bank?
24       **A**      **As I said earlier, no.**
25       Q      Did you ever communicate to

Deposition of Eileen A. Mallesch                                    Philip R. McHugh v. Fifth Third Bancorp, et al.

Page 88

1  Phil McHugh that he was not a viable candidate for
2  President and CEO of Fifth Third Bank?
3          A    No, and that would not have been my
4  role.
5          Q    Did anybody ever communicate to
6  Phil McHugh that he was not a viable candidate for
7  President and/or CEO of Fifth Third Bank?
8              MR. CIOFFI:  Objection to the form
9      of the question, lack of foundation.  If --
10     If -- If you know of anybody ever said that
11     to --
12         A    No.
13             MR. CIOFFI:  -- Phil you can answer
14     the question.
15         A    I do not know.
16         Q    You were in attendance at the
17 September, 2020, board meeting; is that correct?
18         A    I believe I was.  There was one
19 meeting I missed post surgery so I am not sure if that
20 might have been it.  It was a September meeting.  You
21 would have to check the minutes to see if I was there.
22         Q    You missed a meeting on June 19th,
23 2017.  Is that the meeting you're referring to?
24         A    No, I didn't miss a June meeting.
25 It would have been a September.  It was during a

Page 89

1  strategy session I was post surgery.  I was in the
2  first day but came back too soon so I had to leave.
3          Q    Were you present for part of the
4  meeting?
5          A    I was present the first day of the
6  meeting, but the strategy section was the second day.
7  Executive session I would have missed on any follow-up
8  on CEO succession.
9          Q    Do you recall if that was in 2019
10 or 2020?
11         A    Well, it wasn't '19.  I was
12 definitely there in '19.  It was either '20 or '21 and
13 I am just failing to remember what September it was
14 that I missed.
15         Q    Do you recall a meeting in
16 September of 2020 during which Greg Carmichael
17 indicated that Phil McHugh may be at risk of leave
18 with -- of leaving with Tim Spence's promotion to
19 President?
20         A    No.
21         Q    Did you ever have a conversation
22 with Greg Carmichael wherein he indicated that
23 Phil McHugh would be at risk of leaving with
24 Tim Spence's promotion to President?
25         A    No.

Page 90

1              MR. SABA:  We can go off the
2  record.
3              THE VIDEOGRAPHER:  We are off the
4  record 12:06.
5          (Deposition stood in recess at
6          12:06 p.m.)
7          (Deposition reconvened at
8          12:24 p.m.)
9              THE VIDEOGRAPHER:  We are back on
10 the record.  This is Media 3 of today's
11 deposition.  The time is 12:24.
12 BY MR. SABA:
13         Q    Ms. Mallesch, were you aware that
14 Fifth Third filed a counterclaim against Phil McHugh
15 for filing his age discrimination claim?
16         A    I'm aware by what I do for having
17 to review all claims to the organization as audit
18 chair, yes.
19         Q    And are you aware that it's
20 unlawful to retaliate against somebody for making a
21 claim of discrimination?
22             MR. CIOFFI:  Objection to the form
23     of the question.  That's not what the
24     counterclaim does.  It assumes facts not in
25     evidence.  It assumes a legal -- incorrect

Page 91

1  legal conclusion.  But you may answer if you
2  can.
3          A    I'm not a lawyer, so you would know
4  that better than me.
5          Q    Do you have any understanding of
6  that?
7              MR. CIOFFI:  Objection.  She
8      answered the question.
9          A    I stated my answer.
10         Q    Okay.  I am asking for your -- to
11 the extent of your personal understanding do you have
12 any understanding of whether or not it's appropriate
13 to retaliate against an employee who brings a claim of
14 discrimination?
15             MR. CIOFFI:  Objection, same
16     objection.  It's not what the counterclaim
17     does.
18         A    I know there was a claim filed.  I
19 observed it.  I chat with the management about it and
20 that's it.
21         Q    No.  I am just asking if you have
22 an understanding of whether or not it's appropriate to
23 bring -- to retaliate against an employee who brings a
24 claim of discrimination?
25             MR. CIOFFI:  Objection, asked and

Deposition of Eileen A. Mallesch                                    Philip R. McHugh v. Fifth Third Bancorp, et al.

Page 92

1    answered.  She said she's not a lawyer.
2    BY MR. SABA:
3        Q      I'm asking for your understanding.
4        A      **I am standing by my prior answer.**
5        Q      Your answer was you're not a
6    lawyer.  I'm asking to the extent of your knowledge do
7    you have any understanding whether or not it's
8    appropriate to retaliate against --
9        A      **No.**
10       Q      -- an employee?
11              You don't have an understanding?
12       A      **I don't have an understanding of**
13   **your question.**
14       Q      Okay.  You don't know whether or
15   not it's appropriate to retaliate against an employee
16   who brings a claim of discrimination?
17       A      **I have not observed any**
18   **retaliation, so I stand by my answer.**
19       Q      No, that's not my question.  I am
20   not asking if you have observed any retaliation.  I am
21   asking whether or not you have any understanding
22   whether it's appropriate to retaliate against an
23   employee who brings a claim for discrimination?
24              MR. CIOFFI:  Same objection.  Now
25       that you ask it the fourth time you're

Page 93

1    becoming argumentative.
2    BY MR. SABA:
3        Q      Go ahead.
4        A      **Repeat the question.**
5        Q      Yes.  I am asking whether or not
6    you have any understanding whether or not it is
7    appropriate to retaliate against an employee who
8    brings a claim of discrimination?
9        A      **I don't view that it was**
10   **retaliation from how the form of that document was**
11   **written, so you have to help me understand that.**
12       Q      I am not asking about the document.
13   I am asking about your understanding.
14       A      **Oh, but you referenced the**
15   **document.**
16       Q      That was a prior question.  My
17   question --
18       A      **Oh.**
19       Q      -- generally speaking to the extent
20   of your knowledge, your understanding, do you have any
21   understanding whether or not it's appropriate to
22   retaliate against an employee who brings a claim of
23   discrimination?
24       A      **I do.**
25              MR. CIOFFI:  Objection to the form.

Page 94

1    BY MR. SABA:
2        Q      What is your knowledge?
3              MR. CIOFFI:  Wait a minute.  Let me
4    pose my objection.  Objection to the form of
5    the question in that it's delivered as a
6    hypothetical and speculation with absolutely
7    no context.
8              MR. SABA:  It's not a hypothetical
9    and it's not speculation.
10             MR. CIOFFI:  Sure, it is.
11   BY MR. SABA:
12       Q      Go ahead.  What is your
13   understanding?
14       A      **I stand by my prior response to you**
15   **because I am not understanding how -- why this is**
16   **relevant.**
17       Q      I am going to ask you the question
18   again.  It's very simple --
19       A      **Uh-huh.**
20       Q      -- all right?  You indicated before
21   you do have an understanding whether or not it's
22   appropriate to retaliate against an employee who
23   brings a claim for discrimination.  What is your
24   understanding?
25             MR. CIOFFI:  Objection, same

Page 95

1    objection.
2        A      **Would you just phrase the question**
3    **more simply?  You're really making a very long-winded**
4    **question.  Phrase the question -- Are you asking do I**
5    **think it's appropriate to retaliate against someone --**
6        Q      For bringing --
7        A      **-- on anything?**
8        Q      For bringing a claim of
9    discrimination.
10             MR. CIOFFI:  Objection, asked and
11   answered --
12   BY MR. SABA:
13       Q      That's -- That's my question.
14             MR. CIOFFI:  -- argumentative.
15   BY MR. SABA:
16       Q      Is that appropriate?
17       A      **It's not appropriate, but I haven't**
18   **seen anything that should suggest that, so it's not**
19   **appropriate, of course.  That's of values.**
20             MR. SABA:  Okay.  That's all I have
21       at this time.  We'll continue in progress
22       with respect to the other issues and include
23       that in the questions.
24             MR. CIOFFI:  Again we'll address
25       that at the end.  As you know our position is

Deposition of Eileen A. Mallesch                                    Philip R. McHugh v. Fifth Third Bancorp, et al.

Page 96

1  you have no right to continue the deposition.
2  You have one chance to depose this witness
3  and that's it, but we'll take that up with
4  the Court.
5       MR. CIOFFI:  Ms. Mallesch, I have a
6  few questions for you.
7       THE WITNESS:  Sure.
8            EXAMINATION
9  BY MR. CIOFFI:
10      Q    If you could turn to Exhibit No. 5,
11 please.
12      A    I'm there.
13      Q    If you turn to Page 2 and the full
14 paragraph at the beginning -- in the middle of the
15 page which says, "Thereafter, Mr. Carmichael and
16 Mr. Shaffer initiated a review" -- Do you see that?
17      A    I do.
18      Q    And go ahead and read those first
19 two sentences if you would, please, into the record.
20      A    "Thereafter, Mr. Carmichael and
21 Mr. Shaffer initiated a review of potential succession
22 timelines and candidates for the CEO position.  They
23 reviewed top succession candidates, including
24 Mr. Spence, and discussed the potential timelines for
25 their readiness and key development priorities for

Page 97

1  each such candidate."
2       Q    Did these discussions include
3  discussions about permanent CEO succession and also
4  emergency CEO succession?
5       MR. SABA:  Objection, form of the
6       question, asked and answered.  Go ahead.  You
7       can answer.
8       A    Yes, it was both.
9       Q    Who was presented as a candidate
10 for Chief Executive Officer as a permanent position,
11 as a permanent successor?
12      MR. SABA:  Objection, asked and
13      answered.
14      A    Tim Spence.
15      Q    Were there candidates presented as
16 potential successors on an emergency or interim basis?
17      MR. SABA:  Continuing objection.
18      A    Yes.
19      Q    And who were those candidates?
20      A    As the document we reviewed earlier
21 Tayfun and Phil.
22      Q    The earlier document is Exhibit 4.
23 If you look at that, please.
24      A    I'm there.
25      Q    And look at the Bates No. 1142;

Page 98

1  would you, please?
2       A    I'm there.
3       Q    Did the discussion as reflected in
4  the minutes, Exhibit No. 5, center around this
5  particular CEO succession chart?
6       A    It did.
7       Q    And as a result were the
8  discussions that potential emergency successors were
9  Tayfun Tuzun, Phil McHugh, and a board member?
10      MR. SABA:  Continuing objection.
11      A    Correct.
12      Q    And were those the candidates
13 presented at the board meeting as potential emergency
14 successors?
15      MR. SABA:  Objection.
16      A    Correct.
17      Q    In terms of the permanent CEO
18 succession who was presented as a candidate or
19 candidates?
20      A    Tim Spence with Brian Lamb with a
21 much longer runway as suggested here of seven plus
22 years.
23      Q    At any time at the board meeting
24 reflected in Exhibit No. 5 was Tayfun Tuzun,
25 Phil McHugh, or anyone else other than Tim Spence

Page 99

1  presented as a permanent CEO successor?
2       MR. SABA:  Objection, asked and
3       answered.
4       A    No.
5       Q    I am going to ask you another
6  question.  So we're finished with those exhibits.  As
7  a board member when you were discussing and
8  deliberating as to who should succeed Greg Carmichael
9  as President and CEO did you ever consider age as a
10 factor, age of that potential successor as a factor in
11 your discussions and deliberations?
12      MR. SABA:  Objection.
13      A    Never.
14      Q    What did you consider?
15      A    As I talked about earlier the four
16 quadrants.  I'm always evaluating every leader in how
17 they are meeting the capabilities of oversight,
18 hindsight, foresight, and insight, and Tim Spence
19 checked all the boxes, and then on top of it by virtue
20 of what we're facing strategically in an environment
21 of a huge competition from Fintech, digital, and
22 shadow banking we needed someone who really understood
23 what was the current environment and how we could
24 succeed in the current environment, so Tim Spence
25 checked all the boxes there.

Deposition of Eileen A. Mallesch                                    Philip R. McHugh v. Fifth Third Bancorp, et al.

Page 100

1      Q       In your discussions and
2   deliberations over who should succeed Greg Carmichael
3   as President and CEO you discussed that topic with
4   other board members; is that correct?
5      A       Correct.
6              MR. SABA:  Objection.
7   BY MR. CIOFFI:
8      Q       In those discussions at any time
9   did any board member suggest that age of the successor
10  should be a factor in making the determination as to
11  Greg Carmichael's successor?
12             MR. SABA:  Objection.
13     A       No.
14     Q       In these discussions about who
15  should succeed Greg Carmichael -- And I want to direct
16  you specifically to the time frame of the second half
17  of 2019 through October of 2020 -- did you ever form
18  an opinion as to whether Phil McHugh was qualified or
19  not qualified to be President or CEO?
20     A       I had by the time as I indicated
21  earlier by virtue of serving on the board since 2016
22  by 2019 I viewed Phil as a capable traditional banker
23  who added value at the bank.  Regretfully we're
24  sitting here because he's not self-aware to equally
25  understand his strengths and his developments, so let

Page 101

1   me use an example from my own personal career.
2              I was on one of my boards by virtue
3   of my insurance background was asked to be considered
4   to be the CEO by another board candidate when we were
5   doing CEO succession.  I said, "I'm honored that you
6   think I have the capabilities, but for what we're
7   facing," because all financial services are facing the
8   disruption that's occurring within -- by virtue of
9   Fintech and digital, all digital capabilities, I said,
10  "I'm a traditional CFO that happens to know Property/
11  Casualty Insurance.  That does not make me a qualified
12  candidate.  I could do the operating levers.  If we
13  were ever in an emergency and needed someone just to
14  keep the lights on I can do that."
15             It's regretful that Phil did not
16  have that same self-awareness because he was highly
17  valued, he chose to leave, he was highly compensated
18  which would have been reflected in the proxy statement
19  for showing the prestigiousness of his position
20  because I believe his ego still wanted to be the CEO,
21  and it's really about the good for the company.  You
22  have to -- As I indicated even Greg Carmichael was
23  willing to say, "I'll step down," because we were
24  seeing a great talent ready -- starting to show ready
25  now.

Page 102

1      Q       In the exercise of your business
2   judgment as a board member was Phil McHugh qualified
3   or not qualified to be President or CEO?
4      A       He was not qualified.
5      Q       Did you discuss that particular
6   issue with any other board members?
7      A       No, because the board was unanimous
8   in pursuing Tim Spence as development, so, no.
9      Q       Did any other board members in your
10  discussions with them express a view as to whether
11  Tim Spence was qualified -- or -- Excuse me.  Strike
12  that -- as to whether Phil McHugh was qualified or not
13  qualified to be --
14     A       No.
15     Q       -- either President or CEO?
16     A       We --
17             MR. SABA:  Objection.
18     A       We respected him, his capabilities
19  and knowledge, his deep internal knowledge of
20  Fifth Third, but did not see him as anything more than
21  a utility player within the organization.
22     Q       Was that the consensus of the board
23  that he was not qualified to be President or CEO?
24             MR. SABA:  Objection.
25     A       That would be my understanding

Page 103

1   since no one else voiced strong vocal support for Phil
2   being CEO.
3              MR. CIOFFI:  I have no further
4   questions.
5              FURTHER EXAMINATION
6   BY MR. SABA:
7      Q       Ms. Mallesch, you indicated that --
8   you made the comment that Phil's ego wanted to be CEO;
9   is that correct?
10     A       That's my opinion.
11     Q       Okay.  And in your opinion you
12  could understand why somebody particularly if they had
13  worked at a bank for 30 plus years would want to be
14  CEO of the bank; correct?
15     A       That makes no sense since the only
16  role -- It's the board's role to choose the CEO.  It's
17  not for someone to think, I'm ready to be CEO.
18     Q       No.  My --
19     A       That's not the corporate world we
20  live in.
21     Q       No.  My question was not whether or
22  not they were ready.  My question is you could
23  understand if somebody worked for a bank for 31 years
24  that they would have the desire to be CEO?
25     A       That sounds like a union job to me

Deposition of Eileen A. Mallesch                                    Philip R. McHugh v. Fifth Third Bancorp, et al.

