UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| PHILIP R. MCHUGH, | : | |
| | : | Case No. 1:21-cv-00238 |
| Plaintiff, | : | |
| | : | Judge Michael R. Barrett |
| v. | : | |
| | : | |
| FIFTH THIRD BANCORP, ET AL. | : | PLAINTIFF'S MEMORANDUM IN |
| | : | OPPOSITION TO DEFENDANTS' |
| Defendants. | : | MOTION FOR PROTECTIVE ORDER |

Defendants Greg Carmichael and Fifth Third Bank's[1] Motion for Protective Order is yet another effort to obstruct discovery in this executive-level age discrimination case. According to Defendants, all fourteen directors were equal decisionmakers in the decision to promote Tim Spence to President and CEO.[2] As this Court previously confirmed in multiple informal discovery hearings,[3] this subjects those directors to deposition testimony.

---

[1] For ease of reference, Defendants Fifth Third Bancorp and Fifth Third Bank, N.A. are referred to throughout this Memorandum as "Fifth Third Bank" or "the Bank."

[2] *See, e.g.,* **Exhibit 1** – Carmichael Dep. Vol. II, 303:4-8 ("[T]he board determined they [McHugh and Tayfun Tuzun-CFO] were not candidates because they weren't qualified and there was no support for them by anyone on the board, and it was unanimously felt Tim was the right person to lead Fifth Third into the future."); **Exhibit 2** – Michael McCallister Dep. 126:15-19 ("Q. to repeat what you told me, Mr. Carmichael cannot appoint Mr. Spence? A. Correct. Q. That's solely a board decision? A. Correct."); **Exhibit 3** – Gary Heminger Dep. 16:5-21 ("A. The members of the [Human Capital and Compensation Committee] are joined by the other members of the board, and so executive succession for the CEO is all done at the board level, not just particularly within the HCCC – HCC, I should say. Q. Independent of the board, does the HCCC have any role in the executive succession for the President and CEO? A. No, sir."); **Exhibit 4** – Marsha Williams Dep. 20:23-25 ("the role of the entire board is to plan succession and to select the next leaders of our organization. That's one of our primary goals."); **Exhibit 5** – Nicholas Akins Dep. 57:12-16 ("The board – to my knowledge, the board never communicated to Phil McHugh that he was going to be the next CEO, the board never did that. And the board's responsibility is to do that, not the CEO. And that's the independent board members."); **Exhibit 6** – Eileen Mallesch Dep. 62:17-23 ("The CEO successor is the board's responsibility and only the board, and even though Greg Carmichael was the Chairman the Chairman is one voice out of what, we have 15 people, so today Tim Spence is one voice and he only has one voice in that vote for how we're going to think about who's CEO succession even in today's environment.").

[3] *See* Doc # 42, PAGEID # 2384 (February 5, 2024 Discovery Hearing Transcript 5:8-9)("I think it's fair that you get to take these [directors'] depositions if they were part of the decision."); Doc # 38, PAGEID # 2328 (December 14, 2023 Discovery Hearing Transcript 21:15-19)("[I]f as part of your [Defendants'] presentation you're going to say everybody was on board and nobody considered age, I think that's only fair to people who have a deposition in the

