**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

|  |  |  |
|---|---|---|
| PHILIP R. McHUGH, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Case No. 1:21-cv-00238-MRB |
| vs. | : | |
| | : | Judge: Hon. Michael R. Barrett |
| FIFTH THIRD BANCORP, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| | : | |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR PROTECTIVE ORDER
AND/OR TO LIMIT DISCOVERY UNDER RULE 26(B)(2)(C)
<u>PRECLUDING ADDITIONAL DIRECTOR DEPOSITIONS</u>**

I. INTRODUCTION

Plaintiff's Opposition (Doc. 69, "Opposition" or "Opp.") to Defendants'[1] Motion for Protective Order and/or to Limit Discovery (Doc. 66, "Motion" or "Mot.") is without merit. Plaintiff does not cite a single case that supports his contention that he is entitled to double the presumptive deposition limit and depose Defendants' entire board of directors, in addition to its General Counsel. No court has permitted such a broad fishing expedition under these circumstances where a board of directors of a public company jointly exercises its business judgment to appoint a president and is subsequently sued by a disgruntled employee who quit and walked away from his position as an Executive Vice President—a position that paid him over $2,000,000 per year—was never qualified to be president, and was never considered a candidate. Accordingly, the Court should grant Defendants' Motion.

II. ARGUMENT

A. **Plaintiff is Not Entitled to Depose 14 Directors Over their Joint Business Decision.**

At the outset, Plaintiff argues that "no matter the number of decisionmakers by the employer, the testimony of each one is relevant *and necessary* in an employment discrimination matter." Opp. at 6, PAGEID 3135 (emphasis added). Plaintiff, however, does not cite a single case or Federal Rule supporting this proposition. Nor does Plaintiff cite a single case in which a court permitted a plaintiff to depose every single member of a board of directors regarding any issue, including in an employment discrimination matter. Plaintiff does not even cite to a case dealing with a motion to prohibit additional depositions. To the contrary, courts routinely prohibit parties from deposing an entire board of directors regarding matters that were jointly decided by such board, as explained in Defendants' Motion. *See* Mot. at 7-9, PAGEID 2615-17.

---

[1] For purposes of this Reply, Defendants Fifth Third Bank and Fifth Third Bancorp are herein collectively referred to as "Fifth Third Bank" or "Bank."

Instead, Plaintiff solely cites to general principles of substantive anti-discrimination law that have no bearing on the propriety of Plaintiff's demand to depose 14 directors about the same jointly held meetings and discussions that led to the Board's joint and unanimous decision to appoint Mr. Spence. The application of the *McDonnell Douglass* framework[2] and the probative value of certain remarks[3] are irrelevant to the question of whether 14 director depositions would be unnecessarily cumulative, duplicative, and disproportional to the needs of this case.

Plaintiff's argument that all director testimony is relevant *and necessary* is fundamentally flawed as it makes no attempt to explain or justify how 14 director depositions about the same materials, meetings, and discussion is not unreasonably cumulative or duplicative. Plaintiff argues that because the directors were "equal decision makers," he is entitled to depose each director. *See* Opp. at 4; PAGEID 3133. This argument, however, misses the point. The directors were not separate or sole decision makers. The directors, as with all boards, acted as a group based upon the same information that was considered and discussed jointly by the full board over several years, which culminated in a unanimous vote to appoint Mr. Spence. Additionally, only a vote of the majority of the full Board was required to appoint Mr. Spence, per the Bank's Code of Regulations. *See* Exhibit A, p. 25. There are no cases—and Plaintiff cites none—holding that every board member must be deposed in order to ascertain why a board, considering the same information at the same meetings, acted as it did.

