UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| PHILIP R. MCHUGH, | : | |
| | : | Case No. 1:21-cv-00238 |
| Plaintiff, | : | |
| | : | Judge Michael R. Barrett |
| v. | : | |
| | : | |
| FIFTH THIRD BANCORP, ET AL. | : | PLAINTIFF'S MOTION FOR SANCTIONS |
| | : | AGAINST DEFENDANTS |
| Defendants. | : | |
| | : | |

Pursuant to Fed. R. Civ. P. 37(c)(1), 37(d)(1)(A), and this Court's inherent authority, Plaintiff Philip McHugh respectfully moves this Court to sanction Defendants, including as follows:

- Ordering targeted depositions of Greg Carmichael, Bob Shaffer, Tim Spence, and any other relevant witnesses with respect to the RHR documents and information improperly withheld by Defendants, to occur within 30 days of the Court's decision;

- Instructing or otherwise informing the jury as to Defendants' discovery failures with respect to the RHR documents;

- Directing that Plaintiff's testimony regarding Plaintiff's understanding of the purpose of the RHR assessment—specifically, "to provide feedback about Tim and how Tim could be a better leader at Fifth Third—" (McHugh Dep. 73:20-74:2)[1] be deemed as established fact for all purposes in this action;

- Reimbursement of Plaintiff's reasonable expenses, including attorney's fees, caused by Defendants' discovery misconduct, including all such expenses associated with subpoenas directed to RHR International, and all such expenses associated with targeted depositions of Greg Carmichael, Bob Shaffer, Tim Spence, and any other relevant witness;

- Ordering any other sanctions that the Court deems just and appropriate.

---

[1] **Ex. 1** to Declaration of Joshua M. Smith, Esq., Co-Counsel for Plaintiff, with Supporting **Exhibits 1-28**

1

As explained in letter correspondence to the Court's chambers on May 22, 2025,[2] Defendants withheld documents clearly responsive to 2021 requests for production, and failed for over 3 years to supplement those responses, only doing so *after* a third-party subpoenaed for the same, RHR International, produced the documents in 2025.

The withheld e-mails are relevant to the claims and defenses in this case, including repeated and false assertions by Defendants that RHR's assessment of Tim Spence for President and CEO was "known" around the Bank, that Plaintiff had "intricate knowledge" of the assessment and purpose of it, and yet never objected to it.[3] Defendants have used these false assertions in an attempt to discredit Plaintiff and to support their counterclaim for abuse of process.



[4] These admissions are consistent with Plaintiff's testimony, and inconsistent with the allegations and testimony offered by Defendants.[5] Finally,

---

[2] **Ex 2**
[3] **Ex. 3** - Defendants' Counterclaim ¶ 11-16, Doc # 10, PAGEID # 1811-1812 – ¶ 11 ("The Bank did not conceal this vetting activity, which was widely known across the Bank. In fact, Mr. Carmichael informed Plaintiff that he would be part of the vetting process. At the time, Plaintiff agreed to participate and did not raise any issues or concerns with this activity or his status with the Company."); ¶ 12 ("Plaintiff thereafter actively took part in the vetting process himself through interviews he completed with the executive development agency that was responsible for evaluating and vetting Mr. Spence."); ¶ 13 ("In addition, multiple executives conferred with Plaintiff that Mr. Spence was being vetted for President and CEO succession purposes. At no time did Plaintiff object or state that he, Plaintiff, should be President or should be CEO."); ¶ 14 ("At the Bank's September 2020 Board meeting, Fifth Third Bank's Board of Directors met with the executive development agency to discuss the vetting of Mr. Spence. Plaintiff was aware of this meeting."); ¶ 15 ("Despite this activity—of which Plaintiff had intricate knowledge—at no time did Plaintiff ever approach Mr. Carmichael or Mr. Shaffer to inquire about his status in being considered for the position of President or CEO."); ¶ 16 ("Nor did Plaintiff ever make any attempt to speak to the Board of Directors or the executive development experts responsible for vetting Mr. Spence to inquire about whether he would also take part in a similar vetting process.").
[4] **Ex. 4**
[5] **Ex. 5** - Carmichael Dep. 68:2-9 ("Once again, I made that clear to each of them, that this vetting process and this assessment was about Tim becoming president. So it wasn't a secret. Everyone understood what this was about that he was going to be vetted, and his peers knew he was being vetted for the president, including Phil McHugh, who, by

Plaintiff was significantly prejudiced by this delayed production, given depositions of relevant individuals, including Robert Shaffer, Greg Carmichael, and Tim Spence, all occurred before the documents were produced. Moreover, Plaintiff spent significant resources attempting to obtain such e-mails from RHR given Fifth Third's false representations. Given this failure and the prejudice caused by withholding such documents, sanctions are warranted.

