UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| PHILIP R. McHUGH, : | |
| : | |
| Plaintiff, : | |
| : | Case No. 1:21-cv-00238-MRB |
| vs. : | |
| : | Hon. Michael R. Barrett |
| FIFTH THIRD BANCORP, *et al.*, : | |
| : | |
| Defendants. : | |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR SANCTIONS**

**I.     INTRODUCTION**

Plaintiff Philip McHugh ("Plaintiff" or "McHugh") seeks sanctions against Defendants, Fifth Third Bancorp, Fifth Third Bank, National Association, and Gregory D. Carmichael (collectively "Fifth Third"), because they attempted to *avoid* a discovery dispute by voluntarily supplementing a prior, 214,000+ page document production with 73 pages of irrelevant scheduling emails with non-party RHR International Inc ("RHR")—only a handful of which are even alleged to be relevant by Plaintiff. These documents are immaterial, have no bearing on the disputed issues in this case, and do not prejudice Plaintiff in any way. The documents do not concern Plaintiff or any employment decision made by Fifth Third, let alone whether age played a factor in any employment decisions. Nonetheless, Fifth Third timely and voluntarily supplemented its production with these immaterial documents—long before the close of fact discovery, and without prompting—after they surfaced in a non-party's production.

Fifth Third had not produced these irrelevant documents based on its prior objections to Plaintiff's overbroad discovery requests seeking "all communications" with RHR, regardless of

relevance. Notably, Plaintiff never challenged these objections in any respect. For three years, he never saw fit to clarify his requests, respond to Fifth Third's objections, or move to compel, despite undertaking these same actions for a variety of other discovery matters not at issue here.

Plaintiff attempts to excuse his own inaction with the serious accusation that Fifth Third made "misrepresentations" to "Plaintiff, the Court, and RHR" about Fifth Third's responses to Plaintiff's RHR-related discovery requests. This accusation is false. It is *Plaintiff* who misrepresents the factual record. His Motion cites emails regarding disputes over his *other discovery requests* that did *not* seek the documents in Fifth Third's supplemental production. One of Plaintiff's cited emails is dated *several months before* Fifth Third had even served its responses to the two document requests at issue.

Fifth Third's decision to voluntarily supplement its production to avoid a discovery dispute should be encouraged, not sanctioned. Fifth Third has been subjected to a near unprecedented level of discovery burden for a single plaintiff employment discrimination action, including responding to 261 individual document requests, producing over 214,000 pages of documents, and defending 20 depositions, including 17 board directors and other high-ranking executives. Having provided extensive access to every communication, document, or witness concerning every employment decision relevant to Plaintiff's claims, Plaintiff is now complaining over a handful of pages of scheduling emails.

Despite Plaintiff's prior failure to pursue discovery, his current false accusations of misconduct, and Fifth Third already providing incredibly burdensome discovery and voluntarily supplementing its production with no pending discovery cutoff, he seeks the most severe sanctions imaginable. Plaintiff requests everything from adverse inference instructions, to the establishment of "facts" that are untrue, to reopening depositions, to striking pleadings, to fees associated with

*non-party* discovery (on a subpoena that an Illinois federal court refused to enforce as overbroad). These types of sanctions are reserved for parties who flout discovery obligations, withhold critical evidence, or defy court orders. Fifth Third did no such thing. The Court should deny the Motion.

## II.     BACKGROUND

Nine days after filing this lawsuit, Plaintiff served Fifth Third with his first set of requests for production of documents. *See* Plaintiff's First Set of Requests for Production ("First RFPs") (attached as Exhibit 1). Four of these RFPs concerned Fifth Third's interactions with RHR. *See* Second RFP Nos. 12 & 43–45.

On July 30, 2021, Fifth Third served responses (attached as Exhibit 2) and produced 7,178 pages of documents, including at least 312 pages of RHR-related documents. Fifth Third's RHR-related production included (1) all Fifth Third communications with RHR that mentioned or concerned Plaintiff; (2) all Fifth Third communications with RHR regarding which individuals would be assessed or the substantive results of any assessment conducted by RHR in 2020; and (3) documents regarding RHR's consulting work in 2020, which was limited to an executive assessment of CEO candidate Tim Spence, including every draft and final proposal, assessment, evaluation, or report of any kind that RHR provided to Fifth Third.

On September 27, 2021, Plaintiff served his second set of document requests ("Second RFPs," attached as Exhibit 3). Two focused on RHR and are the focal point of Plaintiff's Motion:

> Request for Production No. 3: All communications between Shaffer and any agent or representative of RHR International from January 1, 2017 through the date of response, including but not limited to communications with Guy Beaudin.
>
> Request for Production No. 7: All communications, reports, meeting minutes and proposals between any agent or representative of RHR International, and any individuals at Fifth Third from January 1, 2017 through the date of response.

