UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| PHILIP R. McHUGH, | : | Case No. 1:21-cv-00238-MRB |
| Plaintiff, | : | Hon. Michael R. Barrett |
| vs. | : | **DEFENDANTS' MOTION FOR AN ORDER REQUIRING PLAINTIFF TO BEAR THE COSTS OF IN CAMERA SUBMISSION AND ANY RESULTING EXPERT DISCOVERY** |
| FIFTH THIRD BANCORP, *et al.*, | : | |
| Defendants. | : | |

## I. INTRODUCTION

Fifth Third requests an order requiring Plaintiff to pay (1) $2,500 towards the reasonable costs associated with the in camera submission of communications with testifying experts, and (2) for any subsequent expert discovery—including document productions and depositions—the Court orders after in camera review. This relief is warranted because of Plaintiff's insistence on strict compliance with his overbroad, last-minute document requests (the "RFPs"). He served the RFPs far too late under this Court's Standing Orders, they are disproportionate to the needs of the case, and they necessitated an unduly burdensome in camera submission of "all communications" between Fifth Third and its experts, which will not yield any material information whatsoever.

The burdensome RFPs and in camera review were also entirely unnecessary. Fifth Third offered, without Court intervention, to give Plaintiff all the substantive information that he was entitled to receive and more. Plaintiff refused to take yes for an answer. He would not make *any* compromises and instead put his untimely RFPs before the Court. He then insisted on an in camera review of "all communications" that Fifth Third ever had with its experts, one of whom was retained in 2021. This entire exercise has been a waste of time and money.

The Court should order Plaintiff to compensate Fifth Third for needlessly jumping through hoops for no reason, unduly burdening Fifth Third with unnecessary fees, and distracting its counsel (and the Court) when they should be focused on finishing discovery and filing dispositive motions. Cost shifting in the amount of $2,500 is warranted and represents a fraction of the actual cost associated with the unnecessary in camera submission. Further, the Court should order Plaintiff to cover the cost of any further expert discovery—such as supplemental productions or depositions—following in camera review.

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This case began on October 28, 2020, and Plaintiff first served written discovery requests in November of 2020. *See, e.g.*, Doc. 1-3 at PageID 15–23; Doc. 1-14 at PageID 65. After years of extensive discovery, the Court entered a calendar order for expert reports to be issued starting on July 31, 2025, with all discovery closing on November 4, 2025. *See* June 25, 2025 Notation Order. After serving a (defective) expert report on July 31, Plaintiff then delayed *all* expert depositions by refusing any availability until October. *See* Doc. 89-3 at PageID 4139–41. Expert depositions were finally scheduled for October 30, and November 4, 13, and 18.[1]

Then, on October 28—two days before the first expert deposition, and a week before the discovery cutoff—Plaintiff served the overbroad and burdensome RFPs. *See* Doc. 89-4.[2] They sought "all communications" between Fifth Third's counsel and its testifying experts, Dr. David

---

[1] The last deposition had to be postponed due to the expert having an urgent medical issue.
[2] Plaintiff previously proposed subpoenas that were *less* broad than the RFPs. Doc. 89-5 at PageID 4169–70, 4156. Plaintiff abandoned those subpoenas when he realized they would have to be enforced in the place of compliance (Florida and California). *Id.* at 4153–58. Plaintiff then served the RFPs. *See* Doc. 89-4. When Fifth Third explained that they were untimely, Plaintiff then changed positions again, and claimed what he *actually* wanted was a supplemental response to an overbroad request from 2021. *See* Doc. 89-6 at PageID 4187–89. But Fifth Third properly objected and responded to that request, and Plaintiff never challenged those objections until October 29, a day *after* contacting the Court on his untimely RFPs. *Id.* ("This old RFP is otherwise patently overbroad and objectionable (which is why we objected), including because it seeks protected information."). This dizzying and chaotic sequence underscores the problematic nature of last-second discovery and the reasons why it is improper.

2

Lewin and Mr. Erich Speckin (collectively the "experts"), on certain subjects. *Id.* Plaintiff's insistence on last-minute, all-encompassing RFPs contravened the Court's Standing Orders. They require service of written discovery "at such time that responses thereto are due before the discovery deadline." *See* Standing Order on Civ. P. § I(D).

