UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| PHILIP R. MCHUGH, | : | |
| | : | Case No. 1:21-cv-00238 |
| Plaintiff, | : | |
| | : | Judge Michael R. Barrett |
| v. | : | |
| | : | |
| FIFTH THIRD BANCORP, ET AL. | : | PLAINTIFF'S MEMORANDUM IN |
| | : | OPPOSITION TO DEFENDANTS' |
| Defendants. | : | MOTION FOR ORDER REQUIRING |
| | : | PLAINTIFF TO BEAR COSTS OF IN |
| | : | CAMERA SUBMISSION AND ANY |
| | : | RESULTING EXPERT DISCOVERY |

Defendants inappropriately seek an order requiring Plaintiff to bear the "expenses" resulting from Defendants' refusal to produce discoverable communications with their experts Dr. David Lewin and Erich Speckin, thus requiring an in-camera review by this Court and subsequent production of communications. If anything, *Plaintiff* should be awarded the fees and expenses resulting from Defendants' refusal, which would potentially include re-opened depositions of Defendants' experts where Plaintiff did not have the benefit of such documents at the time of the deposition.

I.  FACTUAL BACKGROUND

At the time this Court ordered the in-camera review at issue (November 6, 2025), Defendants had produced exactly zero communications between Defendants or their attorneys and their retained experts. This included communications in three categories requested by Plaintiff and explicitly permitted under Rule 26:

(i) Communications which relate to compensation for the expert's study or testimony, which would include all invoices and any communications between counsel and the expert relating to their compensation;

1

(ii) Communications which identify facts or data that Defendant or Defendant's counsel provided and that the expert considered in forming the opinions to be expressed; and

(iii) Communications which identify assumptions that Defendant or Defendant's counsel provided and that expert relied upon in forming the opinions to be expressed.

(*See* Fed. R. Civ. P. 26(b)(4)(C)(i)-(iii); *See also* **Exhibit 1** to Smith Dec. - September 25, 2025 – October 28, 2025 E-mail Exchange Between Counsel; **Exhibit 2** to Smith Dec. – Plaintiff's October 28, 2025 Targeted Requests for Production Directed to Defendants). Plaintiff had also requested such communications as early as 2021 in formal discovery requests, and in an effort to extrajudicially resolve the issue served updated requests on October 28, 2025. (*See* **Exhibit 2** to Smith Dec.; **Exhibit 3** to Smith Dec. – Plaintiff's September 27, 2021 Requests for Production of Documents Directed to Defendants). Prior to raising the issue with the Court, Defendants never once offered to produce actual communications, instead insisting on producing counsel "summaries" of the billing invoices and communications. (*See* **Exhibit 1** to Smith Dec.).

Given Defendants' refusal, Plaintiff sought Court intervention to resolve the issue prior to going forward with expert depositions, including Defendants' rebuttal expert Dr. David Lewin on November 4, 2025. (*See* **Exhibit 4** to Smith Dec. – October 28, 2025 E-mail to Chambers). As that date approached and in an effort to avoid unnecessary expense, Plaintiff even sought to reschedule the deposition with Defendants to conserve resources as the dispute was resolved. (*See* **Exhibit 5** to Smith Dec. – October 31, 2025 E-mail Exchange Between Counsel). Defendants refused, however, insisting that they would not reschedule and if the deposition was not completed by November 4 Plaintiff would forfeit his right to take it. (*Id.*). As a result, Plaintiff went forward with the deposition without the benefit of the requested communications which were later produced.

The Court held a discovery conference on November 6, and ordered an in-camera review of the expert communications. (*See* November 6, 2025 Minute Entry). On November 11, 2025,

*after* the order for an in-camera review, Defendants e-mailed what it characterized as an "update" to the Court regarding the expert communications. (*See* **Exhibit 6** to Smith Dec. – November 11, 2025 E-mail from Defendants' Counsel to Chambers). In doing so, Defendants claimed to have now collected communications with their experts, uploaded the documents into an e-discovery platform, ran "deduplication" and "threading," and claimed that they had "over 800 documents." (*Id.*). Defendants went on to "organize" the data by "documents we agreed to produce" and "all other documents." (*Id.*).

Importantly, the labeling of such a file of communications as "documents we agreed to produce" is a complete mischaracterization. Prior to this e-mail, Defendants had not agreed to produce any actual communications and had instead demanded production of summaries and restatements from counsel. In fact, no such communications had been produced as of November 11, let alone prior to Defendants' rebuttal expert's deposition on November 4. Defendants' actual production of the purported "documents we agreed to produce," did not occur until November 16, 2025 as to their ink dating expert Erich Speckin, and December 12, 2025 as to rebuttal expert David Lewin.

