**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | : | |
|---|---|---|
| PHILIP R. McHUGH, | : | Case No. 1:21-cv-00238-MRB |
| | : | |
| Plaintiff, | : | Hon. Michael R. Barrett |
| | : | |
| vs. | : | **REPLY IN SUPPORT OF** |
| | : | **DEFENDANTS' MOTION FOR AN** |
| FIFTH THIRD BANCORP, *et al.*, | : | **ORDER REQUIRING PLAINTIFF TO** |
| | : | **BEAR THE COSTS OF IN CAMERA** |
| Defendants. | : | **SUBMISSION AND ANY RESULTING** |
| | : | **EXPERT DISCOVERY** |
| | : | |

## I.  INTRODUCTION

Plaintiff served untimely, "all documents" requests (the "RFPs") in violation of the Court's Standing Orders; refused *any* compromises that would have given him the exact information he wanted, all in advance of expert depositions and without unduly burdening Fifth Third or the Court; and instead demanded that Fifth Third undertake a cumbersome, costly, and last-minute in-camera submission of *9,500 pages* of irrelevant and protected documents. This entire exercise was a waste of time, precisely as Fifth Third said it would be. In his Opposition, Plaintiff avoids defending the need for an in-camera review and instead seeks to relitigate the timeliness of his last-minute RFPs and complain as to the scope of the review that he demanded. Even now, Plaintiff does not attempt to argue that *any* of the documents—not even *one page out of 6,756* that were ultimately produced—have any relevance whatsoever. In fact, his Opposition criticizes Fifth Third (and by extension the Court) for giving him *the very types of documents that he demanded* because he now recognizes that they are wholly irrelevant. Worded differently, Fifth Third told Plaintiff he was demanding a costly in-camera review that would result in a voluminous

production of irrelevant materials, and he is now upset that he received a voluminous production of irrelevant materials.

The Federal Rules permit the targeted allocation of costs to balance proportionality, deter overbroad and last-minute discovery requests, and avoid needless expense. Each of these imperatives are implicated here. The Court should thus grant modest cost shifting for Plaintiff's uncompromising demand for an expensive, rushed, and useless in-camera submission and production in response to his untimely RFPs, as well as costs for any further unnecessary expert discovery that Plaintiff might continue to pursue.

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The Opposition misstates the factual record at every step. Plaintiff pretends that Fifth Third "never once offered to produce actual *communications*," such as emails, until he sought Court intervention. *See* Opp., Doc. 94 at PageID 4475 (emphasis added). False. Plaintiff first raised this dispute with the Court on October 28. *See* Doc. 89-6 at PageID 4192. Days before, on October 25, Fifth Third offered to "produce **transmittal emails** attaching" record documents sent to testifying experts. *See* Doc. 89-5 at PageID 4157–58 ("Why not just use [Plaintiff's] highlighted language in the document request 1(ii) and 2 (*e.g.*, 'In lieu of responding to this request, produce a list of documents Defendants provided to Mr. Speckin for formulating his opinions, and produce transmittal emails attaching such documents[?]'") (emphasis added). Fifth Third recounted this offer to the Court at the November 6 conference:

> Mr. DeBEER: . . . So we've offered to go above and beyond our Rule 26 obligations to try and resolve this. We offered to reproduce every document we sent to the expert so it could be Bates Stamped as such. ***We offered to send cover e-mails attaching documents that we sent to the expert***, but we were going to redact any mental impressions of counsel, any discussions of draft reports because that information is all privileged. . . . and they wouldn't agree to that."

2

> "MR. DeBEER: So Judge, the disagreement arose was that they were not content with just ***cover e-mails attaching documents***, reproducing documents, or us giving them a list of all the documents."

Nov. 6 Tr., Doc. 86 at PageID 4015–17, 8:12–10:21 (emphasis added); *see also id.* at PageID 4011–12, 4:24–5:3.

Fifth Third similarly explained how it offered to provide all other discoverable information that Plaintiff requested. *See, e.g., id.* at PageID 4014, 7:21–25 (billing statements); *id.* at PageID 4011–12, 4:21–5:3 (list of documents provided and cover emails); *id.* at PageID 4015, 8:19–24 (cover emails, with redactions, and documents provided). Plaintiff rejected each and every offer of compromise and made none of his own. *See generally* Docs. 89-5 & 89-6. Instead, he insisted that the parties "*reach out **to the court*** for a brief informal discovery conference and possibly submitting the documents/communications at issue for review." *See* Doc. 89-5 at PageID 4155 (emphasis added). Plaintiff would not accept any result other than burdening the Court and Fifth Third with this unnecessary exercise because of his professed "trust issue." *See* Doc. 86 at PageID 4019, 12:17–21; Doc. 89-5 at PageID 4153–71; Doc. 89-6 at PageID 4181–93. And as the Court is aware from its in-camera review, this "trust issue" was entirely unfounded. *See* Dec. 15, 2025 Minute Entry on *Ex Parte* Discovery Conference (ruling that the Court was "satisfied with the sum and substance" of Fifth Third's productions).

