**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT CINCINNATI**

Philip R. McHugh,

      Plaintiff,

               v.

Fifth Third Bancorp., *et al.*,

      Defendants.[1]

Case No. 1:21-cv-00238

Judge Michael R. Barrett

## ORDER

This matter is before the Court on Defendants' Motion for an Order Requiring Plaintiff to Bear the Costs of *In Camera* Submission and Any Resulting Expert Discovery. (Doc. 91).  Plaintiff has filed a memorandum in opposition (Doc. 94), to which Defendants have replied (Doc. 95).

As background, the Court held a discovery dispute conference on November 6, 2025.  As to one of the issues raised in letters submitted to Chambers by Joshua Smith (counsel for Plaintiff) and by Jeffrey DeBeer and Collin Hart (counsel for Defendants) during the period 10/28/2025 through 11/5/2025, the undersigned agreed "to review *in camera* all email correspondence from defense counsel to Defendants' experts (Dr. Erich Speckin and Dr. David Lewin) on damages/mitigation." (11/06/2025 Minute Entry).[2]  Less than a week later, a follow-up conference was needed.  (*See* 11/12/2025 Minute Entry ("issues raised in multiple letters (submitted to Chambers) by Mr. Smith and Mr. DeBeer

---

[1] Plaintiff Philip R. McHugh has sued Defendants Fifth Third Bancorp, Fifth Third Bank, N.A., and Gregory D. Carmichael (collectively, "Defendants") for violations of the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq., as well as Ohio Rev. Code § 4112.  (Doc. 9).  His six-count Amended Complaint includes federal and state law claims for failure to promote, wrongful termination, and retaliation.  (*Id.* ¶¶ 39–67).  Defendants have filed a counterclaim (Doc. 10 PAGEID 1809–1816) for abuse of process under state common law (*id.* ¶¶ 31–41).

[2] (Doc. 86, Transcript of Proceedings, *Discovery Conference via Telephone*, Thursday, November 6, 2025, PAGEID 4009–4024).

yesterday (3:15 PM, 5:02 PM, 8:28 PM, 10:57 PM), when the Court was closed in observance of Veterans Day, and today (7:58 AM) discussed")).  Transcript excerpts are reprinted below:

> THE COURT: Maybe I wasn't listening right, but I could have sworn in the phone call I got the impression that the stuff that you guys thought was produceable you had already produced. You're telling me that's not the case?
>
> MR. DeBEER: What I'm telling you, Judge, is that we offered to the other side to produce all that information as a compromise, and they said no, we want you to respond to these all-communications proposed document requests, and that was the discovery dispute that went to you. And you said, well, let's let Fifth Third produce what they think is discoverable and I'll have everything else *in camera*.
>
> So neither side has produced any of the documents.
>
> THE COURT: Okay. Well, just go back on that sentence for a second. If I said okay, why doesn't Fifth Third produce what's discoverable and I'll look at the rest, why wasn't the discoverable stuff produced?
>
> MR. DeBEER: Well, Judge, we pulled all of the external communications and we're in the process of gathering that. We started work on that the day after your call in terms of pulling all the e-mails so that we could give plaintiff everything they're entitled to, but it's – you know, we can't snap our fingers and do that. We've got over 800 hits in the database of stuff that we're going through to get the other side discoverable information.
>
> And in terms of the timing of the production, we asked Josh for documents yesterday because their expert's deposition is tomorrow, and we agreed to produce documents for our expert on the 16th because his deposition is on the 18th. So we tried to make it fair for both sides to where they could get these documents before the remaining expert deposition.
>
> The plaintiff wouldn't agree to it despite saying all along that he thinks this information is discoverable and should be produced and that there's no burden to him.
>
> So we would just ask that, like us, they be required to produce the information that they think is discoverable.
>
> THE COURT: Okay.

. . . .

THE COURT: I thought in the last phone call you guys had agreed that certain information was discoverable, produceable, and that was going to happen, but that Fifth Third argued that your requests went beyond the scope of what you agreed was produceable and discoverable and asked for any and all communications, which prompted the *in camera* review.

I thought there were certain items, based upon your guys' e-mail chains back and forth which were sent to me, that both sides agreed should be produced in the normal course.

Those documents should be mutual production. What you asked for, they can ask for; what they asked for, you can ask for.

(Doc. 87, Transcript of Proceedings, *Discovery Conference via Telephone*, Wednesday, November 12, 2025, PAGEID 4042–4043, 4047).

Defendants submitted documents for *in camera* review on November 19, 2025. (*See* Doc. 90, Notice of Compliance).  Shortly thereafter, they filed the instant motion in which they request "an order requiring Plaintiff to pay (1) $2,500 towards the reasonable costs associated with the in camera submission of communications with testifying experts, and (2) for any subsequent expert discovery—including document productions and depositions—the Court orders after in camera review."  (Doc. 91 PAGEID 4217).

