UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF OHIO

WESTERN DIVISION

Case No. 1:21-cv-00238

Judge: Hon. Michael R. Barrett

PHILIP R. McHUGH,
Plaintiff

Vs.

FIFTH THIRD BANCORP, et al.,
Defendants

DEPONENT: RONALD J. KAES
DATE: DECEMBER 16, 2022
REPORTER: RACHEL MONAHAN

Page 2

APPEARANCES

ON BEHALF OF THE PLAINTIFF, PHILIP R. McHUGH:
STAGNARO SABA & PATTERSON
BY: PETER SABA, ESQ.
2623 ERIE AVENUE
CINCINNATI, OH 45208
TELEPHONE: (513) 533-2701
EMAIL: PAS@SSPFIRM.COM
And
STAGNARO SABA & PATTERSON
BY: JOSHUA SMITH, ESQ.
2623 ERIE AVENUE
CINCINNATI, OH 45208
TELEPHONE: (513) 533-2700
EMAIL: JMS@SSPFIRM.COM

ALSO PRESENT
PHILLIP R. MCHUGH

Page 3

APPEARANCES, CONT.

ON BEHALF OF THE DEFENDANT, FIFTH THIRD BANCORP, et al.:
BLANK ROME LLP
BY: MICHAEL L. CIOFFI, ESQ.
1700 PNC CENTER
201 EAST FIFTH STREET
CINCINNATI, OH 45202
EMAIL: CIOFFI@BLANKROME.COM
AND
OLIVIA OTTING

ON BEHALF OF THE DEFENDANT, FIFTH THIRD BANCORP:
FIFTH THIRD BANCORP LEGAL DEPARTMENT
BY: BRIAN THOMAS

VIDEOGRAPHER:
RICHARD STEVENS
VERITEXT

Page 4

INDEX

In re:
Examination of RONALD J. KAES


| | By | Page |
|---|---|---|
| DIRECT EXAMINATION | MR. CIOFFI | 7 |


EXHIBIT INDEX


| Exhibit No. | Description | Page |
|---|---|---|
| Exhibit 1 | Perjury statute of Ohio | 8 |
| Exhibit 2 | Video message | 13 |


Page 5

STIPULATION

The deposition of RONALD J. KAES was taken at Blank Rome LLP, 201 East Fifth Street, Suite 1700, Cincinnati, OH 45202 on FRIDAY the 16TH day of DECEMBER, 2022 at approximately 10:00 A.M.; said deposition was taken pursuant to the OHIO Rules of Civil Procedure.

It is agreed that RACHEL MONAHAN, being a court reporter and Notary Public for the State of Ohio may swear the witness.

It is also agreed that the reading and signing of this transcript has not been waived.

Page 6

P R O C E E D I N G S

VIDEOGRAPHER: We're on the record at approximately 10:18 a.m. on December 16th, 2022.

Please note that the microphones are sensitive and may pick up whispering and private conversations. Please mute your phones at this time. Audio and video recording will continue to take place unless all parties agree to go off the record.

This is Media Unit One of the video recorded deposition of Ronald J. Kaes taken by counsel for defendants in the matter of Phillip R. McHugh versus Fifth Third Bancorp, et al., in the United States District Court, Southern District of Ohio, Western Division; case number 121-cv-00238. The location of this deposition is 201 East 5th Street, Suite 1700, Cincinnati, Ohio 45202.

My name is Richard D. Stevens representing Veritext, and I'm the videographer. The court reporter is Rachel Monahan from the firm Veritext.

I'm not authorized to administer an oath. I'm not related to any party in this action nor am I financially interested in the outcome of the case.

If there are any objections to proceeding, please state them at the time of your appearance. Counsel and all present in the room will now state their

Page 7

appearances and affiliations for the record, beginning with the noticing attorney.

MR. CIOFFI: On behalf of the defendants, we have subpoenaed Mr. Kaes to this deposition. I'm Michael Cioffi. I represent Fifth Third Bank and the other defendants.

MR. SABA: Peter Saba on behalf of the Plaintiff Phillip McHugh.

MR. SMITH: Joshua Smith on behalf of the Plaintiff Phillip McHugh.

MR. MCHUGH: Phillip McHugh.

MS. OTTING: Olivia Otting.

MR. THOMAS: Brian Thomas.

VIDEOGRAPHER: Will the court reporter please swear in the witness?

COURT REPORTER: Mr. Kaes, will you raise your right hand, please? Do you solemnly swear or affirm that the testimony you are about to give is the truth, the whole truth and nothing but the truth?

THE WITNESS: I do.

DIRECT EXAMINATION

BY MR. CIOFFI:

Q. Sir, you've just been administered the oath. Do you understand that that requires you to answer my questions fully, completely, truthfully?

Page 8

A. Yes.

Q. You understand that obligation?

A. Yes.

Q. And do you understand that your testimony is subject to the penalty of perjury?

A. Yes.

Q. Are you familiar with the perjury statute of Ohio?

A. No.

MR. CIOFFI: Mark this as Exhibit 1.

EXHIBIT 1 MARKED FOR IDENTIFICATION

Q. I'm handing you what is the perjury statue of Ohio. Would you read subpart A, please? You can read it aloud into the record.

A. "No person, in an official proceeding, shall knowingly make a false statement under oath or affirmation, or knowingly swear or affirm the truth of a false statement previously made when either statement is material."

Q. Do you understand that this is an official proceeding?

A. Yes.

Q. Would you read B, please?

A. "A falsification is material, regardless of its admissibility into evidence, if it can affect the course

Page 9

or outcome of the proceeding. It is no defense to a charge under this section that the offender mistakenly believed the falsification to be immaterial."

Q. Do you understand that section?

A. I think so.

Q. Would you read subsection D, please?

A. "When contradictory statements relating to the same material fact are made by the offender under oath or affirmation and within the period of the statute of limitations for perjury, it is not necessary for the prosecution to prove which statement was false, but only that one or the other was false."

