UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION
* * *

PHILLIP R. McHUGH,
Plaintiff,
vs. CASE NO. 1:21-cv-00238

FIFTH THIRD BANCORP, et al.,
Defendants.

* * *

Videotaped deposition of SUSAN B. ZAUNBRECHER, Witness herein, called by the Plaintiff for examination pursuant to the Rules of Civil Procedure, taken before me, Melissa A. Neary, a Notary Public and Professional Reporter in and for the State of Ohio, at the offices of Fifth Third Center, 511 Walnut Street, Cincinnati, Ohio, on Tuesday, October 22, 2024, at 10:46 a.m.

* * *

EXAMINATION INDEX

SUSAN B. ZAUNBRECHER

CROSS BY MR. SABA . . . . . . . . . 6

EXHIBIT INDEX


| | | MAR |
|---|---|---|
| Plaintiff's Exhibit | | |
| Exhibit 1 | Fifth Third Bancorp Minutes of Meeting of the Board of Directors December 17, 2019 | 11 |
| Exhibit 2 | Fifth Third Bancorp Minutes of Meeting of the Board of Directors December 21, 2020 | 14 |
| Exhibit 3 | Email From John McHugh to Susan Zaunbrecher of October 27, 2020 | 33 |

# APPEARANCES

On behalf of the Plaintiff:

Peter A. Saba, Esq.
Joshua M. Smith, Esq.
Stagnaro, Saba & Patterson
2623 Erie Avenue
Cincinnati, Ohio 45208

On behalf of the Defendants:

Michael Cioffi, Esq.
Blank Rome, LLP
1700 PNC Center
201 East Fifth Street
Cincinnati, Ohio 45202

Brian Thomas, Esq.
Phenise Poole, Esq.
Fifth Third Bancorp
511 Walnut Center
Cincinnati, Ohio 45202

ALSO PRESENT: Phillip McHugh
Connie Adkins-Ihle, Videographer

* * *

THE VIDEOGRAPHER: You're on videotape record. Today is Tuesday, October the 22nd, 2024. The time is 10:46 a.m. We're here today to take the deposition of Susan B. Zaunbrecher in the case styled Phillip R. McHugh versus Fifth Third Bancorp, et al., United States District Court, Southern District of Ohio, Western Division, Case Number 1:21-cv-00238. Would the attorneys now introduce themselves and state who they represent?

MR. SABA: Peter Saba for the plaintiff, Phil McHugh.

MR. SMITH: Joshua Smith for the plaintiff, Phil McHugh.

MR. CIOFFI: Michael Cioffi of Blank Rome on behalf of the defendants. I also represent Ms. Zaunbrecher personally pursuant to a joint defense agreement between her and Fifth Third Bank. I also represent her in her capacity as the general counsel of Fifth Third.

MR. THOMAS: Brian Thomas for Fifth Third Bank.

MS. POOLE: Phenise Poole, Fifth Third Bank.

THE VIDEOGRAPHER: And would the court reporter please swear in the witness?

SUSAN B. ZAUNBRECHER

of lawful age, Witness herein, having been first duly cautioned and sworn, as hereinafter certified, was examined and said as follows:

MR. CIOFFI: Peter, before you begin, let me just say a couple things on the record.

MR. SABA: Sure.

MR. CIOFFI: One is housekeeping. As you know, Ms. Zaunbrecher had another engagement at noon today, a speaking engagement. We'll need to break in about an hour, at 11:45 and then resume about 1:15.

Second, late yesterday your office sent to me certain documents, all of them not admissible under Evidence Rule 408. It's inappropriate to try to make them part of a trial record, this deposition, because they're not admissible, they're not relevant, and they're not discoverable. So I don't know how you intend to use them. It wasn't clear from the transmittal what you intended to do with them, but I wanted to note that it's inappropriate to make them part of a trial

record.

MR. SABA: Noted. Anything else?

MR. CIOFFI: Not right now.

MR. SABA: Okay.

CROSS-EXAMINATION

BY MR. SABA:

Q. Susan, could you go ahead and state your name for the record, please?

A. Susan Zaunbrecher.

Q. Have you ever had your deposition taken before?

A. No, I have not.

Q. As a reminder, or just to inform you, I'm going to be asking you a series of questions. If there's anything you don't hear, don't understand, please feel free to ask me to repeat or rephrase the question.

A. Thank you.

Q. For the sake of the court reporter, although we are taking this down by video, I do need you to answer verbally. No shaking of the head or nodding or uh-huhs or uh-uhs. It's difficult for her to take that down on the record.

Additionally, if you can wait for me

to finish my question before you answer, and I'll try and do the same with respect to asking you another question after your answer. It also makes for a clearer record. Do you understand all those instructions?

A. I do.

Q. Okay. Could you give me your address, please?

A. 7800 Tecumseh Trail, Cincinnati, Ohio, 45243.

Q. How long have you lived there?

A. Six years.

Q. What's your date of birth?

A. 7/28/1959.

Q. What did you do to prepare for today's deposition?

A. I spoke with my attorneys.

Q. What is the extent of your education?

A. I have a law degree from University of Cincinnati.

Q. What is your current position with Fifth Third Bank?

A. I am the chief legal officer of the bank and the holding company, the Bancorp.

Q. How long have you held that position?

A. Over six years.

Q. Do you recall your start date?

A. April 30, 2018.

Q. Can you generally describe for me your duties as chief legal officer?

A. I am responsible for all things legal at Fifth Third. I also sit on the Enterprise Committee, which is the executive committee of the bank and the holding company, so I am responsible for being on the team that makes the strategic decisions for Fifth Third.

Q. From the date that you started on April 30, 2018, up until October 31 of 2020, who did you report to at Fifth Third?

A. The CEO, president and CEO of Fifth Third, at the time Greg Carmichael.

Q. Who originally recruited you to come work for Fifth Third?

A. Teresa Tanner.

Q. What was her role?

A. She was the CHRO.

Q. With respect to your role as chief legal officer, what did you do with respect to president and/or CEO succession process at Fifth Third Bank?

A. Very little.
Q. What do you mean by "very little"?
A. That was something that was taken care of by the CHRO, Bob Shaffer, and the president and CEO, Greg Carmichael, with the Board of Directors.
Q. Did you regularly attend the Board of Directors' meetings?
A. I did.
Q. What's your role at the Board of Directors' meetings?
A. I am the secretary of the company. My role is to make sure that minutes are taken. I also did the legal update.
Q. What do you mean by "the legal update"?
A. We are required by our regulators to inform the board of all regulatory matters. I did that on a regular basis at each board meeting.
Q. How are minutes taken at a Fifth Third board meeting?
A. One of my assistants would take the minutes, one of my assistants, assistant secretary of the company, whether it's a deputy

or lower than that, an associate.
Q. Would you ever personally take the minutes?
A. No, I would not.
Q. How would they take the minutes?
A. They --
Q. Go ahead. I'm sorry.
A. I'm not sure I understand your question.
Q. You indicated that you would have an assistant secretary, somebody that reports to you, take the minutes for the board meeting?
A. They would attend the meeting and they would take the minutes.
Q. And how would they take those minutes?
A. With a pen.
MR. CIOFFI: Objection to the form. Could you be more specific? Do you mean by longhand, by typing? I don't know what -- I don't know what you mean.
Q. Well, I'm asking you, with respect to a meeting they attended, you want them to record the meeting, right?
A. They would hand write the minutes.

Q. Okay. Did they use any electronic recording devices to record the meeting?
A. No, they did not.
Q. Did different assistants use different methods to record the meeting?
A. No.
Q. What would happen to those handwritten minutes?
A. Those notes would then become the formal minutes of the meeting.
(Plaintiff's Exhibit Number 1 was marked for identification.)
Q. Susan, I've handed you what's been marked as Plaintiff's Exhibit Number 1. Can you identify that for me, please?
A. It's the minutes of the meeting of the Board of Directors, December 17, 2019.
Q. And just for point of reference, this document is Bates stamped down at the bottom where you see Fifth Third-McHugh-Minutes 000253, and it should go through Fifth Third McHugh-Minutes 000265.
A. Yes.
Q. Have you seen this document before?
A. I don't recall.

Q. Okay. You indicated that the handwritten notes from the person who reports to you, those become the official minutes of the meeting; is that right?

A. Well, the handwritten notes become the minutes. They are then put into a formal format.

Q. Okay. And what happens to those handwritten notes after they're put into a formal format?

A. They are put into -- they are sent to the board the next board meeting for review and acceptance. I do not review the minutes.

Q. Okay. Let me -- let me go back over one thing here. As we look at Plaintiff's Exhibit Number 1, I'm referring to the first page, just under the category of Management Present, it says Mr. Carmichael presided and Ms. Somalya recorded; is that correct?