Page 104

1  which I participated early in my career in the medical
2  profession and only -- the only jobs that get you
3  anything in seniority is in a union job, not in
4  Corporate America.
5          Q      That -- That wasn't my question.
6  My question is whether or not you could understand why
7  somebody's worked at a company for that long would at
8  least have the desire to be CEO?
9              MR. CIOFFI: Objection. She
10  answered your question.
11         A      I disagree.
12             MR. CIOFFI: You didn't like the
13  answer, but --
14  BY MR. SABA:
15         Q      You don't -- You don't understand
16  that desire?
17         A      I -- I think you got to -- It shows
18  lack of self-awareness quite frankly.
19         Q      And whether it shows lack of
20  self-awareness you believe that Phil McHugh had the
21  desire to be CEO?
22             MR. CIOFFI: Objection, lack of
23  foundation.
24         A      I think I answered the question.
25             MR. CIOFFI: If you know what his

Page 105

1  desires are you -- you can answer.
2          A      I answered the question.
3          Q      No, you didn't.
4              MR. CIOFFI: Objection. Wait.
5  It's argumentative. She answered the
6  question. Ask another question if you want.
7              MR. SABA: Sure.
8  BY MR. SABA:
9          Q      With respect to Phil McHugh based
10  on your evaluation of his ego did you have an
11  understanding that he wanted to be the CEO of
12  Fifth Third Bank?
13         A      No, I didn't actually because if he
14  did he might have pursued chatting with me during
15  cocktail hours or presented in a way that showed that
16  he was strategic and able to articulate and paint a
17  picture of his business beyond reading off his slides.
18  Actually it showed somebody that wasn't aspirational
19  to a CEO which is why I'm very shocked we're all
20  sitting here today because I never thought he was
21  aspiring to be CEO.
22         Q      And that's based just on the
23  presentations you saw at the board and not speaking to
24  you at cocktail parties; is that right?
25         A      It's based off of how he presented

Page 106

1  because anyone who's really aspiring to be CEO will
2  show that they have a passion and energy around their
3  business that's more than reading off their slides.
4          Q      Okay. That's my question. It's
5  based on his presentation style that you interpreted
6  that he didn't want to be CEO; is that right?
7              MR. CIOFFI: Objection --
8          A      I'm using my --
9              MR. CIOFFI: -- form of the
10  question. You're misstating her testimony.
11  Her answer stands. If you -- If you have a
12  further answer you can give it.
13  BY MR. SABA:
14         Q      No. I'm trying to understand your
15  testimony. You said it was not speaking to you at
16  cocktail parties and his presentation style would be
17  the two things that would indicate to you that he did
18  not want to be CEO; is that correct?
19             MR. CIOFFI: Objection. She never
20  used the word "style". She talked about
21  substance of the presentation. You're
22  mischaracterizing it and it's argumentative.
23             MR. SABA: Well, I think that's --
24  that's your addition to testimony.

Page 107

1  BY MR. SABA:
2          Q      But go ahead. I'm asking --
3  Clarify your answer,
4          A      Again I think you're putting
5  subjection into what I just said. I'm using as
6  examples of someone showing they're aspiring to be CEO
7  that you're asking me about that it sounds to me you
8  view just years of working in a company means you want
9  to be CEO. That's how I heard your question.
10         Q      No. I am asking you the question.
11  You said in your mind you think Phil McHugh did not
12  want to be CEO; is that right?
13         A      I am shocked. I never -- He never
14  at all indicated he was interested in being CEO from
15  any interaction with him.
16         Q      That you had with him?
17         A      That I had with him.
18         Q      Okay. And -- And that's what I'm
19  trying to understand. That's based on his
20  presentations and the one time you all sat at
21  dinner --
22         A      Correct.
23         Q      -- is that correct?
24         A      Correct.
25             Okay. You made the comment that

Deposition of Eileen A. Mallesch                                              Philip R. McHugh v. Fifth Third Bancorp, et al.

Page 108

1    Phil McHugh was going to be in the proxy statements;
2    is that right?
3        A      By one of the top highly
4    compensated individuals I believe the salary was over
5    $2 million a year, that he would have been in the --
6    If he accepted the position on the restructuring that
7    was occurring he would have been in the proxy.
8        Q      He would have been in the proxy
9    either way; isn't that right?
10       A      I don't recall.  All I know is that
11   it was communicated that he would be one of the top
12   executives in the organization.
13            MR. SABA:  That's all I have.
14   Continued in progress.
15            MR. CIOFFI:  Again we object to
16   your attempt to continue in progress.  No
17   further questions.  The witness will read and
18   sign the deposition.
19            MR. SABA:  Okay.  Thank you.
20            THE WITNESS:  Thank you.
21            THE VIDEOGRAPHER:  We are off the
22   record at 12:42.
23
24
25

```
 1

 2

 3                   _____
                              EILEEN A. MALLESCH
 4

 5                   _____
                              DATE
 6

 7                             -  -  -

 8             (DEPOSITION CONCLUDED AT 12:42 P.M.)

 9                             -  -  -

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Deposition of Eileen A. Mallesch                                      Philip R. McHugh v. Fifth Third Bancorp, et al.

1                        C E R T I F I C A T E

2       STATE OF OHIO         :
                                     SS:
3       COUNTY OF BUTLER      :

4              I, Pamela L. Jackson, a duly qualified and

5       commissioned notary public in and for the State of

6       Ohio, do hereby certify that prior to the giving of

7       her deposition, the within named EILEEN A. MALLESCH,

8       was by me first duly sworn to testify to the truth,

9       the whole truth, and nothing but the truth; that the

10      foregoing pages constitute a true and correct

11      transcript of testimony given at said time and place

12      by said deponent; that said deposition was taken by me

13      in stenotypy and transcribed under my supervision;

14      that I am neither a relative of nor attorney for any

15      of the parties to this litigation, nor relative of nor

16      employee of any of their counsel, have no interest

17      whatsoever in the result of this litigation, and am

18      not, nor is the court reporting firm for which I am

19      affiliated, under a contract as defined in Civil Rule

20      28(D).

21                     IN WITNESS WHEREOF, I hereunto set my

22      hand and official seal of office at Hamilton, Ohio,

23      this 26th day of July, 2024.

24                      _____

25                           Commission Expires 11/17/28

```
 1    1 DEPOSITION ERRATA SHEET

 2    Date Taken:  July 10, 2024

 3    Case Caption: PHILIP R. MCHUGH

 4    vs. FIFTH THIRD BANCORP, et al.

 5    DECLARATION UNDER PENALTY OF PERJURY

 6    I declare under penalty of perjury

 7    that I have read the entire transcript of

 8    my Deposition taken in the captioned matter

 9    or the same has been read to me, and

10    the same is true and accurate, save and

11    except for changes and/or corrections, if

12    any, as indicated by me on the DEPOSITION

13    ERRATA SHEET hereof, with the understanding

14    that I offer these changes as if still under

15    oath.

16    Signed on the _____ day of

17    _____, 20___.

18    _____

19    EILEEN A. MALLESCH

20

21

22

23

24

25
```

Deposition of Eileen A. Mallesch                                    Philip R. McHugh v. Fifth Third Bancorp, et al.

```
1   2 DEPOSITION ERRATA SHEET

2   Page No._____Line No._____Change to:_____

3   _____

4   Reason for change:_____

5   Page No._____Line No._____Change to:_____

6   _____

7   Reason for change:_____

8   Page No._____Line No._____Change to:_____

9   _____

10  Reason for change:_____

11  Page No._____Line No._____Change to:_____

12  _____

13  Reason for change:_____

14  Page No._____Line No._____Change to:_____

15  _____

16  Reason for change:_____

17  Page No._____Line No._____Change to:_____

18  _____

19  Reason for change:_____

20  Page No._____Line No._____Change to:_____

21  _____

22  Reason for change:_____

23  SIGNATURE:_____DATE:_____

24  EILEEN A. MALLESCH

25
```

Deposition of Eileen A. Mallesch                                Philip R. McHugh v. Fifth Third Bancorp, et al.