The Bank's specious and generalized arguments that additional director deposition testimony will be "unreasonably cumulative" or "duplicative" based upon six of fourteen directors deposed thus far is not a sufficient legal basis to issue a Rule 26(c) protective order, particularly where that testimony supports Plaintiff's claims and is based on nothing but conclusory statements regarding the testimony. Indeed, the director testimony and record evidence thus far confirms that this Board subjectively viewed Tim Spence as a "young Jamie Dimon," a "whiz-kid," and an executive "with a sufficient runway," while Phil McHugh was viewed as not a "young Jamie Dimon," but a "solid traditional banker," a "utility player." (*See* **Exhibit 6 –**Mallesch Dep. 82:7-12); **Exhibit 3** – Heminger Dep. 79:12-15; **Exhibit 5 –** Akins Dep. 47:13-18). These statements and more support the fact that—contrary to the Bank's position—McHugh was well-qualified to be the next President and CEO, and that the Board only refused to consider him because of his age. They are also entirely subjective and undocumented, making them a necessary subject of inquiry in discovery. *See Grano v. Dep't of Dev.,* 699 F.2d 836, 837 (6th Cir. 1983)("[T]he legitimacy of the articulated reason for the employment decision is subject to particularly close scrutiny where the evaluation is subjective."); *Ceglia v. Youngstown State Univ.*, 2015-Ohio-2125, 38 N.E.3d 1222, ¶ 42 (10th Dist.)(finding issues of fact given the employer's hiring decision "appears to be based, in large part, on the individual committee member's subjective belief that Holbomb-Hathy was a superior candidate to appellant rather than on specific objective evidence.").

---

can, because otherwise you're introducing facts which are not in evidence in any other form."); Doc # 32, PAGEID # 2230 (July 27, 2023 Discovery Hearing Transcript 32:21-25)(Court: Are those two people decisionmakers in terms of the CEO succession? Mr. Hart: They are one of the 14 Board members. Court: Okay. Then they are probably going to have to talk about what they know or what they remember."); **Exhibit 7** – August 2, 2024 E-mail from Court ("As to the director depositions, if they were part of the decision-making process, then they can be deposed.").

Finally, separate from the directors, and despite the Court's prior clear instructions to produce Susan Zaunbrecher for deposition, Defendants have neither conferred with nor provided mutually convenient dates to Plaintiff for Ms. Zaunbrecher's deposition.[4] Defendants have no excuse for their failure to date to produce Ms. Zaunbrecher, and they have in no way made arguments to prohibit her deposition in their motion. As such, beyond denying Defendants' motion for protective order, Plaintiff also requests that the Court compel Defendants to produce Ms. Zaunbrecher for deposition.

I.  **Legal Standard**

The Federal Rules afford parties the right to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense…" Fed. R. Civ. P. 26(b)(1). Although Rule 26 provides that a person resisting discovery may move the court, *for good cause shown*, to protect the person or party from "annoyance, embarrassment, oppression, or undue burden or expense," Fed. R. Civ. P. 26(c)(1)(emphasis added), "[t]he burden of establishing good cause for a protective order rests with the movant." *Nix v. Sword,* 11 F. App'x 498, 500 (6th Cir. 2001).

"To show good cause, a movant for a protective order must articulate specific facts showing a 'clearly defined and serious injury' resulting from the discovery sought and cannot rely on mere conclusory statements." *Id.* Mere speculation or unsubstantiated fears of prejudice are insufficient to justify the imposition of a protective order burdening a party's trial preparation. *Nemir v. Mitsubishi Motors Corp.*, 381 F.3d 540, 550-551 (6th Cir. 2004)("If [the movant's] unsubstantiated fears of prejudice justified a protective order, such orders would be justified in virtually every

---

[4] Plaintiff's counsel originally conferred with Defense counsel and scheduled Ms. Zaunbrecher's deposition for Monday, April 1, 2024, the only date offered by Defendants. Plaintiff's counsel sent the deposition notice for Ms. Zaunbrecher to Defense counsel on January 22, 2024 in order to secure her deposition given the difficulties in doing so. However, upon learning Plaintiff had a conflict with the April 1, 2024 date, Plaintiff's counsel followed up with Defense counsel on January 24, 2024 – just two days later – and let them know that Ms. Zaunbrecher's deposition would need to be re-scheduled and offered several other dates. Defendants have yet to provide any dates since the need for rescheduling.

3

case…"); *See also Bds. of Trustees of Ohio Laborers' Fringe Benefit Programs v. A2 Servs., LLC*, S.D.Ohio No. 2:13-cv-476, 2013 U.S. Dist. LEXIS 150924, at *6 (Oct. 18, 2013)("Although Rule 26 permits a court to issue a protective order to protect a party from "annoyance, embarrassment, oppression, or undue burden or expense," it does not require that discovery be limited to only that deemed appropriate by the opposing party.").