As the *Pizzuti* Court explained, the question is not whether the directors have any relevant information, but whether such information is cumulative and duplicative of the information discovered via

---

[2] *See* Opp. at 5, PAGEID 3134 (citing *Erwin v. Potter*, 79 F.App'x 893, 896-97 (6th Cir. 2003); *Kline v. TVA*, 128 F.3d 337, 348 (6th Cir. 1997); *Price Waterhouse v. Hopkins*, 490 U.S. 228, 271, 104 L. Ed. 2d 268, 109 S. Ct. 1775 (1989); *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121, 83 L. Ed. 2d 523, 105 S. Ct. 613 (1985); *Sheridan v. E.I. Dupont de Nemours & Co.*, 100 F.3d 1061, 1071 (3d Cir. 1996)).
[3] *See* Opp. at 6, PAGEID 3135 (citing *Sharp v. Aker Plant Servs. Group*, 726 F.3d 789, 798 (6th Cir. 2013); *Wexler v. White's Fine Furniture*, 317 F.3d 564, 572 (6th Cir. 2003); *Ercegovich v. Goodyear*, 154 F.3d 344, 354-55 (6th Cir. 1998); *Shockley v. Morristown-Hamblen Hosp. Assn.,* E.D.Tenn. No. 2:16-cv-257, 2018 U.S. Dist. LEXIS 185305, at *47 (Mar. 14, 2018)).

the first six director depositions. *See Pizzuti v. Nashville Hospitality Capital, LLC*, 2018 U.S. Dist. LEXIS 183247, **12-15 (S.D. Ohio Oct. 25, 2018). To the contrary, Plaintiff's Opposition does not even mention or discuss Rule 26's limits regarding proportion, duplication, and cumulation beyond the general statement that "the issues of what the board relied upon in rendering their decision are certainly not definitively answered." Opp. at 7, PAGEID 3136. However, and as discussed below, Plaintiff has not articulated a single specific issue that is relevant to his claims that is not already definitively established by the existing director testimony given the fact that the Board at all times acted jointly as a group, discussing the same information at the same meetings. The Court would never allow 14 directors to testify in succession at trial about what happened at board meetings they all attended. Such successive testimony would be prohibited under Federal Rule of Evidence 403's prohibition against "needlessly presenting cumulative evidence." The same principle applies here pursuant to Rule 26(b).

Finally, Plaintiff argues that the relevance and need to depose all 14 directors is increased by the record evidence. Opp. at 6-7, PAGEID 3135-36. While much of Plaintiff's argument centers on a substantive assessment of record evidence, an exercise that Plaintiff admits is premature (Opp. at 7, PAGEID 3136), his misrepresentations must be corrected to ensure that the Court has an accurate understanding of the current record as it pertains to Plaintiff's need for additional depositions.

Contrary to Plaintiff's unsupported assertion, there is no evidence that the Board "was primed and readily influenced to engage in age discrimination" or that the Board viewed Plaintiff as "simply too old." The only cited evidence in support of Plaintiff's assertion is his own made-up and self-serving allegation that Defendant Carmichael once indicated to Plaintiff that he may be too old for the President/CEO position—an allegation that has been directly refuted by Mr. Carmichael and for which Plaintiff has no independent corroboration. *See* Opp. at 6; PAGEID 3135. Regardless, this manufactured "he said/he said" dispute has no bearing on this discovery dispute. All six directors deposed unequivocally testified that age

3

was never a factor and was never discussed, or even mentioned, during any Board meetings concerning the decision to appoint Mr. Spence. Plaintiff does not provide a single record citation to the contrary.

Plaintiff's attempt to misconstrue innocuous comments regarding the Board's view on a candidate's career "runway" and the banking capabilities and potentials of Plaintiff and Mr. Spence does not change anything. *See* Opp. at 2, PAGEID 3131, Opp. at 7, PAGEID 3136. The full context of these statements eviscerates Plaintiff's argument. As to "runway," the deposed directors explained that it is a reference to the approximate amount of time that a candidate would intend on remaining as president/CEO as it relates to the amount of time that the Board would expect a president/CEO to stay with the company (roughly 5-7+ years so as to ensure stability and based upon expectations of Wall Street and the shareholders). *See, e.g.* Doc. 66-6, at 78:14-79:20. The deposed directors also made clear that "runway" considerations are related to the individual's career goals and have no bearing on the individual's age. *See, e.g.* Doc. 66-6, at 80:9-12. For example, a 40-year-old candidate may have a short runway of only 2-3 years because he or she wants to transition to another larger or higher profile firm or because he or she intends on retiring or changing sectors. Conversely, a 55-year-old candidate may have a long runway of 7-10+ years if he or she wants to remain as president/CEO as long as possible and has no other plans to retire or otherwise change position.