A Memorandum in Support and Declaration of Counsel with Supporting **Exhibits 1-28** are attached.[6]

Respectfully Submitted,

*/s/ Peter A. Saba*
Peter A. Saba, Esq. (0055535)
Joshua M. Smith, Esq. (0092360)
Bailey E. Sharpe, Esq. (0103565)
STAGNARO, SABA
& PATTERSON CO., L.P.A.
2623 Erie Avenue
Cincinnati, Ohio 45208
(513) 533-2701
(513) 533-2711 (fax)
pas@sspfirm.com
jms@sspfirm.com
bes@sspfirm.com

*/s/ John J. McHugh*
John J. McHugh, III
McHUGH & McCARTHY, LTD
5580 Monroe Street
Sylvania, Ohio 43560
(419) 885-3597
(419) 885-3861 (fax)

---

the way, never came to me and said, why not me? What's going on? Why am I not being vetted?"); Shaffer Dep. 271:7-18 ("And, in fact, in any of the vetting process, we talked about RHR earlier. RHR, everyone knew that process was going on. Phil was even interviewed in that process, and he never said anything to RHR. He never said anything to Greg Carmichael or me at all about his concern for not being vetted for that process. So Phil had firsthand knowledge of what was going on, and even as he was quitting the company here in mid-October, he never raised that as a concern.").

[6] Pursuant to the Court's Stipulated Protective Order (Doc # 16) and e-mail correspondence from chambers, Plaintiff is submitting the affidavit with supporting exhibits to chambers for an in-camera review. Additionally, the motion and memorandum have been redacted where quoting from exhibits Defendants or RHR have designated confidential, and an unredacted version is being submitted to chambers for an in-camera review.

                                                       **Co-Counsel for Plaintiff Philip R. McHugh**

## MEMORANDUM IN SUPPORT

**I.    FACTUAL BACKGROUND**

**A. Plaintiff's September 27, 2021 Rule 34 Requests for Production to Defendants**

On September 27, 2021, Plaintiff served Rule 34 requests for production on Defendants for its communications with RHR International, the consulting company that assessed Tim Spence for the position of President and CEO, and which assessment Fifth Third asserts it relied upon in promoting Mr. Spence. (**Ex. 6-7**). Plaintiff's document requests sought "all communications between [Robert] Shaffer and any agent or representative of RHR International from January 1, 2017 through the date of response, including but not limited to communications with Guy Beaudin;" and "all communications, reports, meeting minutes and proposals between any agent or representative of RHR International, and any individuals at Fifth Third from January 1, 2017 through the date of response." (**Ex. 7**).

On December 22, 2021, Defendants served objections and responses to these requests, which referred Plaintiff to selections from a batch of documents (FIFTHTHIRD-MCHUGH-000001-007241), previously produced by Defendants in July 2021. (**Ex. 8**). During this same time period, in multiple e-mail exchanges with Plaintiff and the Court, Defendants represented that all such communications between RHR and Fifth Third, including those of Mr. Shaffer, had already been produced:

- October 29, 2021 E-mail to Chambers: "As with Mr. Carmichael's and Mr. Spence's communications, the Bank has also already produced all of Mr. Shaffer's relevant communications to opposing counsel."

4

- January 18, 2021 E-mail to Chambers: "Plaintiff seeks the Bank to produce: "the 'entirety' of [Carmichael, Spence, Shaffer's] relevant communications (which have already been produced by the Bank)"

(**Ex. 9-10**).