Per an agreement of the parties, Fifth Third responded to McHugh's Second RFPs on December 22, 2021. *See* Exhibit 4. Relevant here, Fifth Third objected to Second RFP Nos. 3 and 7 as facially

3

overbroad seeking "[a]ll communications" regardless of relevance. These requests were also temporally overbroad seeking all communications from "January 1, 2017 through the date of [Defendants'] response" in December 2021, more than one year after McHugh filed his lawsuit. These requests were particularly objectionable in light of Fifth Third's extensive prior production, which established the substantive and temporal scope of RHR's relevant consulting work (which occurred exclusively in 2020), including which individuals were assessed, the timeframe of any assessments in 2020, and Fifth Third's involvement in any such assessments.[1]

Plaintiff did not challenge Fifth Third's objections. Instead, it sought discovery from non-party RHR. Plaintiff sent RHR a subpoena on April 1, 2022. *See* Doc. No. 40, p. 4, PAGEID 2367. RHR responded and objected to the subpoena. One year later, on April 1, 2023, Plaintiff served RHR with a second subpoena for documents, to which RHR again objected. *Id*. at p. 5, PAGEID 2368. On February 7, 2024, Plaintiff moved to compel RHR to produce documents, which this Court denied without prejudice. *See* Doc. No. 40; Doc. No. 68. On September 18, 2024, Plaintiff served his *third* subpoena for RHR's documents, and RHR again objected. *See* Exhibit 5, Pl's Second Mot. to Compel, Doc. No. 1 in Case No: 1:25-cv-10448 (N.D. Ill.), PAGEID 23.

On November 5, 2024, Plaintiff and RHR held a meet and confer via telephone. While Fifth Third was not a party to the discovery dispute, it attended the telephonic meeting at RHR's request to assist with case history and background. At this meet and confer, Plaintiff raised—for the first time with Fifth Third—a purported gap in email communications between RHR and Fifth Third during the height of the Covid-19 lockdowns, *i.e.*, late March to early June 2020. Plaintiff also identified an alleged draft CEO profile that was not previously produced. Fifth Third

---

[1] Plaintiff's (first) Motion to Compel RHR specifically outlined the substantive and temporal scope of RHR's consulting work as relevant to Fifth Third's decision to appoint Spence as Bank President. See Doc. No. 40 at 2-3 PAGEID 2365-66.

4

responded that it was unaware of the purported gap or additional CEO profile, but that Fifth Third would review its existing production.

On November 12, Fifth Third informed Plaintiff that it had already produced the CEO profile and directed him to the Bates range. As to the purported gap in emails, Fifth Third confirmed it had "produced all known, *relevant* communications *responsive* to Plaintiff's requests for production." *See* Exhibit 16 to Plaintiff's Motion (emphasis added). At no point did Fifth Third represent that it produced *all* communications between Fifth Third and RHR, regardless of relevance, responsiveness, or objections that had been lodged to the First and Second RFPs. Plaintiff did not respond to this email or otherwise dispute Fifth Third's RHR-related production.

Instead, Plaintiff filed a second motion, in the Northern District of Illinois, to compel RHR to produce documents. *See* Exhibit 5. On April 14, 2025, to reduce the issues before the Court, RHR voluntarily produced 240 pages of email communications and Outlook calendar items between RHR and Fifth Third during 2020.

After reviewing RHR's voluntary production, Fifth Third identified 73 pages of email communications that were either not previously produced or only partially produced in Fifth Third's prior productions of over 214,000 documents. Despite these documents being irrelevant and subject to Fifth Third's unchallenged objections, Fifth Third produced them anyway to avoid further unnecessary bickering and waste of court and party resources over irrelevant matters. Fifth Third, however, explicitly stated that its supplemental production was "in no way intended as a waiver of Defendants' objections to Plaintiff's prior requests for production or an admission that any such emails are relevant." *See* Exhibit 27 to Plaintiff's Motion. Fifth Third's full supplemental production is attached as Exhibit 6.

5

On May 16, 2025, the Northern District of Illinois denied Plaintiff's motion to compel RHR to produce documents. The Court also issued a show cause order requiring Plaintiff to explain why he should not be held liable for RHR's fees and costs. *See* Exhibit 7, Order, Doc. No. 28 in Case No: 1:25-cv-10448 (N.D. Ill.).

### III. LAW AND ARGUMENT

Plaintiff seeks sanctions against Fifth Third under Rules 37(d)(1) and 37(c)(1).[2] As shown below, there is no procedural or substantive basis for sanctioning Fifth Third under either Rule.