Despite its well-founded objections to the RFPs, Fifth Third bent over backwards to negotiate a resolution and avoid Court intervention. Fifth Third proposed multiple accommodations, including producing invoices reflecting total time and compensation; drafting a comprehensive list of all documents provided to the experts, which Plaintiff refused to accept; then re-producing those documents; and then producing the cover emails transmitting those documents, with redactions of attorney mental impressions and other protected information. *See, e.g.*, Nov. 6 Tr., Doc. 86 at PageID 4014, 7:21–25 (billing statements), PageID 4011, 4:21–24 (list of documents provided), & PageID 4015, 8:19–24 (cover emails, with redactions, and documents provided). Plaintiff rejected all those proposals, made none of his own, and insisted on strict compliance with his "all communications" RFPs. *Id.* at PageID 4017, 10:7–21; Doc. 89-5 at PageID 4153–71; Doc. 89-6 at PageID 4181–92.

At a November 6 conference, the Court agreed that the RFPs were overbroad and that Fifth Third had offered to produce the only discoverable documents. *See* Nov. 6 Tr., Doc. 86 at PageID 4012–19, 5:16–19, 7:21–8:5, 9:7–14, 11:14–18, & 12:17–19 ("THE COURT: . . . All I'm saying is an all-communications request is overly broad. I agree."). Plaintiff responded by suggesting that Fifth Third might violate its agreements and improperly withhold documents. *E.g., id.* at PageID 4019, 12:18–21 ("[W]e have, I guess, a trust issue . . . ."). The Court thus directed an in camera review of "all communications" between Fifth Third and its experts.

3

Fifth Third promptly began collecting all communications with its experts. *See* Doc. 89-8 at PageID 4206–07. Fifth Third pulled all external emails between its outside counsel—including former attorneys—and the experts. Fifth Third also manually collected other relevant communications that would have been sent to its experts, such as materials transmitted via Sharefile, a secure message service. Fifth Third uploaded all collected documents into a litigation review platform, and applied de-duplication and threading. Fifth Third's counsel then reviewed the communications for responsiveness—*e.g.*, to confirm the documents were external communications with experts. Fifth Third's counsel also applied redactions to documents (for external production) and created unredacted versions (for the Court's in camera review). Fifth Third's counsel identified for the Court which documents were produced (for Mr. Speckin) or proposed for production (for Dr. Lewin). Fifth Third also gave the Court all other expert communications to confirm that the actual and proposed productions were appropriate.

During the collection process, Fifth Third notified Plaintiff and the Court that the in camera production would needlessly include an extensive amount of materials. *Id*. Plaintiff responded by denying (without evidence) Fifth Third's claims about the potential number of documents at issue. *Id.* at PageID 4204–05. Plaintiff also *suggested* that the Court could take steps to narrow the dataset, but he never *actually agreed* to any specific measures. *Id.* at PageID 4202. Thus, Fifth Third submitted "all communications" in camera as ordered. This submission included more than 900 documents and over 9,500 pages of information.

### III. LAW AND ARGUMENT

#### A. Legal Standards.

Under Rule 26(b)(1), discovery must be proportional to the needs of the case. Proportionality considerations include the importance of the discovery and whether the burden or

4

expense outweighs the likely benefit. Rule 26(b)(2)(C) requires courts to limit discovery that is unreasonably cumulative or duplicative, or where the burden or expense outweighs the likely benefit. Rule 26(c)(1)(B) expressly authorizes orders "specifying terms, including . . . the allocation of expenses, for the disclosure or discovery." Courts will allocate or shift discovery costs where requests are overbroad, are untimely, impose undue burdens or unnecessary expenses, and seek unimportant information that provides no benefit to the parties. *Medtronic Sofamor Danek, Inc. v. Michelson*, 229 F.R.D. 550, 553–58 & 560–62 (W.D. Tenn. 2003).

### B. The Court Should Award Cost Shifting for Plaintiff's Untimely and Overbroad RFPs and Demand for In Camera Review.

The "all communications" RFPs are overbroad and disproportionate, as the Court recognized at the November 6 hearing. *See* Nov. 6 Tr., Doc. 86 at PageID 4019, 12:18–19. The RFPs are particularly burdensome because Plaintiff sought scores of documents that are clearly immune from discovery. Rule 26(b)(4) protects draft expert reports and attorney–expert communications, subject only to narrow exceptions. The whole point of this work product protection is to prevent the unnecessary and burdensome efforts that Plaintiff insisted on imposing here. *See* Rule 26(b), advisory committee's note to 2010 amendments ("[R]outine discovery into attorney-expert communications and draft reports has had undesirable effects. ***Costs have risen***.") (emphasis added). Yet Plaintiff forced Fifth Third to incur these costs and produce "all communications" for in camera review. This is precisely the situation in which Rule 26(c)(1)(B) empowers courts to allocate expenses.