The production as to Lewin consisted of 6,690 pages of documents, with only 46 pages being the requested communications and 6 pages being redacted invoices. The remaining 6,641 pages were deposition transcripts, deposition exhibits, documents from Plaintiff's expert's report, or documents Plaintiff produced to defendants. And, despite Defendants' purported "deduplication" efforts, multiple documents appear twice in the production, including:

- Marsha Williams Deposition Transcript (FifthThird__BRG__001803-002381 and 005825-006403) (578 extra pages);
- Greg Carmichael Volume II Transcript (FifthThird__BRG__001572-001802, 006511-006628)(117 extra pages)
- Tim Spence Deposition Transcript (FifthThird__BRG__004977-005260 and 005261-005775)(514 extra pages)

3

- Bob Shaffer Deposition Transcript (FifthThird_BRG003805-004128, 004129-004696)(567 extra pages); and
- An August 21, 2025 E-mail (FifthThird__BRG__000001-000002, 005753-005754) (2 extra pages).

This totals 1,778 duplicate pages in Defendants' 6,693-page production.

As to Erich Speckin, 63 pages of documents were produced, with 4 pages being e-mails and 12 pages being redacted invoices. The remaining 50 pages are copies of deposition transcripts, exhibits, documents from Plaintiff's rebuttal expert's report, or documents Plaintiff produced to Defendants.

## II. LAW AND ARGUMENT

Despite having inappropriately withheld production of discoverable expert communications prior to scheduled depositions, and having only produced documents *after* the Court ordered an in-camera review of such documents, Defendants now seek an order shifting their own purported costs relating to producing documents to Plaintiff, and "for any resulting expert discovery" from their failure. Such a request is inappropriate, and only highlights the fact that it is Plaintiff who should be awarded a reimbursement of such expenses given Defendants' refusal to produce documents and insistence in the meantime that expert depositions go forward.

**A. The producing party bears the expense of complying with discovery requests.**

As the Supreme Court has explained, "the presumption is that the responding party must bear the expense of complying with discovery requests…" *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 358, 98 S. Ct. 2380, 57 L. Ed.2d 253 (1978); *See also Medtronic Sofamor Danek, Inc. v. Michelson,* 229 F.R.D. 550, 553 (W.D. Tenn. 2003)("Generally the party responding to a discovery request bears the cost of compliance."). While this presumption can sometimes be rebutted if the producing party can demonstrate that requested information (typically ESI) is not reasonably accessible either due to "undue burden or cost[,]" the commentary on Rule 26 makes

4

it clear that such cost-shifting should not become a common practice—instead, courts and parties should continue to assume that a responding party ordinarily bears the costs of responding. Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment.

**B. Defendants have not established a basis for shifting costs of responding to basic discovery.**

The Sixth Circuit has applied a six-factor test to determine whether the cost of discovery production should be shifted to a requesting party based upon undue burden or cost. *See EEOC v. Gypsum Express, Ltd.,* 345 F.R.D. 442, 448-49 (E.D. Ky. 2024)(citing factors). The factors include, in descending order of importance:

1. The extent to which the request is specifically tailored to discovery relevant information;
2. The availability of such information from other sources;
3. The total cost of production, compared to the amount in controversy;
4. The total cost of production, compared to the resources;
5. The relative ability of each party to control costs and its incentive to do so;
6. The importance of the issues at stake in the litigation; and
7. The relative benefits to the parties of obtaining the information.

(*Id.*). Defendants fail to recite these factors, consistent with the fact that none of them favor the cost-shifting they request.

First, the request as issue which Defendants wrongly characterize as an "all-communications" RFP is simply not that. To the contrary, the request at issue seeks communications which are specifically permitted under Rule 26 in three categories. (*See* **Exhibit 2** to Smith Dec.). Such communications, concerning Defendants' experts compensation, facts or

data which they considered in forming opinions, or assumptions conveyed by Defendants or their counsel, are all relevant and discoverable information. (*Id.*).

Second, by its very nature (communications between a party and its expert), such information is not available from other sources other than Defendants or their identified experts.

Third, the total cost of production, which Defendants have yet to spell out for the Court, is hardly significant in comparison to the amount in controversy in this case. Indeed, between Plaintiff's expert and Defendants' expert, damages could range between $14,000,000.00 and $103,000,000.00 in the President/CEO Failure to Promote Case.

Similarly, as to the fourth factor—the relative resources of Defendants compared to the cost of this production—also favors Plaintiff. As indicated above, the production resulted in a total of less than 100 e-mails, some of which include redactions. Contrary to case law cited by Defendants, this is hardly a case involving "in the range of several million." *See Michelson*, 229 F.R.D. at 558. ("Based on the foregoing, the court finds that the cost of restoring, de-duplicating, and designing and conducting a search of all 996 backup tapes reasonably could be in the range of several million...accordingly, the court finds that this factor weighs in favor of shifting *some* cost to the requesting party, Michelson."). Moreover, as Defendants state, they are "a top-five-now financial institution with the Comerica transaction," with near unlimited resources. *See* Doc. #86, PAGEID # 4030. Given the hundreds of millions in potential damages in this case and the relative resources of Defendants, it is not unreasonable that they be required to expend some resources to search and produce documents that are discoverable under the civil rules. *See EEOC v. Gypsum Express, Ltd.*, 345 F.R.D. 442, 453-54 (E.D. Ky. 2024)("[T]he EEOC is a large federal agency and Gypsum is a business enterprise comprised of over 700 employees and operations in 10 different

6

states. While $3,200 is not an inconsequential amount of money, compared to the resources and potential monetary judgment in this case the cost of production is relatively minor.").