Plaintiff then distorts the timing of his RFPs and Fifth Third's attempts to reach a compromise. He argues that when "this Court ordered the in-camera review" on November 6, Fifth Third "had produced exactly zero communications between" its attorneys and testifying experts. *See* Doc. 94 at PageID 4474. Plaintiff neglects to mention that he did not serve RFPs for these communications until *October 28*. *See* Doc. 89-4 at PageID 4151.[1] That was *the same day*

---

[1] Plaintiff half-heartedly attempts to argue that he requested the documents at issue in 2021, despite knowing full well that he never contested to Fifth Third's objections and responses to

3

*he contacted the Court*, <u>*seven days*</u> *before the November 4 discovery cutoff (and Dr. Lewin's deposition), and* <u>*nine days*</u> *before the November 6 conference*. Fifth Third did not even have time to serve written objections, meaning the RFPs violated this Court's Standing Orders. *See* Standing Order on Civ. P. § I(D). Plaintiff also conveniently forgets to mention that Fifth Third worked diligently and rapidly to process over 9,500 pages of documents for in-camera submission on November 18. That submission was fewer than two weeks after the Court's November 6 ruling and three weeks after Plaintiff served the RFPs in the first instance. Plaintiff also neglects to mention that he, too, had not produced a single expert-related communication.

Amazingly, Plaintiff even attempts to cast blame on Fifth Third for producing the exact documents that his overbroad and untimely RFPs requested. Specifically, he chastises Fifth Third for producing "deposition transcripts, deposition exhibits, documents from Plaintiff's expert's report, or documents Plaintiff produced to defendants." *See* Doc. 94 at PageID 4476. That is the <u>***precise* *information that Plaintiff compelled Fifth Third to produce***</u>—*i.e.*, the facts and data that Fifth Third had sent to its testifying experts. Plaintiff's criticisms are particularly remarkable because Fifth Third offered less-burdensome alternatives as a compromise to a voluminous production, such as providing a list of all documents sent to testifying experts and producing cover emails. Plaintiff balked at these offers time and again, and insisted on strict compliance with "all documents" RFPs. *E.g.*, Doc. 86 at 4017–18, 10:22–11:2 ("Mr. Smith: . . . [W]e aren't in agreement with attorneys giving us summarizations or restatements of things. ***We want to see what was actually provided***.") (emphasis added); Doc. 89-6 at 4192–93 ("From Plaintiff's perspective, counsel summarizations and restatements . . . **[are] not agreeable**.") (emphasis

---

those requests. *See* Doc. 91 at PageID 4218 n.2. Plaintiff's last minute proposed subpoenas and October 28, 2025 RFPs are proof that he abandoned his 2021 document request, and that he attempted to pivot to it because his current RFPs are defective and improper.

4

added); Doc. 89-5 at PageID 4161 ("Regarding the e-mail communications **with attachments**, these . . . would verify what was sent to each expert witness and when.") (emphasis added); Doc. 89-4 at PageID 4150 (requesting "[a]ll documents reviewed, relied upon, or referenced by any experts identified by Defendants in this Litigation in formulating their opinions, including but not limited to those opinions set forth in their expert report").

Plaintiff then lies about how multiple documents "appear twice in the production," despite Fifth Third using an e-discovery platform to apply deduplication. Doc. 94 at PageID 4476–77. Plaintiff's cited documents are *not* duplicates.[2] For example, he complains about FifthThird_BRG_000001 and 005753. The time stamps on these messages show that they are different, which Plaintiff would have realized if he had bothered to read them. Plaintiff also references FifthThird_BRG_001803, which is an attachment to 000001, and then FifthThird_BRG_005825, which is an attachment to a separate email. Attachments to separate messages have different parent–child relationships and are not "duplicates." Further, Plaintiff cites FifthThird_BRG_004977 (a .PDF version of Tim Spence's deposition) and FifthThird_BRG_005261 (a .txt file of the transcript). Again, these documents are not the same, and Plaintiff's "all communications" RFPs requested both, which is why Fifth Third produced them both (as approved by the Court's in camera review).