The Court conducted an *ex parte* conference with Mr. DeBeer on December 12, 2025 "as a follow up to the Court's *in camera* review of defense counsel's communications with Fifth Third Bank's testifying experts, Erich Speckin of Speckin Forensics, LLC and Dr. David Lewin of BRG (*see* 11/06/2025 Minute Entry)."  (*See* 12/15/2025 Minute Entry (first)).  The docket text notes, "after lengthy discussion, the undersigned is satisfied with the sum and substance (to include any and all redactions) of the 'Speckin Production,' which counsel advises was produced to Plaintiff on 11/16/2025 (*see* 11/12/2025 Minute Entry and NOTATION ORDER), as well as the 'BRG Production,' which is [flagg]ed for

3

production to Plaintiff."  (*Id.*).

All this said and done, attorney Peter Saba represented (during a status/scheduling conference held on January 21, 2026) that Plaintiff would not seek any additional expert discovery.  Remaining for decision, then, is whether Plaintiff should be required to pay Defendants $2,500 to defray the cost of the *in camera* submission.[3]

Under the civil rules, "the presumption is that the responding party must bear the expense of complying with discovery requests[.]"  *See generally Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 358 (1978).  "However, this presumption can be rebutted if the producing party can demonstrate that the requested ESI is not reasonably accessible either due to 'undue burden or cost.'"  *EEOC v. Gypsum Express, L.T.D.*, 345 F.R.D. 442, 448 (E.D. Ky. 2024) (citing Fed. R. Civ. P. 26(b)(2)(B) & (c)(1)(B)).  Yet "the commentary on Rule 26 makes it clear that '[r]ecognizing the authority does not imply that cost-shifting should become a common practice. ***Courts and parties should continue to assume that a responding party ordinarily bears the costs of responding.***'"  *Id.* (quoting Advisory Committee Notes, 2015 Amendment) (emphasis added in *Gypsum Express*).

"To determine whether a litigant has shown good cause for discovery cost shifting, courts in the Sixth Circuit . . . have developed a host of factors to consider."  *Allergan, Inc.*

---

[3] (*See* Doc. 91 PAGEID 4218 ("Cost shifting in the amount of $2,500 is warranted and represents a fraction of the actual cost associated with the unnecessary in camera submission."); Doc. 95-1, DeBeer Decl., ¶ 4 ("To complete the in camera submission and production of Defendants' testifying-expert-related communications, **Blank Rome's litigation support staff recorded 19.1 hours**, including to load collected documents into a review platform, stage the data and coding layout, apply deduplication and threading, review and apply redactions, prepare parallel (redacted/unredacted) production sets for the Court, and then prepare separate productions to Plaintiff."), ¶ 5 ("To complete the in camera submission and production of Defendants' testifying-expert-related communications, **Blank Rome attorneys recorded over 35 hours**, including for reviewing, coding, and redacting documents (in a database that ultimately included over 1,200 files) and preparing the in-camera submission and separate productions to Plaintiff.") (bold emphases added)).

*v. Revance Therapeutics, Inc.*, No. 3:23-cv-00431, 2025 WL 2188842, at *10 (M.D. Tenn. Mar. 25, 2025) (citing *Gypsum Express,* 345 F.R.D. at 448).  The *Zubulake*[4] factors are as follows, and listed in descending order of importance:

1.  The extent to which the request is specifically tailored to discover relevant information;

2.  The availability of such information from other sources;

3.  The total cost of production, compared to the amount in controversy;

4.  The total cost of production, compared to the resources;

5.  The relative ability of each party to control costs and its incentive to do so;

6.  The importance of the issues at stake in the litigation; and

7.  The relative benefits to the parties of obtaining the information.

*Gypsum Express*, 345 F.R.D. at 448–49 (citations omitted).[5]

Defendants make much of the fact that the undersigned agreed—during the first discovery dispute conference on this issue—that "an all-communications request is overly broad."  (*See* Doc. 86, Transcript of Proceedings, *Discovery Conference via Telephone*, Thursday, November 6, 2025, PAGEID 4019 (12:17–19)).  But that statement was tempered with this observation: "But we have, I guess, a trust issue regarding what was provided to them and what was actually sent to the experts, et cetera, et cetera.  So how do I resolve that without an *in camera* review?"  (*Id.* PAGEID 4019 (12:19–22)).

---

[4] *Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 322, 324 (S.D.N.Y. 2003).

[5] Other courts focus on Rule 26(b)(1)'s "proportionality" factors, some of which overlap with the *Zubulake* factors. *Gypsum Express*, 345 F.R.D. at 449.  They are: "(1) the importance of the issues at stake in the action; (2) the amount in controversy; (3) the parties' relative access to relevant information; (4) the parties' resources; (5) the importance of the discovery in resolving the issues; and (6) whether the burden or expense of the proposed discovery outweighs its likely benefit."  *Id.*

This case—a civil action alleging age discrimination in employment—has been riddled with discovery disputes, largely arising from Defendants' efforts to stymie the process.  In this round, Defendants purport to ask for cost-shifting, except they never disclose the actual cost incurred.  They simply note that $2,500 "represents a fraction of the actual cost associated with the unnecessary in camera submission."  (Doc. 91 PAGEID 4218).  As the Court sees it, what Defendants want is a moral victory.  The rules of civil procedure, however, are ill-suited to this task.

Defendants' Motion for an Order Requiring Plaintiff to Bear the Costs of *In Camera* Submission (Doc. 91) is hereby **DENIED**.

**IT IS SO ORDERED.**

/s/ *Michael R. Barrett*
JUDGE MICHAEL R. BARRETT