Q. Again, do you understand that section?

A. I think so.

Q. And subsection F, please.

A. "Whoever violates this section is guilty of perjury, a felony of the third degree."

Q. Do you know the penalty for perjury or felony in the third degree?

A. I do not.

Q. I'll represent to you it's a minimum of nine months and a maximum of 36 months in prison plus a fine up to $10,000. Do you understand?

A. Got it.

Q. Are you represented by a lawyer in this

Page 10

proceeding today?
A. I'm not even sure why I'm exactly here, but, no.
Q. Have you consulted with a lawyer about your presence today?
A. I have not.
Q. Have you consulted with either Mr. Saba or Mr. Smith about your deposition today?
A. I have not.
Q. Have you discussed your deposition with Mr. McHugh?
A. I have not.
Q. How do you know Mr. McHugh, the plaintiff in this case?
A. From the bank. We started at the bank about the same time in the same division, and have known him for 30 plus years.
Q. Is it fair to say he's a friend of yours?
A. Sure.
Q. Is he a good friend?
A. Depends on how you define "good."
Q. Well, how do you define it?
A. I would say we're friends. Having my child's wedding and he's not invited so, you know, there's a friendship, but we're not close friends.
Q. Do you socialize?

Page 11

A. We have socialized, absolutely.
Q. You mentioned that you met at the bank. Describe for me your career at Fith Third Bank?
A. I started at the bank in 1989, worked in the trust operations function; worked in trust for ten years. I expanded that role and transitioned from the operation team into technology, managed the technology for trust; incorporated capital markets into that mix in 2009. That split and we had an organizational structure change in 2013 where I moved into the commercial IT division.
Q. In the course of that career, what kind of interaction did you have with Mr. McHugh?
A. Well, our clients in the early years were the same clients. I had a portion of the activity on the trust system and he ran the recordkeeping component, so his business line was supported by the operational trust system.
He moved to Louisville as a, originally, I recall, the head of the trust group. So, once again, the operations supported his business. He took on more responsibility with that group and so our interaction was not much. When he came back to Cincinnati he took over the wealth and asset management business of which I ran the technology for that group.

Page 12

Q. Do you still run the technology for wealth and management or what --
A. No, it was a separate division until 2013 when they split that division commercial and consumer. And so, I went to the commercial side, the capital market side, and not the consumer side.
Q. What are your current duties at the bank?
A. I run the capital market's IT organization.
Q. Briefly what --
A. Anything within commercial IT.
Q. Briefly describe what that entails?
A. I support all the technology for our big business; our foreign exchange commodities business; interest rate derivative business; institutional brokerage business; equity and debt capital markets, you know, that sells to middle market commercial clients.
Q. Prior to you entering this room today, have you and I ever met before?
A. Not that I'm aware of.
Q. Have we ever spoken before?
A. Not that I'm aware of.
Q. And you're here pursuant to a subpoena that's been served on you by me; is that correct?
A. I know that now.
Q. Okay. You were served with a subpoena; correct?

Page 13

A. I was.
MR. CIOFFI: Let's mark Exhibit 2. Okay. Exhibit 2 is flash drive, which you'll enter as part of the record.
EXHIBIT 2 MARKED FOR IDENTIFICATION
Q. But I want to show you a video and then ask you come questions about it. If you'll look at the monitor, please?
(EXHIBIT 2 PLAYED FOR WITNESS.)
Q. Have you seen that video before?
A. Well, I made the video.
Q. You made -- you made the video. How did you come to make the video? Tell me the circumstances that caused you to create that video?
A. Well, as I recall, I got an e-mail from Phil's daughter and -- asking me to send some well wishes to Phil.
Q. And what is the name of the daughter, please?
A. No idea.
Q. Okay. But you received an e-mail?
A. Yeah.
Q. Okay.
A. And I --
Q. How did you know it was Mr. McHugh's daughter?
A. I'm sure she said it in the e-mail. And I'm not

Page 14

even sure the timeline of when we did this. But I'm sure she said it in the e-mail.
Q. Do you still have that e-mail?
A. I doubt it.
Q. But you could -- you could search for it?
A. I certainly could search for it.
Q. Was it sent to your work e-mail address or personal e-mail address?
A. It would have been to my personal e-mail address.
Q. You don't -- do you recall deleting that e-mail?
A. I delete stuff pretty frequently. I don't keep a lot of e-mails. I don't do a lot of e-mails to begin with.
MR. CIOFFI: Read my question back, please.
COURT REPORTER: Do you recall deleting that e-mail?
A. I don't.
Q. Is there a reason you would have deleted it?
A. Not functionally. If I would have deleted it, it would have just been part of my normal process of deleting e-mails.
Q. Did you have a follow-up conversation with Mr. McHugh's daughter?
A. I did not.
Q. What did the e-mail ask you to do?

Page 15

A. I don't recall. I'm sure it was the wish, you know, her father well, so --
Q. But --
A. -- that was my response.
Q. -- well for what reason?
A. I don't recall.
Q. Well, let's look at the beginning of the video.
(EXHIBIT 2 PLAYED FOR WITNESS.)
Q. Let's stop it there. So, did she tell you that Phil McHugh was retiring?
A. I -- I honestly, I don't remember, whether it said retirement or what it said. I have no idea.
Q. Well you say, "retirement," in that video; isn't that correct?
A. I -- yes.
Q. So someone had to tell you that he was retiring; correct?
MR. SABA: Objection. Go ahead. You can answer.
A. I don't -- I don't remember. I don't know. I really don't know.
Q. Well, did Mr. McHugh tell you that he was retiring?
A. No.
Q. Did you ever discuss with him why he was leaving

Page 16

the bank?
A. I didn't.
Q. From the time he left the bank until today, have you had conversations with him?
A. Yes.
Q. When did you have conversations with him?
A. The only conversation that I recall was when we went to a basketball game.
Q. And when was that?
A. Had to be last year.
Q. And what was the nature of those conversations?
A. Well, mostly basketball. He indicated this was still going on and that he actually had watched that video, so.
Q. When you say, "this was going on," what do you mean by that?
A. The litigation.
MR. CIOFFI: Go back to the beginning of the video.
(EXHIBIT 2 PLAYED FOR WITNESS.)
MR. CIOFFI: Let's stop there.
Q. So when you congratulate him on his retirement, is that of your knowledge or how did you gain knowledge that he was retiring?
A. I got an e-mail, responded with well wishes. I'm