A. I'm not sure where you're --

Q. Just below where it lists the Management Present, that next sentence.

A. Okay. Yes, yes, yes.

Q. Do you see that?

A. Yes.

Q. And so that would have been indicated -- Ms. Somalya reported to you; is that correct?
A. Correct.
Q. Okay. And so she would have recorded the minutes for that day, is that right?
A. She would have.
Q. And she would have done so by taking handwritten notes --
A. Correct.
Q. -- is that right? The handwritten notes that Ms. Somalya kept at the meeting itself, what happened to those handwritten notes?
A. They are destroyed after the minutes are created. Once they're approved by the board, they are the only record of the meeting.
Q. Okay.
A. In keeping with corporate governance.
Q. And going back to this process, who takes Mrs. -- Ms. Somalya's recorded notes, handwritten notes, and converts them into this?
A. Ms. Somalya did.
Q. She did. All right. And after she converts them into these typewritten notes,

what does she do with them?
A. She reviews them. She then would prepare them for the next board meeting for approval. There was not a formal review process.
Q. Are the typewritten board minutes submitted to anybody else for review or approval prior to the next board meeting?
A. No.
Q. Referring to the last page, Bates stamp 000265, that's Ms. Somalya's signature as assistant secretary?
A. I assume so.
Q. Okay. And -- and the reason for signing is just simply to verify these are the minutes she prepared and she kept from that meeting; is that correct?
A. Correct, as in keeping with corporate governance.
Q. Okay.
(Plaintiff's Exhibit Number 2 was marked for identification.)
Q. Susan, I've handed you what's been marked as Exhibit Number 2. Can you identify that for me, please?

A. Minutes of meeting of Board of Directors, September 21, 2020.

Q. And just to be clear, Exhibit Number 2 is Bates stamped 000517 through 000527; is that correct?

A. Correct.

Q. With respect to these minutes from September 21, 2020, do you see where it indicates Mr. Carmichael presided and Ms. Zaunbrecher recorded; is that correct?

A. Yes.

Q. Did you keep the handwritten notes for that meeting?

A. I must have.

Q. And, again, what would have happened to the handwritten notes that you kept from that meeting?

A. These minutes would have been created -- created and executed.

Q. Would you have created the handwritten notes? Excuse me. Would you have converted the handwritten notes to this report yourself?

A. I did not.

Q. Who would have done that?

A. One of my assistant or associate general counsels, and it appears to be Brian Duba.

Q. Would Mr. Duba have just created these minutes using your handwritten notes?

A. Yes.

Q. Would he have been provided with any other information?

A. No.

Q. As indicated by page one of Exhibit 2, Mr. Duba did not attend the meeting; is that correct?

A. He attended listening. He was in another room listening to the meeting as well, most likely. Oh, I guess in this one, no. He took minutes later in other meetings, so he used only my record, according to this document.

Q. Would your notes have been as detailed as these specific minutes that we see here?

A. Conceivably, yeah.

Q. When you would be recording minutes for a meeting and the meeting would go into executive session, would you stay for the

executive session portion of the meeting?
A. No.
Q. Who would keep a record of what happened during the executive session?
A. It would depend on who was at that executive session in the presenting, you know, what the executive session was about.
Q. And consistent with what you've indicated before, your handwritten notes from the September 21, 2020, meeting, were they subsequently destroyed?
A. Yes.
Q. When would they have been destroyed?
A. Right after the minutes were created.
Q. When you yourself are recording minutes, do you use any electronic recording device to record?
A. I do not.
Q. Do you do anything other than take handwritten --
A. No.
Q. -- notes during the meeting? Prior to coming to Fifth Third Bank, did you have any involvement with Phil McHugh?
A. Not that I recall.

Q. Prior to coming to Fifth Third Bank, did you have any involvement with Tim Spence?
A. No.
Q. After coming to Fifth Third Bank, what was your involvement with Phil McHugh?
A. We were members of Enterprise, the Enterprise team together.
Q. What was the extent of your involvement with Tim Spence after coming to Fifth Third Bank?
A. Same.
Q. And as --
A. Until 2020, and then, of course, it changed.
Q. And just to be clear, I'm primarily referring right now to the time period between your arrival on April 30, 2018, until roughly October 30 of 2020.
A. Okay.
Q. As -- with respect to being members of the Enterprise Committee, what was your involvement with Phil McHugh?
A. When I first started, my involvement was very little. Phil was not all that welcoming to me and didn't speak to me very

much. I think he liked the previous CLO very much and I was not somebody he really was interested in getting to know.

As we progressed, we got to be a little better colleagues. We didn't work much together early. Later on, during the pandemic, PPP, he needed me. We were doing contracts. He called me the night before Easter asking me to help him with PPP, so we got to be closer. I helped. We took a difficult situation, PPP was not going well, and negotiated a contract overnight that night, so that we could get PPP going.

Q. You indicated Easter. Was that Easter 2019 then?

A. Probably Easter '20. I think that's right.

Q. What about with respect to Mr. Spence, what did your involvement with him on the Enterprise team entail?

A. Early on we -- we got to be friends. I felt like we were colleagues together. We talked a lot. His office eventually moved next-door to mine. I can't remember when that happened. So we had developed a relationship.

Beyond that, just Enterprise meetings, discussion.

Q. How frequent were the Enterprise meetings?

A. Weekly.

Q. Those were on Thursdays --

A. Thursdays.

Q. -- is that correct?

A. Yes.

Q. Susan, during a December 14, 2023, teleconference with Judge Barrett in this case, Colin Hart indicated to the judge that with respect to you being identified as a witness in this case, that the only thing that would be unprivileged would be a conversation that you had with Phil McHugh which forms part of the basis for Fifth Third's counterclaim in this case.

A. Okay.

Q. With -- first off, are you familiar that -- with Fifth Third's counterclaim in this litigation?

A. I am.

Q. What is your understanding of that counterclaim?

A. That we are claiming that the tort of abuse of process was -- that there was a tort of abuse of process that Phil created.
Q. Do you have any understanding of the factual basis for that claim?
A. Yes.
Q. What is your understanding of the factual basis for that claim?
A. An email from John McHugh, who was his counsel at the time, who was trying to coerce Fifth Third into changing their decision and threatening litigation; in fact, even sent the Complaint to me prior to filing it, and then also went further to say that he was going to depose certain members, top members of management and directors. It was threatening. It was coercive.
Q. Do you recall the date of that email from John McHugh?
A. I believe it was October 27, and I believe that the -- yes. Was that a Tuesday?
MR. CIOFFI: By way of objection, I'll note that all these facts are set forth in the counterclaim itself and the document speaks for itself, regardless of the witness'

recollection.
Q. Other than the October 27 email from Mr. McHugh to you, Mr. John McHugh to you, do you have any other understanding of anything, any other facts that support the counterclaim for abuse of process?
MR. CIOFFI: Objection. Same objection I just made. You may answer.
THE WITNESS: Ask me again. Ask that question again, please.
Q. My first -- I first asked you what's the factual basis for the abuse of process --
A. Correct.
Q. -- counterclaim and you brought up John McHugh's October 27 email to you. My question is are there any other facts that you feel support the abuse of process claim?
A. Yes. Phil's behavior throughout the process. He left in a huff after he didn't get what he wanted and now has concocted a story about being abused, about his situation. He's -- a story that is now the basis of all of this, an untrue story on age discrimination, on the fact that he didn't get a role that he was never up for.

Q. It's your position that Phil McHugh's allegations of age discrimination are untrue; is that correct?
A. Yes.
Q. Is it also your position that because Phil McHugh is making these claims of age discrimination, that that constitutes an abuse of process?
A. No.
MR. CIOFFI: Objection.
THE WITNESS: Sorry.
MR. CIOFFI: Go ahead.
THE WITNESS: No, that's not what I said.
Q. Clarify it for me, please.
A. I am saying that our basis for our counterclaim is a coercive and threatening email saying that they would bring suit, that he would bring suit if we didn't change the decision, a decision that the board made. Has nothing to do with anything else.
Q. And you're referring back to the October 27 email from John McHugh; is that correct?
A. Correct.

Q. Okay. Is Fifth Third's abuse of process counterclaim in any way based upon anything that Phil McHugh said?

A. I would assume that his lawyer is saying what Phil McHugh said, lawyers representing him.

Q. So your assumption is that -- and, again, this refers back to the October 27 email; is that right?

A. Yes.

Q. Other than that email, is any of the abuse of process claim that Fifth Third is bringing based upon anything that Phil McHugh specifically said?

MR. CIOFFI: Objection, asked and answered. She already said no once.

THE WITNESS: No.

Q. I'm sorry. You're saying no, it's not based on anything. Earlier you said it's based --

A. Well --

Q. You assume that he had said something to his attorney and that his attorney was communicating what Phil McHugh said. But now Mr. Cioffi suggested that your answer is no.