```
 1    3 DEPOSITION ERRATA SHEET

 2    Page No._____Line No._____Change to:_____

 3    _____

 4    Reason for change:_____

 5    Page No._____Line No._____Change to:_____

 6    _____

 7    Reason for change:_____

 8    Page No._____Line No._____Change to:_____

 9    _____

10    Reason for change:_____

11    Page No._____Line No._____Change to:_____

12    _____

13    Reason for change:_____

14    Page No._____Line No._____Change to:_____

15    _____

16    Reason for change:_____

17    Page No._____Line No._____Change to:_____

18    _____

19    Reason for change:_____

20    Page No._____Line No._____Change to:_____

21    _____

22    Reason for change:_____

23    SIGNATURE:_____DATE:_____

24    EILEEN A. MALLESCH

25
```

## WORD INDEX

< $ >
**$2** 108:5

< 0 >
**001104** 55:6
**001141** 67:17
**001142** 67:20
**001150** 66:21
**00142** 68:1
**006594** 49:10 50:11
**006597** 49:11, 25
50:12
**006598** 50:2
**006603** 51:16
**006604** 50:2

< 1 >
**1** 3:8 6:10 10:22
11:1, 4, 18 27:3 28:5
111:1
**1(b** 12:18
**1(c** 12:23
**1(d** 13:5 15:3
**1(e** 13:10
**1(f** 13:16
**1(g** 13:21
**1:21-cv-00238** 1:9
4:9
**10** 1:14 3:8 17:11
36:21, 23 39:2 111:2
**10:56** 53:24 54:2
**103** 3:5
**10-K** 33:8
**10-Q** 33:8
**10th** 4:3
**11** 18:7
**11/17/28** 110:25
**11:15** 54:4, 7
**1142** 67:17 77:15
97:25
**11th** 48:20
**12:06** 90:4, 6
**12:24** 90:8, 11
**12:42** 108:22 109:8
**1217** 8:1
**14** 11:21
**15** 62:20

**16** 18:21, 23 34:12
**17** 55:12
**1700** 2:14
**17th** 50:5 56:9
73:17
**18** 8:4
**19** 34:12 38:1 89:11,
12
**1985** 8:14
**19th** 88:22
**1A** 61:23
**1B** 61:23

< 2 >
**2** 3:9 6:10 14:1
47:16, 20 48:9 49:5
51:16 54:6 96:13
112:1
**20** 16:1, 19 34:13, 21
36:20 39:2 89:12
111:17
**2000** 56:8
**2008** 17:9
**2009** 16:1
**201** 2:14
**2010** 16:2 17:16
18:6
**2016** 16:25 17:1, 22
18:10 21:16 24:19,
24 25:10 29:6 37:3,
4 40:15 41:5 42:1, 3
53:9 100:21
**2017** 88:23
**2018** 16:19 17:10
48:21 50:5, 23 51:2
59:4 82:5
**2019** 55:10, 12, 25
56:9 59:10 72:3
73:17 78:20, 25
85:18 89:9 100:17,
22
**2019-ish** 18:8
**2020** 17:2, 22 18:11
34:13 38:2 41:6, 8,
16, 23 42:1 45:24
88:17 89:10, 16
100:17
**2021** 16:22 17:17
**2023** 53:11

**2024** 1:14 4:3 53:10
110:23 111:2
**21** 89:12
**23** 8:8
**2623** 2:6
**26th** 110:23
**28(D** 110:20

< 3 >
**3** 3:10 14:5 54:22,
23 55:5 90:10 113:1
**30** 103:13
**31** 103:23
**362-8700** 2:15

< 4 >
**4** 3:11 14:9 34:11
54:25 55:1, 5, 14, 20
56:12 71:17 72:4, 21
97:22
**4(a** 14:11
**4(b** 14:16
**4(c** 14:21
**4(d** 15:3
**4(e** 15:8, 12
**4(f** 15:14, 15
**4(g** 15:17, 18
**43230** 8:2
**45202** 1:20 2:15
**45208** 2:7
**47** 3:9

< 5 >
**5** 3:4, 12 34:11 73:4,
12, 23 96:10 98:4, 24
**511** 1:20
**513** 2:7, 15
**533-2701** 2:7
**54** 3:10
**55** 3:11

< 6 >
**6** 11:18
**68** 84:6

< 7 >
**73** 3:12

< 9 >

**9:53** 1:14 4:3
**96** 3:4

< A >
**a.m** 1:14 4:3 54:2, 4
**ability** 43:9
**able** 6:19 48:8 65:2
76:7 105:16
**absolutely** 94:6
**accepted** 108:6
**accolades** 80:7
**Accounting** 8:12
**accurate** 48:5 111:10
**active** 42:7, 14
**add** 19:7, 12
**added** 19:25 100:23
**addition** 16:16 33:22
76:19 106:24
**additional** 36:14
**Additionally** 7:18
**address** 7:25 95:24
**Adkins-Ihle** 1:22
**administratively** 24:2
**adopted** 50:22
**affiliated** 110:19
**age** 5:2 7:1 83:13
84:4, 6, 19 85:10
90:15 99:9, 10 100:9
**agenda** 42:23 43:3
**agree** 7:5 31:12
51:10
**agreed** 47:14
**agreement** 4:20
**agrees** 7:3
**ahead** 5:7 7:24
75:25 84:12 93:3
94:12 96:18 97:6
107:2
**ahold** 6:18 62:1
**Akins** 10:9
**al** 1:10 4:6 111:4
**alive** 36:7
**allow** 9:8
**alternative** 79:23
**amazing** 68:17, 19, 21,
24, 25 83:14
**Amended** 11:2
**America** 104:4
**American** 82:4, 17
83:1

**and/or** 12:*15*, *19*, *20*, *25* 13:*1*, *7*, *12*, *13* 14:*13*, *16*, *18*, *23*, *24* 15:*5*, *10*, *11* 28:*13* 88:*7* 111:*11*

**Ann** 5:*10*

**annual** 29:*19*, *23* 30:*6* 44:*23* 45:*2*

**annually** 20:*16* 30:*1* 53:*17*

**answer** 7:*14*, *19* 9:*8* 10:*1*, *6*, *11*, *16*, *21* 23:*10* 35:*12* 38:*16* 39:*8* 41:*20* 44:*13* 72:*7*, *14* 78:*3* 84:*13* 87:*4* 88:*13* 91:*1*, *9* 92:*4*, *5*, *18* 97:*7* 104:*13* 105:*1* 106:*11*, *12* 107:*3*

**answered** 23:*5* 25:*1* 84:*10* 91:*8* 92:*1* 95:*11* 97:*6*, *13* 99:*3* 104:*10*, *24* 105:*2*, *5*

**answering** 29:*25*

**anticipated** 85:*21* 86:*4*

**anybody** 88:*5*, *10*

**APPEARANCES** 2:*1*

**appears** 49:*6*

**appropriate** 60:*22* 64:*1*, *12*, *17* 91:*12*, *22* 92:*8*, *15*, *22* 93:*7*, *21* 94:*22* 95:*5*, *16*, *17*, *19*

**approval** 52:*1*

**approve** 67:*24*

**approved** 53:*2*, *3* 59:*5*, *25* 60:*2*, *11* 62:*25* 63:*1*

**approving** 76:*25*

**April** 41:*7*, *15*, *22* 45:*24* 53:*11*

**Arch** 16:*15*, *21*

**area** 32:*9*

**areas** 32:*13*

**argumentative** 85:*1* 93:*1* 95:*14* 105:*5* 106:*22*

**Art** 18:*1*, *5*

**articulate** 21:*25* 105:*16*

**asked** 11:*11* 12:*11* 23:*4* 41:*8* 77:*4* 84:*10* 91:*25* 95:*10* 97:*6*, *12* 99:*2* 101:*3*

**asking** 7:*9* 21:*15* 24:*9* 27:*6* 30:*4* 40:*2* 52:*23* 75:*20* 91:*10*, *21* 92:*3*, *6*, *20*, *21* 93:*5*, *12*, *13* 95:*4* 107:*2*, *7*, *10*

**asks** 12:*18*, *23* 13:*10*, *16*, *21* 14:*1*, *5*, *9*, *16*, *21* 15:*3*, *8*, *17*

**aspect** 71:*16*

**aspirational** 105:*18*

**aspiring** 69:*7* 105:*21* 106:*1* 107:*6*

**assess** 27:*4* 28:*12* 56:*15* 86:*13*, *24*

**assessed** 74:*23*

**assessing** 22:*4* 27:*1*, *12*, *24* 33:*13* 61:*18*

**assessment** 28:*3* 30:*23* 31:*6*

**associated** 33:*20*

**associates** 70:*6*

**Association** 20:*11*, *15*

**assumed** 36:*4* 62:*7*

**assumes** 64:*7* 87:*2* 90:*24*, *25*

**assuming** 36:*23*

**Attached** 48:*24*

**attachment** 55:*23*

**attempt** 108:*16*

**attend** 37:*3* 73:*1*

**attendance** 37:*14* 88:*16*

**attended** 34:*2*, *17*

**attending** 25:*7*

**attention** 40:*16*

**attorney** 110:*14*

**attorney-client** 9:*5*, *20*

**attorneys** 4:*10*

**Audit** 20:*17*, *18* 32:*23* 41:*8* 43:*20* 45:*20*, *23* 46:*4*, *5* 57:*13* 61:*7* 72:*9*, *12* 90:*17*

**August** 78:*25* 85:*18*

**Auto** 17:*13*, *15*

**automatically** 62:*6*

**Avenue** 2:*6*

**aware** 64:*11*, *14* 65:*21* 85:*18*, *22*, *23* 86:*1*, *23* 90:*13*, *16*, *19*

**awe** 82:*11*

**< B >**

**Bachelor** 8:*11*

**Bachelor's** 8:*11*

**Back** 21:*15* 27:*5* 54:*5* 77:*15*, *20* 79:*25* 81:*19* 82:*5*, *13* 89:*2* 90:*9*

**background** 19:*7* 22:*19* 101:*3*

**bad** 26:*7* 36:*14*

**Bailey** 2:*5* 5:*23*

**balance** 49:*5* 63:*7*, *8*

**BANCORP** 1:*10* 2:*19*, *20* 4:*6* 111:*4*

**Bank** 8:*20*, *23* 12:*15* 13:*2*, *13* 20:*8*, *24* 28:*1*, *13*, *24* 29:*7* 30:*24* 33:*3*, *14* 35:*4*, *10* 36:*19* 38:*6*, *12*, *21* 46:*2*, *16*, *22* 50:*23* 53:*16* 65:*21* 68:*23* 78:*9* 80:*14* 81:*23* 87:*23* 88:*2*, *7* 100:*23* 103:*13*, *14*, *23* 105:*12*

**banker** 35:*22* 82:*4*, *14*, *17* 83:*1*, *5*, *20* 85:*14* 100:*22*

**banking** 21:*6* 29:*11* 63:*15* 69:*8* 72:*13* 80:*1* 83:*2* 99:*22*

**banks** 80:*3* 83:*19*

**base** 69:*10*

**based** 17:*10* 22:*19* 27:*20* 33:*14* 36:*3* 47:*9* 64:*22* 66:*15* 105:*9*, *22*, *25* 106:*5* 107:*19*

**basis** 26:*23* 49:*9* 97:*16*

**Bates** 47:*21* 48:*1*, *2* 55:*6*, *16* 73:*13* 97:*25*

**becoming** 38:*11* 93:*1*

**beginning** 18:*21* 45:*24* 49:*10* 50:*2* 96:*14*

**begins** 74:*1*

**behalf** 2:*1*, *9* 4:*17*

**believe** 18:*6* 34:*9* 39:*7* 62:*14* 66:*11* 87:*15* 88:*18* 101:*20* 104:*20* 108:*4*

**Ben** 44:*5*, *8*, *9*, *10*, *16*

**Ben's** 44:*5*, *6*

**Bes@sspfirm.com** 2:*9*

**best** 43:*9* 66:*17*

**better** 33:*4* 35:*11* 40:*3* 91:*4*

**beyond** 70:*1*, *14*, *19* 75:*9* 105:*17*

**bias** 27:*19*

**biased** 61:*8*

**big** 57:*11* 69:*5* 87:*9*

**Blank** 2:*13* 4:*17*

**blur** 37:*10*

**board** 8:*20* 13:*18*, *22* 16:*17*, *20*, *23* 17:*8*, *9*, *14*, *17*, *20* 18:*2*, *4*, *14*, *17*, *19* 19:*6*, *8* 20:*7*, *13*, *25* 24:*24* 25:*2*, *4*, *5*, *6*, *11*, *14*, *16*, *20*, *24* 26:*10*, *15*, *24* 27:*9*, *18* 28:*8*, *9*, *10*, *11*, *15*, *25* 29:*2* 30:*1*, *17* 31:*13* 32:*1*, *4* 33:*6*, *19* 34:*1*, *3*, *8*, *15* 35:*24* 37:*2*, *5* 39:*6* 40:*13*, *17* 41:*17*, *20* 42:*1*, *2*, *8*, *10*, *11*, *15*, *17*, *18*, *20*, *24* 43:*7*, *12*, *25* 44:*1*, *19*, *20* 46:*24* 47:*10* 51:*25* 52:*20* 53:*4* 55:*11*, *14* 56:*8*, *12*, *21* 58:*5*, *9*, *12* 59:*8*, *11* 60:*3* 61:*11*, *12*, *21*, *24* 62:*1*, *18*, *25* 64:*11* 65:*6*, *10* 66:*16* 67:*10*, *14*, *23*, *24* 68:*4*, *10* 69:*20*, *23* 70:*1*, *4*, *14*, *18*, *20* 71:*5*, *18*, *19* 73:*1*, *8*, *9*, *16*, *18* 74:*12* 75:*2* 77:*2* 79:*5*, *19* 80:*15* 81:*14*, *25* 86:*22* 87:*6*,

*11* 88:17 98:9, *13, 23*
99:7 100:4, *9, 21*
101:*4* 102:2, 6, 7, 9,
22 105:23
**boards** 16:*10, 12*
17:2, *5, 12, 24, 25*
18:7, *9* 19:2 20:*10*
26:*19, 22* 62:8 75:5
87:7 101:2
**board's** 62:17 79:2
103:*16*
**Bob** 17:6, 7 57:20
58:*14* 66:25 67:22
**bolts** 35:*19*
**bottom** 47:22
**boxes** 99:*19, 25*
**brand** 40:*13*
**breadth** 83:*17*
**Break** 50:*4*
**Brian** 2:*20* 4:*21*
68:*15, 16* 69:3, *14, 18*
70:*3, 9, 24, 25* 71:*12*
72:*16, 22, 25* 82:7, 8
98:*20*
**Brighthouse** 16:*14, 18*
**bring** 36:7 84:*4*
91:*23*
**bringing** 19:22 20:*4*
95:*6, 8*
**brings** 8:*18* 83:*16*
91:*13, 23* 92:*16, 23*
93:8, *22* 94:*23*
**broadcast** 5:*18*
**brought** 22:17 25:*4*
**build** 22:*3*
**building** 71:*3*
**business** 20:*3* 21:*3,*
*25* 22:*1, 23* 32:6
33:*21* 36:2 39:*24*
40:5 45:*14, 17* 102:*1*
105:*17* 106:*3*
**BUTLER** 110:*3*

**< C >**
**call** 62:*11* 63:*14*
76:*12* 85:9
**called** 30:*11*
**camp** 40:*2*
**cancel** 6:*19*

**candidate** 35:*3, 5, 9*
36:*18* 38:5 39:*5*
74:25 75:*14* 76:22
86:*12* 87:9, *10, 23*
88:*1, 6* 97:*1, 9* 98:*18*
101:*4, 12*
**candidates** 12:*19, 25*
13:6, *12* 14:*17, 23*
15:*4, 10* 33:*13* 51:*17*
52:*12* 60:*18* 61:*21*
74:*3, 5, 8, 10, 18, 22*
75:6, *16, 23* 76:*18*
77:4 87:8 96:22, *23*
97:*15, 19* 98:*12, 19*
**capabilities** 21:*23*
27:*4, 13, 21, 25* 31:7
33:*19* 39:25 61:*17*
66:*17* 75:*1* 82:5, *12*
99:*17* 101:6, *9*
102:*18*
**capability** 22:5 81:*18*
**capable** 100:*22*
**Capital** 16:*15, 21*
46:*3, 18* 47:*3* 48:*12,*
*18* 50:*3* 51:*1, 5, 23*
53:8, *14* 55:*15, 23*
56:25 59:*5, 25* 60:*9*
86:*19*
**Capital/Compensation**
46:*9* 60:*5*
**Caption** 111:*3*
**captioned** 111:*8*
**care** 57:*14*
**career** 18:*3* 19:2
101:*1* 104:*1*
**Carmichael** 18:*16*
19:22 40:24 41:2, *5,*
*22* 42:6, *9* 58:5, *13*
62:*19* 67:*1, 22* 74:2,
*18* 75:*17, 22* 76:2
77:24 78:24 79:*12*
80:*18* 81:*15* 85:*19*
86:2, *3* 89:*16, 22*
96:*15, 20* 99:8 100:2,
*15* 101:22
**Carmichael's** 10:*14*
76:9 100:*11*
**CASE** 1:*9* 4:5, *8*
111:*3*

**Casualty** 101:*11*
**category** 60:*17*
**cause** 85:*20*
**caution** 40:*21*
**Center** 1:*14* 2:*14*
98:*4*
**CEO** 12:*15, 20* 13:*1,*
*7, 13* 14:*13, 18, 24*
15:*5, 11* 16:8 19:*9,*
*12, 15* 20:*1* 21:*7*
26:*12, 17, 21, 23, 24*
27:*7, 15, 25* 28:*13*
30:2, *23* 35:*4, 6, 10*
36:*19* 38:5, *9, 12, 20*
39:*3, 15* 40:*9* 42:*19,*
*20* 46:*16, 21, 25* 47:*5,*
*8* 48:*24* 49:8, *21*