Here, Defendants seek to prohibit the testimony of the remaining 8 of 14 decisionmakers in this case. In doing so, the Bank in no way concedes that these directors were *not* equal decisionmakers, but instead oddly and incorrectly claim that because Defendants feel that they can predict that the testimony that will be provided by the decisionmakers will be "cumulative," Plaintiff must be precluded from obtaining the decisionmaker's testimony.

Defendants are simply wrong, and certainly do not cite the "clearly defined and serious injury" necessary to prohibit deposition testimony of what they repeatedly admit are the relevant decisionmakers in this case.

**II.     Defendants' stated "necessity" for filing this motion for protective order is based on its own unfounded and outdated views of discrimination law.**

Contemporaneous with filing their Motion for Protective Order, Defense counsel e-mailed the Court claiming the Motion was necessary because (they claim) Plaintiff has not directly asked the witnesses whether they discriminated against Plaintiff based on his age. (*See* **Exhibit 8** – August 2, 2024 E-mail from C. Hart to Court ("Unfortunately it is necessary for Defendants to file a Motion for Protective Order because…Plaintiff's counsel never once asked any independent director the ultimate question as instructed by the Court: was age a factor in the Board's decision not to promote Mr. McHugh.")). Defendants made the same argument in their motion, claiming that Plaintiff "did not ask a single age or discrimination related question[,]" asked only irrelevant

4

time-wasting questions, and therefore future depositions would be "improperly annoying, embarrassing, and harassing." Doc # 66, PAGEID # 2621.

These conclusory statements are not true,[5] and simply highlight Defendants' contrived, unsupported views on discrimination law. As this Court is well aware, an employer's denials of discrimination do not resolve the question of whether such discrimination occurred, particularly where there is other direct and circumstantial evidence in support. *See, e.g., Erwin v. Potter*, 79 F. App'x 893, 896-97 (6th Cir. 2003)("Direct evidence of discrimination is rare because employers generally do not announce that they are acting on prohibited grounds."); *Kline v. TVA*, 128 F.3d 337, 348 (6th Cir. 1997)("Rarely can discriminatory intent be ascertained through direct evidence because rarely is such evidence available. This is the reason for the *McDonnell Douglas-Burdine* burden of proof mechanism, allowing a plaintiff to prove its case through circumstantial evidence."); *Price Waterhouse v. Hopkins*, 490 U.S. 228, 271, 104 L. Ed. 2d 268, 109 S. Ct. 1775 (1989)(O'Connor, J. concurring)("[T]he entire purpose of the *McDonnell Douglas* prima facie case is to compensate for the fact that direct evidence of intentional discrimination is hard to come by."); *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121, 83 L. Ed. 2d 523, 105 S. Ct. 613 (1985)("The shifting burdens of proof set forth in *McDonnell Douglas* are designed to assure that the 'plaintiff [has] his day in court despite the unavailability of direct evidence.'"); *Sheridan v. E.I. Dupont de Nemours & Co.*, 100 F.3d 1061, 1071 (3d Cir. 1996)("The distinct method of proof in employment discrimination cases, . . . arose out of the Supreme Court's recognition that direct evidence of an employer's motivation will often be unavailable or difficult to acquire.").

---

[5] *See, e.g.,* **Exhibit 1** – Carmichael Dep. Vol. I 64:5-7 ("Q. Is age included in a factor with respect to CEO and president CEO succession planning at Fifth Third Bank?"); **Exhibit 3** – Heminger Dep. 80:9-11 ("Q. Is there a certain age at which you believe someone would not be able to complete the runway of a minimum of five to seven years?"); **Exhibit 2** – McCallister Dep. 85:21-86:2 ("Q. The first thing that is informative on there is the participants' age after his name and his title. Do you see that? A. I see that yeah. Q. Okay. And there's other information. How do you – how does the board take in that information?).