Plaintiff's futile attempts to distort testimony from directors Mallesch and Akins is similarly unavailing and irrelevant to Defendants' Motion and the underlying merits of the case. While Plaintiff repeatedly seizes on a single director's (Ms. Mallesch's) assertion that she viewed Mr. Spence as having the same substantive talent and capabilities as Jamie Dimon did at the same point in his career, she never used the term "young Jamie Dimon" or referred to Plaintiff as "not" a "young Jaime Dimon." *See* Doc. 66-5, at 83:6-85:16. Instead, Plaintiff's citations are to **his own counsel's attempts** to distort Ms. Mallesch's

4

testimony as to the substantive qualifications of Mr. Spence into evidence of age discrimination.[4] *See id*. Tellingly, Plaintiff does not actually cite to or attach the excerpts of Ms. Mallesch's deposition that include this exchange precisely because it is a discussion of talent and qualification, not age.[5]

Similarly, the full context of Ms. Mallesch's and Mr. Akins' use of the phrases "whiz-kid," "solid traditional banker," and "utility player" clearly concern how they viewed Plaintiff's and Mr. Spence's substantive banking qualifications and expertise (or lack thereof),[6] not his age. *See id*.; *id*. at 35:8-36, at 81:13-82:12, at 100:14-101:25; Doc. 66-4, at 47:1-21; 51:4-52:22; 53:5:54:8. Again, Plaintiff does not cite to or attach the full context of the directors' testimony on these subjects. This type of blatantly cherrypicked and mischaracterized testimony cannot be the basis of any argument in support of eight additional depositions.

### B. Plaintiff Does Not Explain Why Further Depositions are Proportional to the Needs of the Case and Are Not Unreasonably Cumulative and Duplicative Under Rule 26(b).

Plaintiff also argues that further director depositions are necessary to investigate certain issues regarding "what the board relied upon in rendering their decision," which are not yet "definitively answered." Opp. at 7, PAGEID 3136. Plaintiff proceeds to list, or vaguely reference, the following issues:

---

[4] The discussion in question concerned Mr. Spence's selection as digital banker of the year in 2018 by The American Banker and how such an accolade and recognition exhibits Mr. Spence's substantive qualifications regarding digital banking and financial technology. *See* Doc. 66-5, at 83:6-85:16; *see also* Suleman Din, *Digital Banker of the Year: Fifth Third's Tim Spence*, The American Banker, https://www.americanbanker.com/digital-banker-of-the-year-2018.

[5] Ms. Mallesch further explained that "the most critical role of a board director is CEO succession and the strategic oversight" and that on day one she started to "assess the capabilities of each leader." *See* Doc. 66-5, at 26:15-27:9. Ms. Mallesch's assessment led her to conclude that Mr. Spence was qualified to be the next Bank President based upon his "capabilities," and in particular his "strategic vision" and "depth and breadth of understanding the competitive landscape" concerning Fintech, digital banking and shadow banks. *Id*. at 79:14-80:16, 83:33-22, 99:15-25. Conversely, Ms. Mallesch stated that she did not consider Plaintiff qualified to be the next President even though the board respected his "capabilities" and "deep internal knowledge of Fifth Third" (*id*. at 18-21), because he "did not exhibit any strategic perspective" and could not speak with sufficient detail regarding the future of the Bank. *See id*. at 35:11-36:9, 39:1-40:5, 100:20-101:25.