**B. Plaintiff's March 31, 2022 and April 19, 2023 Subpoenas to RHR International**

In a further effort to obtain such communications and other relevant discovery, Plaintiff served a subpoena on RHR on March 31, 2022 and, following a number of discovery depositions, served a supplemental to RHR on April 19, 2023. (**Ex. 11-12**). In response to both subpoenas, RHR's counsel responded with blanket objections, including that the documents are in Fifth Third's possession. (**Ex. 13** ("We note that the requests for production attached to the Subpoena as Exhibit A are for documents necessarily in the possession of named parties to the case which we understand have already been the subject of production."); **Ex. 14** ("Moreover, any documents prepared by RHR that were provided to Fifth Third Bank and considered in connection with any employment decisions affecting Mr. McHugh obviously would be in the possession of Fifth Third Bank, and thus the imposition of the burden and expense of document discovery upon a non-party to this litigation is unjustifiable.")). When Plaintiff filed his motion to compel RHR's production in this Court, RHR again represented in its opposition that "Fifth Third Bank has previously produced the correspondence exchanged between RHR and Fifth Third Bank and/or Spence." (Doc. # 59, PAGEID # 2530).

**C. 2024 Extrajudicial Efforts and Further Misrepresentations by Defendants**

After this Court denied the first motion to compel without prejudice, directing that the dispute must be raised in Chicago (specifically, the U.S. District Court for the Northern District of Illinois), Plaintiff engaged in further extrajudicial efforts with RHR. This included requesting and scheduling a telephone call amongst Plaintiff's counsel, RHR's counsel, and Fifth Third's counsel

5

on November 5, 2024. (**Ex. 15**). During that call, Plaintiff raised his request for e-mail and other correspondence between Fifth Third and RHR in 2020, and a gap in those communications produced by Fifth Third between March 18 and June 8, 2024." (*Id.*). Plaintiff's counsel re-capped the call in an e-mail the following day:

> We discussed our request for e-mail and other correspondence between Fifth Third and RHR in 2020, and a gap in those communications produced by Fifth Third between March 18, and June 8, 2024[sic]. Given meetings and/or phone conference occurred between RHR (Beaudin) and Fifth Third (Carmichael/Shaffer) in those months, there should be emails, correspondence, or other responsive documents associated with any consulting work and/or meeting being performed in that time period. **Collin indicated that he was not aware of any responsive documents during this period, and you indicated that Defendants' response that there are no responsive documents should resolve the issue**.
>
> Notwithstanding your position, we are re-iterating our request that RHR search its records of any responsive documents during this period. Plaintiff is not seeking duplicative production, but there are concerns that Fifth Third's production is not reliable given multiple examples of documents previously requested but not produced (e.g., the RHR-Fifth Third Business Terms, and redline/clean copies of the CEO profile sent to RHR by Bob Shaffer as referenced below). Further, a search for e-mails/documents during a limited time period, as to one of RHR's clients for one project, is not an overly broad or burdensome request. After you discuss with your client, please let us know if RHR will search for any responsive documents, and produce any it finds.

(*Id.*)(emphasis added).

Fifth Third's counsel responded on November 12, 2024, via e-mail, stating that "[a]s it pertains to communications between RHR and Defendants, Defendants have already produced all known, relevant communications responsive to Plaintiff's requests for production."). (**Ex. 16**). On November 20, 2024, RHR's counsel responded in kind, stating "[a]s we indicated to you during the conferral, RHR believes that these requests, which seek communications involving a party to the lawsuit, are most properly directed to Fifth Third Bank and that RHR should not be asked to produce materials that are in the possession of a party where there is no evidence that reasonably

6

suggests that any communications are missing. RHR is standing on its objections to these requests." (**Ex. 17**).

D. **Plaintiff's Re-Filed Motion to Compel, and RHR's Subsequent Production**

With RHR refusing production, Plaintiff re-filed his motion to compel in the Northern District of Illinois on February 14, 2025. In doing so, he requested that RHR be compelled to "search its records to confirm whether there were any communications between RHR and Fifth Third between March 2020 and June 2020, and if so, to produce those communications." (*See* Case No. 1:25-cv-01468, Doc # 4, PAGEID # 30).

On April 14, 2025, months after the second motion to compel was filed and years after the subpoenas were originally issued, and on the day RHR's response in opposition was due, RHR's counsel called and notified Plaintiff's counsel that RHR would be belatedly producing 240 pages of documents responsive to the subpoena. (**Ex. 18**). These 240 pages of documents were communications between Fifth Third and RHR during the two-month period requested. They include numerous relevant documents withheld by Defendants.