#### A. Plaintiff is Not Entitled to Sanctions Under Civil Rule 37(d)(1)(A).

Plaintiff is not entitled to sanctions under Civil Rule 37(d) because (1) Fifth Third timely and properly responded to the RFPs at issue, meaning there is no "failure" to respond; (2) Fifth Third made no "misrepresentations" about its prior production; and (3) Plaintiff did not (and could not) attach the required certification under Rule 37(d)(1)(B) that he made a good faith attempt to resolve the issue extrajudicially.

##### 1. *Fifth Third Properly Responded to Plaintiff's RFPs.*

Rule 37(d)(1)(A) allows a court to impose sanctions if a party "fails to serve its answers, objections, or written response" to "a request for inspection under Rule 34." Rule 37(d), however, is limited to instances where there is a *failure to respond*. It "is not designed to resolve debatable questions over whether a parties' discovery responses were inadequate or incomplete." *Konczal v. Zim Tim, LLC*, 2021 U.S. Dist. LEXIS 72473, at *14–17 (E.D. Mich. Apr. 15, 2021) (citing 8B WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 2291 (3d ed. 2020)).

Here, Rule 37(d) is inapplicable because there was no "failure" to respond to the Second RFP Nos. 3 and 7. As Plaintiff acknowledges, Fifth Third served timely "objections and responses

---

[2] Plaintiff also references the Court's inherent authority but offers no argument or legal citation in support.

to" these RFPs. *See* Mot. at 4, PAGEID 3338; *see also* Ex. 5. By objecting, Fifth Third shifted the burden to Plaintiff to "either clarify his discovery requests or seek an order from this Court directing defendants to comply with the requests as originally phrased." *See Brown v. Voorhies*, 2010 U.S. Dist. LEXIS 26689, at *8 (S.D. Ohio Mar. 8, 2010) (citing *Info-Hold, Inc. v. Sound Merch., Inc.*, 538 F.3d 448, 457–58 (6th Cir. 2008)); *Bivens v. Lisath*, 2008 U.S. Dist. LEXIS 77615, at *5–6 (S.D. Ohio Oct. 3, 2008) (denying sanctions when plaintiff failed to provide "any evidence that he attempted to clarify his discovery requests in response to defendants' objections"). Plaintiff did no such thing, meaning he cannot now seek sanctions under Rule 37(d)(1)(A). *Konczal*, 2021 U.S. Dist. LEXIS 72473, at *16 (denying Rule 37(d) sanctions when "Plaintiff filed no motion to compel under Rule 37(a) for Defendant to provide more complete and substantive discovery responses").

Plaintiff attempts to dismiss Fifth Third's objections by labeling them "boilerplate" and "evasive." *See* Mot. at 14 PAGEID 3348. But ironically, he does not substantiate this conclusory argument or explain why the objections were improper. *Gambrell v. Gen. Motors, LLC*, 2022 U.S. Dist. LEXIS 213579, at *16 (E.D. Mich. Nov. 28, 2022) ("Rather than arguing why each of the objections (or groups of objections) are sanctionable, Plaintiffs merely listed PageID citations leaving it for the Court to search the objections of sanctionable conduct. Plaintiffs bear the burden of justifying an award of sanctions, not the Court."). And Plaintiff's lead case refuses to find that boilerplate objections waive the right to object. *See* Mot. at 14 (quoting *Burrell v. Duhon*, 2019 U.S. Dist. LEXIS 179525, at *12–13 (W.D. Ky. Oct. 16, 2019) ("[T]his Court declines to find that Defendants have waived objections through use of boilerplate objections in this case.").

Contrary to Plaintiff's unsubstantiated allegations, Fifth Third's objections to Second RFP Nos. 3 & 7 are appropriate. These requests, seeking "all communications" and other documents,

are facially overbroad and unlimited in scope, so Fifth Third objected accordingly. *Info-Hold, Inc.*, 538 F.3d at 457–58 (approving objection to a request as "'overly broad, unduly burdensome, and [seeking] discovery of information that [was] neither relevant nor reasonably calculated to lead to the discovery of admissible evidence'"); *Bivens*, 2008 U.S. Dist. LEXIS 77615, at *5 (same). Given Fifth Third's proper discovery responses, Plaintiff is not entitled to sanctions. *Buckosh v. Bonded Filter Co., LLC*, 2021 U.S. Dist. LEXIS 231416, at *6 (N.D. Ohio Dec. 3, 2021) (refusing to sanction a party that properly responded to request for production); *Brown*, 2010 U.S. Dist. LEXIS 26689, at *8–9 (same); *Info-Hold, Inc.*, 538 F.3d at 457–58 (holding that objections "shift[] the burden to" the other party to "clarify its discovery request or seek" judicial relief).