Cost shifting is also warranted in light of Plaintiff's untimely service of sweeping RFPs, in contravention of the Court's Standing Orders. Plaintiff served these "all communications" demands on October 28, far too late to allow for orderly compliance and dispute resolution before the November 4 discovery cutoff. Plaintiff also engaged in late-phase supplemental productions

5

and witness amendments on the discovery deadline, and delayed expert depositions into late-October and November. These antics contributed to a compressed and costly scramble that was avoidable had Plaintiff complied with the Court's Standing Orders.

Additionally, the Court should award costs because the burden and expense outweigh any benefit in light of what Fifth Third already agreed to provide to avoid Court intervention. Before the order for in camera review, Fifth Third offered to produce invoices reflecting total time and compensation; a re-production of documents sent to experts; and then cover emails transmitting these documents, with limited redactions over protected information. The in camera review and any ensuing production will not add anything to those disclosures, let alone documents that are relevant and material. Under Rule 26, the burden and expense of in camera review thus "outweigh the likely benefit," supporting allocation of the costs that Plaintiff's demands have imposed. *Michelson*, 229 F.R.D. at 555 & 557.

Finally, Plaintiff should bear the cost of in camera review because it was purportedly necessary due to his "trust issue" and subjective belief that Fifth Third would withhold discoverable information. Plaintiff had myriad less burdensome ways of verifying the accuracy of Fifth Third's proposed disclosures. Fifth Third agreed to produce documents, invoices, and transmittal emails. Plaintiff could have compared them to the expert reports, which identified the documents relied upon, rates of compensation, and assumptions made. Plaintiff also had the opportunity to depose the experts and cross examine them on all of these issues. If Plaintiff really thinks an "all communications" in camera review is necessary for yet another layer of verification, then he should pay for it. *Laethem Equip. Co. v. Deere & Co.*, 261 F.R.D. 127, 145–46 (E.D. Mich. 2009) (ordering cost shifting to ensure there was an "incentive to tailor" requests "to that which is genuinely relevant to the issues that remain"); *Ford Motor Co. v. Versata Software, Inc.*,

6

2017 U.S. Dist. LEXIS 176587, at *15 (E.D. Mich. Oct. 25, 2017); *Michelson*, 229 F.R.D. at 554–55 & 558 (awarding costs when a party's requests were "very broad" but he had "done little to limit the scope of the requests").

### C. Cost Shifting Is Also Appropriate for Any Additional Expert Discovery Following In Camera Review.

If, after in camera inspection, the Court directs targeted supplemental productions or expert depositions, the same principles of proportionality and cost allocation should apply. Any incremental production and deposition activity would arise solely from Plaintiff's untimely, overbroad demand for "all communications," not from any actions of Fifth Third. Plaintiff elected to pursue late-stage, expansive RFPs despite Fifth Third's offer to provide rule-compliant information. Equity and the Federal Rules support conditioning this supplemental discovery on Plaintiff paying the associated costs. Further, requiring Plaintiff to bear these expenses will ensure that (1) the scope of discovery remains tethered to limited, discoverable categories, and (2) Fifth Third is not penalized for complying with an in camera process necessitated by Plaintiff's refusal to compromise over his untimely and overbroad RFPs. *Laethem*, 261 F.R.D. at 145 (awarding costs to encourage the parties to seek discovery only if "genuinely relevant to the issues that remain"); *Michelson*, 229 F.R.D. at 554–55 & 558 (awarding costs when a party had "done little to limit the scope of the requests").

### IV. CONCLUSION

The Court should require Plaintiff to pay costs of $2,500 caused by his RFPs and request for in camera review, and any further costs for expert discovery occurring after in camera review.

DATED: November 25, 2025	Respectfully submitted,

                                                           **BLANK ROME LLP**

*s/ Michael L. Cioffi*
Michael L. Cioffi (0031098)
      Trial Attorney
Jeffrey W. DeBeer (0089499)
Collin D. Hart (0099869)
1700 PNC Center
201 E. Fifth Street
Cincinnati, Ohio 45202
Tel.:   (513) 362-8701
Fax:   (513) 362-8702
Email:  michael.cioffi@blankrome.com
           jeffrey.debeer@blankrome.com
           collin.hart@blankrome.com

*Attorneys for Defendants–Counterclaimants*

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed this document with the Clerk of Court using CM/ECF on November 25, 2025, which will automatically generate and serve Notices of Electronic Filing on all counsel of record.

*s/ Michael L. Cioffi*
Michael L. Cioffi