Fifth is the relative ability to control costs, which again supports Plaintiff's position. Again, *Defendants* have the complete ability to control the costs of production. The fact that they produced over 6,000 documents only confirms they deliberately *did not* try to control such costs, given only a few dozen pages in that production were the actual requested communications with their experts.

Sixth, as to the importance of the issues, the expert communications matter a great deal when considering expert bias and the ability to cross-examine an expert on such bias. As explained by the court in *Rochow,* "it is fair to require full disclosure of all communications to expert witnesses by attorneys because once communication has been furnished to the expert to be considered in forming their opinion, whether or not the expert relies on the documents, the communication will potentially color the expert's opinion. The disclosure of such materials enables the opposing party to test the expert's opinion through more effective cross-examination." *Rochow v. Life Ins. Co.*, 2010 U.S. Dist. LEXIS 437 at *11 (E.D. Mich. 2010) citing *In re McRae*, 295 B.R. 676 (N.D. Fla. 2003)); *See also Matrix N. Am. Constr., Inc. v. Pro-Tex Coating Co., LLC*, 2023 U.S. Dist. LEXIS 102724 at *4 (N.D. Ohio 2023)("Although the 2010 amendments protect draft reports, they do not suddenly shield all deposition-discovery. Matrix remains entitled to all the facts and data BRG considered in forming its opinions[,]" and "the term 'considered' includes anything received, reviewed, read, or authored by the expert, before or in connection with the forming of his opinion, if the subject matter relates to the facts or opinions expressed.").

Finally, for similar reasons, there are relative benefits to both parties and the Court in obtaining the communications at issue—specifically, the basic purpose of the federal civil rules as spelled out in Rule 1. Fed. R. Civ. P. 1 ("These rules…should be construed, administered and

employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."). Production of the attorney-expert communications at issue assist the parties in teasing out any bias of identified experts, and to understand information they were provided (or not) in rendering their stated opinions.

### C. The request for cost-shifting should be denied.

Defendants' request that Plaintiff bear the purported $2,500 cost Defendants claim to have incurred in fulfilling their discovery obligations is entirely unwarranted. The purportedly "burdensome" production comes nowhere close to levels where courts have shifted such costs, including in all of the cases cited by Defendants. *See, e.g., Michelson,* 229 F.R.D. 550 (W.D. Tenn. 2003)(shifting costs that the court found to be "in the range of several million" in "restoring, de-duplicating, and designing and conducting a search of all 996 backup tapes[.]."); *Ford Motor Co. v. Versata Software, Inc.*, 2017 U.S. Dist. LEXIS 176587 at *14-15 (E.D. Mich. 2017)(finding that requesting party would bear cost of making source code available for review given "there would be considerable effort required" including "establishing a review environment that can be inspected and analyzed by Versata's experts" which is "isolated from the active repository supporting Ford's day-to-day business activities."); *Laethem Equip. Co. v. Deere & Co.,* 261 F.R.D. 127, 145 (E.D. Mich. 2009)(applying cost-bearing to both parties based upon defendants assertions that it will cost $107,821 to harvest the requested ESI, and plaintiff's claimed costs associated with their ESI production of $77,255.).

Moreover, the request that Plaintiff bear the expense of any additional discovery resulting from Defendants' refusal to produce such documents would only serve Defendants' for their discovery obstruction. If anything, any necessary additional discovery and the costs associated with it should be borne by Defendants, given their baseless withholding of relevant discovery.

8

### III. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that Defendants' Motion to Bear Costs of In-Camera Review and Resulting Discovery be denied.

Respectfully Submitted,

*/s/ Peter A. Saba*
Peter A. Saba, Esq. (0055535)
Joshua M. Smith, Esq. (0092360)
Bailey E. Sharpe, Esq. (0103565)
SSP LAW CO., L.P.A.
2623 Erie Avenue
Cincinnati, Ohio 45208
(513) 533-2701
(513) 533-2711 (fax)
pas@sspfirm.com
jms@sspfirm.com
bes@sspfirm.com

*/s/ John J. McHugh*
John J. McHugh, III
McHUGH & McCARTHY, LTD
5580 Monroe Street
Sylvania, Ohio 43560
(419) 885-3597
(419) 885-3861 (fax)

**Co-Counsel for Plaintiff Philip R. McHugh**

**CERTIFICATE OF SERVICE**

    The undersigned hereby certifies that a copy of the foregoing motion was served on all counsel of record this 6th day of January 2026, via the Court's CM/ECF system and/or via ordinary or electronic mail.

                                          */s/ Joshua M. Smith*
                                          Joshua M. Smith, Esq. (0092360)