Next, Plaintiff makes baseless complaints about how Dr. Lewin's deposition occurred before Fifth Third's production of communications with him. Doc. 94 at PageID 4475. Plaintiff is entirely to blame for this sequence. Recall that *Plaintiff* delayed all expert depositions for months on end, pushing them to the brink of the November 4 cutoff and beyond. *See* Doc. 89-3 at PageID 4139–40. *Plaintiff* then served overbroad and untimely RFPs on *October 28*, days

---

[2] Fifth Third will submit copies of the referenced documents for in camera review.

5

before the discovery deadline and Dr. Lewin's November 4 deposition. *See* Doc. 89-4 at PageID 4151. And *Plaintiff* refused all of Fifth Third's proposed compromises on his RFPs, which would have given him the substantive information he claimed he wanted (albeit which he now concedes is irrelevant anyway) *before* Dr. Lewin's deposition. That Plaintiff did not have documents ahead of Dr. Lewin's deposition is due to his own delay and refusal to accept reasonable, good faith compromises.

Plaintiff similarly raises baseless complaints about how he struggled to take Dr. Lewin's deposition "without the benefit of the requested communications." Doc. 94 at PageID 4475. But he points to no "benefit" from the "requested" materials. Rather, he now argues that they are useless. He does not cite a single document—not even one—that has any relevance whatsoever or that he would have used at Dr. Lewin's deposition. He has not even asked to reopen Dr. Lewin's deposition, although Fifth Third anticipates this result given Plaintiff's focus on driving up defense costs to take endless discovery and delay this lawsuit *ad infinitum*.

### III. LAW AND ARGUMENT

#### A. Plaintiff's Cost Shifting Factors Favor Requiring Him to Reimburse Fifth Third.

Plaintiff relies heavily on the presumption that responding parties typically bear their own discovery costs, but that principle is not absolute. By the plain text of Rule 26, courts may "specify terms, including … the allocation of expenses" to ensure proportional discovery, and must limit discovery when burden or expense outweighs likely benefit. Fed. R. Civ. P. 26(b)(1), 26(b)(2)(C), 26(c)(1)(B). Plaintiff ignores this language entirely, as well as how the Rules are designed to avoid expensive and intrusive discovery into attorney–expert communications. *See* Rule 26(b), advisory committee's note to 2010 amendments ("[R]outine discovery into attorney–expert

6

communications and draft reports has had undesirable effects. **Costs have risen**.") (emphasis added).

Plaintiff instead relies on a seven-factor test. *See* Doc. 94 at PageID 4478 ("1. The extent to which the request is specifically tailored to discovery [*sic*] relevant information; 2. The availability of such information from other sources; 3. The total cost of production, compared to the amount in controversy; 4. The total cost of production, compared to the resources; 5. The relative ability of each party to control costs and its incentive to do so; 6. The importance of the issues at stake in the litigation; and 7. The relative benefits to the parties of obtaining the information.") (citation omitted). But even these factors confirm that cost shifting is warranted.

First, the RFPs were not "specifically tailored to the discovery of relevant information." The Court already decided that issue at the November 6 conference, agreeing that the RFPs were overbroad and that Fifth Third had offered to produce all discoverable documents. *See* Doc. 86 at PageID 4012–19, 5:16–19, 7:21–8:5, 9:7–14, 11:14–18, & 12:17–19 ("THE COURT: . . . All I'm saying is an all-communications request is overly broad. I agree."). Additionally, Plaintiff now complains that—in accordance with his own demands—Fifth Third had to produce a high-volume of irrelevant materials. And while he falsely asserts that there are many "duplicates" in the production, every example he cites is not a duplicate and is a document that he insisted on Fifth Third producing.

Second, Fifth Third bent over backwards to get Plaintiff all the substantive information he requested without a cumbersome and costly in-camera review. Despite the RFPs being untimely and in violation of the Court's Standing Orders, Fifth Third negotiated diligently and promptly. It offered myriad compromises. Plaintiff rejected each and every one without

7

explanation (other than later blaming a "trust issue" and need to "verify"), and he refused to make any proposals of his own.