Page 17

not sure I thought about it anymore than putting that together. You know, I don't -- I don't think there's anymore deep thought into it than that.
Q. And this was an e-mail from Mr. McHugh's daughter; is that right?
A. It was.
Q. And did the e-mail tell you that he was retiring?
A. It might have, it might not have. I don't know. I can't recall.
Q. Well, if it didn't tell you that, why did you congratulate him on his retirement?
A. Maybe I made an assumption. I really don't know why I picked that word.
Q. If you made an assumption, what was the assumption based upon?
A. I don't know that I can make -- say what I was assuming two years ago or whenever that was of, you know, what my thought process was at that time.
Q. Well, it's fair to say, isn't it, that based on the video evidence, that at that point in time you thought he had retired?
MR. SABA: Objection.
Q. Isn't that correct?
MR. SABA: Go ahead. You can answer.
A. I -- I don't know what I was thinking when I put

Page 18

the video together. I don't know.
Q. Well --
A. Maybe it said retirement, maybe it didn't. I know it was to celebrate his work at the bank.
MR. CIOFFI: Let's play it back.
(EXHIBIT 2 PLAYED FOR WITNESS.)
MR. CIOFFI: Let's stop it there.
Q. So at that point in time, you would agree with me, wouldn't you, that you believed he had retired from the bank?
A. I guess the answer is yes.
Q. Subsequent to that video, did you have any further conversations with Mr. McHugh's daughter?
A. I did not. I don't think I've ever spoken with his daughter.
Q. Who did you send the video to?
A. My wife sent the video.
Q. Okay.
A. And sent it to whatever the e-mail said to send it to.
Q. Okay. Did you have subsequent conversations with Mr. McHugh himself about the video?
A. I did.
Q. Tell me the -- everything you said to him and everything he said to you?

Page 19

A. As I recall, at the basketball game, he said he had to watch my video of me making my congratulatory, you know, statements. So I don't recall that we discussed it much deeper than that. I don't recall any conversation other than that he said that he had to watch it in a forum to go through them and see them.
Q. Did he contradict your assumption that this was a retirement testimonial?
A. We never even talked about that.
Q. Have you ever talked to him about retirement?
A. Not that I'm aware of.
Q. Have you ever talked to him about his leaving the bank?
A. Not that -- no. When an announcement first came out I, you know, asked him if he was okay and -- but I don't think we had any other conversation -- any follow-up conversation at all related to that.
Q. When you asked if he was okay, was that before or after you did the video?
A. I'm sure it was at the time of the announcement that came from the bank.
Q. The timing of the video was about that same time?
A. I do not -- I don't recall the timeline.
Q. Since Mr. McHugh left the bank, have you had dinner with him?

Page 20

A. No. We went to a basketball game.
Q. Is that the only contact you've had?
A. We've tried to connect a couple of times but that has never worked out.
Q. I noticed in the video you said you had to get together with your better halves to celebrate. Did -- is that what you said?
A. It is.
Q. Did that happen?
A. It did not.
Q. Okay. So the only contact or conversation you had with Mr. McHugh, is it your testimony, happened only at the basketball game?
A. That is correct.
Q. And at that point in time, he did not contradict your assumption that he had retired; did he?
A. We didn't really talk about the retirement component. We didn't talk about any of that. All we talked about was that he had to watch the video.
Q. What did he say about the video?
A. I don't really recall him saying much about the video except that he had to watch it.
Q. You said in your -- you testified that your wife sent the video. Did you talk to your wife in relationship to making the video?

Page 21

A. Did I talk to her?
Q. Yeah?
A. Sure. She's the one that videoed it.
Q. Do you know who she sent the video to?
A. I assume she sent it to the -- whatever was on the e-mail.
Q. Is that person Phil McHugh's daughter?
A. Yes.
Q. Okay. Did your wife speak with Phil McHugh's daughter?
A. I do not know that answer.
Q. So I'm going to ask you to do a couple of things. One is -- number one: Do not delete the e-mail you received if you haven't deleted it already. But then, search for that e-mail, and if you could let me know if you find it?
A. Okay.
Q. I'm going to leave this deposition open until we get that answer from you.
A. Okay.
Q. Okay?
A. Sure.
Q. All right. I have no further questions.
MR. SABA: Let me take a quick break.
VIDEOGRAPHER: We're off the record. Time is

10:39
(Off the record at 10:39 a.m.)
(On the record at 10:46 a.m.)
VIDEOGRAPHER: We're on the record. The time is 10:46 a.m.
MR. SABA: We have no questions.
MR. CIOFFI: Mr. Kaes, I asked you earlier if you'll search for that e-mail and then let me know. Upon hearing from you, I'll either ask you to come back pursuant to the subpoena, which will remain open and bind you, but if not, then I'll release you and we'll ask you no further questions.
THE WITNESS: Got it.
MR. CIOFFI: Okay. You also have the right, and Counsel will confirm this, to look at your deposition transcript and read it for accuracy and sign it. Would you like to do that? It's pretty short, but you have that right. And I'll ask Peter to confirm that just so we're -- I'm not giving you advice.
MR. SABA: Right.
THE WITNESS: So I should sign it?
MR. CIOFFI: Well, you have -- he has the right to review it and sign it.
MR. SABA: If you feel there wasn't something taken down accurately, you can put it on an errata sheet



and sign it.
THE WITNESS: Okay. Yeah, I would like to read it.
MR. CIOFFI: Yeah, you should. Peter, you agree that it's a good thing for him to do?
MR. SABA: Right.
MR. CIOFFI: All right. We all agree. We dont' usually agree on things. Thank you for coming today and, again, we appreciate it.
VIDEOGRAPHER: We're off the record. Time is 10:47.
DEPOSITION CONCLUDED AT 10:46 A.M.