A. I'm really confused.
Q. Okay.
A. Let's start this again --
Q. Sure.
A. -- as to what you'd like me to answer.
Q. Mr. Hart represented to the court that you were going to be testifying about something that Phil McHugh said to you specifically that forms the basis of Fifth Third's abuse of process claim.
A. No. It was --
MR. CIOFFI: Objection. That misstates what Mr. Hart said, first of all. Second of all, the basis of the counterclaim is set forth in the body of the counterclaim, and that document speaks for itself regardless of this witness' recollection. And she's already answered your question as to the basis of the counterclaim.
I see, Counsel, you're reading the counterclaim. She -- the witness will point it out to you.
MR. SABA: Well, actually I'm not reading the counterclaim.

Q. But, Susan, let me read to you from the transcript of the proceedings with Judge Barrett. And really this is what brings us here today, are the representations --

A. Okay.

Q. -- made by Colin Hart to the court. And this is what we're trying to understand in part today. And Mr. Hart indicates specifically at page 11 of the transcript, but, I mean, I guess the question I would put is someone like Susan Zaunbrecher, where everything except for the bases of defendant's counterclaims on abuse of process is essentially privileged. The only thing that would be unprivileged would be a conversation that she had with Phil McHugh which forms part of the basis for the counterclaim.

Do you have any understanding of what conversation Colin Hart was referring to with respect between you and Mr. McHugh?

MR. CIOFFI: Objection. I mean, clearly either there's an error in the transcription, because that's not what the counterclaim says, but...

MR. SABA: Well, there's not an error

in the transcription.
MR. CIOFFI: Well, I'm saying --
MR. SABA: That is what he said to the court.
MR. CIOFFI: -- there is.
Q. There may be an error in what he said or represented to the court. We're trying to understand today, is there any conversation between you --
A. No.
Q. -- and Phil McHugh -- let me go ahead and finish my question before you answer.
A. Sorry.
Q. Is there any conversation between yourself and Phil McHugh that forms the basis in whole or in part of Fifth Third's counterclaim of abuse of process?
A. No.
Q. And it's your understanding that -- strike that. Other than the email with Mr. John McHugh on October 27, do you have any understanding of any other correspondence or communications that would have formed the basis of Fifth Third's abuse of process claim?
MR. CIOFFI: Objection, asked and

answered. You can answer it again.
THE WITNESS: No.
Q. Okay. Do you know who RHR International is?
A. I do.
Q. Who is RHR International?
A. They are a consultant that we use for, and have used, for succession planning and decision-making on executive -- executive roles.
Q. Was RHR used for the CEO succession process with respect to Tim Spence and Greg Carmichael?
A. Yes. Yes.
Q. What involvement did you have in RHR's assessment of Tim Spence with respect to succeeding Greg Carmichael as president and CEO of Fifth Third Bank?
A. I was interviewed by Guy Beaudin and Chuck whatever his last name is, asking me questions about what I thought about Tim Spence.
Q. Do you recall when that interview took place?
A. July or August of 2020.

Q. How was that interview conducted?
A. By phone.
Q. Was the interview recorded?
A. Not that I'm aware of.
Q. Did you keep any notes of that interview?
A. No.
Q. How long did that interview last?
A. Maybe 30 minutes.
Q. Do you recall any of the specific questions they asked you?
A. No, I really don't.
Q. Do you recall anything from that interview?
A. No. Just questions about Tim.
Q. Do you recall any of your responses?
A. Not specifically.
Q. Prior to receiving the email from John McHugh on October 27, 2020, had you been engaging in communication with Mr. McHugh regarding Phil McHugh?
A. Yes.
Q. What were the extent of those communications?
A. It was a discussion about a

separation agreement.
Q. How many communications were there?
A. I do not recall.
Q. Was John McHugh's email in response to any proposals you had made about a separation agreement for Phil McHugh?
MR. CIOFFI: Objection, lack of foundation. How would she know what he was doing? If you can create a foundation.
Q. Go ahead.
A. Ask it again.
Q. Was John McHugh's October 27 email to you in response to any proposals regarding a separation agreement for Phil McHugh?
A. Probably.
Q. Is it fair to say that you and Mr. John McHugh were actively in negotiations regarding the dispute that existed between Phil McHugh --
A. Yes.
Q. -- and Fifth Third Bank at the time that you received the October 27 email?
A. Yes.
Q. In your role as chief legal officer for Fifth Third Bank, do you typically handle

the settlement negotiations for disputes involving Fifth Third Bank?
A. Depends.
Q. What does it depend upon?
A. The level of the dispute.
Q. What do you mean by that?
A. If it's a dispute with an EVP, yes, a peer of my own, yes.
Q. What about outside litigation?
MR. CIOFFI: Objection to the form of the question, but what do you mean --
THE WITNESS: Am I involved?
Q. I'll rephrase the question. And this is generally with respect to any litigation matters that may arise for Fifth Third Bank.
A. Yes.
Q. Are you typically actively involved in the settlement negotiation process?
A. It depends.
Q. What does it depend upon?
A. The size of the litigation, the importance to Fifth Third, the amount of risk.
Q. At what point would you become involved?
A. When it's a big risk. And I make

that decision.
Q. In your experience as chief legal officer for Fifth Third Bank, have you previously received threats of filing litigation when settlement negotiations cannot be reached?
MR. CIOFFI: Objection to the form of the question and lack of relevancy.
THE WITNESS: Yes, but never in the same way.
Q. What do you mean by that?
A. Never with the coercion or the demand that our decision be changed and never with a direct threat of discovery of top executives and board members.
Q. Anything else?
A. Are you asking me that?
Q. Yes.
A. Anything else of what?
Q. Anything else that distinguished John McHugh's email from other threats of litigation that you've received related to other Fifth Third --
A. No.
Q. -- issues?

(Plaintiff's Exhibit Number 3 was marked for identification.)

Q. Susan, I've handed you what's been marked as Exhibit Number 3. Can you identify that for me, please?

A. Yes. It's John McHugh's email to me of Tuesday, October 27, 11 a.m.

Q. And just to be clear, Exhibit 3 is Bates stamped McHugh 01524 and McHugh 01525; is that correct?

A. Correct.

Q. And is Exhibit Number 3 the email that you've been referring to that forms the basis of the due process claim that Fifth has brought against Phil McHugh?

A. Yes, it is.

MR. CIOFFI: Counsel, let me just correct the record. I believe you said due process claim and it's abuse --

MR. SABA: Abuse --

MR. CIOFFI: -- of process claim.

MR. SABA: No. Thank you. Abuse of process claim.

Q. In the first sentence of the email, Mr. McHugh indicates your most recent

correspondence notwithstanding, Phil hopes to achieve a fair resolution with the bank which reflects his tenure and his accomplishments and his 34-year commitment and loyalty to Fifth Third; is that correct?
A. Yes, that's what it says.
Q. Did you interpret that as a threat or demand that they needed to reverse their decision at Fifth Third Bank?
A. I think he's saying that the resolution that we offered was not fair, and it was.
Q. So it reflects a disagreement in terms of what a fair resolution is, but is it a threatening statement?
MR. CIOFFI: Objection to the form of the question.
THE WITNESS: No.
Q. Is it a demand that Fifth Third reverse its decision regarding appointing Tim Spence as president and CEO of Fifth Third bank?
A. No.
Q. The next sentence reads, I truly hope that might be accomplished and some meaningful

accord reached; is that correct?
A. That is correct.
Q. How did you interpret that sentence?
A. A little more threatening, hoping that we'd accomplish something after we had cut off discussions.
Q. Hoping that you would accomplish a settlement; is that right?
A. Something, something might be accomplished, and if you read in the context of the next sentence, what is that accomplishment? What needs to be accomplished?
Q. What are you referring to?
A. The decision.
Q. What specifically are you referring to in the email?
A. The next sentence.
Q. And how does that read?
A. If the bank continued to stand by its decision.
Q. Which decision is he referring to?
A. I believe it's the decision for Phil to be the CEO.
Q. That's what you interpreted?
A. Yeah.

Q. You did not interpret this email as an invitation to engage in further settlement negotiations?
A. I did not.
Q. The sentence that reads, excuse me, I suspect that we will look to conduct discovery of Messrs Carmichael, Shaffer, and McCallister fairly soon and look for proposed dates in early December for that purpose. Do you see that?
A. I do.
Q. How did you interpret that sentence?
A. As a threat.
Q. What do you mean by "a threat"?
A. As a threat that you're going to call for discovery of top, top executives and a director immediately.
Q. In your experience does litigation typically involve depositions?
A. Of course.
Q. In your experience does employment litigation typically involve the deposition of the immediate supervisor of the individual who's making the allegation?
A. I can't answer that. I'm not an

employment lawyer.

Q. In your experience with Fifth Third employment litigation, does litigation typically involve the immediate supervisor, deposition of the immediate supervisor to the employee bringing the allegation?

MR. CIOFFI: Objection, asked and answered.

THE WITNESS: I -- depends on the situation.

Q. In your experience with Fifth Third employment litigation, does litigation typically involve the deposition of the individual who replaced the departing employee?