50:*18, 22* 52:*17* 53:2
56:*14, 25* 58:22
59:*16, 19, 23* 60:*11,*
*23* 61:*4, 17* 62:*11, 16,*
*17, 22, 24* 63:*18* 64:2,
*13, 17, 25* 65:*7, 12, 19,*
*22* 66:*6, 12, 18* 67:*3,*
*10, 18, 25* 68:*9, 21*
69:*15* 71:*16* 74:*4, 21,*
*24* 75:*3, 13* 77:*14*
78:9, *11, 13* 79:*14, 18*
80:*15* 81:*21* 82:*20*
86:6, *14, 19* 87:*15, 23*
88:2, *7* 89:*9* 96:22
97:*3, 4* 98:*5, 17* 99:*1,*
*9* 100:*3, 19* 101:*4, 5,*
*20* 102:*3, 15, 23*
103:*2, 8, 14, 16, 17, 24*
104:*8, 21* 105:*11, 19,*
*21* 106:*1, 6, 18* 107:*6,*
*9, 12, 14*
**CEOs** 79:*15*
**CEO's** 31:*6*
**certain** 32:*17* 35:*6*
62:*13*
**certified** 5:*3*
**certify** 110:*6*
**CFO** 19:*14, 16, 17*
26:*2* 57:*16* 60:*25*
61:*9* 65:*14* 68:*11*
85:*15* 101:*10*
**Chair** 20:*18* 32:*23*
41:*8* 43:2, *20* 45:*23*

46:*4* 57:*13* 61:*7*
62:*12* 72:9 86:*19*
90:*18*
**chairman** 42:*10, 12,*
*13, 20* 43:*15, 16*
62:*19*
**chairmanship** 42:*6*
**chairperson** 42:*4*
**chairs** 46:*6* 62:*3*
**challenge** 27:5 31:*11*
42:*19* 57:8 76:24
**challenges** 69:*7*
**chance** 96:*2*
**change** 77:*2* 112:*4, 7,*
*10, 13, 16, 19, 22*
113:*4, 7, 10, 13, 16, 19,*
*22*
**changes** 111:*11, 14*
**charisma** 69:*2, 3*
**chart** 26:8 98:5
**Chase** 82:8
**chat** 91:*19*
**chatting** 105:*14*
**check** 88:*21*
**checked** 99:*19, 25*
**Chief** 16:5 58:*1*
74:4 97:*10*
**choice** 65:*15*
**choose** 103:*16*
**chose** 80:7, *11* 86:22
101:*17*
**chuckling** 74:*20*
**Cincinnati** 1:*20* 2:*7,*
*15*
**Cioffi** 2:*9* 3:*4* 4:*16*
5:*15, 21, 25* 6:5, *14,*
*21* 7:*6* 9:2, *16, 25*
10:5, *10, 15, 20* 11:*9*
23:*4, 6, 9* 38:*14, 24*
64:*4, 7* 68:*7* 71:*21,*
*24* 72:*6* 77:*12* 78:*2*
80:*22, 25* 81:*3, 5, 10*
84:*1, 9, 13, 23* 85:*1*
87:*1* 88:*8, 13* 90:22
91:*7, 15, 25* 92:*24*
93:25 94:*3, 10, 25*
95:*10, 14, 24* 96:5, *9*
100:*7* 103:*3* 104:*9,*
*12, 22, 25* 105:*4*

Case: 1:21-cv-00238-MRB Doc #: 66-5 Filed: 08/02/24 Page: 40 of 53 PAGEID #: 2996

Deposition of Eileen A. Mallesch                                    Philip R. McHugh v. Fifth Third Bancorp, et al.

106:7, 9, 19   108:15
**Cioffi's**   9:12
**City**   8:16
**Civil**   110:19
**claim**   90:15, 21
 91:13, 18, 24   92:16,
 23   93:8, 22   94:23
 95:8
**claims**   90:17
**clarification**   57:18
**Clarify**   107:3
**clear**   6:22   9:17
 30:16
**clearer**   7:21
**closing**   43:4
**coach**   39:23
**coaching**   39:19
**cocktail**   28:14   34:3
 37:21   41:18, 21
 43:25   44:12, 14, 20
 54:10, 11, 20   70:8, 13
 71:4, 11   105:15, 24
 106:16
**College**   8:17   18:1, 5
**Collin**   2:12   4:17
**Collin.hart@blankrom**
**e.com**   2:16
**color**   36:6   81:22
**Columbus**   18:1, 5
**come**   27:18   36:5
 37:16   70:7
**comfort**   64:19
**comfortable**   39:25
**comforted**   60:25
**coming**   56:14   61:20
**Commencing**   1:14
**comment**   103:8
 107:25
**commented**   40:8
**comments**   76:9
**commercial**   29:11
**Commission**   110:25
**commissioned**   110:5
**Committee**   20:17, 18
 21:14, 17, 19   22:7
 24:21   25:18   45:20
 46:5, 6, 9, 13, 19   47:3,
 4, 6, 10, 13   48:11, 18
 50:4   51:2, 6, 24
 52:19   53:8, 14   57:9,

16   59:6   60:1, 6, 10
 61:25   62:2   70:15, 19
**committees**   46:1, 7
 62:3   72:10
**Communicate**   11:22,
 25   41:4   78:25   87:25
 88:5
**communicated**   108:11
**communicating**   33:20
 55:8
**Communication**   14:6
 33:22, 25   49:12
 50:10   58:22   59:4
 65:1, 5   68:22   71:15
 87:19
**Communications**
 11:22, 25   12:12, 18
 13:17, 21   14:1   41:22
 61:8   68:12
**communicator**   68:13,
 17
**community**   82:6
**companies**   16:15
 75:7
**company**   16:8   19:14
 21:22   22:4   26:19
 27:9   65:23   69:6
 74:21   75:5   79:18
 101:21   104:7   107:8
**company's**   26:22
**comparison**   84:16
**compensated**   101:17
 108:4
**Compensation**   46:3,
 19   47:3   48:12   50:3
 51:2, 6, 24   53:8, 14
 56:25   59:6   60:1, 10
 86:20
**competition**   99:21
**competitive**   83:17, 22
**complete**   72:14
**Compliance**   46:4
**concerns**   41:13
**CONCLUDED**   109:8
**conclusion**   91:1
**confidential**   6:6
**conflicting**   18:8
**connected**   18:15
**Connie**   1:22

**consensus**   102:22
**consider**   99:9, 14
**considered**   58:11
 87:22   101:3
**consistent**   33:5
**constantly**   20:19
**constitute**   110:10
**consultant**   86:11
**Consumer**   29:7, 11,
 14
**contacted**   18:13, 18
**context**   46:24   94:7
**continual**   20:19
**continually**   20:12
 47:1   83:9
**continue**   11:15
 95:21   96:1   108:16
**Continued**   108:14
**continuing**   20:21
 97:17   98:10
**contract**   110:19
**control**   11:14   41:15
**Controller**   26:3
 57:15
**controls**   57:17
**conversation**   37:20
 41:21   71:7   86:1
 89:21
**conversations**   79:8
 83:21
**coordination**   86:18
**corner**   47:23
**Corporate**   20:11, 15
 103:19   104:4
**correct**   5:19   6:4, 11
 27:14   30:15, 19   34:5,
 20, 25   36:25   37:21
 41:23, 24   42:11
 45:21, 22   48:15, 16,
 21, 22   49:1, 2, 23
 51:3   52:13   53:20
 54:21   55:12, 13, 18,
 19   56:2, 3, 6, 10
 57:23, 24   58:1, 2, 5, 6,
 23, 24   59:2, 6, 7, 11,
 12, 17, 18, 22   60:1, 6,
 7, 13, 19, 20   72:23, 24
 73:10, 20, 21   75:15
 76:5, 6   78:20   83:24
 88:17   98:11, 16

**consensus**
100:4, 5   103:9, 14
 106:18   107:22, 23, 24
 110:10
**corrected**   58:13
**corrections**   111:11
**correspondence**   12:1
**Counsel**   5:15   9:4
 11:9   110:16
**counterclaim**   90:14,
 24   91:16
**COUNTY**   110:3
**couple**   22:17   23:16,
 17   34:11
**course**   16:16   19:16
 41:12   95:19
**COURT**   1:1   4:7, 23
 7:12   96:4   110:18
**COVID**   17:22   41:9
**CPA**   20:20
**crafts**   75:8
**create**   62:13
**created**   14:10   69:3
**credible**   27:5   31:11
 42:18   57:7
**credit**   72:12
**credits**   20:21
**critical**   26:24   32:12
 39:15   65:2, 4   71:16
**criticisms**   32:21
**crossed**   45:16
**cuff**   39:8
**current**   20:18   29:13
 63:19   83:9   99:23, 24
**currently**   15:20
 16:10, 12
**custody**   11:13
**customer**   31:19   45:9

**< D >**
**data**   36:8
**Date**   1:14   24:24
 42:7   109:5   111:2
**dated**   50:5   55:10
**day**   6:25   16:2   27:3
 28:5   36:14   58:11
 63:8, 10   64:20   80:1,
 11   89:2, 5, 6   110:23
 111:16
**days**   22:17   49:18

**December** 30:*18*
37:6 47:*12* 52:2
53:*4, 19* 55:25 56:*8,*
*9* 59:*10* 71:*18* 72:2
73:*17* 78:*20*
**decided** 78:7, *10*
86:*17*
**decision** 36:22 78:*20,*
*21* 87:*13*
**decisions** 63:*11*
**deck** 30:*11, 17, 21*
31:*3, 5* 45:4 56:2, *19,*
*22* 58:4 72:*3*
**DECLARATION**
111:*5*
**declare** 111:*6*
**dedicate** 56:*24*
**deep** 35:*23* 102:*19*
**deeper** 68:22
**deeply** 19:*15*
**Defendants** 1:*11* 2:*9*
*4:18, 21*
**defer** 73:7
**defined** 110:*19*
**definitely** 89:*12*
**definition** 11:*21* 12:9
**Degree** 8:*11, 12*
**deliberating** 99:*8*
**deliberations** 99:*11*
100:2
**deliver** 6:*25*
**delivered** 94:*5*
**demands** 12:6
**demonstrate** 75:*1*
**demonstrated** 64:*24*
80:6
**demonstrating** 61:*10*
**depending** 21:*14*
**Deponent** 2:*9* 110:*12*
**depose** 96:2
**deposed** 5:*4*
**Deposition** 1:*14* 3:8,
*9, 10, 11, 12* 4:4 5:*12*
7:4 9:*1, 24* 10:4, *9,*
*14, 19, 22* 11:2 47:*16*
54:*1, 3, 7, 23* 55:*1*
73:4 90:5, *7, 11* 96:*1*
108:*18* 109:8 110:7,
*12* 111:*1, 8, 12* 112:*1*

113:*1*
**depositions** 11:*10*
**depth** 67:*12* 75:2
83:*17*
**describe** 72:*20*
**described** 73:*3*
**description** 27:*24*
**Design** 18:*1, 5*
**desire** 103:*24* 104:*8,*
*16, 21*
**desires** 79:2 105:*1*
**details** 24:*14* 71:8
**determination** 35:2
36:*11* 69:*11, 17*
100:*10*
**determine** 19:*25*
35:*9* 42:*23* 43:6, *11*
51:*9*
**determined** 23:*24*
36:*18* 38:4 60:*21*
**determining** 38:*19*
46:*10, 15, 20*
**develop** 38:8 40:*8,*
*15, 22* 77:5 78:*17*
79:*6, 13* 80:*19* 81:*15*
**developed** 19:*19* 77:8
**developing** 39:*10*
74:*16, 23* 76:*14*
77:22 78:5 79:*10*
**Development** 13:*5*
15:4 74:7 75:*12*
76:*11, 21* 77:9, *23*
78:22 96:*25* 102:8
**developments** 100:*25*
**dialogue** 36:6
**differences** 80:*10*
**different** 22:6 24:*20*
49:*21* 71:5
**difficult** 7:*15*
**digital** 80:*3* 82:*4, 14*
83:*4, 15* 99:*21* 101:*9*
**Dimon** 83:*12, 13, 14,*
*15, 24* 84:5, *6, 8, 18,*
*19, 21* 85:*4, 9, 10, 13,*
*16*
**dinner** 28:9, *11, 16*
34:*2, 3* 37:*21, 22, 24*
41:*17, 20* 44:*20*
54:*16, 19* 70:*14*
107:*21*

**dinners** 37:*25* 44:*1*
70:*18*
**direct** 29:*16* 44:*4*
100:*15*
**directed** 9:*10, 17*
**directer** 21:22 22:*4*
**Director** 12:*12* 13:*11*
15:*9* 19:*9* 22:2
26:*24* 31:*14* 39:*14*
42:8 43:*1, 16* 50:*9,*
*12* 78:*21* 79:7 86:*18*
**Directors** 20:*11, 15*
24:2 55:*15* 71:*1*
79:7
**disagree** 10:*19* 84:*25*
85:2 104:*11*
**disclosure** 12:*1*
**discrimination** 90:*15,*
*21* 91:*14, 24* 92:*16,*
*23* 93:8, *23* 94:*23*
95:*9*
**discuss** 44:*15* 51:*14*
102:*5*
**discussed** 8:*19, 22*
67:4 68:*4* 74:6, *11,*
*18* 76:*20* 96:*24*
100:*3*
**discussing** 99:*7*
**discussion** 31:*11*
43:*15* 47:*12* 48:*25*
65:*18* 68:*11, 14*
74:*15* 81:*3, 5* 98:*3*
**discussions** 12:*5*
20:*12* 39:*13* 68:6
97:*2, 3* 98:8 99:*11*
100:*1, 8, 14* 102:*10*
**disrupted** 80:*3*
**disruption** 83:*18*
101:*8*
**distance** 87:*9*
**distraction** 62:*13*
**DISTRICT** 1:*1, 2*
4:7, *8*
**DIVISION** 1:*3* 4:8
**divisions** 31:*23*
32:*20, 22* 33:*14, 15*
45:*13*
**Document** 12:*4*
30:*22* 47:*21* 48:*5*
49:*15* 50:8 52:*18, 25*

55:6 56:*11, 17* 62:*9*
63:*2, 23* 72:*15* 73:*15*
76:*24* 93:*10, 12, 15*
97:*20, 22*
**documentation** 29:*23*
30:*5* 45:*2* 71:*18*
72:*4*
**Documents** 11:*3, 6,*
*13* 12:*16, 21* 13:2, *7,*
*14, 18, 23* 14:*3, 7, 9,*
*14, 18, 25* 15:*6, 12, 15,*
*18* 43:7 72:*9, 11*
**doing** 20:*12* 41:*13*
43:*20* 52:*19* 77:*21*
83:*14, 15* 101:*5*
**doubt** 65:*1*
**draft** 67:*23*
**drives** 63:*11*
**driving** 63:*21*
**due** 83:*19*
**duly** 5:2 110:*4, 8*
**Dust** 62:*4*
**duty** 61:*19* 67:*15*

**< E >**
**earlier** 45:4 79:*1*
81:*13* 85:*17, 20* 86:*4*
87:7, *12, 24* 97:*20, 22*
99:*15* 100:*21*
**early** 87:*16* 104:*1*
**East** 2:*14*
**edited** 75:*9*
**education** 8:*10*
20:*20, 21*
**effective** 16:*2*
**effectively** 36:*9*
63:*18* 69:2
**efforts** 41:*11* 78:22
**ego** 101:*20* 103:8
105:*10*
**EILEEN** 1:*14* 3:*3*
4:*4, 18* 5:*1, 10* 109:*3*
110:7 111:*19* 112:*24*
113:*24*
**either** 34:*1* 35:*4, 16*
38:*1* 53:*11* 76:*14*
85:*16* 89:*12* 102:*15*
108:*9*
**element** 21:*5* 29:*14*

**Elements** 49:*12*
50:*10* 58:23
**Email** 2:8, *16* 12:*3*
48:*11, 13, 23* 55:8, 22
57:*3, 18*
**emails** 48:*14*
**email's** 48:*14*
**emallesch@gmail.com**
48:*16*
**emergency** 46:*10, 15,*
*20* 47:8 48:25 49:9
50:*18, 22* 52:*17* 53:*2,*
*15* 58:22 59:*16, 19,*
*23* 60:*11, 22* 61:2, *4*
*62:1, 24* 64:*1, 9, 13,*
*17, 24* 65:*7, 12, 19, 22,*
*24* 66:2, *6, 12, 18*
67:*3, 11* 68:9 77:*15*
97:*4, 16* 98:8, *13*
101:*13*
**emphasized** 76:*13*
**employed** 15:*20*
**employee** 31:*16* 45:6
91:*13, 23* 92:*10, 15,*
*23* 93:7, *22* 94:22
110:*16*
**employees** 8:*23*
**energy** 35:*13* 76:*14*
106:*2*
**engaged** 42:*14, 17*
**engagement** 31:*16*
45:6
**ensure** 19:*6* 22:22
42:*21* 71:4 78:4
**ensuring** 39:*15*
41:*14* 47:5