Ultimately, the primary source of both the direct and circumstantial evidence of whether a discriminatory action has occurred comes from the testimony of the decisionmakers themselves and any and all individuals having influence over the decisionmakers. *Sharp v. Aker Plant Servs. Group*, 726 F.3d 789, 798 (6th Cir. 2013)("Discriminatory remarks by decision makers and those who significantly influence the decision-making process can constitute direct evidence of discrimination."); *Wexler v. White's Fine Furniture*, 317 F.3d 564, 572 (6th Cir. 2003)("A factfinder could reasonably conclude that the above-listed statements evinced a discriminatory intent. They were made by the decisionmaker, indicated a belief that a person' capabilities as a store manager diminish with age, and the first five were directed at [plaintiff] at the very time he was being demoted."); *Shockley v. Morristown-Hamblen Hosp. Assn.*, E.D.Tenn. No. 2:16-cv-257, 2018 U.S. Dist. LEXIS 185305, at *47 (Mar. 14, 2018) citing *Ercegovich v. Goodyear*, 154 F.3d 344, 354-55 (6th Cir. 1998)("[R]emarks by a person who influenced the decision making process are relevant, even if the person making the remarks was not an actual decisionmaker."). No matter the number of decisionsmakers identified by the employer, the testimony of each one is relevant and necessary in an employment discrimination matter.

That is particularly so here, where the evidence thus far indicates that this Board, chaired by Greg Carmichael, was primed and readily influenced to engage in age discrimination. Indeed, Carmichael himself admitted to McHugh during his February 14, 2020 Annual Performance Review that the Board was considering McHugh's age when he informed McHugh that "the board has asked me to stay on for two or more years, and you might be too old at that time." (*See* **Exhibit 9** – Philip McHugh Dep. Vol. II 52:16-53:2)). These statements are also confirmed by McHugh's contemporaneously taken notes during this meeting. (*See* **Exhibit 10** – McHugh Contemporaneous Notes from February 14, 2020 Annual Review.). Moreover, Board member testimony thus far

6

confirms that Board members based their decision on subjective opinions of Spence, where Board members testify to needing a CEO with a "long enough runway," and that they saw this in Tim Spence as a "young Jamie Dimon." *See* **Exhibits 3, 5, 6.** Moreover, this same testimony indicates that McHugh was, contrary to the Bank's position, well-qualified for the role—he was simply too old.

Of course, the parties are at the discovery phase of this case, and arguing over the merits is premature. However, it is clear that the discovery has not been as "wasteful" as Defendants would have this Court believe in their Motion, and the issues of what the board relied upon in rendering their decision are certainly not definitively answered.

### III. The inquiry into circumstantial evidence includes confirming the Board's susceptibility to age-biased influence in their decision.

Beyond the directors' testimony directly confirming their age considerations, testimony thus far also confirms that the Board members' information and ability to assess CEO candidates was limited, making them ripe for influences based upon a candidate's age, including in the information they were provided. (*See, e.g.,* **Exhibit 5** – Akins Dep. 88:2-5 (Q. As you sit here today, do you recall if any of the prior talent decks for 2016, 2017, 2018, if they had any CEO succession plan set forth in them? A. I don't recall.); *id*. at 84:3-6 (Q. Who would have completed this CEO succession chart that we see on Fifth Third-McHugh 001142? A. I don't know who specifically, but, again, it would be sponsored by the CEO [Carmichael] and CHRO [Shaffer]."; **Exhibit 4** – Williams Dep. 27:25-28:8 (Q. Prior to January 1st of 2020, what was your relationship with Phil McHugh? A. I saw him at board meetings. Q. Prior to January 1, 2020, have you ever seen Phil McHugh outside of the board meetings? A. At board dinners. Q. Other than board dinners and board meetings, did you ever see Phil McHugh prior to January 1, 2020? A. Not to my knowledge.)).