[6] Mr. Akins similarly based his assessment on the skills and abilities of Plaintiff and Mr. Spence, not their age. *See* Doc. 66-4, at 53:22-54:8. Specifically, he viewed Plaintiff as having "very good operations skills" that could "keep the wheels on" during an emergency but did not have the "skills sets" that could progress "the bank into the future." *Id*. at 53:22-54:22. As to Mr. Spence, he was viewed as a CEO candidate not because of his age, but because he had the "skills" and the "acumen" regarding strategy, M&A, FinTech and digital banking. *Id*.at 46:17-19, 48:7-49:6; 128:2-129:6.

5

the extent to which each director had the time or capacity to fulfill their obligations as director (Opp. at 8, PAGEID 3137); what individuals may have influenced each Board member's decision (Opp. at 9, PAGEID 3138); and whether the directors conducted any independent investigation. Opp. at 9, PAGEID 3138. However, each of these issues is either plainly irrelevant to Plaintiff's claims or has been definitively established by the six director depositions already taken. Anything more—given that all directors received the same materials and attended the same meetings and discussions—would be cumulative, duplicative, and unnecessary.

Tellingly, there is one issue that is absent from Plaintiff's alleged needed areas of further inquiry: age. This Court has repeatedly instructed Plaintiff that the only relevant issue is whether age was a factor in the Bank's decision. Yet, throughout the eleven depositions taken to date, Plaintiff has run away from the age question and the plain fact that the Board never considered, discussed, or even mentioned age in any meeting or discussion concerning executive succession. Every deposed director has clearly and unequivocally established that age was never discussed or raised by any director and that age was never considered during the Board's deliberations over succession planning—generally upon questioning by Defendants' counsel.[7] While Plaintiff attempts to brush aside these allegations as "not true," (Opp. at 5; PAGEID 3134), the truth is, outside of the deposition of Defendant Carmichael, Plaintiff has asked only one single age-related question of one of the five independent directors deposed.[8] *See* Doc. 66-6, at 80:9-12. Plaintiff did not initiate a single age-related discussion during the remaining four director depositions, including, most egregiously, during the depositions of Ms. Mallesch and Mr. Akins.[9] Plaintiff cannot, in

---

[7] *See* Doc. 66-1, at 154:7-25; Doc. 66-2, at 158:21-160:5; Doc. 66-3, at 63:16-64:12, 65:10-66:19; Doc. 66-4, at 127:16-128:8; Doc. 66-5, at 99:5-13, 100:8-13; Doc. 66-6, at 80:9-12.

[8] In fact, Plaintiff has not questioned a single director regarding Mr. Spence's age, its specific consideration by the Board, or whether his age was considered an advantage in relation to Plaintiff's age even though Plaintiff's repeated, and misleading, citation of "young Jamie Dimon" is clearly designed to insinuate that the Board viewed Mr. Spence's age advantageously.

[9] While Plaintiff asserts that this allegation is "not true," Plaintiff does not cite any support for his response. Instead, Plaintiff cites only to questions asked during the Carmichael and Heminger depositions and not the Akins or Mallesch depositions—blatant misdirection and a clear attempt to obscure his conduct at the Akins and Mallesch depositions.

6

good faith, argue that he needs to depose eight more directors when he utterly refuses to probe the only issue that is relevant to his claims.

Plaintiff's remaining arguments are red herrings. Whether a director had the time and capacity to conduct a truly independent, objective assessment is simply not relevant to Plaintiff's claims—besides being manufactured and false. This alleged issue has no bearing on the one relevant issue of whether age was a factor in the Bank's decision to appoint Mr. Spence as Bank President. Furthermore, the only information that Plaintiff cites in support of this issue—certain directors' employment backgrounds—is all publicly available information. This is simply an irrelevant issue that does not warrant eight additional depositions. By raising this argument, however, Plaintiff makes clear that if more director depositions are permitted, he will waste the parties' and witness' time with irrelevant side issues and background questions.