First is a March 30, 2020 e-mail chain between Bob Shaffer and Guy Beaudin of RHR. This e-mail is a continuation of an e-mail chain partially produced by Fifth Third, but which critically left out responsive e-mails from March 18 through March 30:



(**Ex. 19**). In RHR's production, however, the e-mail chain continues:

7



(**Ex. 4**)(emphasis added). █████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████

Second is an e-mail chain between RHR and Shaffer's assistant on June 1, 2020. (**Ex. 20**).

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████ (*Id.*). ████████████████████████████████████ (*Id.*). This

e-mail confirms that as of June, the plan remained to assess three candidates, and ██████

████████████████████████████

Third is a related e-mail to the above on June 5, 2020, just four days later, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (**Ex. 21**). The call is scheduled for June 8, 2020, goes forward, and that evening Mr. Shaffer e-mails Defendant Carmichael an update:

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

(**Ex. 22**; **Ex. 23** (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮)). ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Plaintiff never had an opportunity to question Carmichael or Shaffer regarding this change in timing or the reason for the sudden change between June 1 and June 5.

Fourth are scripted e-mails prepared by Tim Spence to his direct reports on June 24, 2020, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (**Ex. 24**). Notably, each of the scripted e-mails ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*Id.*).

9

Fifth is a June 22, 2020 e-mail from RHR to Spence regarding ███████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████ (**Ex. 25**).

Sixth are calendar invite confirmations of monthly calls between RHR and Shaffer, Carmichael, and/or Spence, ███████████████████████████████████ ███████████████████████████████████████████████████ (**Ex. 26**).

**E. Defendants' belated production and lack of justification for the discovery failure.**

On May 12, 2025, Defendants in turn produced 73 pages of the same withheld documents referenced above. (**Ex. 27**). Defense counsel's e-mail admits that this production was only because of RHR's recent production: "[F]ollowing this email, Defendants will be producing a supplemental set of emails between employees of Fifth Third Bank and RHR, in light of RHR's recent discovery production." (*Id.*). No explanation was provided for the withholding of these documents over the past 4 years.

On May 20, 2025 in response to Plaintiff's e-mail to chambers regarding this discovery failure, Defense counsel asserted that "Fifth Third made no false representations to the court," and that "[a]fter reviewing RHR's April 16 production, Fifth Third noticed that it had not produced a small subset of irrelevant, inconsequential, and largely non-responsive emails (out of its prior productions of more than 214,000 documents)." (**Ex. 28**). Counsel went on to assert that "nearly all of these have to do with scheduling issues," that the e-mails are "immaterial" and that "this issue is moot." (*Id.*).

Contrary to the above, the withheld e-mails are relevant, discoverable, and material to this case, and they were not a simple oversight. Fifth Third's position throughout this litigation, and specifically in their counterclaim, is that Plaintiff was supposedly well-aware for months that Tim

Spence was being promoted to President and CEO and yet said nothing. (*See, e.g.,* **Ex. 3**, Counterclaim, Doc # 10, PAGEID # 1811, ¶ 11 ("The Bank did not conceal this vetting activity, which was widely known across the Bank. In fact, Mr. Carmichael informed Plaintiff that he would be part of the vetting process."); ¶ 13 ("In addition, multiple executives conferred with Plaintiff that Mr. Spence was being vetted for President and CEO succession purposes."); ¶ 15 ("Despite this activity—of which Plaintiff had intricate knowledge—at no time did Plaintiff ever approach Mr. Carmichael or Mr. Shaffer to inquire about his status in being considered for the position of President or CEO.")).

Party-witnesses including Defendant Carmichael and his Chief HR Officer Bob Shaffer, made the same false allegations in their sworn testimony. (**Ex. 5**, Carmichael Dep. 68:2-9 ("Once again, I made that clear to each of them, that this vetting process and this assessment was about Tim becoming president. So it wasn't a secret. Everyone understood what this was about that he was going to be vetted, and his peers knew he was being vetted for the president, including Phil McHugh, who, by the way, never came to me and said, why not me? What's going on? Why am I not being vetted?"); Shaffer Dep. 271:7-18 ("And, in fact, in any of the vetting process, we talked about RHR earlier. RHR, everyone knew that process was going on. Phil was even interviewed in that process, and he never said anything to RHR. He never said anything to Greg Carmichael or me at all about his concern for not being vetted for that process. So Phil had firsthand knowledge of what was going on, and even as he was quitting the company here in mid-October, he never raised that as a concern.")).