Given Fifth Third's proper discovery responses, Plaintiff is not entitled to sanctions under Rule 37(d)(1). *Id.* (holding that objections "shift[] the burden to [the other party] to either clarify its discovery request or seek an order from the district court directing [the objecting party] to comply with [the] discovery request as originally phrased."); *see Buckosh v. Bonded Filter Co., LLC*, 2021 U.S. Dist. LEXIS 231416, at *6 (N.D. Ohio Dec. 3, 2021) (refusing to sanction a party that properly responded to request for production); *Brown*, 2010 U.S. Dist. LEXIS 26689, at *8–9 (denying sanctions where defendant properly responded to discovery requests).

After Fifth Third shifted the burden to Plaintiff to clarify his requests or move to compel, he never pursued additional responses to RFP Nos. 3 & 7. Fifth Third served its objections to these overbroad RFPs nearly *three years* ago. Plaintiff never challenged those objections, despite raising hosts of unrelated discovery disputes with Fifth Third and RHR. Indeed, Plaintiff's harassment of RHR offers a striking juxtaposition to his failure to take any steps to pursue RHR-related discovery from Fifth Third. Plaintiff sent RHR three subpoenas, filed two motions to compel, sent numerous email communications, and held meet and confers. Yet Plaintiff made no attempt to compel Fifth

8

Third to produce the documents at issue, and his disputes with RHR cannot be imputed to Fifth Third. *See* Mot. at 15. Plaintiff thus effectively waived the right to seek Rule 37 sanctions. *Collins v. Diversified Consultants*, 2017 U.S. Dist. LEXIS 35487, at *36 (D. Colo. Feb. 1, 2017) ("[T]he remedy Plaintiff seeks under Rule 37(c)(1) is inapplicable . . . as the challenged conduct (objecting to Plaintiff's discovery request . . . ) does not arise from [the] failure to disclose information" but from "Rules 33 or 34; thus, Plaintiff's sanctions remedy is limited to Rule 37(a)(3)(B) (motion to compel production), which Plaintiff failed to utilize and cannot utilize now."); *Floorgraphics Inc. v News Am. Mktg. In-Store Servs.*, 434 Fed. App'x 109, 112 (3rd Cir. 2011).

### 2. *Fifth Third Did Not Misrepresent Its Prior Production.*

Attempting to excuse his own inaction, Plaintiff points to Fifth Third's alleged "misrepresentations" that it had previously produced the documents at issue. *See* Mot. at 14 PAGEID 3348. Fifth Third made no such representations, and Plaintiff's arguments otherwise misrepresent the record in at least three key respects.

First, Plaintiff cites an email in which Fifth Third said it produced "relevant communications" in response to First RFP Nos. 5, 23-25, and 30. *See* Mot. at 4-5 PAGEID 3338-39 (citing Plaintiff's Exhibit 9). **None of these RFPs requested the documents at issue in Fifth Third's supplemental production.** In fact, this email is dated two months *before* Fifth Third responded to Second RFP Nos. 3 and 7. Further, the full text of Plaintiff's initial October 27, 2021 email—that Plaintiff did *not* attach to his Motion—specifically identifies the requests, by number, and the resulting "relevant communications" at issue. *See* Exhibit 8, J. Smith Oct. 27, 2021 Email.

Second, Plaintiff cites to Exhibit 10, which similarly does not relate to or concern any RHR-related discovery request. This email, again, specifically notes the RFPs at issue, and it does not include Second RFP Nos. 3 and 7. *See* Plaintiff's Exhibit 10. Plaintiff's response to Exhibit 10, which was not attached to Plaintiff's motion, also does not relate to or concern any RHR-

9

related discovery request. *See* Exhibit 17, Parties' Full January 18, 2022 Correspondence pp. 3-5 (raising issues related to Defendants' December 22, 2021 discovery responses and production).

Third, Plaintiff cites Exhibit 16. But this email was written after a November ***2024*** meet and confer between *Plaintiff and non-party RHR*. At that meet and confer, Plaintiff first told Fifth Third about a purported gap in email communications. At no time did Plaintiff demand that Fifth Third supplement its document production or withdraw any objections. Plaintiff did not even identify any discovery requests or responses at issue. To the contrary, Plaintiff specifically demanded that RHR, *not Fifth Third*, "search its records for any responsive documents during this period . . . and produce any it finds." *See* Plaintiff's Exhibit 16, p. 2. After the call, and as a professional courtesy, Fifth Third confirmed that it had "already produced all known, *relevant* communications *responsive* to Plaintiff's requests for production." *See* Exhibit 16 to Plaintiff's Motion (emphasis added). At no point did Fifth Third represent that it produced *all* communications between Fifth Third and RHR, regardless of relevance or responsiveness. Plaintiff never responded nor took any further action with respect to Fifth Third, until filing this Motion.