<u>Third</u> and <u>Fourth</u>, the total cost of production was excessive and entirely avoidable. Fifth Third was forced to collect "all" communications that current, and even former, Blank Rome attorneys ever had with Mr. Speckin (retained in 2021) and Dr. Lewin. *See* Declaration of J. DeBeer, ¶ 6 (attached as Exhibit A). Blank Rome's litigation support staff had to spend 19.1 hours to collect these documents, load them into a review platform, stage the data, apply deduplication and threading, review and apply redactions, prepare parallel (redacted/unredacted) production sets for the Court, and then prepare separate productions to Plaintiff. *Id.* ¶ 4. Blank Rome attorneys spent over 35 hours reviewing, coding, and redacting documents (in a database that ultimately included over 1,200 files) and preparing the in-camera submission and separate productions to Plaintiff. *Id.* ¶ 5. All of this work was performed on compressed timelines triggered by Plaintiff's delay and last-second RFPs. And, as to Plaintiff's arguments about the Parties' comparative resources, he focuses exclusively on Fifth Third's assets yet ignores his own. Plaintiff received millions as a Fifth Third executive. While his value on the open market never achieved anywhere close to his prior compensation after he quit in protest (whether because he was grossly overpaid, failed to mitigate, or some combination thereof), he still likely has substantial assets from his time at the Bank. Finally, and as to Plaintiff's overinflated claims of "damages," Dr. Lewin estimates that they are $0.

<u>Fifth</u>, Plaintiff had a near total ability to control costs by accepting Fifth Third's Rule-compliant compromises on his RFPs. Fifth Third, on the other hand, had no such ability because of Plaintiff's intransigence. He forced Fifth Third to collect, review, and produce in camera *all* emails with its testifying experts (including archived emails from former Blank Rome attorneys)

8

dating back to 2021, when Mr. Speckin was first retained. *Id.* ¶¶ 6–7. No other defensible method would have allowed Fifth Third to complete an accurate and complete collection, review, and production, particularly on such a truncated time frame.

Sixth and Seventh, the requested documents have zero importance to "the issues at stake" and have not benefited anyone at all. The Court is well aware—from its thorough and diligent in camera review—that all of the documents at issue are unimportant and inconsequential. And while Plaintiff concludes that the documents "matter a great deal," he never explains why. Doc. 94 at PageID 4480. He instead complains that Fifth Third produced too many documents (despite the fact that he is the one who compelled their production). He also ironically cites a Federal Rule emphasizing the importance of securing "the *just, speedy, and inexpensive determination* of every action and proceeding." *Id.* at PageID 4480–81 (citing Fed. R. Civ. P. 1). This Rule supports *Fifth Third* in every respect. Plaintiff insisted on strict compliance with unjust RFPs; waited until the last minute to serve them in violation of the Court's Standing Orders, which is the antithesis of "speedy"; and rejected "inexpensive" compromises in lieu of a costly and burdensome in camera submission and production of documents that he now acknowledges are wholly irrelevant.

### B. Limited Cost Shifting Is Justified.

Fifth Third seeks a mere $2,500 toward the costs of the in-camera submission and subsequent production—an amount that is a small fraction of the actual expense required to collect, process, and review the dataset on a compressed schedule that Plaintiff created. Between the time recorded by Blank Rome litigation support staff (19.1 hours) and attorneys (35 hours), Fifth Third is requesting a mere $46.21 per hour. *See* Ex. A, DeBeer Decl. ¶¶ 4–5. That conservative request accords with Rule 26(c)(1)(B)'s authorization to allocate expenses where a party demands broad discovery with minimal marginal utility and refuses reasonable narrowing proposals, particularly on the cusp of a discovery cutoff. It also accords with good policy for

allocating costs to incentivize tailoring and ensure that discovery remains tethered to genuinely relevant and proportional material. The Court may likewise condition any truly necessary, targeted follow-up expert discovery prompted by the communications—should Plaintiff finally identify a concrete need—on him bearing the associated incremental costs, so that Fifth Third is not penalized for complying with an in camera process Plaintiff demanded, and that the Court has already validated.

### IV.    CONCLUSION

The Court should require Plaintiff to pay costs of $2,500 caused by his RFPs and request for in camera review and production, and any further costs for associated expert discovery.

DATED: January 20, 2026

Respectfully submitted,

**BLANK ROME LLP**

*s/ Michael L. Cioffi*
Michael L. Cioffi (0031098)
    Trial Attorney
Jeffrey W. DeBeer (0089499)
Collin D. Hart (0099869)
1700 PNC Center
201 E. Fifth Street
Cincinnati, Ohio 45202
Tel.:   (513) 362-8701
Fax:   (513) 362-8702
Email: michael.cioffi@blankrome.com
       jeffrey.debeer@blankrome.com
       collin.hart@blankrome.com

*Attorneys for Defendants–Counterclaimants*

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed this document with the Clerk of Court using CM/ECF on January 20, 2026, which will automatically generate and serve Notices of Electronic Filing on all counsel of record.

*s/ Michael L. Cioffi*
Michael L. Cioffi