STATE OF OHIO)
COUNTY OF HAMILTON) SS: CERTIFICATE

I, Rachel Monahan, a Notary Public within and for the State of Ohio, duly commissioned and qualified, DO HEREBY CERTIFY that the above-named RONALD J. KAES, was by me first duly sworn to testify the truth, the whole truth, and nothing but the truth.

Said testimony was reduced to writing by me stenographically in the presence of the witness and thereafter reduced to typewriting.

I FURTHER CERTIFY that I am not a relative or attorney of either party, in any manner interested in the event of this action, nor am I, or the court reporting firm with which I am affiliated, under a contract as defined in Civil Rule 28(D).



IN WITNESS WHEREOF, I have hereunto set my hand and seal of office at Cincinnati, Ohio, on this 16TH day of DECEMBER, 2022.

______________________

RACHEL MONAHAN
NOTARY PUBLIC, STATE OF OHIO
My commission expires 04-16-2025

Michael Cioffi, Esquire
cioffi@blankrome.com
December 28, 2022
RE: Mchugh, Philip R. v. Fifth Third Bancorp, Et Al.
12/16/2022, Ronald Kaes (#5624043)

The above-referenced transcript is available for review.

Within the applicable timeframe, the witness should read the testimony to verify its accuracy. If there are any changes, the witness should note those with the reason, on the attached Errata Sheet.

The witness should sign the Acknowledgment of Deponent and Errata and return to the deposing attorney. Copies should be sent to all counsel, and to Veritext at cs-midatlantic@veritext.com

Return completed errata within 30 days from receipt of testimony.

If the witness fails to do so within the time allotted, the transcript may be used as if signed.

Yours,
Veritext Legal Solutions



Mchugh, Philip R. v. Fifth Third Bancorp, Et Al.
Ronald Kaes (#5624043)

E R R A T A S H E E T

PAGE_____ LINE_____ CHANGE________________________
__________________________________________________
REASON____________________________________________
PAGE_____ LINE_____ CHANGE________________________
__________________________________________________
REASON____________________________________________
PAGE_____ LINE_____ CHANGE________________________
__________________________________________________
REASON____________________________________________
PAGE_____ LINE_____ CHANGE________________________
__________________________________________________
REASON____________________________________________
PAGE_____ LINE_____ CHANGE________________________
__________________________________________________
REASON____________________________________________
PAGE_____ LINE_____ CHANGE________________________
__________________________________________________
REASON____________________________________________

________________________________ _______________
Ronald Kaes Date



Mchugh, Philip R. v. Fifth Third Bancorp, Et Al.
Ronald Kaes (#5624043)

ACKNOWLEDGEMENT OF DEPONENT

I, Ronald Kaes, do hereby declare that I have read the foregoing transcript, I have made any corrections, additions, or changes I deemed necessary as noted above to be appended hereto, and that the same is a true, correct and complete transcript of the testimony given by me.

______________________________ ________________
Ronald Kaes Date

*If notary is required

SUBSCRIBED AND SWORN TO BEFORE ME THIS
______ DAY OF ________________, 20___.

__________________________
NOTARY PUBLIC

**&**

**&** 2:4,11

**0**

**00238** 1:4 6:14
**04-16-2025** 25:11

**1**

**1** 4:10 8:10,11
**10,000** 9:23
**10:00** 5:6
**10:18** 6:3
**10:46** 22:3,5 23:12
**10:47** 23:11
**12/16/2022** 26:5
**121** 6:14
**13** 4:11
**16** 1:24
**16th** 5:5 6:3 25:2
**1700** 3:7 5:4 6:15
**1989** 11:4
**1:21** 1:4

**2**

**2** 4:11 13:2,3,5 13:9 15:8 16:20 18:6
**20** 28:15
**2009** 11:9
**201** 3:8 5:4 6:15
**2013** 11:10 12:3
**2022** 1:24 5:5 6:3 25:3 26:3
**24781** 25:6
**2623** 2:6,13
**28** 24:16 26:3

**3**

**30** 10:16 26:17
**36** 9:22

**4**

**45202** 3:9 5:5 6:16
**45208** 2:7,14

**5**

**513** 2:8,15
**533-2700** 2:15
**533-2701** 2:8
**5624043** 26:5 27:2 28:2
**5th** 6:15

**7**

**7** 4:6

**8**

**8** 4:10

**a**

**a.m.** 5:6 6:3 22:2,3,5 23:12
**absolutely** 11:1
**accuracy** 22:16 26:9
**accurately** 22:25
**acknowledge...** 28:3
**acknowledg...** 26:12
**action** 6:21 24:14
**activity** 11:15
**additions** 28:6
**address** 14:7,8 14:9
**administer** 6:20
**administered** 7:23
**admissibility** 8:25
**advice** 22:19
**affect** 8:25
**affiliated** 24:15
**affiliations** 7:1
**affirm** 7:18 8:17
**affirmation** 8:17 9:9
**ago** 17:17
**agree** 6:8 18:8 23:5,7,8
**agreed** 5:9,13
**ahead** 15:18 17:24
**al** 1:17 3:4 6:12 26:4 27:1 28:1
**allotted** 26:20
**aloud** 8:14
**announcement** 19:14,20
**answer** 7:24 15:19 17:24 18:11 21:11,19
**anymore** 17:1,3
**appearance** 6:24
**appearances** 7:1
**appended** 28:7
**applicable** 26:8
**appreciate** 23:9
**approximately** 5:6 6:3
**asked** 19:15,18 22:7
**asking** 13:16
**asset** 11:24
**assume** 21:5
**assuming** 17:17
**assumption** 17:12,14,15 19:7 20:16
**attached** 26:11
**attorney** 7:2 24:13 26:13
**audio** 6:7
**authorized** 6:20
**available** 26:6
**avenue** 2:6,13
**aware** 12:19,21 19:11