A. I can't -- I cannot answer that question. I don't know.

Q. In your experience with Fifth Third employment litigation, does litigation typically involve any of the decision-makers involved in the decision regarding the employee bringing --

A. Again --

Q. -- the claims?

A. I believe it depends on the situation. Excuse me. May I say your

histrionics, Mr. McHugh, are distracting and rude, and I don't like it. And I don't think anybody should have to sit here with your facial expressions. Stop it. I want that on the record. You can smile.

Q. Did you respond at all to Mr. John McHugh regarding his October 27 email?

A. I don't recall responding.

Q. During your time at Fifth Third, did you ever hear of anyone referring to Phil McHugh as the silver fox?

A. Yes.

Q. Who did you hear referring to Phil McHugh as the silver fox?

A. He referred to himself as the silver fox. The first time I heard it was at Enterprise, in an Enterprise meeting.

Q. When was that Enterprise meeting?

A. Sometime between April 2018 and 2020.

Q. Do you recall specifically?

A. No, I do not.

Q. Did you ever hear anyone other than Phil McHugh refer to Phil McHugh as the silver fox?

A. I think others did refer to him. I

think he -- it was his chosen nickname.
Q. Who were the others that you've heard?
A. I've heard, definitely heard Tayfun Tuzun.
Q. Anyone else?
A. Yeah, maybe Frank Forrest. I probably called him that myself. I think it was a chosen nickname. I think he thought that he was -- it was cute, made him smart and attractive and silver haired.
Q. When did you refer to Phil McHugh as the silver fox?
MR. CIOFFI: Objection, lack of foundation.
MR. SABA: She just said I probably even called him that myself.
Q. I'm asking when did you --
A. I don't recall specifically when I would have called him that. I liked it.
Q. How many times did you refer to Phil McHugh as the silver fox?
A. I don't know. I can't answer that question.
Q. Other than yourself, Tayfun Tuzun,

and Frank Forrest, did you ever hear anyone else at Fifth Third Bank refer to Phil McHugh as the silver fox?

A. Not that I'm aware of. Not that I can recall.

MR. SABA: Can we take a quick break, about five minutes?

MR. CIOFFI: Well --

THE WITNESS: I've got about five minutes.

MR. CIOFFI: She's got about five minutes before she has to leave for her engagement. Are you finished, about finished or --

MR. SABA: I'm probably pretty close. That's why I wanted to turn -- that's --

MR. CIOFFI: Yeah, I mean, I don't -- she has to speak at 12, so --

MR. SABA: No, no, I understand. You have to leave at 11:45. I understand.

MR. CIOFFI. It would be awful to have to all come back.

MR. SABA: No, no, I understand.

THE WITNESS: Sure.

MR. CIOFFI: All right. If you could

quickly, we'll wait here then.

THE VIDEOGRAPHER: Off the record, 11:38.

(A brief recess was taken.)

THE VIDEOGRAPHER: We are back on the record. The time is 11:45.

Q. Susan, the email that John McHugh sent you on October 27 included a courtesy copy of the Complaint, correct?

A. Correct.

Q. Did you review the Complaint?

A. I looked at it.

Q. Do you recall if that Complaint included any claims for reinstatement of Phil McHugh or promotion to president and CEO of Fifth Third Bank?

A. I don't recall that.

MR. SABA: Okay. That's all I have.

MR. CIOFFI: I have no further questions. We'll read the transcript and sign it, and then we can go off the record.

THE VIDEOGRAPHER: Off the record at 11:45.

(The deposition was concluded at 11:45 a.m.)

* * *

I, SUSAN B. ZAUNBRECHER, do hereby certify that the foregoing is a true and accurate transcription of my testimony.

_________________________________
SUSAN B. ZAUNBRECHER

DATE _________________________________

STATE OF OHIO )
COUNTY OF GREENE ) SS: CERTIFICATE

I, Melissa A. Neary, a Notary Public within and for the State of Ohio, duly commissioned and qualified,

DO HEREBY CERTIFY that the above-named SUSAN B. ZAUNBRECHER, was by me first duly sworn to testify the truth, the whole truth, and nothing but the truth; that said testimony was reduced to writing by me stenographically in the presence of the witness and thereafter reduced to typewriting.

I FURTHER CERTIFY that I am not a relative or Attorney of either party nor in any manner interested in the event of this action.

IN WITNESS THEREOF, I have hereunto set my hand and seal of office at Xenia, Ohio, on this 5th day of November, 2024.

/s/ Melissa A. Neary

MELISSA A. NEARY
NOTARY PUBLIC, STATE OF OHIO
MY COMMISSION EXPIRES 8/9/2026

1 DEPOSITION ERRATA SHEET

Date Taken: October 22, 2024

Case Caption: PHILLIP R. McHUGH vs. FIFTH THIRD BANCORP, et al.

DECLARATION UNDER PENALTY OF PERJURY

I declare under penalty of perjury that I have read the entire transcript of my Deposition taken in the captioned matter or the same has been read to me, and the same is true and accurate, save and except for changes and/or corrections, if any, as indicated by me on the DEPOSITION ERRATA SHEET hereof, with the understanding that I offer these changes as if still under oath.

Signed on the ______ day of ____________, 20___.

____________________________________

SUSAN B. ZAUNBRECHER

2 DEPOSITION ERRATA SHEET

Page No.______Line No.______Change to:_________________

____________________________________________________________

Reason for change:_______________________________________

Page No.______Line No.______Change to:_________________

____________________________________________________________

Reason for change:_______________________________________

Page No.______Line No.______Change to:_________________

____________________________________________________________

Reason for change:_______________________________________

Page No.______Line No.______Change to:_________________

____________________________________________________________

Reason for change:_______________________________________

Page No.______Line No.______Change to:_________________

____________________________________________________________

Reason for change:_______________________________________

Page No.______Line No.______Change to:_________________

____________________________________________________________

Reason for change:_______________________________________

Page No.______Line No.______Change to:_________________

____________________________________________________________

Reason for change:_______________________________________

SIGNATURE:____________________________DATE:_____________

SUSAN B. ZAUNBRECHER

3 DEPOSITION ERRATA SHEET

Page No.______Line No.______Change to:_________________

____________________________________________________________

Reason for change:_______________________________________

Page No.______Line No.______Change to:_________________

____________________________________________________________

Reason for change:_______________________________________

Page No.______Line No.______Change to:_________________

____________________________________________________________

Reason for change:_______________________________________

Page No.______Line No.______Change to:_________________

____________________________________________________________

Reason for change:_______________________________________

Page No.______Line No.______Change to:_________________

____________________________________________________________

Reason for change:_______________________________________

Page No.______Line No.______Change to:_________________

____________________________________________________________

Reason for change:_______________________________________

Page No.______Line No.______Change to:_________________

____________________________________________________________

Reason for change:_______________________________________

SIGNATURE:____________________________DATE:_____________

SUSAN B. ZAUNBRECHER

## WORD INDEX

< 0 >
**000253** 11:21
**000265** 11:22 14:11
**000517** 15:4
**000527** 15:4
**01524** 33:9
**01525** 33:9

< 1 >
**1** 2:8 11:11, 14 12:16 44:1
**1:15** 5:14
**1:21-cv-00238** 1:7 4:9
**10:46** 1:22 4:3
**11** 2:8 26:9 33:7
**11:38** 41:3
**11:45** 5:14 40:20 41:6, 23, 24
**12** 40:18
**14** 2:9 20:10
**17** 2:9 11:17
**1700** 3:9

< 2 >
**2** 2:9 14:21, 24 15:4 16:11 45:1
**20** 19:16 44:17
**201** 3:9
**2018** 8:3, 13 18:17 38:19
**2019** 2:9 11:17 19:15
**2020** 2:11, 13 8:13 15:2, 8 17:10 18:13, 18 28:25 29:19 38:19
**2023** 20:10
**2024** 1:22 4:3 43:18 44:2
**21** 2:11 15:2, 8 17:10
**22** 1:22 44:2
**22nd** 4:3
**2623** 3:4
**27** 2:13 21:20 22:2, 15 23:23 24:8 27:21 29:19 30:12, 22 33:7 38:7 41:8

< 3 >
**3** 2:11 33:1, 4, 8, 12 46:1
**30** 8:3, 13 18:17, 18 29:9
**31** 8:13
**33** 2:11
**34-year** 34:4