**Enterprise** 21:*13, 16,*
*19* 22:6 24:*21* 25:*18,*
*24* 26:8 57:9, *16*
70:*15, 19*
**entire** 40:*10* 52:*24,*
*25* 56:*18* 111:*7*
**entirely** 41:*10* 56:*16*
**entitled** 50:*3*
**envelope** 62:*12*
**environment** 62:*23*
63:*12, 20* 99:*20, 23,*
*24*

**equally** 21:2, *4*
40:*18* 47:*11* 61:*14*
69:*21* 71:*1* 100:*24*
**Erie** 2:*6*
**ERRATA** 111:*1, 13*
112:*1* 113:*1*
**especially** 69:*7*
**Esq** 2:*1, 4, 5, 9, 12, 19,*
*20*
**established** 61:*25*
**estimated** 36:*21*
**et** 1:*10* 4:6 111:*4*
**evaluate** 21:*7*
**evaluated** 75:*2*
**evaluating** 22:*23*
31:7 61:*17* 66:*15*
71:*20* 99:*16*
**evaluation** 105:*10*
**Evans** 17:*6, 7*
**evidence** 64:8 70:*4*
71:*13* 87:*3* 90:*25*
**exact** 24:*17* 29:*10*
**Examination** 3:*4, 5*
5:5 96:8 103:*5*
**examined** 5:*3*
**example** 20:*14, 17*
39:*12* 51:*16* 57:*13,*
*17* 63:*13* 81:*19*
101:*1*
**examples** 107:*6*
**exchange** 12:*1*
**Excuse** 15:*3* 57:*19*
102:*11*
**executing** 45:*16* 80:9
**executive** 22:*20*
32:*16* 39:*6, 13, 17, 22*
40:7 42:*20, 25* 43:*4*
47:*13* 50:4 51:*24*
53:*3* 55:9, *15, 23*
57:8 58:7, *10* 65:*13*
67:*3, 13* 68:5 74:*4*
75:*10, 11* 79:*4, 11*
80:*18, 20, 23* 81:2, *14*
89:7 97:*10*
**executives** 30:*1*
56:*17* 108:*12*
**exercise** 102:*1*
**exercised** 67:*15*
**Exhibit** 3:*8, 9, 10, 11,*
*12* 10:22 11:*1, 4, 18*

35:*25* 47:*16, 20* 48:9
49:*5* 54:*23* 55:*1, 5,*
*14, 20* 56:*12* 71:*17*
72:*4, 21* 73:*4, 12, 23*
96:*10* 97:22 98:*4, 24*
**exhibiting** 35:*13*
81:*18*
**EXHIBITS** 3:7 55:5
75:*19* 87:*11* 99:*6*
**exist** 11:*13*
**existing** 31:*6*
**Expand** 29:*24* 70:*14*
**expanded** 78:*14*
**expanding** 42:*17*
**expect** 61:*20*
**experience** 20:*4, 5*
31:*19* 45:9 68:*23*
74:*21* 79:*15*
**Expires** 110:*25*
**explain** 49:*14* 50:7
**explicit** 49:*24*
**express** 102:*10*
**extent** 8:9 11:*12*
91:*11* 92:6 93:*19*
**external** 61:8 68:*12*
86:*11, 12*
**externally** 78:*17*
**extra** 22:*21*
**extremely** 68:*8*

**< F >**
**fabulous** 68:*13*
**faces** 69:*8*
**facing** 99:*20* 101:*7*
**fact** 20:9 70:*21* 77:*1*
**factor** 99:*10* 100:*10*
**facts** 13:*10* 15:*8*
64:7 87:*2* 90:*24*
**failing** 42:*5* 57:*1*
89:*13*
**fair** 83:*23*
**far** 82:*20*
**Farms** 17:*6*
**faster** 82:*2*
**feedback** 40:*2, 20*
43:*5*
**feel** 7:*11*
**feeling** 79:*9*
**fell** 40:*1*

**felt** 32:*17* 64:*1*
65:*14* 78:22 79:*22,*
*24* 82:22
**fiduciary** 47:*4*
**FIFTH** 1:*10, 14* 2:*14,*
*19, 20* 4:6 8:*20, 23*
11:*14* 12:*13, 15, 20*
13:*1, 7, 13* 14:*13, 18,*
*24* 15:*5, 11* 16:*16, 24*
18:*14, 17, 19* 20:*2, 8,*
*14, 24* 21:*5* 22:*3, 17*
25:*20* 26:*10, 16* 27:*8,*
*10, 16* 28:*1, 13, 24*
30:*24* 33:*3* 35:*4, 10,*
*23* 36:*19* 38:*6, 12, 19,*
*21* 39:*22* 40:*11*
41:*12* 46:2, *11, 16, 21*
50:*19, 23* 53:*8, 15*
57:*10* 78:9 80:5, *10*
84:*5* 86:*15* 87:*23*
88:2, *7* 90:*14* 102:*20*
105:*12* 111:*4*
**FIFTHTHIRD-**
**MCHUE-000254**
73:*23*
**FIFTHTHIRD-**
**MCHUE-001143**
66:*20*
**FIFTHTHIRD-**
**MCHUGH** 66:*20*
67:*16*
**FIFTHTHIRD-**
**MCHUGH-000253**
73:*13*
**FIFTHTHIRD-**
**MCHUGH-000265**
73:*14*
**FIFTHTHIRD-**
**MCHUGH-001105**
55:*17*
**FIFTHTHIRD-**
**MCHUGH-001141**
67:*20*
**FIFTHTHIRD-**
**MCHUGH-001143**
59:*14*
**FIFTHTHIRD-**
**MCHUGH-001148**
60:*15*

FIFTHTHIRD-
MCHUGH-001150
  59:*20*
FIFTHTHIRD-
MCHUGH-001151
  58:*17, 21*
FIFTHTHIRD-
MCHUGH-001154
  55:*18* 59:*1*
FIFTHTHIRD-
MCHUGH-00141
  68:*1*
FIFTHTHIRD-
MCHUGH-006592
  48:*1*
FIFTHTHIRD-
MCHUGH-006594
  49:*4*
FIFTHTHIRD-
MCHUGH-006603
  52:*13*
FIFTHTHIRD-
MCHUGH-006604
  48:*3* 49:*5*
**filed** 90:*14* 91:*18*
**filing** 90:*15*
**filter** 61:*7*
**final** 12:*24* 14:*22*
  53:*4* 55:*9*
**finance** 22:*11, 20, 21*
  33:*7* 46:*6* 61:*25*
  62:*2*
**Financial** 16:*5, 14, 18*
  17:*13, 15* 22:*24* 23:*1,*
  *2* 31:*21* 32:*12, 19, 21,*
  *24* 33:*1, 3, 7, 10, 15*
  45:*12* 57:*17* 80:*1*
  101:*7*
**financials** 29:*13*
**find** 48:*24*
**finish** 7:*19*
**finished** 99:*6*
**Fintech** 80:*3* 83:*19*
  99:*21* 101:*9*
**firm** 18:*15* 110:*18*
**first** 5:*2* 12:*11* 16:*2,*
  *23* 18:*13, 18* 24:*18*
  25:*2, 6* 36:*11* 37:*11*
  47:*25* 48:*9, 10, 15*
  80:*14* 81:*23* 86:*23*

87:*10* 89:*2, 5* 96:*18*
  110:*8*
**five** 26:*21*
**focus** 29:*12* 35:*13*
  38:*21* 74:*15* 75:*11*
  78:*4*
**focused** 61:*7*
**folks** 22:*18* 25:*3*
  26:*7* 37:*17* 65:*14*
  70:*7, 13, 18* 81:*20*
  86:*21*
**follow** 68:*18* 69:*15*
**follows** 5:*4* 24:*14*
**followship** 69:*3*
**follow-through** 39:*4*
**follow-up** 89:*7*
**foregoing** 110:*10*
**foresight** 35:*17, 21*
  99:*18*
**forgetting** 53:*12* 57:*4*
**forgive** 29:*9* 57:*4*
**form** 12:*4* 38:*14*
  64:*4* 68:*2* 71:*21*
  77:*12* 80:*22* 84:*1, 9,*
  *23* 87:*1* 88:*8* 90:*22*
  93:*10, 25* 94:*4* 97:*5*
  100:*17* 106:*9*
**formality** 42:*15*
**Forrest** 23:*11, 14*
  24:*15* 25:*23* 51:*18*
  52:*15, 23*
**forth** 50:*8, 18* 51:*10*
**foundation** 22:*4*
  88:*9* 104:*23*
**four** 99:*15*
**fourth** 92:*25*
**four-year** 34:*23*
**frame** 100:*16*
**framework** 66:*12*
**Frank** 23:*11* 24:*15*
  25:*23* 51:*17* 52:*15,*
  *23*
**Frankly** 37:*10* 38:*1*
  40:*1, 10* 62:*8* 79:*21*
  83:*11, 13, 25* 84:*3*
  104:*18*
**free** 7:*11*
**frequently** 53:*13*
  70:*20* 72:*25*

**front** 48:*6*
**frustrating** 39:*21*
**full** 35:*15* 47:*10*
  51:*25* 52:*20* 59:*8*
  60:*3* 79:*5* 96:*13*
**fully** 47:*14* 51:*15*
**functions** 22:*10, 12*
**Further** 3:*5* 36:*7*
  103:*3, 5* 106:*12*
  108:*17*
**future** 38:*9*

**< G >**
**Gahanna** 8:*1*
**gaining** 21:*22* 33:*4*
**gap** 87:*10*
**Gary** 9:*24* 48:*19*
**GE** 19:*17*
**generally** 93:*19*
**Genworth** 19:*17*
**getting** 20:*19, 20*
  80:*7, 10* 86:*21*
**give** 7:*24* 35:*14*
  36:*6, 13, 17* 40:*2*
  43:*4* 81:*22* 106:*12*
**given** 78:*14* 110:*11*
**gives** 39:*8*
**giving** 36:*1, 2* 110:*6*
**Glass** 17:*19, 21* 50:*4*
**global** 20:*16* 33:*9*
**go** 5:*7* 7:*24* 18:*22,*
  *25* 20:*16* 51:*14, 16*
  52:*10* 53:*5, 21* 71:*3*
  75:*25* 79:*15* 83:*10*
  84:*6, 12* 90:*1* 93:*3*
  94:*12* 96:*18* 97:*6*
  107:*2*
**goals** 31:*22* 45:*12*
**goes** 50:*25* 58:*25*
**going** 7:*8* 9:*7* 11:*17*
  24:*13* 26:*5* 41:*9, 11*
  51:*20* 57:*14* 62:*22*
  63:*11, 19* 68:*8* 75:*9*
  77:*14, 20* 78:*16, 17*
  79:*24* 80:*4, 6* 81:*21*
  82:*1, 13* 83:*18* 94:*17*
  99:*5* 108:*1*
**good** 27:*2* 42:*18*
  63:*2, 23* 79:*17*

101:*21*
**gosh** 39:*18*
**governance** 24:*16*
  47:*4* 63:*2, 24* 72:*13*
**governing** 63:*23*
**Great** 20:*9* 69:*22*
  75:*4* 82:*9, 22* 101:*24*
**Greg** 10:*14* 18:*16*
  19:*22* 40:*18, 23, 24*
  41:*2, 5* 42:*5, 9* 43:*1*
  57:*6* 58:*13* 62:*19*
  67:*1, 22* 68:*18* 70:*13*
  75:*22* 76:*2* 78:*24*
  79:*9, 12* 80:*12, 18*
  81:*15, 22* 85:*18* 86:*2,*
  *3* 87:*14* 89:*16, 22*
  99:*8* 100:*2, 11, 15*
  101:*22*
**Greg's** 42:*16*
**Group** 16:*15, 21*
**grow** 40:*20*
**guess** 66:*24*
**guy** 39:*10* 40:*9*

**< H >**
**half** 100:*16*
**Hamilton** 110:*22*
**hand** 110:*22*
**handed** 47:*19* 55:*4*
  73:*11*
**handing** 10:*25*
**happen** 52:*3* 75:*5*
**happened** 52:*5*
  63:*13, 16* 82:*8*
**happens** 101:*10*
**happy** 68:*11*
**Hart** 2:*12* 4:*17*
**Hazel** 26:*2* 57:*15*
**HCCC** 46:*14*
**head** 7:*15* 22:*10*
  56:*25* 57:*25* 58:*20*
**healthy** 42:*21*
**hear** 7:*10* 40:*12, 17*
**heard** 30:*13* 56:*4*
  65:*13* 83:*20* 107:*9*
**hearing** 65:*16*
**heavy** 47:*2*
**held** 16:*3*
**hello** 37:*17*

**help** 24:*10* 36:*7* 39:*20, 24* 40:*3, 21* 85:*5* 93:*11*
**helping** 22:*2*
**Heminger's** 9:*24*
**Herbert** 8:*17*
**hereinafter** 5:*3*
**hereof** 111:*13*
**hereunto** 110:*21*
**Hey** 5:*15*
**highest** 35:*14*
**highlighted** 52:*22*
**highly** 40:*18* 70:*10* 101:*16, 17* 108:*3*
**hindsight** 35:*17, 18* 99:*18*
**hired** 19:*20*
**hit** 17:*23*
**Hoffman** 44:*8, 9, 11, 16*
**hold** 79:*25* 81:*19*
**holds** 62:*12*
**honest** 22:*9*
**honored** 101:*5*
**horrible** 26:*3*
**host** 6:*19*
**hour** 23:*15, 19* 24:*5* 28:*14* 41:*18, 21* 44:*12, 14, 20* 70:*8* 71:*4*
**hours** 23:*16, 17, 18, 19* 44:*1* 70:*13* 105:*15*
**HR** 57:*4, 5*
**huge** 99:*21*
**Human** 46:*3, 9, 18* 47:*3* 48:*12, 18* 50:*3* 51:*1, 5, 23* 53:*8, 14* 55:*15, 23* 56:*25* 57:*25* 58:*1* 59:*5, 25* 60:*5, 9* 86:*19*
**humbling** 19:*1*
**husband** 8:*6*
**hygiene** 63:*2, 24*
**hypothetical** 94:*6, 8*

**< I >**
**idea** 83:*6*

**identification** 10:*23* 12:*25* 14:*23* 47:*17* 54:*24* 55:*2* 73:*5*
**identified** 12:*19* 14:*16* 17:*3* 66:*1, 8, 19* 67:*25* 85:*7*
**identify** 48:*8* 49:*3* 55:*6, 20* 57:*19* 67:*16* 73:*14*
**identifying** 13:*12* 15:*10*
**immediate** 30:*7*
**immediately** 31:*9*
**importance** 19:*5*
**important** 19:*8* 21:*21* 39:*14*
**impressed** 40:*11*
**impressive** 40:*17* 69:*9* 71:*9*
**incapability** 61:*10*
**include** 70:*14* 95:*22* 97:*2*
**included** 27:*23* 43:*2* 74:*13*
**including** 12:*4* 74:*5* 96:*23*
**incorrect** 90:*25*
**independent** 42:*8* 43:*16* 79:*7* 86:*18*
**indicate** 65:*6, 10* 66:*13* 106:*17*
**indicated** 33:*25* 38:*18* 60:*9* 63:*25* 70:*11* 76:*18* 79:*12* 80:*17, 19* 81:*13, 15* 85:*19, 24* 86:*2* 87:*11* 89:*17, 22* 94:*20* 100:*20* 101:*22* 103:*7* 107:*14* 111:*12*
**indicates** 48:*23*
**indication** 73:*8*
**indicators** 87:*17*
**individual** 19:*21* 30:*23* 31:*10* 39:*19* 45:*11* 57:*6* 66:*7* 68:*16*
**individuals** 20:*7* 66:*1, 8, 14* 72:*15* 108:*4*

**industry** 82:*9*
**inform** 86:*22*
**information** 6:*6* 12:*2* 51:*10* 52:*22* 56:*23* 58:*4*
**informed** 87:*12*
**Infrequently** 41:*7*
**initially** 22:*16* 45:*15*
**initiated** 74:*2* 96:*16, 21*
**initiative** 45:*18*
**initiatives** 45:*16*
**inquiries** 12:*6*
**insight** 35:*17, 21* 36:*3* 39:*8* 99:*18*
**insights** 40:*4*
**inspired** 69:*4, 11, 13, 18* 70:*5, 9* 71:*14*
**inspiring** 71:*6*
**instruct** 9:*7, 18* 10:*1, 6, 11, 16, 21*
**instruction** 9:*12*
**instructions** 7:*22*
**Insurance** 15:*23, 25* 16:*4, 6* 19:*18* 101:*3, 11*
**interact** 28:*6* 37:*14*
**interacted** 28:*8* 34:*14*
**interacting** 35:*7* 71:*9*
**interaction** 27:*1, 11* 37:*16* 107:*15*
**interactions** 27:*21* 28:*10, 11* 34:*21* 36:*24* 37:*9* 70:*22, 23* 71:*12*
**interest** 110:*16*
**interested** 107:*14*
**interim** 47:*8* 49:*8* 61:*9, 11* 63:*21* 78:*13* 79:*20* 86:*5* 97:*16*
**internal** 35:*23* 39:*4* 41:*15* 72:*12* 78:*16* 102:*19*
**interpreted** 106:*5*
**interview** 29:*15*
**introduce** 4:*10*
**involved** 25:*19*
**involvement** 46:*10*
**issue** 102:*6*

**issues** 79:*1* 85:*19* 95:*22*
**its** 20:*24* 47:*4* 49:*16* 67:*15*

**< J >**
**Jackson** 1:*20* 110:*4*
**Jamie** 83:*12, 13, 14, 15, 24* 84:*5, 6, 8, 18, 19, 21* 85:*4, 9, 10, 13, 16*
**Jms@sspfirm.com** 2:*8*
**job** 103:*25* 104:*3*
**jobs** 104:*2*
**join** 16:*23*
**joined** 17:*9* 18:*20* 37:*5*
**joining** 18:*14, 19*
**joint** 4:*20*
**joke** 68:*17*
**Joshua** 2:*4* 4:*14*
**Journal** 83:*8*
**JPMorgan** 82:*8*
**judgment** 9:*5* 20:*4* 102:*2*
**July** 1:*14* 4:*2* 110:*23* 111:*2*
**June** 88:*22, 24*

**< K >**
**keep** 24:*6* 87:*14* 101:*14*
**key** 22:*12* 74:*7* 76:*11, 21* 77:*9, 23* 96:*25*
**kick** 22:*18*
**kicks** 42:*13* 58:*11*
**kid** 82:*11*
**know** 6:*5, 13, 14, 17* 7:*1* 21:*6* 26:*20* 39:*23, 24* 43:*14, 17* 53:*1* 61:*12* 65:*25* 66:*10* 67:*19* 70:*12* 74:*17* 79:*8, 9* 81:*25* 86:*8* 87:*3* 88:*10, 15* 91:*3, 18* 92:*14* 95:*25* 101:*10* 104:*25* 108:*10*

Deposition of Eileen A. Mallesch                                    Philip R. McHugh v. Fifth Third Bancorp, et al.