Additionally, there is an issue of whether, and to what extent, each director had the time or capacity to conduct a truly independent, objective assessment of candidates for President and CEO of the Bank, given their other employment and other board commitments.

By way of example, from 2009 until 2020, Gary Heminger was the Chairman and CEO of Marathon Petroleum, along with serving on multiple boards in addition to Fifth Third. (*See* **Exhibit 3 –** Heminger Dep. 9:14-21; 11:11-14). Eileen Mallesch sat on at least five large companies' boards in addition to Fifth Third (Brighthouse Financial, Arch Capital Group, Bob Evans Farms, State Auto Financial, and Libby Glass) and other non-profit boards including Columbus College of Art & Design. (*See* **Exhibit 6 –** Mallesch Dep. 16:10-18:12). Nicholas Akins was the Chairman, President, and CEO of American Electric Power (AEP) from 2011-2023, a heavily-regulated company with an approximately $50 Billion dollar Market Cap. As noted in Defendants' motion, beginning in June of 2020 (the same time during which Spence was being selected as the next President and CEO over McHugh), Akins was embroiled in derivative shareholder litigation in which Akins was personally named. Akins did not even attend the September 2020 Board Meeting (the RHR presentation meeting and final meeting of the Board prior to the resolution being circulated naming Spence as the next President) because Akins had to attend his own company's Board Meeting. (*See* **Exhibit 5 –** Akins Dep. 19:12-22:21; 25:7-26:8).

As Defense counsel put it, the directors "are highly accomplished and busy professionals engaged in important and time-consuming civic and business matters of local and national import." (*See* **Exhibit 11 –** C. Hart August 1, 2024 E-mail to Court). For example, according to Defense counsel, Katherine Blackburn cannot be pulled away for even one day, particularly during the NFL season. *Id.* How could she or any of the other extremely busy directors be expected to conduct a truly independent investigation into the next President and CEO of Fifth Third, when meeting only

once per quarter, and relying solely upon documents and information provided at the Board Meetings.

Finally, at least four of the directors yet to be deposed—C. Bryan Daniels, Thomas H. Harvey, Mitchell S. Feiger, and Linda W. Clement-Holmes—did not join the board until 2019-2020. While the majority of directors' information was limited, that limitation is further heightened with respect to these four, who came onto the board immediately prior to Spence's promotion, without having observed Spence or McHugh at any prior board meetings. It is unclear what, if any, information they would have relied upon in rendering their decision.

**IV.     Further director testimony is necessary to confirm the lack of any independent investigation by the directors.**

The Bank continues to assert that each of these Board members made an independent business judgment that Tim Spence should be the next President and CEO. Given this insistence and the complete lack of documentation to support it, Plaintiff has a right and need to take the remaining directors' depositions for multiple reasons.

First, Plaintiff has a need to discover what individuals influenced each Board member's decision, and in what way. *See Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339, 353 (6th Cir. 2012) citing *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 355 (6th Cir. 1998)("[A] biased employee's 'position of influence' is probative of that employee's ability to influence the ultimate decisionmaker."). Specifically, Plaintiff needs to discover whether such directors conducted any independent investigation outside of what was provided to them, and if so whether that investigation is sufficiently in-depth and truly independent to evade the age-biased information provided. *See Marshall v. Rawlings Co. LLC*, 854 F.3d 368, 380 (6th Cir. 2017). So long as the Bank continues to assert that its directors were the decisionmakers in this CEO succession process, Plaintiff has a right and need to confirm the basis for their decision.

9

**V.     The case law Defendants cite is inapposite and distinguishable.**

Defendants cite a number of cases that they wrongly claim support their request for a protective order. They do not, and certainly do not override the Sixth Circuit's requirement that a moving party articulate specific facts showing a 'clearly defined and serious injury' resulting from the discovery sought.