Plaintiff next argues that he needs to "discover what individuals influenced each Board member's decision" and whether the directors "conducted any independent investigation outside of what was provided to them, and if so whether that investigation is sufficiently in-depth and truly independent to evade the age-biased information provided."[10] *Id.* Again, this fake issue is totally irrelevant to Plaintiff's narrow age discrimination claims. Furthermore, there is no evidence or law to support the assertion that each director had an obligation to conduct their own, independent investigation into succession candidates outside of the Board's operation.

As to Plaintiff's alleged need to discover what individuals influenced the Board's decision, six directors have now extensively testified as to the entire universe of individuals that participated in the executive succession planning process. Furthermore, Plaintiff has already deposed every non-director, Bank employee that played any role in the executive session planning process, including the current and former Chief Human Resources Officer (Nancy Pinckney and Robert Shaffer) and the two employees that

---

[10] Notably, Plaintiff does not cite or explain what "age-biased information" was provided to the Board, likely because no such evidence exists.

provided clerical assistance to produce all relevant Board materials concerning succession planning (Elizabeth McKay and Paula Hennard). Plaintiff has not identified or sought to depose any other non-director, Bank employees over their role in the executive succession planning process and, therefore, Plaintiff is fully knowledgeable as to what individuals may have influenced the Board, and how.

Finally, while Plaintiff references the ability to obtain any potentially remaining director-specific information via an alternative source (*see* Opp. at 10; PAGEID 3139), Plaintiff does not explain how any remaining discrete topics[11] cannot be fully addressed, if needed, via less oppressive and burdensome means, such as through a declaration or deposition by written question. *See* FED. R. CIV. P. 26(b); *see also Watson v. City of Cleveland*, 202 Fed. Appx. 844, 852 (6th Cir. 2006) (reasoning that any relevant information a mayor may possess could be "obtained through a form of discovery less burdensome to a city executive – namely, interrogatories and requests for production"). Accordingly, the Court should grant Defendants' Motion because Plaintiff has failed to establish that eight additional director depositions would be proportionate to the needs of this case and not unreasonably cumulative or duplicative under Rule 26(b).

    C. **Plaintiff Fails to Explain Why Additional Depositions Would Not Subject Defendants and Their Directors to Improper Annoyance, Embarrassment, Oppression, and Undue Burden or Expense Under Rule 26(c).**

The Court should also grant Defendants' Motion because Plaintiff has completely failed to rebut the argument that further director depositions would be improperly annoying, embarrassing, oppressive, or unduly burdensome, particularly in light of Plaintiff's counsel's handling of the Akins and Mallesch depositions. Despite Defendants' specific allegations of improper behavior (*see* Mot. at 10-14, PAGEID 2618-22), Plaintiff utterly failed to defend or explain how his counsel's conduct and handling of the prior director depositions, particularly the Akins and Mallesch depositions, is not a clear indication that further director depositions would be used to annoy, harass, embarrass, oppress and unduly burden Defendants.

---

[11] Such as the discrete questions of whether the director himself/herself considered age or ever heard another director raise age as a relevant consideration.

8

Defendants clearly and specifically described how the additional eight director depositions are an unduly burdensome expense, both in terms of the time and financial expenditure to the Bank and the individual directors in sitting for deposition in Cincinnati, especially for those directors who do not reside in Cincinnati. *See* Mot. At 10-11, PAGEID 2618-19. In his Opposition, Plaintiff failed to argue that such depositions would not be unduly burdensome.

In addition to undue burden, Defendants also articulated a separate justification: the likelihood that additional director depositions will be improperly annoying, embarrassing, or harassing. Mot. At 12; PAGEID 2620. Defendants supported this assertion with specific reference to Plaintiff's counsel's handling of the prior director depositions, including a detailed analysis as to the questions asked—and not asked—during the two most recent depositions of directors Akins and Mallesch. Mot. At 12-13; PAGEID 2620-21. However, Plaintiff made no attempt to explain or justify his counsel's handling of the Akins and Mallesch depositions.