The recently disclosed emails confirm Phil McHugh's testimony regarding his limited knowledge the purpose of the RHR assessment:

Q. Describe what you know about the vetting process.

11

> A. Mr. Carmichael came into my office, said that I would – he asked me to participate in a discussion with Guy Beaudin that would that they would be providing some – he wanted me to provide feedback about Tim and how Tim could be a better leader at Fifth Third. And he said, you'll need to know Guy as well.

(**Ex. 1**).

Despite this, Plaintiff did not have an opportunity to question these witnesses on the e-mail correspondence, as Mr. Shaffer's deposition occurred on August 24, 2023, Defendant Carmichael's on September 26-27, 2023, and Mr. Spence on October 11, 2023.

**II. LAW AND ARGUMENT**

**A. Legal Authority for Sanctions**

Rule 37(c)(1) provides that a party who fails to provide or otherwise timely supplement information in response to a request for production as required by Rule 26(e)[7] is subject to court sanctions. *See Jones v. Wellpath, LLC,* E.D.Ky. No. 0:22-CV-00042-KKC-EBA, 2024 U.S. Dist. LEXIS 85880, at *12 (May 13, 2024)("Federal Rule of Civil Procedure Rule 37(c) provides for certain sanctions if a party fails to disclose, supplement an earlier response, or admit in accordance with Rule 26."). This includes an automatic sanction prohibiting the use of that evidence, and "in addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard: (A) may order payment of reasonable expenses, including attorney's fees, caused by the failure; (B) may inform the jury of the party's failure; and (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi)." Those additional sanctions include:

- Directing that the certain designated facts be taken as established for purposes of the action, as the prevailing party claims;

---

[7] Under Rule 26(e)(1)(A), a party who has responded to a request for production "must supplement or correct its disclosure or response in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."

12

- Prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
- Striking Pleadings in whole or in part;
- Rendering a default judgment against the disobedient party;
- Treating as contempt of court the failure to obey any order; and
- Any other appropriate sanctions in the Court's discretion.

Such sanctions "assure both future compliance with the discovery rules and to punish past discovery failures." *Jackson v. City of Cleveland*, N.D.Ohio No. 1:21-cv-1679, 2024 U.S. Dist. LEXIS 101405, at *7 (June 7, 2024) citing *Bell v. Auto. Club of Mich.*, 80 F.R.D. 228, 229 (E.D. Mich. 1978).

A court may also order sanctions under Rule 37(d)(1)(A) where a party served with Rule 34 requests fails to serve its answers, objections, or written responses. *See Keathley v. Grange Ins. Co.*, E.D.Mich. No. 15-cv-11888, 2017 U.S. Dist. LEXIS 7180, at *6 (Jan. 19, 2017)("Federal Rule of Civil Procedure 37(d) authorizes the Court to order sanctions if a party fails to answer interrogatories or respond to a request for production of documents."). Per Rule 37(A)(4), an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose answer, or respond. *Id.; See also Ferrer v. Detroit Club Mgt. Corp.*, E.D.Mich. No. 22-cv-11427, 2024 U.S. Dist. LEXIS 198337, at *15-16 (Oct. 31, 2024) citing *Jackson v. Nissan Motor Corp.,* 888 F.2d 1391, 1989 WL 128639, at *5 (6th Cir. 1989)("Federal Rule of Civil Procedure 37(d) provides an alternative avenue for sanctions based on a party's failure to respond after being served with discovery requests, and the "majority view authorizes Rule 37(d) sanctions when a party's 'evasive or incomplete answers to proper interrogatories impede discovery.'").