### 3. *Plaintiff Did Not Make a Good Faith Effort to Resolve this Dispute Extrajudicially and Failed to File a Certification.*

Rule 37(d)(1) requires a certification that "the movant has in good faith conferred or attempted to confer with the party failing to act in an effort to obtain the answer or response without court action." *See* Fed. R. Civ. P. 37(d)(1)(B); *see also* S.D. Ohio Civ. R. 37.1; Standing Order I(D). A Rule 37(d) motion "fails outright" absent a proper certification. *Oro Capital Advisors, LLC v. Borror Constr. Co.*, 2022 U.S. Dist. LEXIS 169899, at *10 (S.D. Ohio Sep. 19, 2022); *Crozin v. Crown Appraisal Grp.*, 2011 U.S. Dist. LEXIS 90640, at *8 (S.D. Ohio Aug. 15, 2011) ("Failure to include [a] certification . . . is grounds . . . for rejection of the request on its face."). "The

10

'prerequisite [of a good faith certificate] is not an empty formality.'" *Casey Wasserman Living Tr. v. Bowers*, 2011 U.S. Dist. LEXIS 76621, at *4 (E.D. Ky. July 14, 2011) (citations omitted).

### B. Plaintiff is Not Entitled to Sanctions Under Civil Rule 37(c)(1).

Rule 37(c)(1) allows sanctions against a party who "fails to provide information . . . unless the failure was substantially justified or harmless." Putting aside that Fifth Third cannot "supplement"[3] discovery requests to which it also failed to respond,[4] the record is clear that Fifth Third (1) never failed to provide information or supplement its discovery requests as required by Rule 26, and (2) even assuming its responses were insufficient, Fifth Third voluntarily supplemented its production during open fact discovery (with no active deadline) to produce irrelevant documents, rendering any delay both substantially justified and harmless.

#### *1. Fifth Third Did Not Fail to Identify or Supplement.*

Fifth Third never failed to provide Rule 26(a) disclosures. None of the documents at issue are relevant to any claim or defense. Thus, Fifth Third had no duty to identify and produce these emails as part of its initial disclosures, to the extent Plaintiff raises any such allegations.

Fifth Third similarly has not failed to supplement its responses to Second RFPs Nos. 3 and 7 under Rule 26(e). As explained above, Fifth Third, in good faith, responded and objected to the requests for production at issue. Having fully objected to the requests, Fifth Third had no duty to supplement such responses or produce documents until Plaintiff clarified its requests or pursued a motion to compel. *See Brown*, 2010 U.S. Dist. LEXIS 26689, *8; *Lankford v. Taylor*, 2021 U.S. Dist. LEXIS 74188, at *24–25 (D. Ariz. Apr. 16, 2021) ("Defendants have not identified any case suggesting that a party who objects to an interrogatory, and whose objection goes unchallenged,

---

[3] Conduct that is sanctionable under Civil Rule 37(c).
[4] Conduct that is sanctionable under Civil Rule 37(d).

11

nevertheless has an ongoing duty of supplementation under Rule 26(e) to supply the very information that is the subject of the standing objection. This would seem to defeat the whole point of raising objections . . . .") (collecting cases). Further, even if it had a duty to supplement, Fifth Third already did so well in advance of the end of fact discovery.

### 2. Even If Rule 37(c)(1) Applies, Any Potential Failure to Supplement Was Substantially Justified and Harmless.

Assuming Rule 37(c)(1) applies at all, in light of Fifth Third's objections, its supplemental production was substantially justified and harmless under the Sixth Circuit's five factor analysis, which Plaintiff does not cite to or analyze: "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence." *Howe v. City of Akron*, 801 F.3d 718, 748 (6th Cir. 2015)

***First***, **Fifth Third is not offering "the evidence" against Plaintiff because the documents are irrelevant, and there is no "surprise."** Fifth Third has long asserted that Plaintiff knew about and participated in Spence's assessment. Armed with that knowledge, Plaintiff extensively questioned Carmichael, Shaffer, Spence, and the board directors regarding Spence's assessment and Fifth Third's involvement. Plaintiff specifically questioned Greg Carmichael at length about Defendants' counterclaim and what information was shared with Plaintiff regarding Spence's assessment—the specific topics about which Plaintiff now alleges he needs to requestion Carmichael. *See* Doc No. 66-3, Carmichael Dep., Vol. I, at 54:14-61:12, 66:21-69:17 (cited portions are attached as Exhibit 10); *see also* Mot. at 17 PAGEID 3351 (Plaintiff's request for reopened depositions). Plaintiff also had full opportunity to question Shaffer and Spence on the same topics. There is no need to reopen depositions based upon mundane scheduling emails,

12

particularly when Plaintiff has already questioned Carmichael on the topics at issue during his 14-hour, two day deposition as well has being provided the opportunity to depose Shaffer and Spence for full 7-hour depositions.