**b**

**b** 4:8 8:23
**back** 11:23 14:14 16:18 18:5 22:9
**bancorp** 1:17 3:3,14,15 6:12 26:4 27:1 28:1
**bank** 7:5 10:14 10:14 11:2,3,4 12:7 16:1,3 18:4,10 19:13 19:21,24
**barrett** 1:5
**based** 17:15,19
**basketball** 16:8 16:12 19:1 20:1,13
**beginning** 7:1 15:7 16:18
**behalf** 2:3 3:3 3:14 7:3,7,9
**believed** 9:3 18:9
**better** 20:6
**big** 12:12
**bind** 22:11
**blank** 3:5 5:3
**blankrome.co...** 3:10 26:2
**break** 21:24
**brian** 3:16 7:13
**briefly** 12:9,11
**brokerage** 12:15
**business** 11:17 11:21,24 12:13 12:13,14,15

**c**

**c** 2:1 3:1,1 6:1
**capital** 11:8 12:5,8,15
**career** 11:3,12
**case** 1:4 6:14 6:22 10:13
**caused** 13:14
**celebrate** 18:4 20:6
**center** 3:7
**certainly** 14:6
**certificate** 24:2
**certify** 24:6,12
**change** 11:10 27:4,7,10,13,16 27:19
**changes** 26:10 28:6
**charge** 9:2
**child's** 10:22
**cincinnati** 2:7 2:14 3:9 5:4 6:16 11:23 25:2
**cioffi** 3:6,10 4:6 7:3,5,22 8:10 13:2 14:14 16:18,21 18:5 18:7 22:7,14 22:22 23:4,7 26:1,2
**circumstances** 13:13
**civil** 5:7 24:16
**clients** 11:14,15 12:16
**close** 10:24
**come** 13:7,12 22:9
**coming** 23:8
**commercial** 11:10 12:4,5 12:10,16
**commission** 25:11
**commissioned** 24:5
**commodities** 12:13
**complete** 28:8
**completed** 26:17
**completely** 7:25
**component** 11:16 20:18
**concluded** 23:12
**confirm** 22:15 22:18
**congratulate** 16:22 17:11
**congratulatory** 19:2
**connect** 20:3
**consulted** 10:3 10:6
**consumer** 12:4 12:6
**contact** 20:2,11
**continue** 6:7
**contract** 24:16
**contradict** 19:7 20:15
**contradictory** 9:7
**conversation** 14:22 16:7 19:5,16,17 20:11
**conversations** 6:6 16:4,6,11 18:13,21
**copies** 26:14
**correct** 12:23 12:25 15:14,17 17:23 20:14 28:8
**corrections** 28:6
**counsel** 6:10,25 22:15 26:14
**county** 24:2
**couple** 20:3 21:12
**course** 8:25 11:12
**court** 1:1 5:9 6:13,18 7:14 7:16 14:15

24:14
**create** 13:14
**cs** 26:15
**current** 12:7
**cv** 1:4 6:14

**d**

**d** 4:1,8 6:1,17 9:6 24:16
**date** 1:24 27:24 28:12
**daughter** 13:16 13:18,24 14:23 17:5 18:13,15 21:7,10
**day** 5:5 25:2 28:15
**days** 26:17
**debt** 12:15
**december** 1:24 5:5 6:3 25:3 26:3
**declare** 28:4
**deemed** 28:6
**deep** 17:3
**deeper** 19:4
**defendant** 3:3 3:14
**defendants** 1:18 6:11 7:3,6
**defense** 9:1
**define** 10:20,21
**defined** 24:16
**degree** 9:17,19
**delete** 14:11 21:13
**deleted** 14:18 14:19 21:14
**deleting** 14:10 14:15,21
**department** 3:15
**depends** 10:20
**deponent** 1:23 26:13 28:3
**deposing** 26:13
**deposition** 5:3 5:6 6:10,15 7:4 10:7,9 21:18 22:16 23:12
**derivative** 12:14
**describe** 11:2 12:11
**description** 4:9
**dinner** 19:25
**direct** 4:6 7:21
**discuss** 15:25
**discussed** 10:9 19:4
**district** 1:1,2 6:13,13
**division** 1:3 6:14 10:15 11:11 12:3,4
**doubt** 14:4
**drive** 13:3
**duly** 24:5,7
**duties** 12:7

**e**

**e** 2:1,1 3:1,1 4:1 4:8,8 6:1,1 13:15,20,25 14:2,3,7,8,9,10 14:12,12,16,21 14:25 16:25 17:4,7 18:19 21:6,13,15 22:8 27:3,3,3
**earlier** 22:7
**early** 11:14
**east** 3:8 5:4 6:15
**either** 8:18 10:6 22:9 24:13
**email** 2:9,16 3:10
**entails** 12:11
**enter** 13:3
**entering** 12:17
**equity** 12:15
**erie** 2:6,13
**errata** 22:25 26:11,13,17
**esq** 2:5,12 3:6
**esquire** 26:1
**et** 1:17 3:3 6:12 26:4 27:1 28:1
**event** 24:14
**evidence** 8:25 17:20
**exactly** 10:2
**examination** 4:4,6 7:21
**exchange** 12:13
**exhibit** 4:9,10 4:11 8:10,11 13:2,3,5,9 15:8 16:20 18:6
**expanded** 11:6
**expires** 25:11

**f**

**f** 9:15
**fact** 9:8
**fails** 26:19
**fair** 10:17 17:19
**false** 8:16,18 9:11,12
**falsification** 8:24 9:3
**familiar** 8:7
**father** 15:2
**feel** 22:24
**felony** 9:17,18
**fifth** 1:17 3:3,8 3:14,15 5:4 6:12 7:5 26:4 27:1 28:1
**financially** 6:22
**find** 21:16
**fine** 9:22
**firm** 6:19 24:15
**first** 19:14 24:7
**fith** 11:3
**flash** 13:3
**follow** 14:22 19:17

**foregoing** 28:5
**foreign** 12:13
**forum** 19:6
**frequently** 14:11
**friday** 5:5
**friend** 10:17,19
**friends** 10:22 10:24
**friendship** 10:24
**fully** 7:25
**function** 11:5
**functionally** 14:19
**further** 18:13 21:23 22:12 24:12