< 4 >
**408** 5:17
**45202** 3:10, 13
**45208** 3:5
**45243** 7:10

< 5 >
**511** 1:20 3:12
**5th** 43:18

< 6 >
**6** 2:1

< 7 >
**7/28/1959** 7:14
**7800** 7:9

< 8 >
**8/9/2026** 43:22

< A >
**a.m** 1:22 4:3 33:7 41:24
**above-named** 43:6
**abuse** 21:2, 3 22:6, 12, 17 23:7 24:1, 12 25:11 26:13 27:17, 24 33:19, 20, 22
**abused** 22:21
**acceptance** 12:13
**accomplish** 35:5, 7
**accomplished** 34:25 35:10, 12
**accomplishment** 35:11
**accomplishments** 34:3
**accord** 35:1
**accurate** 42:3 44:10
**achieve** 34:2
**action** 43:15
**actively** 30:17 31:17
**Additionally** 6:25
**address** 7:8
**Adkins-Ihle** 3:16
**admissible** 5:17, 20
**age** 5:4 22:23 23:2, 6
**agreement** 4:19 30:1, 6, 14
**ahead** 6:7 10:7 23:12 27:11 30:10
**al** 1:9 4:6 44:4
**allegation** 36:24 37:6
**allegations** 23:2
**amount** 31:22
**and/or** 8:24 44:11
**answer** 6:21 7:1, 3 22:8 24:25 25:6 27:12 28:1 36:25 37:15 39:23
**answered** 24:16 25:19 28:1 37:8
**anybody** 14:7 38:3
**APPEARANCES** 3:1
**appears** 16:2
**appointing** 34:20
**approval** 14:4, 8
**approved** 13:16
**April** 8:3, 13 18:17 38:19
**arrival** 18:17
**asked** 22:11 24:15 27:25 29:11 37:7
**asking** 6:14 7:2 10:22 19:8 28:20 32:17 39:18
**assessment** 28:16
**assistant** 9:24 10:11 14:12 16:1
**assistants** 9:23, 24 11:4
**associate** 10:1 16:1
**assume** 14:13 24:4, 22
**assumption** 24:7
**attend** 9:7 10:13 16:11
**attended** 10:23 16:13
**attorney** 24:23 43:14
**attorneys** 4:9 7:17
**attractive** 39:11
**August** 28:25
**Avenue** 3:4
**aware** 29:4 40:4
**awful** 40:21

< B >
**back** 12:14 13:20 23:22 24:8 40:22 41:5
**BANCORP** 1:9 2:8, 9 3:12 4:6 7:24 44:4
**Bank** 4:20, 23, 25 7:22, 24 8:9, 25 17:23 18:1, 4, 10 28:18 30:21, 25 31:2, 15 32:3 34:2, 9, 22 35:19 40:2 41:16
**Barrett** 20:11 26:3
**based** 24:2, 13, 19, 20
**bases** 26:12
**basis** 9:19 20:17 21:5, 8 22:12, 22 23:16 25:10, 15, 19 26:17 27:15, 23 33:14
**Bates** 11:19 14:10 15:4 33:9
**Beaudin** 28:19
**behalf** 3:2, 7 4:17
**behavior** 22:18
**believe** 21:20, 21 33:18 35:22 37:24
**better** 19:5
**Beyond** 20:1
**big** 31:25
**birth** 7:13
**Blank** 3:8 4:16
**Board** 2:9, 11 9:6, 7, 10, 18, 19, 22 10:12 11:17 12:12 13:17 14:3, 6, 8 15:1 23:20 32:15
**Bob** 9:4

**body** 25:16
**bottom** 11:19
**break** 5:13 40:6
**Brian** 3:11 4:22 16:2
**brief** 41:4
**bring** 23:18, 19
**bringing** 24:13 37:6, 21
**brings** 26:3
**brought** 22:14 33:15

**< C >**
**call** 36:15
**called** 1:15 19:8 39:8, 17, 20
**capacity** 4:21
**Caption** 44:3
**captioned** 44:8
**care** 9:4
**Carmichael** 8:16 9:5 12:18 15:9 28:13, 17 36:7
**CASE** 1:7 4:5, 8 20:11, 14, 18 44:3
**category** 12:17
**cautioned** 5:5
**Center** 1:20 3:9, 12
**CEO** 8:15, 24 9:5 28:11, 17 34:21 35:23 41:15
**certain** 5:16 21:15
**CERTIFICATE** 43:2
**certified** 5:6
**certify** 42:2 43:6, 13
**change** 23:19 45:4, 7, 10, 13, 16, 19, 22 46:4, 7, 10, 13, 16, 19, 22
**changed** 18:14 32:13
**changes** 44:11, 14
**changing** 21:11
**chief** 7:23 8:5, 22 30:24 32:2
**chosen** 39:1, 9
**CHRO** 8:21 9:4
**Chuck** 28:20
**Cincinnati** 1:21 3:5, 10, 13 7:9, 20
**Cioffi** 3:8 4:16 5:7, 10 6:3 10:18 21:22 22:7 23:10, 12 24:15, 25 25:13 26:21 27:2, 5, 25 30:7 31:10 32:7 33:17, 21 34:16 37:7 39:14 40:8, 11, 17, 21, 25 41:19
**Civil** 1:17
**claim** 21:5, 8 22:17 24:12 25:11 27:24 33:14, 19, 21, 23
**claiming** 21:1
**claims** 23:6 37:23 41:14
**Clarify** 23:15
**clear** 5:22 15:3 18:15 33:8
**clearer** 7:4
**clearly** 26:22
**CLO** 19:1
**close** 40:15
**closer** 19:9
**coerce** 21:11
**coercion** 32:12
**coercive** 21:17 23:17
**Colin** 20:12 26:6, 19
**colleagues** 19:5, 22
**come** 8:17 40:22
**coming** 17:23 18:1, 4, 9
**COMMISSION** 43:22
**commissioned** 43:5
**commitment** 34:4
**Committee** 8:8 18:21
**communicating** 24:24
**communication** 29:20
**communications** 27:23 29:24 30:2
**company** 7:24 8:9 9:12, 25
**Complaint** 21:13 41:9, 11, 13
**Conceivably** 16:22
**concluded** 41:24
**concocted** 22:20
**conduct** 36:6
**conducted** 29:1
**confused** 25:1
**Connie** 3:16
**consistent** 17:8
**constitutes** 23:7
**consultant** 28:7
**context** 35:10
**continued** 35:19
**contract** 19:11
**contracts** 19:7
**conversation** 20:15 26:15, 19 27:8, 14
**converted** 15:22
**converts** 13:22, 25
**copy** 41:8
**corporate** 13:19 14:18
**correct** 12:19 13:3, 4, 10 14:17, 18 15:5, 6, 10 16:12 20:8 22:13 23:3, 24, 25 33:10, 11, 18 34:5 35:1, 2 41:9, 10
**corrections** 44:11
**correspondence** 27:22 34:1
**counsel** 4:21 21:10 25:21 33:17
**counsels** 16:2
**counterclaim** 20:17, 21, 25 21:24 22:5, 14 23:17 24:2 25:15, 16, 20, 22, 25 26:17, 24 27:17
**counterclaims** 26:13
**COUNTY** 43:2
**couple** 5:8
**course** 18:13 36:20
**COURT** 1:1 4:7 5:2 6:19 25:7 26:6 27:4, 7
**courtesy** 41:8
**create** 30:9
**created** 13:16 15:19, 20 16:4 17:14 21:3
**CROSS** 2:1
**CROSS-EXAMINATION** 6:5
**current** 7:21
**cut** 35:5
**cute** 39:10

**< D >**
**date** 7:13 8:2, 12 21:18 42:11 44:2
**dates** 36:8
**day** 13:6 43:18 44:16
**December** 2:9, 11 11:17 20:10 36:9
**decision** 21:11 23:20 32:1, 13 34:9, 20 35:14, 20, 21, 22 37:20
**decision-makers** 37:19
**decision-making** 28:9
**decisions** 8:11
**DECLARATION** 44:5
**declare** 44:6
**Defendants** 1:10 3:7 4:17
**defendant's** 26:12
**defense** 4:19
**definitely** 39:4
**degree** 7:19
**demand** 32:12 34:8, 19
**departing** 37:14
**depend** 17:5 31:4, 20
**Depends** 31:3, 19 37:9, 24
**depose** 21:15
**deposition** 1:14 4:4 5:19 6:10 7:16 36:22 37:5, 13 41:24 44:1, 8, 12 45:1 46:1
**depositions** 36:19
**deputy** 9:25
**describe** 8:4
**destroyed** 13:15 17:11, 13
**detailed** 16:20
**developed** 19:25
**device** 17:17
**devices** 11:2
**different** 11:4, 5
**difficult** 6:23 19:10
**direct** 32:14
**director** 36:17

**Directors** 2:9, 11 9:6, 8, 11 11:17 15:2 21:16
**disagreement** 34:13
**discoverable** 5:21
**discovery** 32:14 36:6, 16
**discrimination** 22:23 23:2, 7
**discussion** 20:2 29:25
**discussions** 35:6
**dispute** 30:18 31:5, 7
**disputes** 31:1
**distinguished** 32:20
**distracting** 38:1
**DISTRICT** 1:1, 2 4:7
**DIVISION** 1:3 4:8
**document** 11:19, 24 16:18 21:24 25:17
**documents** 5:16
**doing** 19:7 30:9
**Duba** 16:3, 4, 11
**due** 33:14, 18
**duly** 5:5 43:4, 7
**duties** 8:5