**knowledge** 35:*23*
92:6 93:*20* 94:2
102:*19*
**KPIs** 45:*18*

**< L >**
**L.P.A** 2:6
**lack** 88:9 104:*18*, *19*,
*22*
**Lamb** 68:*15*, *16* 69:*3*,
*14*, *18* 70:*3*, *24*, *25*
71:*12* 72:*16*, *23* 73:*1*,
*19* 82:7, *8* 98:*20*
**landscape** 83:*18*
**larger** 70:*18*
**late** 38:*1*
**lawful** 5:2
**lawyer** 6:*1*, *3* 91:*3*
92:*1*, *6*
**lead** 42:8 43:*1*, *16*
79:7 86:*18*
**leader** 19:*19*, *21*
22:5 27:4, *19*, *20*
35:*16*, *18*, *20* 40:*18*
57:4, *5* 58:*15* 61:*13*
69:6, *7* 71:2, *14*
72:*11*, *12* 80:4, *8*
99:*16*
**leaders** 21:*3*, 9, *11*, *17*,
*24* 22:*13*, *21*, *22* 27:2,
*12*, *17*, *22*, *24* 28:7
32:*17* 39:*21* 56:*15*
62:*13*
**leadership** 41:*16*
69:*1*, *4*, *11*, *18* 70:*5*
74:*24*
**learn** 40:*20*
**learning** 22:*1*
**leave** 49:22 89:2, *17*
101:*17*
**leaving** 89:*18*, *23*
**left** 53:*12*
**legal** 22:*11* 24:*1*, *16*
26:5 90:*25* 91:*1*
**Lehman** 8:*17*
**length** 37:*23*
**letting** 42:*19*
**level** 44:*13* 57:*11*, *12*
81:*18*

**levers** 101:*12*
**Libbey** 17:*19*, *21*
**life** 71:*8*
**lifting** 47:2
**lights** 101:*14*
**likes** 74:*21*
**limited** 12:5 33:2
69:*19*
**line** 19:*25* 32:5
33:*21* 45:*14*
**lines** 29:8 45:*17*
**lining** 31:9
**listed** 26:*20* 60:*25*
61:*14* 65:*11*
**listen** 6:9 32:*15*
**listening** 69:*14*
**litigation** 8:*18*, *19*, 22
110:*15*, *17*
**live** 8:5 103:*20*
**lived** 8:*3*
**LLP** 2:*13*
**logic** 50:*14*
**logical** 39:*3* 50:*12*
**long** 8:*3*, *7* 16:*17*, *20*
19:*5* 24:*19* 25:*14*
53:*7* 104:*7*
**longer** 98:*21*
**long-term** 40:*14*
68:*20*
**long-winded** 95:*3*
**look** 21:*16* 26:7
30:9 31:*5*, *9* 32:*24*
35:*20* 52:*24* 56:*15*
63:*13* 72:9, *10* 80:6
84:*4* 97:*23*, *25*
**looked** 72:*17*
**looking** 30:*1* 35:*16*
50:*10* 61:*1* 79:*5*, *17*,
*23*
**looks** 48:*10*, *11* 55:9
**losing** 79:*25*
**lost** 82:*7*
**lot** 9:*19* 26:5 41:*9*,
*13* 80:*13*
**luxury** 75:*4*, *6*

**< M >**
**M&A** 17:*10* 79:*17*
81:*19*, *21*

**Mackenzie** 19:*21*
**Madness** 63:*15*
**mail** 12:*3*
**majority** 68:*10*
**making** 36:22 39:9
41:*14* 80:*10* 90:*20*
95:*3* 100:*10*
**MALLESCH** 1:*14*
3:*3* 4:5, *19* 5:*1*, 7, *10*
7:8 10:*25* 11:*17*
37:2 47:*19* 54:9
55:*4* 73:*11* 90:*13*
96:5 103:7 109:*3*
110:7 111:*19* 112:*24*
113:*24*
**M-a-l-l-e-s-c-h** 5:*11*
**managed** 32:*13*, *20*,
*22*
**management** 19:*4*
27:*5*, *6* 31:8 32:*25*
43:8, *10*, *12* 47:6, *15*
50:*15* 51:*13*, *17*
52:*12* 55:9, *16*, *24*
56:*16*, *17*, *23* 58:*12*
60:*18* 62:5 66:22, *23*
67:*21* 75:7, *8* 76:*23*,
*24*, *25* 77:2, 7, *20*
87:9 91:*19*
**management's** 46:*12*
**manipulated** 7:2
**March** 63:*14*, *15*
**Mark** 26:2 54:22
57:*15*
**MARKED** 3:7 10:22
11:*1* 47:*16*, *20* 49:4
54:*23* 55:*1*, *5* 72:*3*
73:4, *12*
**market** 80:*8*
**married** 8:7
**Marsha** 10:4 18:*16*
42:*3* 43:*1* 79:6
87:*14*
**Marsha's** 42:*16*
**material** 9:9, *10*, *19*
**materials** 24:8, 9, *12*,
*14* 48:*24*
**math** 34:*13* 73:2
**matter** 19:7 111:*8*
**maximum** 34:*20*

**McCallister** 86:*20*
87:*14*
**McCallister's** 9:*1*, *13*,
*14* 10:*19*
**MCHUGH** 1:7 2:*19*
4:6, *13*, *15* 13:*17*
14:2 15:*14* 23:*20*
27:*23* 28:*12*, *19*, *23*
30:6 32:*14*, *20*, *22*
34:8 35:*3* 36:*12*, *17*
37:9, *14* 38:4 54:*11*,
*12*, *15*, *19* 60:*19*, *22*
61:*3* 64:*1*, *12*, *17*, *24*
65:7, *11*, *19* 72:22
73:*20* 77:*10*, *25*
84:*21* 85:*3*, *12* 86:2,
5, *24* 87:22 88:*1*, 6
89:*17*, *23* 90:*14* 98:9,
*25* 100:*18* 102:2, *12*
104:*20* 105:9 107:*11*
108:*1* 111:*3*
**McHugh's** 29:5, *16*,
*19*, *23* 31:*16*, *19*, *22*
**mean** 11:*25* 18:*24*
34:*13* 68:*25* 69:*1*
84:*19*
**means** 107:8
**meant** 71:2
**media** 7:*1* 54:6
90:*10*
**medical** 104:*1*
**meet** 21:2, *8* 22:7, *18*
23:8, *20*, 22, *24* 29:*15*
37:*11* 44:*3*, *10* 61:24
62:2
**meeting** 21:*19* 22:*11*
23:*14* 24:*3*, 7 25:*3*, *6*,
*11*, *14*, *16*, *17* 26:4
28:8, *11*, *15*, *25* 29:2
33:6, *19* 34:*1*, *4*, 8, *10*,
*17*, *18* 37:6 39:*17*
41:*20* 42:*13* 43:7, *21*
44:*19* 53:*19* 55:*11*,
*25* 56:*8*, *12* 57:5
58:9, *12* 67:8 69:*23*
71:*4*, *19* 72:*5* 73:9,
*17*, *19* 88:*17*, *19*, *20*,
22, *23*, *24* 89:*4*, 6, *15*
98:*13*, *23* 99:*17*

Deposition of Eileen A. Mallesch                                      Philip R. McHugh v. Fifth Third Bancorp, et al.

**meetings** 22:*14*
24:*19*, 25  25:*11*, *15*
30:*18*  32:*2*, *4*  34:*11*
37:*3*, *13*, *15*, *19*  39:*2*
41:*17*  42:*2*, *8*, *11*, *24*
43:*13*, *24*, *25*  53:*4*
61:*20*  69:*20*  70:*4*
73:*1*

**member** 13:*22*  17:*14*,
*20*  19:*6*  20:*11*, *13*
24:*24*  25:*5*, *20*  26:*10*,
*15*  27:*19*  34:*15*
40:*13*  46:*13*  65:*6*
70:*20*  98:*9*  99:*7*
100:*9*  102:*2*

**members** 8:*20*  13:*18*
18:*17*  20:*7*, *25*  21:*20*
22:*7*  25:*18*, *24*  40:*17*
48:*12*, *18*  61:*12*  62:*2*
64:*11*  65:*10*  100:*4*
102:*6*, *9*

**member's** 46:*24*
**membership** 20:*14*
**mention** 14:*11*
**mentioned** 43:*21*
45:*20*  54:*9*
**mentions** 12:*13*
**message** 12:*4*
**met** 23:*1*  26:*1*, *9*
**Michael** 2:*9*  4:*16*
9:*1*  77:*17*
**Michael.cioffi@blankr**
**ome.com** 2:*16*
**mid** 18:*23*  34:*12*
38:*1*
**middle** 11:*20*  96:*14*
**mid-year** 29:*20*
44:*23*
**Mike** 48:*18*  86:*20*
87:*13*
**million** 108:*5*
**mind** 74:*13*  78:*7*
107:*11*
**minimum** 67:*10*
**minute** 94:*3*
**minutes** 52:*4*, *10*
53:*6*  67:*2*, *7*, *9*, *13*
73:*8*, *16*  75:*8*  76:*7*,
*16*, *25*  88:*21*  98:*4*

**mischaracterizing**
106:*22*
**mislead** 62:*9*
**missed** 88:*19*, *22*
89:*7*, *14*
**misstates** 38:*15*
**misstating** 106:*10*
**mistakes** 41:*14*
**mode** 32:*15*
**moment** 64:*22*  66:*16*
**month** 25:*4*
**months** 18:*22*, *25*
**morning** 56:*24*
**move** 19:*3*
**moves** 21:*14*
**moving** 82:*2*
**multiple** 74:*22*  87:*7*

**< N >**
**name** 5:*8*, *9*  44:*6*, *7*
62:*15*  64:*20*
**named** 110:*7*
**names** 25:*23*  26:*3*, *7*
62:*7*  75:*21*
**National** 20:*11*, *15*
**Nationwide** 15:*23*, *25*
16:*4*  19:*18*
**nature** 21:*18*  24:*11*
41:*1*
**necessarily** 31:*12*
33:*1*  37:*20*  62:*6*
**need** 7:*14*  39:*19*
40:*8*  47:*7*  66:*16*
77:*17*
**needed** 68:*22*  86:*4*
99:*22*  101:*13*
**needs** 36:*5*  64:*22*, *23*
**negative** 65:*17*
**negotiations** 12:*5*
**neither** 110:*14*
**never** 35:*5*  76:*13*
79:*15*  83:*20*  99:*13*
105:*20*  106:*19*
107:*13*
**New** 8:*16*  20:*24*
22:*2*  24:*2*  27:*18*
40:*13*
**Nicholas** 10:*9*
**Nick** 48:*18*

**No._____Change**
112:*2*, *5*, *8*, *11*, *14*, *17*,
*20*  113:*2*, *5*, *8*, *11*, *14*,
*17*, *20*
**No._____Line** 112:*2*,
*5*, *8*, *11*, *14*, *17*, *20*
113:*2*, *5*, *8*, *11*, *14*, *17*,
*20*
**nodding** 7:*14*  58:*20*
**non-governance** 20:*17*
**nonprofit** 17:*25*  18:*9*
**nonprofits** 18:*2*
**normally** 61:*16*
**Notaries** 1:*23*
**notary** 110:*5*
**notes** 24:*6*
**Notice** 1:*14*  11:*2*, *12*
**noticed** 80:*11*  82:*2*
**notices** 12:*6*
**notification** 49:*18*
**notwithstanding** 7:*13*
**number** 36:*21*  39:*21*
**numbering** 47:*22*
**nuts** 35:*19*

**< O >**
**oath** 111:*15*
**object** 108:*15*
**Objection** 9:*2*, *25*
10:*5*, *10*, *15*, *20*  23:*4*,
*9*  38:*14*, *25*  64:*4*
68:*2*  71:*21*  72:*6*
77:*12*, *16*, *18*  78:*2*
80:*22*  84:*1*, *9*, *23*
87:*1*  88:*8*  90:*22*
91:*7*, *15*, *16*, *25*  92:*24*
93:*25*  94:*4*, *25*  95:*1*,
*10*  97:*5*, *12*, *17*  98:*10*,
*15*  99:*2*, *12*  100:*6*, *12*
102:*17*, *24*  104:*9*, *22*
105:*4*  106:*7*, *19*
**observation** 33:*24*
**observe** 28:*19*, *23*
44:*18*
**observed** 34:*8*  35:*24*
54:*10*  60:*24*  91:*19*
92:*17*, *20*
**observing** 27:*21*
34:*15*  46:*12*  82:*23*

**obtained** 14:*10*
**obviously** 51:*1*
**occur** 40:*7*  70:*16*
80:*20*, *24*, *25*  87:*19*
**occurred** 36:*2*, *4*
61:*23*
**occurring** 39:*12*
101:*8*  108:*7*
**occurs** 22:*16*  47:*12*
50:*14*  82:*10*
**October** 17:*2*  18:*11*
41:*6*  42:*1*  100:*17*
**offer** 111:*14*
**offers** 87:*9*
**office** 5:*24*  6:*2*, *3*
110:*22*
**Officer** 12:*13*  16:*5*
58:*1*  74:*4*  97:*10*
**official** 6:*23*  7:*4*
110:*22*
**Oh** 18:*20*  21:*1*
42:*25*  43:*8*  52:*25*
70:*17*, *25*  93:*14*, *18*
**OHIO** 1:*2*, *20*, *23*
2:*7*, *15*  4:*8*  8:*2*
110:*2*, *6*, *22*
**Okay** 6:*5*  25:*6*
30:*10*, *21*  32:*3*, *7*
34:*16*  36:*16*  41:*19*
42:*9*  46:*23*  48:*8*, *23*
50:*7*, *13*  51:*19*, *23*
52:*3*, *9*, *11*  53:*1*  56:*7*,
*11*  57:*21*  58:*3*, *7*
59:*9*, *13*  60:*4*, *8*, *14*,
*21*  72:*20*  85:*11*, *23*
91:*10*  92:*14*  95:*20*
103:*11*  106:*4*  107:*18*,
*25*  108:*19*
**Oliver** 19:*23*
**onboard** 21:*4*  24:*10*
**onboarded** 43:*22*
**onboarding** 20:*6*, *24*
21:*1*  24:*2*  25:*19*
27:*3*
**once** 43:*1*  46:*4*
70:*17*  75:*5*
**ones** 19:*16*  29:*12*
**operating** 63:*18*
69:*5*  101:*12*

Case: 1:21-cv-00238-MRB Doc #: 66-5 Filed: 08/02/24 Page: 47 of 53 PAGEID #: 3003
Deposition of Eileen A. Mallesch
Philip R. McHugh v. Fifth Third Bancorp, et al.

operation 26:6 28:7
61:13
operational 22:11, 12
68:23
operationally 61:6
operations 32:6
opinion 31:8 64:16
100:18 103:10, 11
opportunities 36:17
opportunity 36:14
oppose 61:3
oral 12:2
order 26:18 28:12
organization 35:19
62:10, 14 90:17
102:21 108:12
orientation 22:18
Outside 29:2 41:17,
20 43:25 44:19
overall 47:12 80:1
81:21
oversee 24:2
oversight 19:9, 13, 18
20:1 26:25 35:17, 18
47:2, 5 49:8 66:25
99:17

< P >
p.m 90:6, 8 109:8
packet 51:6, 11 56:19
PAGE 3:3 11:18, 20
31:13 36:7 47:25
48:1, 2, 10, 15 49:11,
25 58:19 62:7, 15
70:2 73:23 74:1
96:13, 15 112:2, 5, 8,
11, 14, 17, 20 113:2, 5,
8, 11, 14, 17, 20
pages 48:9 49:11, 16
50:11, 16, 17, 24
110:10
paint 105:16
painted 70:1
Pamela 1:20 110:4
paragraph 73:25
96:14
paralegal 6:2
part 20:3 24:1
30:22 31:13 33:18
39:16 43:3, 19 47:11

58:8, 11 60:9 69:5
87:17 89:3
partial 37:7
participate 29:18
44:22
participated 104:1
particular 6:24
26:22 27:17 33:21
40:18 49:15 56:8
66:13 73:9 80:2
98:5 102:5
particularly 103:12
parties 54:10, 11
105:24 106:16
110:15
partner 19:15
party 34:3 37:21
54:20 71:11
Pas@sspfirm.com 2:8
passion 106:2
passionate 69:24
passionately 57:14
path 38:8, 11, 13, 19,
22, 23 39:1, 12
Patterson 2:6
pause 35:14
pausing 72:8
pay 40:16 41:10
paycheck 41:10
peers 61:6
PENALTY 111:5, 6
people 37:11 58:14
62:20 71:5, 9
perform 29:19 39:18
44:23
performance 22:24
30:2 31:22 32:9, 13,
20, 21 33:15 36:9
45:12, 17 72:11, 17,
22
performed 32:17
performing 33:20
67:15 68:8 77:3
80:8
period 18:10 34:23
36:24 41:5, 25 79:20
periodical 83:2
periodicals 83:7
PERJURY 111:5, 6

permanent 77:14
97:3, 10, 11 98:17
99:1
person 12:3 23:16
35:13 62:10 78:11
80:12
personal 36:15
60:24 69:13 79:1
85:19 91:11 101:1
personally 4:19
person's 22:19 26:4
perspective 35:25
47:7 57:7 80:16
Peter 2:1 4:12
Phenise 2:19 4:22