First, Defendants heavily cite *Serrano v. Cintas Corp,* 699 F.3d 884 (6th Cir. 2012), which rejects what other circuits have labeled the "apex doctrine." *Id.* at 901. The apex doctrine presumes "harassment and abuse" are "inherent" in depositions of high-level corporate officers and therefore allow such depositions to be barred absent "a showing that the individual possesses relevant evidence which is not readily obtainable from other sources." *Id.* As confirmed in *Serrano,* however, the Sixth Circuit does not follow this doctrine, and held the trial court abused its discretion by doing so and not requiring the defendant to establish the articulated burdens under Rule 26(c)(1) with specific demonstrations of fact. *Id.*

Defendants attempt to mislead this Court in a similar way, accusing Plaintiff of not having established a particularized need for these depositions, and that the information is readily obtainable from other sources. *See* Doc # 66, PAGEID # 2616 ("Here, Plaintiff has never made a particularized showing that he needs to depose every director about matters that are common to the board."). Defendants then go on to make the same "bald assertion that that being deposed would present a substantial burden" without citing to any particularized facts demonstrating harm. *Serrano*, at 901. The reality is that <u>*Defendants*</u> must show the particularized facts establishing a serious harm that would result from the relevant decisionmakers being deposed. They have not done so here, and *Serrano* thus confirms their motion has no merit.

*Pizutti v. Nashville Hospitality Capital, LLC,* S.D.Ohio No. 2:18-mc-0040, 2018 U.S. Dist. LEXIS 183247, at *1 (Oct. 25, 2018), is the only other case from the Sixth Circuit that Defendants cite, and it is also readily distinguishable. First, the case was over a non-compete violation between a hotel owner (the plaintiff) and a development consultant (the defendant). *Id.* at *1-3. Pizutti Companies, of which Ron Pizzuti was the founder, Chairman, and CEO, was merely a third-party whom the consultant-defendant was working with at the same time, allegedly in violation of the non-compete. *Id.*

Second, unlike Fifth Third's directors, Pizutti disclaimed any significant involvement in the real estate project underlying the non-compete violation, and instead made clear that the decisionmakers at Pizzuti companies were three other executives including Pizutti's son Joel. *Id.* at *3-4 ("According to Pizzuti, these three high-ranking Pizzuti officials are the decision makers on the Nashville Joseph project. Pizzuti allowed all three men to be deposed by NHC in September 2018 in Columbus, Ohio.").

Here, Fifth Third is a party to this litigation, and has specifically claimed that its fourteen directors were all the decisionmakers at issue. Unlike Pizutti, Fifth Third cannot claim a lack of involvement or that the information can be obtained from others.

As to the remaining cases cited to by Defendants, not one is identified as an employment discrimination case, let alone one that involves a committee of decisionmakers in a promotion decision.

## VI.   Conclusion

In addition to requesting that Defendants be ordered to provide dates for the deposition of Susan Zaunbrecher, for the foregoing reasons, Plaintiff respectfully requests that this Court deny

Defendants' Motion for Protective Order, and further Order that Defendants provide witness availability over the next two months such that this case can proceed forward.

>Respectfully Submitted,
>
>*/s/ Peter A. Saba*_____
>Peter A. Saba, Esq. (0055535)
>Joshua M. Smith, Esq. (0092360)
>Bailey E. Sharpe (0103565)
>STAGNARO, SABA
>& PATTERSON CO., L.P.A.
>2623 Erie Avenue
>Cincinnati, Ohio 45208
>(513) 533-2701
>(513) 533-2711 (fax)
>pas@sspfirm.com
>jms@sspfirm.com
>
>*/s/ John J. McHugh*_____
>John J. McHugh, III
>McHUGH & McCARTHY, LTD
>5580 Monroe Street
>Sylvania, Ohio 43560
>(419) 885-3597
>(419) 885-3861 (fax)
>
>**Co-Counsel for Plaintiff Philip R. McHugh**

### CERTIFICATE OF SERVICE

    The undersigned hereby certifies that a copy of the foregoing motion was served on all counsel of record this 20th day of August, 2024 via the Court's CM/ECF system.

>*/s/ Peter A. Saba*_____
>Peter A. Saba, Esq. (0055535)