Most egregiously, Plaintiff made no attempt whatsoever to explain his counsel's need to question Mr. Akins on the Larry Householder/House Bill 6 investigation—an issue that is plainly irrelevant to Plaintiff's claims—or how such questioning does not also evidence a clear intent to use future depositions to harass and embarrass Defendants and their directors. Rather than defend his counsel's actions, Plaintiff has now doubled down on such plainly improper conduct by alleging, in a public filing, that Mr. Akins' involvement in a separate shareholder derivative action concerning American Electric Power establishes that Mr. Akins could not, and did not, fulfill his fiduciary obligations to the Bank's shareholders. *See* Opp. At 8-9, PAGEID 3137-38. These questions and conduct illustrate with specificity and particularity the Rule 26(c)(1) harms that justify a protective order under Sixth Circuit law. *See Serrano v. Cintas Corp.*, 699 F.3d 884, 900-02 (6th Cir. 2012).

9

Rather than directly address Defendants' arguments, Plaintiff engages in further misdirection arguing that Defendants are relying upon a rejected "apex doctrine" to justify their Motion. *See* Opp. at 10; PAGEID 3139. To the contrary, Defendants did not argue or rely upon the apex doctrine or any generalized argument that future director depositions are inherently harassing or abusive. Rather, Defendants cited to *Serrano* for the Sixth Circuit's rule that the burden of discovery increases as the corresponding need for the discovery decreases. *See* Mot. at 11; PAGEID 2619 (citing and explaining *Serrano*). Such proposition is also inherent in the Southern District's decisions in *Goldblum* and *Pizzuti*, in which this Court determined that depositions of a university president and a company's CEO/Board Chair, respectively, were unduly burdensome due to the lack of uniquely relevant information possessed by the witnesses in light of the existing evidentiary record and the likelihood that any relevant information possessed by such witnesses would be cumulative and duplicative of other testimony. *See Goldblum v. Univ. of Cincinnati*, 62 F.4th 244, 257 (6th Cir. 2023); *Pizzuti*, 2018 U.S. Dist. LEXIS 183247, at **12-15. This inverse relationship between the need for discovery and its corresponding burden to the producing party is unchallenged by Plaintiff and directly supports Defendants' entitlement to a protective order.

### III. CONCLUSION

For the foregoing reasons, Defendants' Motion should be granted and Plaintiff should be barred from future fact depositions.

Dated: September 3, 2024

Respectfully submitted,

*/s/ Michael L. Cioffi*
Michael L. Cioffi (0031098)
Thomas H. Stewart (0059246)
Collin D. Hart (0099869)
1700 PNC Center
201 E. Fifth Street
Cincinnati, Ohio 45202

10

Tel.: (513) 362-8701
Fax: (513) 362-8702
Email: michael.cioffi@blankrome.com
Email: tom.stewart@blankrome.com
Email: collin.hart@blankrome.com

*Attorneys for Defendants/Counterclaimants Fifth Third Bancorp, Fifth Third Bank, National Association, and Gregory D. Carmichael*

## **CERTIFICATE OF SERVICE**

I, Michael L. Cioffi, hereby certify that on September 3, 2024, a copy of the foregoing Motion for Protective Order and/or to Limit Discovery was served by electronic email via the Court's CM/ECF system to all counsel of record, including:

John J. McHugh
McHugh & McCarthy, LTD
5580 Monroe Street
Sylvania, Ohio 43560
mchugh@mchughlaw.com

Peter A. Saba
Joshua M. Smith
Stagnaro, Saba & Patterson Co., L.P.A.
2623 Erie Avenue
Cincinnati, Ohio 45208
pas@sspfirm.com
jms@sspfirm.com

*Counsel for Plaintiff,*
*Philip McHugh*

                                                    **BLANK ROME LLP**

                                                     *s/ Michael L. Cioffi*
                                                    Michael L. Cioffi (0031098)

                                                    *Attorney for Defendants/Counterclaimants Fifth*
                                                    *Third Bancorp, Fifth Third Bank, National*
                                                    *Association, and Gregory D. Carmichael*