Under the above-referenced rules, a prior court order's violation is not required, given the documents at issue were withheld and the prejudiced party had no knowledge that they exist. *Ferrer v. Detroit Club Mgt. Corp.*, E.D.Mich. No. 22-cv-11427, 2024 U.S. Dist. LEXIS 198337, at *15 (Oct. 31, 2024)("This Court is unsure how a party could be expected to file a motion to

13

compel when documents responsive to discovery requests are withheld and the party has absolutely no knowledge they exist."); *Jackson v. Nissan Motor Corp.*, 888 F.2d 1391, 1989 WL 128639, at *5 (6th Cir. 1989) (citing *Badalamenti v Dunhan's Shelley Radiant Ceiling Co.*, 118 F.RD. 437, 439 (E.D. Mich. 1987)) (explaining that "[t]he rational for allowing sanctions without contempt of a prior court order is that an injured party may be unaware that key discovery information has been withheld and, therefore, may not seek an order to compel discovery").

### B. Sanctions against Defendants are Warranted

Here, Defendants withheld documents for over 3 years that are clearly responsive to requests for production served on them. Defendants did not produce any additional documents in response to that 2021 request, and instead lodged lengthy, boilerplate objections, and referred Plaintiff to documents already produced. (**Ex. 8**; *See also Burrell v. Duhon*, W.D.Ky. No. 5:18-CV-00141-TBR-LLK, 2019 U.S. Dist. LEXIS 179525, at *13 (Oct. 16, 2019), fn. 4 ("Such 'copy and paste' objections often give the impression that the responding party did not take the serving party's discovery requests seriously, and that the responding party had already formulated its replies prior to conducting good faith searches."); *Jones,* 2024 U.S. Dist. 85880 at *15 (Rule 26(g) requires the attorney or party signing a response or objection to a discovery request to certify that the response is consistent with the Federal Rules, not interposed for any improper purpose, and is not unreasonable nor unduly burdensome or expensive.")). Defendants also made multiple misrepresentations to Plaintiff, the Court, and RHR that all such responsive documents had been produced. (**Ex. 9-10, 16**).

The withheld e-mails are also clearly relevant to the claims and defenses in this case, and Defendants' representations to the contrary are nothing more than an attempt to brush their

14

discovery abuses under the rug. Defendants' position all along has been that the RHR assessment was "no secret" and was well-known among bank executives including Plaintiff. (**Ex. 3, 5**). Defendants have made this false assertion material by including it repeatedly in their counterclaim, and by testimony from key witnesses affirming it. (*Id.*). The communications Defendants withheld have contradicted this position, including (1) ███████████████████████████████████████████ (**Ex. 4**); (2) ███████████████████████████████████████ (**Ex. 24**); (3) ███████████████████████████████████████████████████████ (**Ex. 20-21**).

Plaintiff has also been prejudiced by Defendants' discovery failure. Indeed, all depositions in this case, including of the Bank's Board of Directors, and the relevant executives (Shaffer, Carmichael, Spence, and others) were conducted a year ago or longer. Because Defendants withheld these documents, Plaintiff had no opportunity to question witnesses regarding those documents.

Beyond that, Plaintiff has expended significant fees and expenses attempting to obtain these documents from RHR via subpoena, which was further exacerbated by Defendants' misrepresentations that it had already produced all such communications when they had not. (**Ex. 8-10, 16**). Indeed, even in November 2024 when Plaintiff's counsel again discussed the notable gap in e-mails between March and June 2020, Defendants' counsel represented yet again that it has already produced all "known" communications between Defendants and RHR. RHR's counsel used this representation to continually object to production, obligating Plaintiff to re-file his motion to compel and incur additional fees and expenses to obtain the documents. (**Ex. 16**).

Finally, Defendants' conduct is particularly egregious given they have provided no explanation for the failure to produce for over 4 years. Defendants have not explained that this was an inadvertent oversight nor how the documents could have been missed. This would of course be difficult, given the March 30, 2020 e-mail chain was produced *in part*, and the portion withheld just happens to include a statement which is damaging to Defendants' claims and defenses.

### C. Sanctions Requested

In light of the above, Plaintiff requests a number of sanctions to remedy Defendants discovery abuses.

1. <u>Jury Instruction as to Defendants' discovery conduct, and designating facts to be taken as established.</u>

First, pursuant to Rule 37(b)(2)(A)(i) and (c)(1)(B), Plaintiff requests that the Court direct "that the matters embraced in the order or other designated facts be taken as established for purposes of this action, as the prevailing party claims" and "inform the jury of the party's failure." More specifically, Plaintiff requests a jury instruction that Plaintiff's deposition testimony regarding his knowledge of the RHR assessment is as he testified: "To provide feedback about Tim and how Tim could be a better leader at Fifth Third." (**Ex. 1**). This testimony is consistent with the withheld discovery documents, including that Fifth Third sought to ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (**Ex. 4**). It is also consistent with Tim Spence's scripted e-mails which indicated RHR is ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (**Ex. 24**). Given the withholding of documents without substantial justification, and that the documents confirm Plaintiff's testimony, this would be an appropriate sanction.