*Second*, **any arguable surprise is easily cured.** The very cases Plaintiff cites show that cross examination at trial—not reopened depositions—is the appropriate measure, particularly where Plaintiff has already conducted full depositions of the central witnesses at issue. *Ferrer v. Detroit Club Mgmt. Corp.*, 2024 U.S. Dist. LEXIS 198337, *17 ("To the extent the now-obtained discovery shows that a witness testified untruthfully at his or her deposition, the ability to present that falsehood to a jury to impeach the witness is a far more powerful weapon than most of the sanctions this Court would be inclined to impose."); *see also Keathley v. Grange Ins. Co.*, 2017 U.S. Dist. LEXIS 7180, *8 (declining to impose any sanctions and simply allowing the defendant to produce the documents at issue).

*Third*, **"allowing the evidence would" not "disrupt the trial."** There is no trial date. And at Plaintiff's urging there is no impending fact discovery cutoff. The deadline for all discovery is not until November. There is zero risk that Fifth Third's voluntary supplemental production of scheduling emails would interfere with trial.

*Fourth*, **the documents at issue lack any semblance of "importance."** Plaintiff's own cited authorities show that prejudice exists—and sanctions are warranted—only when a party withholds the functional equivalent of "smoking gun" evidence. For example, Plaintiff cites (1) *Jackson*, a products liability suit where a party destroyed the product at issue—"the most vital piece of evidence in the case"; (2) *Badalamenti*, a patent infringement case where a party refused to produce documents proving that the patent was invalid, which would have changed "the whole course of [the] litigation"; (3) *Jones*, a negligence case regarding the failure to treat endocarditis,

13

where the defendant inappropriately withheld a doppler echocardiogram report (a diagnostic tool for detecting and assessing endocarditis); (4) *Ferrer*, a racial discrimination case where defendants lied about prior complaints of race discrimination, and withheld a whole host of relevant documents, *e.g.*, an email "with the subject line 'Racism'" that referred to "'ongoing racism that non-Caucasian guests are brutalized with when entering the'" defendants' business; (5) *Bell*, a separate race discrimination case where the employer failed to comply with Court order requiring the employer to produce, among other things, a "book of blacks," which was "very valuable" evidence on "the racial data on defendants' workforce" that had been "a main topic of discussion and inquiry throughout most of the discovery of this case"; (6) *Keathley*, a dispute over insurance coverage for property damage, where an insurer withheld photographs of the damaged property, despite denying the underlying claims because the insured "failed . . . to exhibit the allegedly damaged property to [the insurer], whatever the extent of the damage was"; and (7) *Builders*, a dispute over an employee unlawfully soliciting an employer's customers, where the employee produced altered checks to redact information that would have revealed the unlawful competition and proved the amount of the employer's damages.[5]

Plaintiff identifies five items that come nowhere close to this level of importance: (1) an email from Bob Shaffer to Guy Beaudin (of RHR) regarding the timing of RHR's assessment work; (2) two emails between administrative assistants who are scheduling meetings; (3) a set of scripted emails from Spence to his direct reports; (4) an email from RHR to Spence summarizing the steps in his assessment; and (5) calendar invitations.[6] *See* Mot. at 14-15. These documents are

---

[5] *Jones v. Wellpath, LLC*, 2024 U.S. Dist. LEXIS 85880 (E.D. Ky. May 13, 2024); *Builders Insulation of Tenn., LLC v. S. Energy Sols.*, 2020 U.S. Dist. LEXIS 8531 (W.D. Tenn. Jan. 17, 2020); *Badalamenti v. Dunham's, Inc.*, 118 F.R.D. 437 (E.D. Mich. 1987).
[6] While Plaintiff raises the topic of Outlook calendar items, the issue of Fifth Third's production of electronic calendar items has already been decided by this Court upon Plaintiff's motion to compel, which the Court denied. *See* Doc. No. 37. As such, any issue regarding Fifth Third's calendar production has already been decided.

14

entirely irrelevant. The issue in this case is whether Fifth Third discriminated against McHugh because of his age. None of the emails come close to suggesting that Fifth Third demoted or failed to promote Plaintiff because he was too old.