**g**

**g** 6:1
**gain** 16:23
**game** 16:8 19:1 20:1,13
**give** 7:18
**given** 28:9
**giving** 22:19
**go** 6:8 15:18 16:18 17:24 19:6
**going** 16:13,15 21:12,18
**good** 10:19,20 23:5
**group** 11:20,22 11:25
**guess** 18:11
**guilty** 9:16

**h**

**h** 4:8 27:3
**halves** 20:6
**hamilton** 24:2
**hand** 7:17 25:1
**handing** 8:12
**happen** 20:9
**happened** 20:12
**head** 11:20
**hearing** 22:9
**hereto** 28:7
**hereunto** 25:1
**hon** 1:5
**honestly** 15:11

**i**

**idea** 13:19 15:12
**identification** 8:11 13:5
**immaterial** 9:3
**incorporated** 11:8
**indicated** 16:12
**institutional** 12:14
**interaction** 11:13,22
**interest** 12:14
**interested** 6:22 24:13
**invited** 10:23

**j**

**j** 1:23 4:4 5:3 6:10 24:6
**jms** 2:16
**joshua** 2:12 7:9
**judge** 1:5

**k**

**kaes** 1:23 4:4 5:3 6:10 7:4,16 22:7 24:6 26:5 27:2,24 28:2,4 28:12
**keep** 14:11
**kind** 11:12
**know** 9:18 10:12,23 12:16 12:24 13:24 15:2,20,21 17:2,8,12,16,18 17:25 18:1,4 19:3,15 21:4 21:11,15 22:8
**knowingly** 8:16 8:17
**knowledge** 16:23,23
**known** 10:15

**l**

**l** 3:6 5:1
**lawyer** 9:25 10:3
**leave** 21:18
**leaving** 15:25 19:12
**left** 16:3 19:24
**legal** 3:15 26:23
**limitations** 9:10
**line** 11:17 27:4 27:7,10,13,16 27:19
**litigation** 16:17
**llp** 3:5 5:4
**location** 6:14
**look** 13:7 15:7 22:15
**lot** 14:12,12
**louisville** 11:19

**m**

**mail** 13:15,20 13:25 14:2,3,7 14:8,9,10,16,25 16:25 17:4,7 18:19 21:6,13 21:15 22:8
**mails** 14:12,12 14:21
**making** 19:2 20:25
**managed** 11:7
**management** 11:24 12:2
**manner** 24:13
**mark** 8:10 13:2
**marked** 8:11 13:5

**market** 12:5,16
**market's** 12:8
**markets** 11:8 12:15
**material** 8:19 8:24 9:8
**matter** 6:11
**maximum** 9:22
**mchugh** 1:12 2:3,19 6:11 7:8 7:10,11,11 10:10,12 11:13 15:10,22 18:22 19:24 20:12 26:4 27:1 28:1
**mchugh's** 13:24 14:23 17:4 18:13 21:7,9
**mean** 16:16
**media** 6:9
**mentioned** 11:2
**message** 4:11
**met** 11:2 12:18
**michael** 1:5 3:6 7:5 26:1
**microphones** 6:4
**midatlantic** 26:15
**middle** 12:16
**minimum** 9:21
**mistakenly** 9:2
**mix** 11:8
**monahan** 1:25 5:9 6:19 24:4 25:9
**monitor** 13:7
**months** 9:22,22
**moved** 11:10 11:19
**mute** 6:6

**n**

**n** 2:1 3:1,1 4:1 4:8 5:1 6:1
**name** 6:17 13:18
**named** 24:6
**nature** 16:11
**necessary** 9:10 28:6
**never** 19:9 20:4
**nine** 9:21
**normal** 14:20
**notary** 5:10 24:4 25:10 28:13,19
**note** 6:4 26:10
**noted** 28:7
**noticed** 20:5
**noticing** 7:2
**number** 6:14 21:13

**o**

**o** 3:1 5:1 6:1
**oath** 6:20 7:23 8:16 9:8
**objection** 15:18 17:22
**objections** 6:23
**obligation** 8:2
**offender** 9:2,8
**office** 25:2
**official** 8:15,20
**oh** 2:7,14 3:9 5:5
**ohio** 1:2 4:10 5:7,10 6:13,16 8:8,13 24:1,5 25:2,10
**okay** 12:25 13:2,20,22 18:18,21 19:15 19:18 20:11 21:9,17,20,21 22:14 23:2
**olivia** 3:12 7:12
**once** 11:20
**open** 21:18 22:10
**operation** 11:7
**operational** 11:17
**operations** 11:5 11:21
**organization** 12:8
**organizational** 11:9
**originally** 11:19
**otting** 3:12 7:12,12
**outcome** 6:22 9:1

**p**

**p** 2:1,1 3:1,1 5:1 6:1
**page** 4:5,9 27:4 27:7,10,13,16 27:19
**part** 13:3 14:20
**parties** 6:8
**party** 6:21 24:13
**pas** 2:9
**patterson** 2:4 2:11
**penalty** 8:5 9:18
**period** 9:9
**perjury** 4:10 8:5,7,12 9:10 9:17,18
**person** 8:15 21:7
**personal** 14:8,9
**peter** 2:5 7:7 22:18 23:4
**phil** 13:17 15:10 21:7,9
**phil's** 13:15
**philip** 1:12 2:3 26:4 27:1 28:1
**phillip** 2:19 6:11 7:8,10,11

**phones** 6:6
**pick** 6:5
**picked** 17:13
**place** 6:7
**plaintiff** 1:13 2:3 7:8,10 10:12
**play** 18:5
**played** 13:9 15:8 16:20 18:6
**please** 6:4,6,24 7:14,17 8:13 8:23 9:6,15 13:8,18 14:14
**plus** 9:22 10:16
**pnc** 3:7
**point** 17:20 18:8 20:15
**portion** 11:15
**presence** 10:4 24:10
**present** 2:18 6:25
**pretty** 14:11 22:17
**previously** 8:18
**prior** 12:17
**prison** 9:22
**private** 6:5
**procedure** 5:7
**proceeding** 6:23 8:15,21 9:1 10:1
**process** 14:20 17:18
**prosecution** 9:11
**prove** 9:11
**public** 5:10 24:4 25:10 28:19
**pursuant** 5:7 12:22 22:10
**put** 17:25 22:25
**putting** 17:1