< E >
**Earlier** 24:19
**early** 19:6, 21 36:9
**East** 3:9
**Easter** 19:8, 14, 15, 16
**education** 7:18
**either** 26:22 43:14
**electronic** 11:1 17:16
**Email** 2:11 21:9, 18 22:2, 15 23:18, 23 24:9, 11 27:20 29:18 30:4, 12, 22 32:21 33:6, 12, 24 35:16 36:1 38:7 41:7
**employee** 37:6, 14, 20
**employment** 36:21 37:1, 3, 12, 18
**engage** 36:2
**engagement** 5:12, 13 40:13
**engaging** 29:20
**entail** 19:20
**Enterprise** 8:7 18:6, 7, 21 19:20 20:1, 3 38:17, 18
**entire** 44:7
**Erie** 3:4
**ERRATA** 44:1, 13 45:1 46:1
**error** 26:22, 25 27:6
**Esq** 3:3, 8, 11
**essentially** 26:14
**et** 1:9 4:6 44:4
**event** 43:15
**eventually** 19:23
**Evidence** 5:17
**EVP** 31:7
**examination** 1:16 2:1
**examined** 5:6
**Excuse** 15:21 36:5 37:25
**executed** 15:19
**executive** 8:8 16:25 17:1, 4, 6, 7 28:9
**executives** 32:14 36:16
**EXHIBIT** 2:1, 8, 9, 11 11:11, 14 12:16 14:21, 24 15:3 16:10 33:1, 4, 8, 12
**existed** 30:18
**experience** 32:2 36:18, 21 37:2, 11, 17
**EXPIRES** 43:22
**expressions** 38:4
**extent** 7:18 18:8 29:23

< F >
**facial** 38:4
**fact** 21:12 22:24
**facts** 21:23 22:5, 16
**factual** 21:5, 8 22:12
**fair** 30:16 34:2, 11, 14
**fairly** 36:8
**familiar** 20:20
**feel** 6:16 22:17
**felt** 19:22
**FIFTH** 1:9, 20 2:8, 9 3:9, 12 4:6, 20, 21, 22, 24 7:22 8:7, 11, 14, 15, 18, 25 9:21 11:20, 21 17:23 18:1, 4, 10 20:17, 21 21:11 24:1, 12 25:10 27:16, 24 28:18 30:21, 25 31:2, 15, 22 32:3, 22 33:14 34:4, 9, 19, 21 37:2, 11, 17 38:9 40:2 41:16 44:4
**filing** 21:13 32:4
**finish** 7:1 27:12
**finished** 40:13
**first** 5:5 12:16 18:23 20:20 22:11 25:14 33:24 38:16 43:7
**five** 40:7, 9, 11
**follows** 5:6
**foregoing** 42:2
**form** 10:18 31:10 32:7 34:16
**formal** 11:10 12:6, 10 14:4
**format** 12:7, 10
**formed** 27:23
**forms** 20:16 25:10 26:16 27:15 33:13
**Forrest** 39:7 40:1
**forth** 21:23 25:16
**foundation** 30:8, 9 39:15
**fox** 38:11, 14, 16, 24 39:13, 22 40:3
**Frank** 39:7 40:1
**free** 6:16
**frequent** 20:3
**friends** 19:21
**further** 21:14 36:2 41:19 43:13

< G >
**general** 4:21 16:2
**generally** 8:4 31:14
**getting** 19:3
**give** 7:7
**go** 6:7 10:7 11:21 12:14 16:24 23:12 27:11 30:10 41:21
**going** 6:14 13:20 19:11, 13 21:14 25:8 36:15
**governance** 13:19 14:19
**GREENE** 43:2
**Greg** 8:16 9:5 28:12, 17
**guess** 16:15 26:10
**Guy** 28:19

< H >
**haired** 39:11
**hand** 10:25 43:17
**handed** 11:13 14:23 33:3
**handle** 30:25
**handwritten** 11:8 12:2, 5, 9 13:9, 11, 13, 22 15:12, 16, 21, 22 16:5 17:9, 20
**happen** 11:7
**happened** 13:13 15:15 17:4 19:25
**happens** 12:8
**Hart** 20:12 25:7, 14 26:6, 8, 19
**head** 6:22
**hear** 6:15 38:10, 13, 22 40:1
**heard** 38:16 39:3, 4
**held** 7:25
**help** 19:9
**helped** 19:10
**hereinafter** 5:5
**hereof** 44:13
**hereunto** 43:16
**histrionics** 38:1
**holding** 7:24 8:9
**hope** 34:24
**hopes** 34:1
**hoping** 35:4, 7
**hour** 5:14
**housekeeping** 5:10
**huff** 22:19

< I >
**identification** 11:12 14:22 33:2
**identified** 20:13

**identify** 11:*15* 14:*24* 33:*4*
**immediate** 36:*23* 37:*4, 5*
**immediately** 36:*17*
**importance** 31:*22*
**inappropriate** 5:*18, 25*
**included** 41:*8, 14*
**INDEX** 2:*1*
**indicated** 10:*10* 12:*1* 13:*2* 16:*10* 17:*9* 19:*14* 20:*12* 44:*12*
**indicates** 15:*9* 26:*8* 33:*25*
**individual** 36:*23* 37:*14*
**inform** 6:*13* 9:*18*
**information** 16:*8*
**instructions** 7:*5*
**intend** 5:*22*
**intended** 5:*23*
**interested** 19:*3* 43:*15*
**International** 28:*4, 6*
**interpret** 34:*7* 35:*3* 36:*1, 12*
**interpreted** 35:*24*
**interview** 28:*23* 29:*1, 3, 6, 8, 14*
**interviewed** 28:*19*
**introduce** 4:*10*
**invitation** 36:*2*
**involve** 36:*19, 22* 37:*4, 13, 19*
**involved** 31:*12, 17, 24* 37:*20*
**involvement** 17:*24* 18:*2, 5, 9, 22, 23* 19:*19* 28:*15*
**involving** 31:*2*
**issues** 32:*25*
**its** 34:*20* 35:*19*

< J >
**John** 2:*11* 21:*9, 19* 22:*3, 15* 23:*23* 27:*21* 29:*19* 30:*4, 12, 17* 32:*20* 33:*6* 38:*6* 41:*7*
**joint** 4:*19*
**Joshua** 3:*3* 4:*14*
**Judge** 20:*11, 12* 26:*2*
**July** 28:*25*

< K >
**keep** 15:*12* 17:*3* 29:*5*
**keeping** 13:*19* 14:*18*
**kept** 13:*12* 14:*16* 15:*16*
**know** 5:*11, 21* 10:*20, 21* 17:*6* 19:*3* 28:*3* 30:*8* 37:*16* 39:*23*

< L >
**lack** 30:*7* 32:*8* 39:*14*
**late** 5:*15*
**law** 7:*19*
**lawful** 5:*4*
**lawyer** 24:*4* 37:*1*
**lawyers** 24:*5*
**leave** 40:*12, 20*
**left** 22:*19*
**legal** 7:*23* 8:*5, 6, 23* 9:*14, 15* 30:*24* 32:*2*
**level** 31:*5*
**liked** 19:*1* 39:*20*
**listening** 16:*13, 14*
**lists** 12:*21*
**litigation** 20:*22* 21:*12* 31:*9, 14, 21* 32:*5, 21* 36:*18, 22* 37:*3, 12, 18*
**little** 9:*1, 2* 18:*24* 19:*5* 35:*4*
**lived** 7:*11*
**LLP** 3:*8*
**long** 7:*11, 25* 29:*8*
**longhand** 10:*20*
**look** 12:*15* 36:*6, 8*
**looked** 41:*12*
**lot** 19:*23*
**lower** 10:*1*
**loyalty** 34:*4*