Phil 4:15 13:16
23:20 27:23 28:8, 12,
19, 23 29:5, 16, 19, 23
30:6 31:16, 19, 22
32:14, 20, 22 33:6
34:8, 14 35:3, 7, 22
36:12, 17 37:9, 14, 25
38:4 39:3 40:1
53:12 54:11, 12, 15,
19 60:19, 22 61:3
64:1, 12, 17, 24 65:7,
11, 17, 19 72:16, 22
73:3 75:21 76:3, 8,
19 77:10 83:20, 21,
23 84:21 85:3, 12
86:2, 5, 24 87:16, 22
88:1, 6, 13 89:17, 23
90:14 97:21 98:9, 25
100:18, 22 101:15
102:2, 12 103:1
104:20 105:9 107:11
108:1
PHILIP 1:7 2:19
4:5, 13 14:2 15:14
111:3
Phil's 103:8
Phone 2:7, 15
phrase 26:13 30:13
95:2, 4
phrases 57:10
pick 63:20
picture 70:1 105:17
Place 1:14 8:1
22:15 24:25 25:15

59:10 110:11
placed 78:23
Plaintiff 1:8, 14 2:1
4:13, 15
plan 41:11 48:25
51:13 52:17, 24 53:2,
15 55:16, 24 58:22
59:4, 17, 20, 24 60:11
62:25 65:22, 24 66:7,
8, 19 67:4, 18, 25
planning 12:14
14:12 30:9
Plans 47:9
player 102:21
plays 21:6
please 4:24 5:8
7:10, 25 26:14 39:22
43:2 46:17 48:9, 24
54:22 55:7, 21 65:9
67:17 73:15 96:11,
19 97:23 98:1
pleasure 70:8
plural 74:17 76:7
plus 98:21 103:13
PNC 2:14
point 21:15, 17 26:6,
8 27:2 32:10 34:12
35:6, 8 38:3 42:4, 5
51:22 63:4, 5, 22
69:15 78:13 87:21
Poole 2:19 4:22
portion 50:3
pose 94:4
position 12:15, 19
13:1, 6, 13 14:12, 17,
24 15:4, 11 16:3
74:4 77:14 95:25
96:22 97:10 101:19
108:6
post 88:19 89:1
postmortem 43:20
potential 13:6 15:4
27:7 35:14 40:14
51:17 52:12 60:18
63:21 64:9 65:15
68:20 74:3, 6 75:3, 6,
22 76:10, 13, 20 77:4,
8, 22, 25 87:8, 10
96:21, 24 97:16 98:8,

*13* 99:*10*
**potentially** 62:*11*
**power** 79:*16*
**preparation** 53:*18*
**prepared** 30:2 66:*18*
67:*19*
**pre-read** 36:8 56:*13*
**Present** 2:*18* 43:*12*
73:*9, 19, 20* 75:*3, 14,*
*22* 77:*24* 89:*3, 5*
**presentation** 32:*18*
33:*18* 34:*15* 36:*11*
68:*18* 69:*16* 106:*5,*
*16, 21*
**presentations** 35:*24*
69:*19* 70:*3* 71:*12*
105:*23* 107:*20*
**presented** 32:*4, 5*
34:2, *9* 43:*7* 51:*1, 25*
52:*19* 75:*17, 21* 76:*3*
97:*9, 15* 98:*13, 18*
99:*1* 105:*15, 25*
**presents** 32:*1*
**preserving** 39:*10*
**President** 12:*15, 20*
13:*1, 6, 13* 14:*13, 17,*
*24* 15:*5, 11* 16:*7*
26:*12, 17* 27:*15* 28:*1,*
*13* 30:*23* 35:*4, 9*
36:*19* 38:*5, 12, 20*
40:*9* 46:*16, 21* 78:*8,*
*12* 86:*5* 87:*23* 88:*2,*
*7* 89:*19, 24* 99:*9*
100:*3, 19* 102:*3, 15,*
*23*
**President/CEO** 46:*11*
**prestigiousness**
101:*19*
**previously** 18:*1*
**primarily** 66:*25*
**primary** 46:*24, 25*
56:*14*
**printed** 63:*9*
**prior** 19:*16* 25:*11,*
*14* 38:*15* 41:*15*
50:*11* 53:*11* 71:*7*
92:*4* 93:*16* 94:*14*
110:*6*
**priorities** 74:*7* 76:*11,*

*21* 77:*9, 23* 96:*25*
**private** 51:*14*
**privilege** 6:*8* 9:*21*
**privileged** 9:*7*
**pro** 65:*17*
**probably** 18:*23*
**process** 18:*22, 25*
19:*5* 20:*6* 25:*19*
27:*8* 28:*4* 46:*11, 16,*
*21* 50:*18, 21, 23* 62:*3,*
*16* 83:*4, 6* 87:*18*
**Processes** 12:*23*
14:*21* 19:*12*
**produced** 11:*15*
**Production** 11:*3*
**profession** 104:2
**professional** 20:*21*
41:*3*
**progress** 95:*21*
108:*14, 16*
**promotion** 89:*18, 24*
**proof** 80:*11*
**properly** 26:*18*
**Property** 101:*10*
**Property/Casualty**
16:6 19:20
**proponent** 40:*19*
**propose** 62:5 74:*24*
**proposed** 12:*24*
14:22 47:*15* 61:*21*
**protected** 9:*20*
**protecting** 42:22
**protection** 41:*11*
**proud** 80:*15*
**provide** 24:8 27:5
31:*11* 46:23 49:*17*
57:7 77:4 86:*12*
**provided** 24:*10, 12*
32:8 49:*9, 25* 56:*23*
67:*23*
**provides** 20:*14*
**providing** 42:*18*
50:*15*
**proxy** 101:*18* 108:*1,*
*7, 8*
**public** 16:*15* 19:2, *6,*
*14* 21:22 22:4 26:*19*
27:*9* 74:*21* 75:*5*
110:*5*

**publicly** 16:8
**Public-State** 1:*23*
**pull** 62:*4* 63:*4*
**pulling** 63:*17*
**purposes** 68:*12*
**Pursuant** 1:*14* 4:*19*
15:6
**pursued** 105:*14*
**pursuing** 102:8
**pushes** 47:6
**put** 62:*9* 83:*7, 11*
**putting** 35:*12* 107:*4*

**< Q >**
**quadrant** 35:*15*
**quadrants** 99:*16*
**qualified** 100:*18, 19*
101:*11* 102:*2, 3, 4, 11,*
*12, 13, 23* 110:*4*
**question** 7:*12, 19, 20*
11:*11* 20:*9, 23* 21:*15*
24:22 26:*14* 28:22
29:24 38:*15, 17*
44:*13* 46:*17* 50:*12,*
*25* 52:*21* 64:5 65:*9*
66:*4* 68:*3* 69:22
71:22 72:*20* 77:*6, 13*
80:*23* 81:*9, 11, 12*
84:2, *10, 24* 85:*17*
87:2 88:*9, 14* 90:*23*
91:*8* 92:*13, 19* 93:*4,*
*16, 17* 94:*5, 17* 95:*2,*
*4, 13* 97:*6* 99:*6*
103:*21, 22* 104:*5, 6,*
*10, 24* 105:*2, 6* 106:*4,*
*10* 107:*9, 10*
**questioning** 5:*17*
**questions** 6:*9* 7:*9*
24:*9* 27:*6* 33:*4* 39:*8*
95:*23* 96:*6* 103:*4*
108:*17*
**quick** 40:*19*
**quickly** 19:*3*
**quite** 21:5 38:*1*
40:*1, 10* 42:*7* 43:*3*
62:8 64:*21* 79:*20, 21*
83:*11, 13, 25* 84:*3*
104:*18*

**< R >**
**ran** 42:2, *10*
**rarely** 41:*16*
**rate** 82:2
**read** 9:*24* 36:*5, 8*
39:*23* 40:*3* 65:*3*
82:22 96:*18* 108:*17*
111:*7, 9*
**readiness** 74:*7* 76:*10,*
*20* 77:*8, 23* 78:*1*
86:*13* 96:*25*
**reading** 36:*1* 70:2
105:*17* 106:*3*
**reads** 11:*24*
**ready** 79:*24* 86:*3*
101:*24* 103:*17, 22*
**realigned** 29:*9*
**really** 24:*9* 35:*25*
36:2, *4, 6* 37:*6, 23*
38:*21* 54:*16* 71:*8*
79:*9* 87:*15* 95:*3*
99:22 101:*21* 106:*1*
**reason** 80:5 112:*4, 7,*
*10, 13, 16, 19, 22*
113:*4, 7, 10, 13, 16, 19,*
*22*
**reasons** 82:*18* 87:*11*
**recall** 22:*8, 25* 23:*21*
24:*13, 17* 25:*10, 13,*
*23* 29:*10* 34:*7* 37:*8,*
*22* 42:5 46:*14, 19*
52:*6, 8* 53:5 54:*13,*
*14, 16* 65:*16, 18* 71:*6,*
*7* 72:*25* 74:*12* 78:*6*
87:*20* 89:*9, 15*
108:*10*
**recap** 39:*17*
**receive** 8:*13, 15* 72:5
**received** 14:*10*
**recess** 54:*1* 90:5
**reckon** 57:*19*
**recognized** 82:6
**recognizing** 77:*7*
**recollect** 67:6
**recollection** 29:*4*
32:8 54:*19* 67:*12*
87:5
**recommendation**
46:*13*
**recommended** 59:*25*

reconvened 54:3
90:7
record 4:2 5:8, 16
6:22 7:16, 21 11:10
25:7 53:22, 23 54:6
77:17 90:2, 4, 10
96:19 108:22
recorded 6:12
recording 6:20
record's 9:16
recruiting 18:15
refer 11:17 14:10
58:16 59:13
reference 38:22 56:4
67:14 79:4 80:21
REFERENCED 3:7
20:10 40:14 45:3
47:1 49:7 54:17
55:22 75:18 87:7
93:14
referencing 29:25
30:3, 8 78:12
referred 27:11 52:11
56:1 68:24
referring 21:12
27:17 30:10 40:23
44:8 47:22 49:21
60:14 72:2 73:25
76:16 88:23
refers 12:13 15:14
58:21 60:18 74:17
reflect 49:17 52:4
reflected 50:11
68:12 98:3, 24
101:18
reflecting 32:25 33:7
reflects 9:5
refreshing 79:21
regarding 13:22
65:19 68:14 70:24
76:9 77:25
regretful 101:15
Regretfully 100:23
regular 58:8
regulation 24:16
regulator 63:17
regulatory 21:4
49:17
relate 14:11

related 41:10
relates 12:14
relationship 41:2
relationships 71:3
Relative 24:23 31:22
45:12 110:14, 15
relevant 85:5, 6
94:16
relied 13:11 15:9
remain 53:7
remember 22:9
23:12 28:6 37:12
38:2 40:14 44:6
57:1 70:21 89:13
remembered 69:23
rep 57:19
repeat 7:11 24:22
38:17 93:4
rephrase 7:11 46:17
65:9 81:12
replaced 49:22
replying 43:9
report 32:25 63:9
reporter 4:24 6:17
7:12
reporting 110:18
reports 29:16 44:4
represent 4:11, 18
47:20
representation 4:20
representatives 24:20
representing 4:21
represents 46:6
request 9:4 11:3
12:11, 16, 21 13:3, 8,
14, 19, 24 14:3, 5, 7,
14, 19 15:1, 6 50:15
requests 12:6 13:5
43:9
require 66:1, 7
required 65:22, 23
66:14
requirement 72:13
requirements 65:25
66:6
research 83:10
resolutions 53:3
Resources 57:25 58:1
respect 12:24 13:16
14:22 20:1, 24 23:1,

7 26:11, 17 27:11, 16,
25 32:12, 19 33:10
36:10 37:13 38:22
40:6 46:8 52:17
61:5, 11 66:2 72:21
73:18 76:8 77:10, 21,
22, 24 83:19 95:22
105:9
respected 83:2
102:18
respond 26:18
responded 14:25
50:15
response 94:14
responses 12:6
responsibility 46:15,
20, 24 47:11 61:22
62:18 77:1
responsive 12:16, 21
13:2, 8, 14, 18, 23
14:3, 7, 14, 19 15:1,
12, 15, 18
restructured 17:23
restructuring 108:6
result 33:7 98:7
110:17
results 33:23
Retail 29:7, 11
retain 86:15
retained 86:24
retaliate 90:20 91:13,
23 92:8, 15, 22 93:7,
22 94:22 95:5
retaliation 92:18, 20
93:10
retired 15:21 16:1
review 9:6, 10, 13, 17,
19 29:22 30:5, 18, 22
31:8, 15, 18, 21, 25
36:9 47:10, 13 51:6,
12, 20, 25 52:16, 18
53:15 56:18 59:7, 10
60:3, 4 63:1 67:15,
22 74:2 90:17 96:16,
21
reviewed 8:25 9:9,
14, 23 10:3, 8, 13
59:3, 5, 24 60:2, 10
67:10 68:4 74:5
76:17 96:23 97:20

reviewing 29:13
56:22
reviews 29:19, 20, 23
30:6 44:23, 24 45:2
RHR 86:8, 10, 15, 17,
23
right 7:6 22:8
30:16, 20, 24 34:6
40:24 41:13 43:18
45:24 50:24 51:7, 9,
11 56:5, 9 59:1, 21
60:12 65:15 73:9
80:8, 12 84:8, 20, 22
94:20 96:1 105:24
106:6 107:12 108:2,
9
right-hand 47:23
risk 22:11, 22 23:7
24:16 46:4 72:10, 11
79:25 89:17, 23
robust 21:2
role 19:6 21:22
26:11, 16, 24 29:5
31:13 39:14 41:17
47:4 49:8 56:14
58:14 61:19 66:13,
17 78:12, 14 83:10
86:20 88:4 103:16
roles 19:8, 16 20:13
28:13 66:14
rollup 33:5, 11
Rome 2:13 4:17
roughly 73:25
Rule 110:19
run 42:20
running 42:7
runs 59:20
runway 68:19, 25
98:21

< S >
Saba 2:1, 6 3:4, 5
4:12 5:6, 20, 23 6:3,
13 7:5, 7 9:11, 22
10:2, 7, 12, 17, 24
11:16 47:18 53:21
54:8, 22, 25 55:3
64:10 72:1 73:6
77:16, 19 80:24 81:1,
6, 8 84:11, 15 90:1,

*12* 92:*2* 93:*2* 94:*1, 8, 11* 95:*12, 15, 20* 97:*5, 12, 17* 98:*10, 15* 99:*2, 12* 100:*6, 12* 102:*17, 24* 103:*6* 104:*14* 105:*7, 8* 106:*13, 23* 107:*1* 108:*13, 19*
**Saema** 48:*11*
**sake** 7:*12*
**salary** 108:*4*
**Sanctuary** 8:*1*
**sat** 37:*23* 107:*20*
**save** 111:*10*
**saw** 28:*7* 35:*5* 82:*7* 105:*23*
**saying** 40:*19* 63:*18* 76:*2* 85:*3*
**says** 14:*12* 76:*17* 96:*15*
**Scenario** 51:*16* 61:*23*
**scenarios** 49:*7, 9, 18, 20, 21, 25* 63:*5* 65:*4*
**Science** 8:*12*
**seal** 110:*22*
**second** 47:*1* 73:*22* 82:*14* 87:*8* 89:*6* 100:*16*
**section** 89:*6*
**sector** 17:*23* 21:*6* 63:*15* 69:*8* 72:*14* 83:*2*
**see** 6:*9* 11:*22* 12:*7* 16:*19* 18:*20* 31:*9* 33:*5* 39:*3, 18, 24* 45:*5, 8, 11* 48:*3, 15* 49:*4, 12* 50:*5, 13* 52:*12* 53:*10* 60:*25* 64:*19* 66:*19* 68:*11* 74:*8, 24* 75:*10, 13* 83:*12* 88:*21* 96:*16* 102:*20*
**seeing** 21:*24* 36:*3* 39:*4* 101:*24*
**seeking** 40:*20*
**seen** 11:*4* 45:*1* 95:*18*
**Segment** 16:*6*
**segments** 29:*8, 11* 32:*25*

**selected** 12:*19* 14:*17* 82:*18* 83:*4*
**selecting** 13:*12* 15:*10*
**selection** 12:*25* 14:*23*
**self-aware** 100:*24*
**self-awareness** 101:*16* 104:*18, 20*
**seniority** 104:*3*
**sense** 51:*21* 103:*15*
**sentences** 96:*19*
**September** 16:*25* 17:*1* 18:*10* 24:*18, 24* 25:*7* 29:*6* 37:*5* 41:*5* 42:*1* 48:*20* 50:*5* 51:*2* 55:*12* 88:*17, 20, 25* 89:*13, 16*
**series** 7:*9*
**serve** 26:*20* 27:*9* 46:*5* 66:*17* 79:*19* 80:*15*
**served** 18:*10* 26:*21*
**services** 80:*1* 101:*7*
**serving** 19:*2* 72:*10* 100:*21*
**session** 32:*16* 39:*6, 13, 22* 42:*25* 43:*4* 50:*4* 51:*14, 24* 53:*3* 58:*8, 10* 65:*13* 67:*3, 13* 68:*5* 75:*10, 11* 79:*5, 11* 80:*18* 81:*4, 14* 89:*1, 7*
**sessions** 39:*17* 40:*7*
**set** 50:*18* 51:*10* 110:*21*
**sets** 50:*8*
**seven** 98:*21*
**shadow** 80:*3* 83:*19* 99:*22*
**Shaffer** 57:*20* 58:*5, 14* 66:*25* 67:*22* 74:*2, 19* 96:*16, 21*
**shaking** 7:*14*
**share** 26:*8*
**shared** 39:*1* 75:*20*
**shareholders** 42:*22*
**Sharpe** 2:*5*
**shave** 34:*10*
**sheet** 63:*7, 8* 111:*1, 13* 112:*1* 113:*1*
**shift** 80:*2*

**shocked** 105:*19* 107:*13*
**short** 69:*8*
**show** 63:*2, 23* 101:*24* 106:*2*
**showed** 11:*11* 105:*15, 18*
**showing** 33:*23* 