2. <u>Re-Opening of Carmichael, Shaffer, and Spence Depositions</u>

16

Plaintiff also requests that this Court order targeted depositions of Defendant Greg Carmichael, along with Bob Shaffer and Tim Spence, to answer questions regarding the recently produced documents from RHR. The documents are relevant to sworn testimony provided by them, including repeated assertions that the RHR assessment was in no way a secret, that Plaintiff was well aware of it, and that he never objected. (**Ex. 3, 5**). In light of these new e-mails, Plaintiff has a right and need to depose these individuals regarding their prior statements, and the inconsistencies presented in the withheld discovery. *See Builders Insulation of Tennessee, LLC v. S. Energy Solutions*, W.D.Tenn. No. 17-cv-2668-TLP-tmp, 2020 U.S. Dist. LEXIS 8531, at *25 (Jan. 17, 2020)("While the court is not inclined to award default judgment to Builders in this circumstance, the undersigned finds the request to re-open depositions reasonable due to the fact that SES deprived Builders of the opportunity to question the Davises about the altered and withheld documents during their initial depositions.").

    3. <u>Payment of the reasonable expenses, including attorney's fees, caused by the failure</u>

Plaintiff also requests reimbursement of all attorney's fees and expenses caused by Defendants' discovery misconduct. As set forth above, Rule 37(c)(1)(A) explicitly permits the Court to "order payment of reasonable expenses, including attorney's fees, caused by the failure."

Here, Plaintiff has incurred significant expenses as a result of this failure. More specifically, because of Defendants withholding of the relevant communications, Plaintiff was forced to issue multiple subpoenas to RHR, file two motions to compel, and engage in extrajudicial efforts which were thwarted yet again by Defendants misrepresentations that all documents had been produced. Plaintiff will also be required to incur fees and expenses in conducting additional targeted depositions over the documents that were withheld, which could have been avoided had Defendants' produced the relevant documents in the first place.

Given Defendants' discovery misconduct caused the above-referenced fees and expenses to be incurred, and the lack of justification for that misconduct, a fee award is warranted.

4. <u>Other Sanctions</u>

Beyond the above, other sanctions for Defendants' discovery misconduct would also be appropriate, including:

- Striking pleadings from Defendants' counterclaim as they relate to the RHR assessment and Plaintiff's knowledge of it; and
- Prohibiting Defendants from introducing evidence or testimony regarding Plaintiff's purported knowledge and awareness of the RHR assessment, and the specific purpose of it.

Plaintiff invites the Court to exercise its discretion in awarding any other sanctions it deems appropriate to remedy the discovery failures by Defendants.

### III. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court sanction Defendants for their discovery misconduct, including with those sanctions referenced in this memorandum.

Respectfully Submitted,

*/s/ Peter A. Saba*_____
Peter A. Saba, Esq. (0055535)
Joshua M. Smith, Esq. (0092360)
Bailey E. Sharpe, Esq. (0103565)
STAGNARO, SABA
& PATTERSON CO., L.P.A.
2623 Erie Avenue
Cincinnati, Ohio 45208
(513) 533-2701
(513) 533-2711 (fax)
pas@sspfirm.com
jms@sspfirm.com
bes@sspfirm.com

*/s/ John J. McHugh*_____
John J. McHugh, III

                                        McHUGH & McCARTHY, LTD
                                        5580 Monroe Street
                                        Sylvania, Ohio 43560
                                        (419) 885-3597
                                        (419) 885-3861 (fax)

                                        **Co-Counsel for Plaintiff Philip R. McHugh**

## CERTIFICATE OF SERVICE

      The undersigned hereby certifies that a copy of the foregoing motion was served on all counsel of record this 6th day of June, 2025, via the Court's CM/ECF system and/or via ordinary or electronic mail.

                                          */s/ Joshua M. Smith*
                                          Joshua M. Smith, Esq.. (0092360)