Plaintiff tries but fails to cloak the documents under the veil of relevance. He primarily focuses on the email in which Fifth Third tells RHR to delay the start of its "work for 30 days at this point given the Coronavirus and not wanting to signal to certain executives internally that we may be starting a CEO succession process." *See* Mot. at 14-15 (citing Plaintiff Exhibit 4). Plaintiff suggests that this email undermines Fifth Third's positions that (1) Spence's RHR assessment was "no secret" to Plaintiff, and (2) he knew "for months that Tim Spence was being promoted to President and CEO and yet said nothing." Mot. at 10-11, 15. The email does no such thing. Fifth Third's positions are rooted in indisputable facts, including how Plaintiff participated in RHR's assessment of Spence; was informed of the assessment by CEO Carmichael; and had every opportunity to inquire with Carmichael, Shaffer, Spence, and any RHR employee as to the purpose and nature of such assessment and Plaintiff's involvement.

Fifth Third's positions are also confirmed by Plaintiff's own text messages. On August 26, 2020, while Spence's assessment was underway and Plaintiff's own RHR interview was in a matter of days, Plaintiff texted a fellow Fifth Third executive, "I think they will give Tim [Spence] the COO and/or President title in 4Q or 1Q next year [2021]" while further speculating that Carmichael was "reaching out to each Board member recommending Tim be considered as his successor." *See* Exhibit 11, at p. 1. The fellow executive responded, "[T]here's no doubt Tim will be the guy." *Id*. at p. 2. Plaintiff thus cannot credibly argue that he was kept in the dark based on one email that makes a passing reference to "certain executives," and which directly implies that once RHR's assessment work began, its purpose would become clear to those executives.

15

Further context clarifies that Shaffer's comment about "certain executives" did not concern Plaintiff. As Plaintiff admits, Carmichael and Shaffer initially intended to have RHR assess Plaintiff and another employee (then-CFO Tayfun Tuzun) alongside Spence. *See* Doc. No. 40 at p. 2-3 PAGEID 2365-2366. Carmichael did not clarify the decision to have RHR assess only Spence until June 2020, more than two months after Shaffer's email in question. *Id*. Clearly, on March 30, 2020, Fifth Third would not contemplate keeping Plaintiff in the dark about an assessment in which he would be a central subject. Plaintiff requested sanctions—striking pleadings, prohibiting the introduction of evidence, and designating falsehoods as "facts"—ask the Court to play ostrich with objective reality.

The other documents in Fifth Third's supplemental production are even less relevant. For example, Plaintiff points to a scripted email Spence sent to his direct reports (Plaintiff Ex. 24). But in 2021, Fifth Third previously produced that script in a different email. *See* Exhibit 12, FifthThird—McHugh-005549, p.3.[7] Plaintiff has long known the exact, copy-and-paste language that Spence used to address his assessment with his direct reports who participated in it. Yet Plaintiff never sought to compel the identical emails from Spence to his direct reports. That is because these emails have zero evidentiary value on whether there was age discrimination.

Plaintiff finds no surer footing in an email RHR sent to Spence (Plaintiff Exhibit 25) to give him an overview of his assessment. This email does not contain any new or relevant information. Plaintiff has known of the scope and nature of RHR's assessment process. In 2021, Fifth Third produced RHR work proposals explaining its full assessment process, as well as the draft and final Spence assessment reports, which also summarize the assessment process. *See, e.g.,*

---

[7] This exhibit also contradicts Plaintiff's claims that Fifth Third was somehow manipulating what information was shared with the individuals that participated in Spence's assessment given that it was Guy Beaudin of RHR that supplied Spence with the scripted email. *See* Ex. 15, at 3.

Ex. 13, RHR Work Proposal. Armed with this knowledge, Plaintiff extensively questioned Carmichael, Shaffer, and Spence at their depositions regarding RHR's assessment process and each individual's involvement. *See, e.g.*, Carmichael Dep., Vol. I, Doc. No. 66-3, at 48:7-61:12, 66:21-72:7, 184:17-185:20; Exhibit 16, Carmichael Dep., Vol. II, at 294:11-307:3, 308:11-312:4, 360:24-363:21, 387:8-448:18; Exhibit 14, Deposition of Robert Shaffer, at 237:14-250:10, 270:13-271:18, 276:11:-277:6; Exhibit 15, Deposition of Timothy Spence, at 106:23-107:16, 144:10-153:22, 156:7-163:24, 177:15-179:4.

Plaintiff also cites two other documents—mundane scheduling emails between executive assistants—that are irrelevant by any objective measure. *See* Exhibits 20, 21 to Plaintiff Motion.[8] These emails are also cumulative; Fifth Third *already produced* calendar items of Carmichael, Shaffer, and Spence—based upon Plaintiff's chosen keyword searches in 2022—long before Plaintiff took any deposition in this case.[9] Plaintiff thus always knew about every RHR-related meeting (including canceled meetings) long before Fifth Third's supplemental production and before any deposition of Fifth Third witnesses.