**q**

**qualified** 24:5
**question** 14:14
**questions** 7:25 13:7 21:23 22:6,12
**quick** 21:24

**r**

**r** 1:5,12 2:1,3 2:19 3:1 6:1,11 26:4 27:1,3,3 28:1
**rachel** 1:25 5:9 6:19 24:4 25:9
**raise** 7:16
**ran** 11:16,25
**rate** 12:14
**read** 8:13,13,23 9:6 14:14 22:16 23:3 26:9 28:5
**reading** 5:13
**really** 15:21 17:12 20:17,21
**reason** 14:18 15:5 26:11 27:6,9,12,15,18 27:21
**recall** 11:20 13:15 14:10,15 15:1,6 16:7 17:9 19:1,3,4 19:23 20:21
**receipt** 26:18
**received** 13:20 21:14
**record** 6:2,8 7:1 8:14 13:4 21:25 22:2,3,4 23:10
**recorded** 6:9
**recording** 6:7
**recordkeeping** 11:16
**reduced** 24:9 24:11
**referenced** 26:6
**regardless** 8:24
**related** 6:21 19:17
**relating** 9:7
**relationship** 20:25
**relative** 24:12
**release** 22:11
**remain** 22:10
**remember** 15:11,20
**reporter** 1:25 5:10 6:18 7:14 7:16 14:15
**reporting** 24:15
**represent** 7:5 9:21
**represented** 9:25
**representing** 6:17
**required** 28:13
**requires** 7:24
**responded** 16:25
**response** 15:4
**responsibility** 11:22
**retired** 17:21 18:9 20:16
**retirement** 15:12,13 16:22 17:11 18:3 19:8,10 20:17
**retiring** 15:10 15:16,23 16:24 17:7
**return** 26:13,17
**review** 22:23 26:7
**richard** 3:20 6:17

**right** 7:17 17:5 21:23 22:14,18 22:20,23 23:6 23:7
**role** 11:6
**rome** 3:5 5:4
**ronald** 1:23 4:4 5:3 6:10 24:6 26:5 27:2,24 28:2,4,12
**room** 6:25 12:17
**rule** 24:16
**rules** 5:7
**run** 12:1,8

**s**

**s** 2:1 3:1 5:1 6:1 27:3
**saba** 2:4,5,11 7:7,7 10:6 15:18 17:22,24 21:24 22:6,20 22:24 23:6
**saying** 20:21
**seal** 25:2
**search** 14:5,6 21:15 22:8
**section** 9:2,4,13 9:16
**see** 19:6
**seen** 13:10
**sells** 12:16
**send** 13:16 18:16,19
**sensitive** 6:5
**sent** 14:7 18:17 18:19 20:24 21:4,5 26:14
**separate** 12:3
**served** 12:23,25
**set** 25:1
**sheet** 22:25 26:11
**short** 22:17
**show** 13:6
**side** 12:5,6,6
**sign** 22:16,21 22:23 23:1 26:12
**signature** 25:6
**signed** 26:20
**signing** 5:13
**sir** 7:23
**smith** 2:12 7:9 7:9 10:7
**socialize** 10:25
**socialized** 11:1
**solemnly** 7:17
**solutions** 26:23
**southern** 1:2 6:13
**speak** 21:9
**split** 11:9 12:4
**spoken** 12:20 18:14
**ss** 24:2
**sspfirm.com** 2:9,16
**stagnaro** 2:4,11
**started** 10:14 11:4
**state** 5:10 6:24 6:25 24:1,5 25:10
**statement** 8:16 8:18,18 9:11
**statements** 9:7 19:3
**states** 1:1 6:12
**statue** 8:12
**statute** 4:10 8:7 9:9
**stenographic...** 24:10
**stevens** 3:20 6:17
**stop** 15:9 16:21 18:7
**street** 3:8 5:4 6:15
**structure** 11:9
**stuff** 14:11
**subject** 8:5
**subpart** 8:13
**subpoena** 12:22,25 22:10
**subpoenaed** 7:4
**subscribed** 28:14
**subsection** 9:6 9:15
**subsequent** 18:12,21
**suite** 5:4 6:15
**support** 12:12
**supported** 11:17,21
**sure** 10:2,18 13:25 14:1,2 15:1 17:1 19:20 21:3,22
**swear** 5:11 7:15,17 8:17
**sworn** 24:7 28:14
**system** 11:16 11:18

**t**

**t** 3:1 4:8 5:1,1 27:3,3
**take** 6:7 21:24
**taken** 5:3,6 6:10 22:25
**talk** 20:17,18 20:24 21:1
**talked** 19:9,10 19:12 20:19
**team** 11:7
**technology** 11:7,7,25 12:1 12:12
**telephone** 2:8 2:15
**tell** 13:13 15:9 15:16,22 17:7 17:10 18:24

**ten** 11:5
**testified** 20:23
**testify** 24:7
**testimonial** 19:8
**testimony** 7:18 8:4 20:12 24:9 26:9,18 28:8
**thank** 23:8
**thing** 23:5
**things** 21:12 23:8
**think** 9:5,14 17:2 18:14 19:16
**thinking** 17:25
**third** 1:17 3:3 3:14,15 6:12 7:5 9:17,19 11:3 26:4 27:1 28:1
**thomas** 3:16 7:13,13
**thought** 17:1,3 17:18,21
**time** 6:6,24 10:15 16:3 17:18,20 18:8 19:20,22 20:15 21:25 22:4 23:10 26:19
**timeframe** 26:8
**timeline** 14:1 19:23
**times** 20:3
**timing** 19:22
**today** 10:1,4,7 12:17 16:3 23:9
**transcript** 5:14 22:16 26:6,20 28:5,8
**transitioned** 11:6
**tried** 20:3
**true** 28:8
**trust** 11:5,5,8 11:16,17,20
**truth** 7:19,19 7:19 8:17 24:7 24:8,8
**truthfully** 7:25
**two** 17:17
**typewriting** 24:11