< M >
**making** 23:*6* 36:*24*
**Management** 12:*17, 22* 21:*16*
**manner** 43:*15*
**MAR** 2:*1*
**marked** 11:*12, 14* 14:*22, 24* 33:*2, 4*
**matter** 44:*8*
**matters** 9:*18* 31:*15*
**McCallister** 36:*7*
**McHUGH** 1:*5* 2:*11* 3:*16* 4:*6, 13, 15* 17:*24* 18:*5, 22* 20:*16* 21:*9, 19* 22:*3* 23:*6, 23* 24:*3, 5, 13, 24* 25:*9* 26:*16, 20* 27:*11, 15, 21* 29:*19, 20, 21* 30:*6, 14, 17, 19* 33:*9, 15, 25* 38:*1, 7, 11, 14, 23* 39:*12, 22* 40:*2* 41:*7, 15* 44:*3*
**McHugh-Minutes** 11:*22*
**McHugh's** 22:*15* 23:*1* 30:*4, 12* 32:*21* 33:*6*
**mean** 9:*2, 15* 10:*19, 21* 26:*10, 21* 31:*6, 11* 32:*11* 36:*14* 40:*17*
**meaningful** 34:*25*
**Meeting** 2:*9, 11* 9:*20, 22* 10:*12, 13, 23, 24* 11:*2, 5, 10, 16* 12:*4, 12* 13:*12, 17* 14:*3, 8, 17* 15:*1, 13, 17* 16:*11, 14, 24* 17:*1, 10, 22* 38:*17, 18*
**meetings** 9:*8, 11* 16:*16* 20:*1, 4*
**Melissa** 1:*17* 43:*3, 20, 21*
**members** 18:*6, 20* 21:*15* 32:*15*
**Messrs** 36:*7*
**methods** 11:*5*
**Michael** 3:*8* 4:*16*
**mine** 19:*24*
**Minutes** 2:*8, 9* 9:*13, 21, 24* 10:*3, 5, 12, 14, 16, 25* 11:*8, 10, 16* 12:*3, 6, 13* 13:*6, 15* 14:*6, 16* 15:*1, 7, 18* 16:*5, 16, 20, 23* 17:*14, 16* 29:*9* 40:*7, 10, 12*
**misstates** 25:*14*
**moved** 19:*23*

< N >
**name** 6:*8* 28:*20*
**Neary** 1:*18* 43:*3, 20, 21*
**need** 5:*13* 6:*21*
**needed** 19:*7* 34:*8*
**needs** 35:*12*
**negotiated** 19:*11*
**negotiation** 31:*18*
**negotiations** 30:*17* 31:*1* 32:*5* 36:*3*
**never** 22:*25* 32:*9, 12, 13*
**next-door** 19:*24*
**nickname** 39:*1, 9*
**night** 19:*8, 12*
**No._____Change** 45:*2, 5, 8, 11, 14, 17, 20* 46:*2, 5, 8, 11, 14, 17, 20*
**No._____Line** 45:*2, 5, 8, 11, 14, 17, 20* 46:*2, 5, 8, 11, 14, 17, 20*
**nodding** 6:*22*
**noon** 5:*12*
**Notary** 1:*18* 43:*3, 21*
**note** 5:*24* 21:*23*
**Noted** 6:*2*
**notes** 11:*9* 12:*2, 5, 9* 13:*9, 12, 14, 21, 22, 25* 15:*12, 16, 21, 22* 16:*5, 19* 17:*9, 22* 29:*5*
**notwithstanding** 34:*1*
**November** 43:*18*
**Number** 4:*8* 11:*11, 14* 12:*16* 14:*21, 24* 15:*3* 33:*1, 4, 12*

< O >
**oath** 44:*15*
**Objection** 10:*18* 21:*22* 22:*7, 8* 23:*10* 24:*15* 25:*13* 26:*21* 27:*25* 30:*7* 31:*10*

32:7 34:16 37:7 39:14
**October** 1:22 2:13 4:2 8:13 18:18 21:20 22:2, 15 23:23 24:8 27:21 29:19 30:12, 22 33:7 38:7 41:8 44:2
**offer** 44:14
**offered** 34:11
**office** 5:15 19:23 43:17
**officer** 7:23 8:5, 23 30:24 32:3
**offices** 1:20
**official** 12:3
**Oh** 16:15
**OHIO** 1:2, 19, 21 3:5, 10, 13 4:8 7:10 43:1, 4, 17, 21
**Okay** 6:4 7:7 11:1 12:1, 8, 14, 23 13:5, 18 14:14, 20 18:19 20:19 24:1 25:2 26:5 28:3 41:18
**Once** 13:16 24:16
**originally** 8:17
**outside** 31:9
**overnight** 19:12

**< P >**
**page** 12:17 14:10 16:10 26:9 45:2, 5, 8, 11, 14, 17, 20 46:2, 5, 8, 11, 14, 17, 20
**pandemic** 19:6
**part** 5:18, 25 20:16 26:8, 16 27:16
**party** 43:14
**Patterson** 3:4
**peer** 31:8
**pen** 10:17
**PENALTY** 44:5, 6
**period** 18:16
**PERJURY** 44:5, 6
**person** 12:2
**personally** 4:18 10:2
**Peter** 3:3 4:12 5:7
**Phenise** 3:11 4:24
**Phil** 4:13, 15 17:24 18:5, 22, 24 20:16 21:3 23:1, 6 24:3, 5, 13, 24 25:9 26:16 27:11, 15 29:21 30:6, 14, 18 33:15 34:1 35:22 38:10, 13, 23 39:12, 21 40:2 41:14
**PHILLIP** 1:5 3:16 4:5 44:3
**Phil's** 22:18
**phone** 29:2
**place** 28:24
**Plaintiff** 1:6, 16 3:2 4:13, 15
**Plaintiff's** 2:8 11:11, 14 12:15 14:21 33:1
**planning** 28:8
**please** 5:2 6:8, 16 7:8 11:15 14:25 22:10 23:15 33:5
**PNC** 3:9
**point** 11:18 25:22 31:23
**Poole** 3:11 4:24
**portion** 17:1
**position** 7:21, 25 23:1, 5
**PPP** 19:7, 9, 10, 12
**prepare** 7:15 14:3
**prepared** 14:16
**presence** 43:11
**PRESENT** 3:16 12:18, 22
**presenting** 17:6
**presided** 12:18 15:9
**president** 8:15, 24 9:5 28:17 34:21 41:15
**pretty** 40:15
**previous** 19:1
**previously** 32:4
**primarily** 18:15
**prior** 14:8 17:22 18:1 21:13 29:18
**privileged** 26:14
**Probably** 19:16 30:15 39:8, 16 40:15
**Procedure** 1:17
**proceedings** 26:2
**process** 8:24 13:20 14:5 21:2, 3 22:6, 12, 17, 19 23:8 24:2, 12 25:11 26:13 27:17, 24 28:12 31:18 33:14, 19, 21, 23
**Professional** 1:18
**progressed** 19:4
**promotion** 41:15
**proposals** 30:5, 13
**proposed** 36:8
**provided** 16:7
**Public** 1:18 43:3, 21
**purpose** 36:9
**pursuant** 1:16 4:18
**put** 12:6, 9, 11 26:10

**< Q >**
**qualified** 43:5
**question** 6:17 7:1, 3 10:9 22:10, 16 25:19 26:10 27:12 31:11, 13 32:8 34:17 37:16 39:24
**questions** 6:15 28:21 29:11, 15 41:20
**quick** 40:6
**quickly** 41:1

**< R >**
**reached** 32:6 35:1
**read** 26:1 35:10, 18 41:20 44:7, 9
**reading** 25:21, 25
**reads** 34:24 36:5
**really** 19:2 25:1 26:3 29:12
**reason** 14:14 45:4, 7, 10, 13, 16, 19, 22 46:4, 7, 10, 13, 16, 19, 22
**recall** 8:2 11:25 17:25 21:18 28:23 29:10, 13, 16 30:3 38:8, 20 39:19 40:5 41:13, 17
**received** 30:22 32:4, 22
**receiving** 29:18
**recess** 41:4
**recollection** 22:1 25:18
**record** 4:2 5:8, 19 6:1, 8, 24 7:4 10:24 11:2, 5 13:17 16:17 17:3, 17 33:18 38:5 41:2, 6, 21, 22
**recorded** 12:19 13:5, 21 15:10 29:3
**recording** 11:2 16:23 17:15, 16
**recruited** 8:17
**reduced** 43:10, 12
**refer** 38:23, 25 39:12, 21 40:2
**reference** 11:18
**referred** 38:15
**referring** 12:16 14:10 18:16 23:22 26:19 33:13 35:13, 15, 21 38:10, 13
**refers** 24:8
**reflects** 34:3, 13
**regarding** 29:21 30:13, 18 34:20 37:20 38:7
**regardless** 21:25 25:17
**regular** 9:19
**regularly** 9:7
**regulators** 9:17
**regulatory** 9:18
**reinstatement** 41:14
**related** 32:22
**relationship** 19:25
**relative** 43:14
**relevancy** 32:8
**relevant** 5:20
**remember** 19:24
**reminder** 6:13
**repeat** 6:17
**rephrase** 6:17 31:13
**replaced** 37:14
**report** 8:14 15:22
**reported** 13:2
**Reporter** 1:19 5:2 6:19
**reports** 10:11 12:2
**represent** 4:11, 18, 20
**representations** 26:4

**represented** 25:7 27:7
**representing** 24:6
**required** 9:17
**resolution** 34:2, 11, 14
**respect** 7:2 8:22, 23 10:22 15:7 18:20 19:18 20:13 26:20 28:12, 16 31:14
**respond** 38:6
**responding** 38:8
**response** 30:4, 13
**responses** 29:16
**responsible** 8:6, 10
**resume** 5:14
**reverse** 34:8, 20
**review** 12:12, 13 14:4, 7 41:11
**reviews** 14:2
**RHR** 28:3, 6, 11
**RHR's** 28:16
**right** 6:3 10:24 12:4 13:6, 11, 24 17:14 18:16 19:17 24:9 35:8 40:25
**risk** 31:22, 25
**role** 8:20, 22 9:10, 13 22:24 30:24
**roles** 28:10
**Rome** 3:8 4:17
**room** 16:14
**roughly** 18:17
**rude** 38:2
**Rule** 5:17
**Rules** 1:16