81:*17* 101:*19* 107:*6*
**shows** 104:*17, 19*
**side** 19:*4* 23:*2, 8*
**sign** 108:*18*
**SIGNATURE:_____**
**_____DA**
**TE** 112:*23* 113:*23*
**Signed** 111:*16*
**significant** 21:*5*
**similar** 11:*12* 20:*20* 59:*3*
**simple** 94:*18*
**simply** 95:*3*
**simultaneously** 5:*18*
**single** 34:*10*
**sit** 16:*10, 12, 14, 15* 17:*2, 5* 20:*16* 25:*13, 22* 46:*2* 52:*6*
**sitting** 17:*6* 54:*17* 62:*14* 100:*24* 105:*20*
**six** 26:*21*
**skepticism** 42:*21*
**skills** 33:*22, 25* 65:*2, 5* 68:*22*
**skip** 44:*12* 57:*11*
**skip-level** 70:*12*
**slate** 86:*13*
**slide** 36:*1, 5* 40:*3*
**slides** 39:*23* 65:*3* 69:*24* 105:*17* 106:*3*
**Smith** 2:*4* 4:*14*
**solid** 83:*20* 85:*14, 15*
**somebody** 69:*13* 90:*20* 103:*12, 23* 105:*18*
**somebody's** 104:*7*
**soon** 25:*3* 89:*2*
**sooner** 79:*6, 13, 24* 80:*19* 81:*16*
**sort** 61:*10* 67:*12*
**sought** 71:*1*

**sounds** 103:*25* 107:*7*
**SOUTHERN** 1:*2* 4:*7*
**speak** 40:*17* 47:*13* 54:*12* 69:*24*
**speaking** 77:*18* 93:*19* 105:*23* 106:*15*
**special** 58:*10*
**specific** 27:*10* 33:*14* 54:*19* 66:*1, 7* 77:*6*
**specifically** 19:*11, 24* 20:*23* 22:*25* 30:*4* 32:*4* 34:*7* 44:*15* 52:*11* 66:*23* 70:*11* 72:*2* 77:*9* 80:*18* 85:*7* 100:*16*
**specifics** 24:*17*
**speculation** 94:*6, 9*
**spell** 5:*8*
**Spence** 13:*23* 14:*6* 15:*17* 19:*23* 23:*22* 24:*4, 15* 25:*23* 38:*8, 11, 20, 22* 39:*7* 40:*6, 8* 43:*22, 25* 44:*16, 19* 62:*21* 68:*7* 72:*16, 22* 73:*19* 74:*6, 11, 14* 76:*5, 19* 78:*8, 18, 23* 80:*9* 82:*10* 83:*15* 84:*7, 20* 85:*8, 9* 86:*3, 13, 24* 87:*6* 96:*24* 97:*14* 98:*20, 25* 99:*18, 24* 102:*8, 11*
**Spence's** 44:*4, 23* 45:*2, 5, 8, 13* 89:*18, 24*
**spend** 22:*20* 23:*13* 24:*3*
**spoke** 54:*14*
**SS** 110:*2*
**Stagnaro** 2:*6*
**stamped** 47:*21, 22* 48:*1, 2* 55:*6, 16* 73:*13*
**stand** 92:*18* 94:*14*
**standing** 92:*4*
**stands** 106:*11*
**start** 24:*23* 62:*3*
**started** 18:*6* 28:*5*
**Starting** 17:*16* 21:*21* 22:*3* 27:*3, 4* 37:*11* 61:*24* 101:*24*

state  5:8  17:13, 15
  110:2, 5
stated  91:9
statement  101:18
statements  12:5
  32:24  33:2  108:1
STATES  1:1  4:7
stay  83:21
stenotypy  110:13
step  78:13  79:1, 18,
  19  80:13  81:20
  85:20  86:4, 5  101:23
stepped  17:10, 16
  18:7
stood  54:1  90:5
stopped  35:12
story  33:3
strategic  26:25
  35:20, 25  45:16, 18
  47:1  68:21  80:4
  105:16
strategically  99:20
strategy  19:10, 13, 16,
  17, 19, 21  20:1  21:25
  24:15  39:9  45:15
  89:1, 6
Street  1:20  2:14
  82:3  83:8
strengths  21:23
  100:25
Strike  102:11
strong  65:5  103:1
strongly  65:14
structural  80:2
study  40:19
style  36:15  42:16
  69:5  81:24  106:5, 16,
  20
styled  4:5
subjection  107:5
submission  59:7, 11
  60:3, 5
subsequent  49:16
  50:16, 17
substance  106:21
succeed  57:14  99:8,
  24  100:2, 15
success  80:14  81:23
successful  80:5

Succession  12:14
  14:12  19:9, 13  20:1
  21:7  26:12, 17, 23, 25
  30:9  35:6  39:15
  46:25  47:5, 9  48:25
  49:8  50:18, 22  52:17
  53:2  55:16, 24  56:15
  58:22  59:17, 19, 24
  60:11  62:23, 24
  65:22, 24  66:2, 7, 8,
  12, 19  67:3, 11, 18, 25
  74:3, 5  75:19, 20
  76:17  80:20, 24, 25
  89:8  96:21, 23  97:3,
  4  98:5, 18  101:5
successor  39:3  46:10,
  15, 21  53:15  60:23
  61:2, 4  62:11, 17
  63:21  64:2, 9, 13, 18,
  22, 25  65:8, 12, 15, 19
  68:9, 10, 20  77:15
  79:6, 10, 13  80:19
  81:16  82:1  87:15
  97:11  99:1, 10  100:9,
  11
successors  27:7  75:3
  97:16  98:8, 14
suddenly  49:22
suggest  95:18  100:9
suggested  98:21
suitable  35:3  36:18
  38:4
summary  32:5
summit  20:16
supervision  110:13
supervisor  30:7
support  51:15  103:1
supported  68:7
supposed  77:21
sure  6:7  7:2  19:12
  26:15  29:24  38:18
  39:9  43:2  46:18
  67:5, 7  69:12  72:14
  88:19  94:10  96:7
  105:7
surgery  88:19  89:1
surprised  40:12
surprising  79:21
  81:25

surveys  31:16, 19
  45:6, 9
SVB  63:16
swear  4:24
sworn  5:3  25:5
  110:8

< T >
table  19:4
take  4:4  7:16  22:14
  50:21  96:3
Taken  1:14  5:13
  7:13  21:3  24:25
  110:12  111:2, 8
takes  19:5  57:6
talent  22:5  30:11, 17,
  21  31:3, 5, 7  45:4
  47:12  55:9, 15, 23
  56:2, 18, 22  57:11
  58:4  72:3  74:14, 23
  75:3  78:16, 17, 18
  82:9  84:18, 19
  101:24
talk  32:16  57:11
  75:10
talked  37:23  99:15
  106:20
talking  34:12  39:16
  72:16  77:13
Tanner  57:2
Tayfun  26:2  51:17
  52:15, 22  60:19
  68:13  75:21  76:3, 8,
  19  77:10  86:24
  87:16  97:21  98:9, 24
Tayfun's  64:20
Team  19:20  24:1
  33:7  61:19  66:25
telecopy  12:3
telephone  12:3
telling  36:1
Teresa  57:2
terms  13:17  82:14
  98:17
testified  64:12, 15
testify  110:8
testimony  10:18
  38:16  106:10, 15, 24
  110:11
text  12:3

Thank  7:6  44:9
  50:1  57:23  71:25
  108:19, 20
thing  5:16  19:1
  39:20  52:23
things  83:14  106:17
think  24:5  25:1
  26:22, 23  35:15  47:7
  53:10  57:3, 9, 16
  60:8  62:1, 6, 10, 22
  63:3, 7  70:17  74:22
  82:3  84:18  87:13
  95:5  101:6  103:17
  104:17, 24  106:23
  107:4, 11
thinking  31:10
  50:13  51:15  61:7
  80:13  82:1, 25
THIRD  1:10, 14
  2:19, 20  4:6  8:20, 23
  11:14  12:13, 15, 20
  13:1, 7, 13  14:13, 18,
  24  15:5, 11  16:16, 24
  18:14, 17, 19  20:2, 8,
  14, 24  21:5  22:3, 17
  25:20  26:10, 16  27:8,
  10, 16  28:1, 13, 24
  30:24  33:3  35:4, 10,
  23  36:19  38:6, 12, 21
  39:22  40:11  41:12
  46:2, 11, 16, 21  50:19,
  23  53:8, 15  57:10
  78:9  80:5, 10  84:5
  86:15  87:8, 23  88:2,
  7  90:14  102:20
  105:12  111:4
Thomas  2:20  4:21
thought  62:15  105:20
thoughtful  63:3
thread  50:14
three  29:10  75:6
tie  33:1
Tim  14:6  19:23
  23:22  24:15  38:8, 11,
  20, 22  39:7  40:6, 8,
  19  43:22, 25  44:3, 16,
  19, 23  45:2, 5, 8, 12
  62:21  68:7  72:16, 22
  76:5, 14, 19  78:4, 5, 8,
  18, 23  79:24, 25  80:7,

Case: 1:21-cv-00238-MRB Doc #: 66-5 Filed: 08/02/24 Page: 52 of 53 PAGEID #: 3008

Deposition of Eileen A. Mallesch                                         Philip R. McHugh v. Fifth Third Bancorp, et al.

*9* 81:*17* 82:*10* 83:*15,
16* 84:*7, 20* 85:*8, 9
86:3, 13, 24* 87:*6
89:18, 24* 97:*14
98:20, 25* 99:*18, 24
102:8, 11*

**Time** 1:*14* 4:*3
18:10* 21:*14, 15, 17
22:21* 23:*1, 12, 13
24:3* 26:*3, 9, 14
32:10* 35:*6, 8* 36:*24
37:11* 38:*3* 40:*10
41:25* 42:*4* 48:*12
51:22* 54:*7* 57:*1, 2
58:1, 14* 63:*4, 6, 22
78:8, 10, 14* 85:*23
87:21* 90:*11* 92:*25
95:21* 98:*23* 100:*8,
16, 20* 107:*20* 110:*11*

timelines 12:*24
14:22* 74:*3, 6* 76:*10,
20* 77:*5, 8, 22, 25
96:22, 24*

**times** 34:*8, 11, 14*

**Timothy** 13:*23* 15:*17*

**Tim's** 75:*11* 82:*1*

**title** 29:*10* 49:*11*

**titled** 55:*14* 59:*16*

**Today** 4:*2, 4* 7:*9
8:19* 11:*2, 7* 17:*3
25:13, 22* 52:*6* 62:*20
105:20*

today's 54:*6* 62:*23
90:10*

**Toolkit** 50:*4*

**top** 22:*9* 74:*5* 76:*17
96:23* 99:*19* 108:*3,
11*

topic 100:*3*

**total** 33:*2, 5*

**traded** 16:*8*

**traditional** 35:*18, 22
83:20* 85:*14, 15
100:22* 101:*10*

training 20:*12*

trajectory 78:*11*

transaction 17:*10*

transactions 79:*17*

transcribed 110:*13*

transcript 9:*1, 13, 15,
18, 24* 10:*4, 9, 14
110:11* 111:*7*

**transfer** 12:*1*

**transition** 19:*2* 26:*6,
21* 79:*20*

translated 41:*15*

trends 20:*19*

tried 6:*18*

trigger 63:*5*

**true** 110:*10* 111:*10*

**truly** 26:*25* 63:*22*

**truth** 110:*8, 9*

**try** 7:*20*

trying 44:*6* 75:*1
76:1* 81:*22* 106:*14
107:19*

**turn** 73:*22* 96:*10, 13*

**Tuzun** 52:*15, 22
60:19* 77:*24* 86:*25
98:9, 24*

**two** 19:*8* 23:*19* 25:*4
46:25* 48:*9* 96:*19
106:17*

**two-thirds** 74:*1*

**type** 39:*11* 65:*4
70:22*

typically 19:*4* 22:*10*


< U >

Uh-huh 33:*12* 43:*23
47:24* 82:*16* 94:*19*

uh-huhs 7:*15*

ultimately 43:*8
61:21* 78:*11*

unanimous 102:*7*

unanimously 87:*12*

understand 6:*16
7:10, 17, 21* 12:*9
22:2* 40:*4* 41:*19
76:1* 81:*9, 10* 85:*6
93:11* 100:*25* 103:*12,
23* 104:*6, 15* 106:*14
107:19*

understandable 61:*13*

understanding 5:*17,
20* 6:*10, 11* 21:*23
22:22* 26:*11, 16
28:21* 33:*4* 50:*20
66:3, 5* 83:*3, 17* 91:*5,

11, 12, 22* 92:*3, 7, 11,
12, 21* 93:*6, 13, 20, 21
94:13, 15, 21, 24
102:25* 105:*11
111:13*

understood 71:*2
99:22*

unh-unhs 7:*15*

unicorn 82:*10, 13
83:16*

union 103:*25* 104:*3*

unique 27:*8* 79:*14,
20* 84:*19*

uniqueness 22:*23*

**UNITED** 1:*1* 4:*7*

**University** 8:*16*

unlawful 90:*20*

unusual 67:*14* 70:*10,
21*

update 55:*9, 24*

**Updates** 55:*16*

**use** 6:*7* 31:*3* 101:*1*

utility 102:*21*


< V >

validate 82:*24*

validated 82:*21*

validates 82:*23*

valuable 35:*19*

value 19:*8, 25* 100:*23*

valued 101:*17*

values 95:*19*

various 49:*6*

vast 74:*21*

verbal 43:*3*

verbally 7:*14*

versus 4:*6*

viable 87:*22* 88:*1, 6*

video 6:*23, 25* 7:*1, 4,
13* 8:*25* 9:*13, 14, 23
10:3, 8, 13*

Videoconference 2:*5*

Videographer 1:*23
4:1, 23* 6:*15, 24
53:23* 54:*5* 90:*3, 9
108:21*

videotape 4:*2*

Videotaped 1:*14*

view 26:*23* 27:*16
33:2, 9* 35:*15* 60:*25*

61:*11, 12* 83:*16, 23
84:7* 86:*12* 93:*9
102:10* 107:*8*

viewed 9:*3* 68:*19
100:22*

viewing 78:*15*

views 56:*17* 61:*5
63:10* 66:*16* 69:*13*

virtue 26:*19* 56:*14
57:10* 65:*3* 68:*21
74:22* 76:*6* 81:*24
83:19* 99:*19* 100:*21
101:2, 8*

vocal 64:*21* 68:*11
103:1*

voice 62:*20, 21
64:16* 65:*17*

voiced 103:*1*

vote 62:*22*

**vs** 1:*9* 111:*4*


< W >

wait 7:*18* 94:*3
105:4*

**Wall** 83:*8*

**Walnut** 1:*20*

**WAM** 29:*12, 14*

want 6:*7, 21* 7:*2
19:6* 21:*7* 62:*13
68:18* 69:*15* 79:*15,
24* 80:*12* 81:*18, 20
84:14* 100:*15* 103:*13
105:6* 106:*6, 18
107:8, 12*

wanted 40:*20* 69:*25
79:12* 80:*19* 81:*15,
25* 84:*5* 86:*5* 101:*20
103:8* 105:*11*

wants 50:*12*

**Warden** 5:*23*

watching 5:*21* 38:*8,
11* 39:*5*

way 35:*11* 39:*17
43:17* 57:*9, 18* 66:*10
71:4* 79:*22* 105:*15
108:9*

Wednesday 4:*2*

well 18:*2* 19:*9, 14,
17* 20:*22* 21:*1, 24
22:21* 23:*15* 37:*4*

38:*7, 10, 19*  39:*11, 18*
42:*3, 12*  45:*14*  53:*12*
67:*9*  68:*8*  76:*5*
86:*13*  89:*11*  106:*23*
**Wendy**  6:*18*
**went**  82:*8*
**We're**  4:*1, 3*  34:*12*
36:*4*  39:*6, 9, 10, 15*
51:*20*  53:*10*  62:*14,*
*22*  63:*3*  72:*15*  78:*16*
80:*10*  82:*1*  99:*6, 20*
100:*23*  101:*6*  105:*19*
**WESTERN**  1:*3*  4:*8*
**whatsoever**  110:*17*
**WHEREOF**  110:*21*
**white**  62:*11*
**whiz**  82:*11*
**Williams**  10:*4*  18:*16*
42:*3*
**willing**  80:*12*  81:*20*
101:*23*
**wisdom**  20:*5*
**witness**  4:*19, 24*  5:*2*
9:*3*  71:*23, 25*  96:*2, 7*
108:*17, 20*  110:*21*
**word**  106:*20*
**words**  11:*21, 24*
**work**  15:*22, 24*
28:*24*  29:*1*  47:*2*
52:*19*  70:*9*  77:*4*
84:*5*
**worked**  103:*13, 23*
104:*7*
**working**  107:*8*
**workplace**  28:*20*
44:*19*
**world**  103:*19*
**wow**  55:*11*
**writing**  39:*13*
**written**  12:*2*  76:*24*
82:*3*  83:*8, 9*  93:*11*
**Wyman**  19:*23*

**< Y >**
**Yeah**  23:*11*  34:*24*
40:*16*  48:*13*  71:*23*
76:*23*  78:*15*  81:*6*
**year**  30:*20*  34:*11*
37:*7*  53:*11, 19*  63:*14*

70:*17*  82:*15*  83:*5*
108:*5*
**years**  8:*4, 8*  17:*11*
20:*5*  35:*23*  40:*15*
98:*22*  103:*13, 23*
107:*8*
**York**  8:*16*
**young**  83:*24*  84:*7,*
*20, 21*  85:*4, 10, 12, 16*

**< Z >**
**Zoom**  5:*19*  6:*12*