**_Fifth_, and finally, Fifth Third was substantially justified "for its failure to disclose the" documents previously.** Given its unchallenged, good faith objections to the requests at issue, Fifth Third was substantially justified in believing that no further production was necessary. That is particularly true considering Plaintiff's scorched earth approach on other discovery issues, including raising numerous discovery disputes with the Court and doggedly pursuing (irrelevant) discovery from a non-party.[10] Yet, Plaintiff never raised any dispute over Second RFP Nos. 3 and

---

[8] Nor do they concern Fifth Third's claim of abuse of process and Plaintiff's claim for retaliation.
[9] This Court denied Plaintiff's motion to compel further production of Carmichael, Shaffer, or Spence calendar items. *See* Doc. No. 37.
[10] For example, lengthy discovery disputes spawned out of Plaintiff's Second RFPs.

17

7. It was thus reasonable for Fifth Third to expect that Plaintiff was not challenging Fifth Third's objections to those overbroad requests, seeking "all communications" regardless of relevance.

There is also no reason why Fifth Third should be sanctioned over 73 pages of emails when considering the massive amount of discovery it has provided already. This is a single-Plaintiff discrimination lawsuit. Yet Fifth Third has produced over 214,000 pages of documents, and it was forced to put up twenty witnesses (including every Board member and several high-ranking executives) for depositions. Fifth Third has produced text messages, electronic calendars, employee engagement scores, customer experience scores, and Board materials. The notion that Fifth Third would engage in such extensive discovery yet surreptitiously withhold 73 pages of cumulative scheduling emails with RHR—only *one page* of which of which has even any arguable relevance, and none of which relate to McHugh or age discrimination—is absurd. And even if these 73 pages were withheld out of inadvertence, the miniscule error rate (0.0341%) is harmless by any objective measure.

In sum, Fifth Third's actions were both substantially justified and harmless given Fifth Third's good faith objections and corresponding lack of response by Plaintiff; the complete lack of importance of the emails at issue; the utter lack of surprise to Plaintiff given Fifth Third's consistent positions on all related matters and Plaintiff's ability to fully depose all relevant witnesses; and the ability for Plaintiff to use, and questions witnesses with, the supplementally produced documents at trial. Therefore, Plaintiff cannot claim any prejudice by Fifth Third's supplemental production, nor is he entitled to sanctions under Rule 37(c).

### C. Plaintiff is Not Entitled to Sanctions Under Civil Rule 37(b)

Plaintiff suggests in passing that he is entitled to an adverse jury instruction and for certain facts to be taken as established pursuant to Civil Rule 37(b)(2)(A)(i). *See* Motion at 16 PAGEID 3350. To the extent he is pursuing sanctions pursuant to Rule 37(b) independently, they are

18

available only against a party that has disobeyed a court order, which Fifth Third has not done. *See Marie v. Am. Red Cross*, 2013 U.S. Dist. LEXIS 39472, *6–7 (S.D. Ohio Mar. 20, 2013) (denying Rule 37(b) sanctions where no court order was violated).

## IV. CONCLUSION

For the foregoing reasons, Plaintiff is not entitled to sanctions under Rule 37 and his Motion should be denied.

Dated: June 27, 2025

Respectfully submitted,

*/s/ Michael L. Cioffi*
Michael L. Cioffi (0031098)
    Trial Attorney
Thomas H. Stewart (0059246)
Collin D. Hart (0099869)
BLANK ROME LLP
1700 PNC Center
201 E. Fifth Street
Cincinnati, Ohio 45202
Tel.:  (513) 362-8701
Fax:  (513) 362-8702
Email:  michael.cioffi@blankrome.com
        tom.stewart@blankrome.com
        collin.hart@blankrome.com

*Attorneys for Defendants/Counterclaimants, Fifth Third Bancorp, Fifth Third Bank, National Association, and Gregory D. Carmichael*

## **CERTIFICATE OF SERVICE**

I, Michael L. Cioffi, hereby certify that on June 27, 2025, a copy of the foregoing was served by electronic email via the Court's CM/ECF system to all counsel of record, including the following:

John J. McHugh
McHugh & McCarthy, LTD
5580 Monroe Street
Sylvania, Ohio 43560
mchugh@mchughlaw.com

Peter A. Saba
Joshua M. Smith
Stagnaro, Saba & Patterson Co., L.P.A.
2623 Erie Avenue
Cincinnati, Ohio 45208
pas@sspfirm.com
jms@sspfirm.com

*Counsel for Plaintiff,*
*Philip McHugh*

                                                       */s/ Michael L. Cioffi*
                                                       Michael L. Cioffi