**u**

**u** 5:1
**understand** 7:24 8:2,4,20 9:4,13,23
**unit** 6:9
**united** 1:1 6:12
**usually** 23:8

**v**

**v** 26:4 27:1 28:1
**verify** 26:9
**veritext** 3:21 6:18,19 26:14 26:23
**veritext.com** 26:15
**versus** 6:11
**video** 4:11 6:7 6:9 13:6,10,11 13:12,13,14 15:7,13 16:14 16:19 17:20 18:1,12,16,17 18:22 19:2,19 19:22 20:5,19 20:20,22,24,25 21:4
**videoed** 21:3
**videographer** 3:19 6:2,18 7:14 21:25 22:4 23:10
**violates** 9:16
**vs** 1:15

**w**

**waived** 5:14
**want** 13:6
**watch** 19:2,6 20:19,22
**watched** 16:13
**we've** 20:3
**wealth** 11:24 12:1
**wedding** 10:23
**went** 12:5 16:8 20:1
**western** 1:3 6:13
**whereof** 25:1
**whispering** 6:5
**wife** 18:17 20:23,24 21:9
**wish** 15:1
**wishes** 13:16 16:25
**witness** 5:11 7:15,20 13:9 15:8 16:20 18:6 22:13,21 23:2 24:10 25:1 26:8,10 26:12,19
**word** 17:13
**work** 14:7 18:4
**worked** 11:4,5 20:4
**writing** 24:9

**x**

**x** 4:1,8,8

**y**

**yeah** 13:21 21:2 23:2,4
**year** 16:10
**years** 10:16 11:6,14 17:17

Federal Rules of Civil Procedure

Rule 30

(e) Review By the Witness; Changes.

(1) Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

(A) to review the transcript or recording; and

(B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

(2) Changes Indicated in the Officer's Certificate. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.

DISCLAIMER: THE FOREGOING FEDERAL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF APRIL 1, 2019. PLEASE REFER TO THE APPLICABLE FEDERAL RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS
COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the foregoing transcript is a true, correct and complete transcript of the colloquies, questions and answers as submitted by the court reporter. Veritext Legal Solutions further represents that the attached exhibits, if any, are true, correct and complete documents as submitted by the court reporter and/or attorneys in relation to this deposition and that the documents were processed in accordance with our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining the confidentiality of client and witness information, in accordance with the regulations promulgated under the Health Insurance Portability and Accountability Act (HIPAA), as amended with respect to protected health information and the Gramm-Leach-Bliley Act, as amended, with respect to Personally Identifiable Information (PII). Physical transcripts and exhibits are managed under strict facility and personnel access controls. Electronic files of documents are stored in encrypted form and are transmitted in an encrypted fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.

Baldwin's Ohio Revised Code Annotated
Title XXIX. Crimes--Procedure (Refs & Annos)
Chapter 2921. Offenses Against Justice and Public Administration (Refs & Annos)
Perjury

R.C. § 2921.11

2921.11 Perjury

Currentness

(A) No person, in any official proceeding, shall knowingly make a false statement under oath or affirmation, or knowingly swear or affirm the truth of a false statement previously made, when either statement is material.

(B) A falsification is material, regardless of its admissibility in evidence, if it can affect the course or outcome of the proceeding. It is no defense to a charge under this section that the offender mistakenly believed a falsification to be immaterial.

(C) It is no defense to a charge under this section that the oath or affirmation was administered or taken in an irregular manner.

(D) Where contradictory statements relating to the same material fact are made by the offender under oath or affirmation and within the period of the statute of limitations for perjury, it is not necessary for the prosecution to prove which statement was false, but only that one or the other was false.

(E) No person shall be convicted of a violation of this section where proof of falsity rests solely upon contradiction by testimony of one person other than the defendant.

(F) Whoever violates this section is guilty of perjury, a felony of the third degree.

**CREDIT(S)**

(1972 H 511, eff. 1-1-74)

EXHIBIT
tabbies
1

**LEGISLATIVE SERVICE COMMISSION**

**1973:**

This section changes former law to limit the crime of perjury to falsification committed in the course of a judicial or quasi-judicial proceeding. Other falsifications under oath or affirmation are covered in section 2921.13 of the Revised Code. Also, unlike former law, it is no defense to a charge of perjury under this section that the oath or affirmation was irregularly taken. The section also changes the former requirement for corroboration to include a number of qualifications not previously stated.

WESTLAW © 2021 Thomson Reuters. No claim to original U.S. Government Works.

Formerly, perjury included any falsification of a material matter in any proceeding before a tribunal or before an officer created by law, and also any falsification in a matter for which an oath was authorized, whether or not material. Under this section, the falsification must be in an "official proceeding" (defined in section 2921.01 of the Revised Code as, in essence, a judicial or quasi-judicial proceeding). Also, under this section, the falsification must be made while under oath or equivalent affirmation.

Former law required that an oath had to be "lawfully administered," and this was strictly construed. Straight v State, 39 Ohio St 496 (1883). Under this section, an irregularity in the oath or affirmation is no defense.

Under former law, perjury could not be proved except upon the testimony of two witnesses, or upon the testimony of one witness plus corroborating circumstances. This section narrows the requirement for corroboration by stating merely that conviction is precluded where proof that the statement involved was false depends entirely on its contradiction by one person other than the defendant.

Under this section, the false statement involved must be material, i.e., it must be such that it can affect the course or outcome of the proceeding in which it is made, regardless of its admissibility under the rules of evidence. This is substantially the same as the requirement for materiality in former law. See, 42 Ohio Jur 2d 433. Whether a perjurer mistakenly believes his false statement to be immaterial has no bearing on the case.

Notes of Decisions (139)

Notes of Decisions (139)

R.C. § 2921.11, OH ST § 2921.11
Current through Files 29, 30 (immediately effective Revised Code sections only), and 31 to 47 of the 134th General Assembly (2021-2022).

End of Document

© 2021 Thomson Reuters. No claim to original U.S. Government Works.

# Exhibit 2

# Has been saved as a ZIP FILE

Please reach out to litsup-pa@veritext.com

to retrieve a copy