< S >
**SABA** 2:1 3:3, 4 4:12 5:9 6:2, 4, 6 25:24 26:25 27:3 33:20, 22 39:16 40:6, 15, 19, 23 41:18
**sake** 6:19
**save** 44:10
**saying** 23:16, 18 24:5, 18 27:2 34:10
**says** 12:18 26:24 34:6
**seal** 43:17
**Second** 5:15 25:15
**secretary** 9:12, 25 10:11 14:12
**see** 11:20 12:24 15:8 16:20 25:21 36:9
**seen** 11:24
**sent** 5:16 12:11 21:12 41:8
**sentence** 12:22 33:24 34:24 35:3, 11, 17 36:5, 12
**separation** 30:1, 6, 14
**September** 15:2, 8 17:10
**series** 6:14
**session** 16:25 17:1, 4, 6, 7
**set** 21:23 25:16 43:17
**settlement** 31:1, 18 32:5 35:8 36:2
**Shaffer** 9:4 36:7
**shaking** 6:21
**SHEET** 44:1, 13 45:1 46:1
**sign** 41:20
**signature** 14:11
**SIGNATURE:________________________DATE** 45:23 46:23
**Signed** 44:16
**signing** 14:15
**silver** 38:11, 14, 15, 23 39:11, 13, 22 40:3
**simply** 14:15
**sit** 8:7 38:3
**situation** 19:10 22:21 37:10, 25
**Six** 7:12 8:1
**size** 31:21
**smart** 39:10
**smile** 38:5
**Smith** 3:3 4:14
**Somalya** 12:19 13:2, 12, 23
**Somalya's** 13:21 14:11
**somebody** 10:11 19:2
**soon** 36:8
**sorry** 10:7 23:11 24:18 27:13
**SOUTHERN** 1:2 4:7
**speak** 18:25 40:18
**speaking** 5:12
**speaks** 21:24 25:17
**specific** 10:19 16:20 29:10
**specifically** 24:14 25:10 26:9 29:17 35:15 38:20 39:19
**Spence** 18:2, 9 19:19 28:12, 16, 22 34:21
**spoke** 7:17
**SS** 43:2
**Stagnaro** 3:4
**stamp** 14:11
**stamped** 11:19 15:4 33:9
**stand** 35:19
**start** 8:2 25:3
**started** 8:12 18:23
**State** 1:19 4:10 6:7 43:1, 4, 21
**statement** 34:15
**STATES** 1:1 4:7
**stay** 16:25
**stenographically** 43:10
**Stop** 38:4
**story** 22:20, 22, 23
**strategic** 8:11
**Street** 1:21 3:9
**strike** 27:20
**styled** 4:5
**submitted** 14:7
**subsequently** 17:11
**succeeding** 28:17
**succession** 8:24 28:8, 11
**suggested** 24:25
**suit** 23:18, 19
**supervisor** 36:23 37:4, 5
**support** 22:5, 17
**Sure** 5:9 9:13 10:8 12:20 25:4 40:24
**SUSAN** 1:14 2:1, 13 4:4 5:3 6:7, 9 11:13 14:23 20:10 26:1, 11 33:3 41:7 42:1, 9 43:7 44:19 45:24 46:24
**suspect** 36:6
**swear** 5:2
**sworn** 5:5 43:8

< T >
**take** 4:4 6:23 9:23 10:2, 5, 12, 14, 15 17:19 40:6
**taken** 1:17 6:11 9:3, 13, 21 41:4 44:2, 8
**takes** 13:21
**talked** 19:23
**Tanner** 8:19
**Tayfun** 39:4, 25
**team** 8:10 18:7 19:20
**Tecumseh** 7:9
**teleconference** 20:11
**tenure** 34:3
**Teresa** 8:19
**terms** 34:14
**testify** 43:8
**testifying** 25:8
**testimony** 42:3 43:9
**Thank** 6:18 33:22
**THEREOF** 43:16
**thing** 12:15 20:14 26:14
**things** 5:8 8:6
**think** 19:1, 16 34:10 38:2, 25 39:1, 8, 9
**THIRD** 1:9, 20 2:8, 9 3:12 4:6, 20, 21, 23, 25 7:22 8:7, 11, 14, 16, 18, 25 9:22 11:21 17:23 18:1, 4, 10 21:11 24:12 28:18 30:21, 25 31:2, 15, 22 32:3, 23 34:5, 9, 19, 21 37:2, 11, 17 38:9 40:2 41:16 44:4
**Third-McHugh-Minutes** 11:20
**Third's** 20:17, 21 24:1 25:11 27:16, 24
**Thomas** 3:11 4:22
**thought** 28:21 39:9

**threat** 32:*14* 34:*7* 36:*13*, *14*, *15*
**threatening** 21:*12*, *16* 23:*17* 34:*15* 35:*4*
**threats** 32:*4*, *21*
**Thursdays** 20:*6*, *7*
**Tim** 18:*2*, *9* 28:*12*, *16*, *21* 29:*15* 34:*20*
**time** 4:*3* 8:*16* 18:*16* 21:*10* 30:*21* 38:*9*, *16* 41:*6*
**times** 39:*21*
**Today** 4:*2*, *4* 5:*12* 26:*4*, *8* 27:*8*
**today's** 7:*16*
**top** 21:*15* 32:*14* 36:*16*
**tort** 21:*1*, *2*
**Trail** 7:*9*
**transcript** 26:*2*, *9* 41:*20* 44:*7*
**transcription** 26:*23* 27:*1* 42:*3*
**transmittal** 5:*23*
**trial** 5:*19*, *25*
**true** 42:*2* 44:*10*
**truly** 34:*24*
**truth** 43:*8*, *9*
**try** 5:*18* 7:*2*
**trying** 21:*10* 26:*7* 27:*7*
**Tuesday** 1:*21* 4:*2* 21:*21* 33:*7*
**turn** 40:*16*
**Tuzun** 39:*5*, *25*
**typewriting** 43:*12*
**typewritten** 13:*25* 14:*6*
**typically** 30:*25* 31:*17* 36:*19*, *22* 37:*4*, *13*, *19*
**typing** 10:*20*

**< U >**
**uh-huhs** 6:*22*
**uh-uhs** 6:*22*
**understand** 6:*16* 7:*5* 10:*8* 26:*7* 27:*8* 40:*19*, *20*, *23*
**understanding** 20:*24* 21:*4*, *7* 22:*4* 26:*18* 27:*19*, *22* 44:*13*
**UNITED** 1:*1* 4:*7*
**University** 7:*19*
**unprivileged** 20:*15* 26:*15*
**untrue** 22:*23* 23:*2*
**update** 9:*14*, *16*
**use** 5:*22* 11:*1*, *4* 17:*16* 28:*7*

**< V >**
**verbally** 6:*21*
**verify** 14:*15*
**versus** 4:*6*
**video** 6:*20*
**Videographer** 3:*16* 4:*1* 5:*1* 41:*2*, *5*, *22*
**videotape** 4:*2*
**Videotaped** 1:*14*
**vs** 1:*7* 44:*4*

**< W >**
**wait** 6:*25* 41:*1*
**Walnut** 1:*20* 3:*12*
**want** 10:*23* 38:*4*
**wanted** 5:*24* 22:*20* 40:*16*
**way** 21:*22* 24:*2* 32:*10*
**Weekly** 20:*5*
**welcoming** 18:*25*
**Well** 10:*22* 12:*5* 16:*14* 19:*11* 24:*21* 25:*24* 26:*25* 27:*2* 40:*8*
**went** 21:*14*
**We're** 4:*3* 26:*7* 27:*7*
**WESTERN** 1:*3* 4:*8*
**Witness** 1:*15* 5:*2*, *4* 20:*13* 21:*25* 22:*9* 23:*11*, *13* 24:*17* 25:*18*, *22* 28:*2* 31:*12* 32:*9* 34:*18* 37:*9* 40:*9*, *24* 43:*11*, *16*
**work** 8:*18* 19:*5*
**write** 10:*25*
**writing** 43:*10*

**< X >**
**Xenia** 43:*17*

**< Y >**
**yeah** 16:*22* 35:*25* 39:*7* 40:*17*
**years** 7:*12* 8:*1*
**yesterday** 5:*15*

**< Z >**
**ZAUNBRECHER** 1:*15* 2:*1*, *13* 4:*5*, *18* 5:*3*, *11* 6:*9* 15:*10* 26:*11* 42:*1*, *9* 43:*7* 44:*19* 45:*24* 46:*24*