EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **PHILIP R. MCHUGH,** | : | Case No. 1:21-cv-00238 |
| Plaintiff, | : | Judge Michael R. Barrett |
| v. | : | |
| **FIFTH THIRD BANCORP, ET AL.** | : | **DECLARATION OF PHILIP R. MCHUGH IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT – ABUSE OF PROCESS AND RETALIATION** |
| Defendants. | : | |

I, Philip R. McHugh, being first duly cautioned and sworn, and being more than age eighteen and competent to testify about the matters contained herein, hereby testify and state as follows:

1. On August 15, 2019, I met with Greg Carmichael, the President, CEO, and Chairman of Fifth Third's Board of Directors at the time, for purposes of my 2019 mid-year review.

2. During this meeting on August 15, 2019, Mr. Carmichael was complimentary of my work, including with the Fifth Third regions, Wealth & Asset Management, and Business Banking.

3. Mr. Carmichael also informed me during this meeting that he intended to step down from his role as President, CEO, and Board Chairman, and that he would be recommending me to the Board of Directors as the next President and CEO of Fifth Third.

4. Mr. Carmichael stated to me at that time that I was the most qualified executive on the enterprise committee, that Tayfun Tuzun (CFO at the time) lacks business line experience, and that Tim Spence is too young and lacks banking experience.

5. On August 18, 2019, the Fifth Third executive team including myself attended an off-site retreat at the Inn at Perry's Cabin in Maryland – 308 Watkins Lane, St. Michaels, MD 21663.

6. Following an off-site dinner that evening, I was having a conversation with Robert Shaffer, the Chief HR Officer at that time over drinks.

7. During this conversation, Mr. Shaffer confirmed to me that he knew of my mid-year review discussion with Greg Carmichael, including the plans to recommend me to the Board as Mr. Carmichael's successor.

8. Mr. Shaffer confirmed that I would be succeeding Greg Carmichael, and voiced to me that I am the most qualified executive to be Greg Carmichael's successor.

9. Mr. Shaffer also stated that Mr. Spence is not ready, and that he would be well served observing me.

10. Mr. Shaffer confirmed he is excited to see me in the President & CEO role, and that he will do anything he can to make me successful.

11. On October 13, 2020, upon arriving to work Mr. Carmichael's assistant Lisa Wires informed me that Greg would like to see me.

12. I entered Mr. Carmichael's office at approximately 8:00am at which time he asked me to sit down and informed me that he wanted to share some organizational changes with me.

13. He proceeded to tell me that he plans to take the Regional Presidents and Wealth & Asset Management Divisions from me, and have them report to Tim Spence.

14. He also informed me that he is taking Middle Market Banking from me and having that report to Kevin Lavender (Head of Commercial Banking).

15. Mr. Carmichael went on to state that Tim Spence needs the experience of running the regions.

16. Following this, Mr. Carmichael informed me that he would like me to become Head of the Consumer Bank, the role I was previously promoted from in August 2018.

17. I inquired to Mr. Carmichael whether this change was the result of any performance issues.

18. He indicated this was not the result of any performance issues, that he was pleased with my performance, and that the regions and Wealth & Asset Management were performing well.

19. I also inquired to Mr. Carmichael whether there were any alternatives to the Head of Consumer Banking role, and he stated that yes there were many other roles.

20. Finally, I inquired to Mr. Carmichael whether I could have time to digest this conversation and then give him an answer, to which he stated yes that would be fine.

21. On Thursday, October 15, 2020 at approximately 11:00am I met with Mr. Carmichael again.

22. During this follow-up meeting, I informed Mr. Carmichael that I was surprised he never informed me that I would not be his successor.

23. He apologized, and acknowledged my excellent performance, and stated that I am the most experienced and most respected executive in the company.

24. I asked Mr. Carmichael at that time whether he had recommended Tim Spence to the Board of Directors as his successor, and he confirmed that he had done so.

25. I also asked Mr. Carmichael whether the Board of Directors had accepted his recommendation, and he confirmed they had accepted it.

26. I inquired to Mr. Carmichael why he did not inform me of the decision, and he apologized that he had not made that clear.

27. Mr. Carmichael went on to state that the changes were necessary for Mr. Spence to gain the experience necessary to succeed Mr. Carmichael, and further acknowledged that the changes were at my expense but were not, in any way, due to my performance.

28. I inquired to Mr. Carmichael how he would feel if he were in my shoes, and he indicated he would be disappointed but that he would take the consumer banking role.

29. At that time, I informed Mr. Carmichael that I was not going to take the Head of Consumer Banking Role, and that I wished to either stay in my current role or explore another role.

30. Despite his statements two days earlier, Mr. Carmichael stated that it was not an option to stay in my current role and he offered no other options, but stated that he would treat me like other departing executives.

31. I inquired to Mr. Carmichael whether I should hire an attorney, and Mr. Carmichael stated I did not need to do so.

32. Following this conversation with Mr. Carmichael, Mr. Shaffer called and informed me that the Bank was terminating my employment and characterizing it as a voluntary resignation based upon my refusal to accept the Head of Consumer Banking Role.

33. Mr. Shaffer confirmed this in a text on Saturday, October 17, 2020, a true and accurate copy of which is attached hereto as **Exhibit 1-A.**

34. I sent a text message response to Mr. Shaffer clarifying the direction, stating that "Bob, I was told by you and Greg that I did not need an attorney and told by you not to report to work on Monday."

35. That same day, October 17, 2020, I received a text message from Susan Zaunbrecher affirming my termination and offering to speak with me, and a true and accurate copy of that text exchange and the communications that followed are attached hereto as **Exhibit 1-B**.

36. Ms. Zaunbrecher and I scheduled a call for Monday, October 19, 2020 and went forward with that call.

37. Following the call, Ms. Zaunbrecher texted me again confirming a severance offer the Bank would make to me, and that I would receive the proposed agreement by courier (*See* **Exhibit 1-B**).

38. I sent a written counterdemand back to Ms. Zaunbrecher via e-mail on Wednesday, October 21, 2020, a true and accurate copy of the e-mail and counteroffer letter is attached hereto as **Exhibit 1-C.**

39. In response Ms. Zaunbrecher cancelled our follow-up call and then sent me a response letter attached hereto as **Exhibit 1-D.**

I declare under penalty of perjury that the foregoing is true and correct.

____________________________

Philip R. McHugh

Dated: 11/20/2026

EXHIBIT 1-A

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Bob Shaffer | 2020-10-16 11:09:13 | | 2020-10-16 11:09:20 | iMessage | Incoming | [redacted] | Bob Shaffer | Read | OK. I was calling you about Michigan. I've talked to Greg. We are going to keep our group 3 Michigan-based employees working remotely. However, Group 1 will continue to work in the office and we want Group 2 people, previously identified to be back in the office. Please let Tom and Dave know. Thanks. I will send a text to Enterprise letting them know of this decision as well |
| Bob Shaffer | 2020-10-16 14:46:30 | | 2020-10-16 15:12:41 | iMessage | Incoming | [redacted] | Bob Shaffer | Read | Can you please call me? |
| Bob Shaffer | 2020-10-17 12:04:39 | | 2020-10-17 12:41:42 | iMessage | Incoming | [redacted] | Bob Shaffer | Read | Phil, I understand you reached out to Greg today. Since you indicated you were getting an attorney please have your attorney contact Susan. As I told you yesterday, since you refuse to take the consumer lead role you are voluntarily resigning from the company, as there is no other position available. As such, and as I indicated yesterday, you do not need to come into the office and your last day with the company will be October 30. |
| Bob Shaffer | 2020-10-17 12:50:41 | 2020-10-17 12:50:41 | | iMessage | Outgoing | | | Delivered | Bob, I was told by you and Greg that I did not need an attorney and told by you not to report to work on Monday. |
| Bob Shaffer | 2020-11-12 14:33:18 | | 2020-11-12 14:45:01 | iMessage | Incoming | [redacted] | Bob Shaffer | Read | Questioned “Okay ” |

EXHIBIT 1-B

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Susan Zaunbrecher | 2020-05-29 11:55:14 | | 2020-05-29 11:58:46 | iMessage | Incoming | [redacted] | Susan Zaunbrecher | Read | This is good! It's info most don't get to hear. |
| Susan Zaunbrecher | 2020-07-10 07:27:24 | | 2020-07-10 07:27:26 | iMessage | Incoming | [redacted] | Susan Zaunbrecher | Read | For my lunch with Kim today, please let me know if there are topics to avoid. I assume Cinci plans, but anything else? |
| Susan Zaunbrecher | 2020-07-10 07:28:36 | 2020-07-10 07:28:38 | | iMessage | Outgoing | | | Delivered | No discussion about Cincinnati, I have not spoken with Tim. |
| Susan Zaunbrecher | 2020-08-26 21:00:05 | | 2020-08-26 21:00:07 | iMessage | Incoming | [redacted] | Susan Zaunbrecher | Read | From Thea:<br><br>Just an update that Peschke is preparing talking points. Stefan, Bertkau, and I will provide comments, and then I plan to have Peschke send to you, Phil, and Kevin H. We believe the message to the client is that (1) the loan can be paid off but then forgiveness is lost or (2) they can move forward without the SBA's approval (over which we have no control) but the loan would be in technical default and the SBA might decline forgiveness on that basis — that's an issue that just hasn't been tested. Apparently the borrower already asked the seller to put the loan amount into escrow. |
| Susan Zaunbrecher | 2020-08-27 05:53:48 | | 2020-08-27 06:46:19 | iMessage | Incoming | [redacted] | Susan Zaunbrecher | Read | I asked Thea and her team to prepare a short note that can be shared with the Regions and LOB regarding this PPP change of control issue. They will pass along to you, Kevin and Kala to review for distribution. |
| Susan Zaunbrecher | 2020-08-27 09:20:46 | | 2020-08-27 09:40:40 | iMessage | Incoming | [redacted] | Susan Zaunbrecher | Read | I leave PPP to you! |
| Susan Zaunbrecher | 2020-10-02 18:01:46 | | 2020-10-02 18:25:35 | iMessage | Incoming | [redacted] | Susan Zaunbrecher | Read | Really, if you need anything, just let me know. We are close by. |
| Susan Zaunbrecher | 2020-10-02 18:25:42 | 2020-10-02 18:25:42 | | iMessage | Outgoing | | | Delivered | Thank you |
| Susan Zaunbrecher | 2020-10-17 14:05:15 | | 2020-10-17 14:06:12 | iMessage | Incoming | [redacted] | Susan Zaunbrecher | Read | Phil, it is my understanding that you have turned down the Consumer job offer resulting in your voluntary resignation from the company. Bob has asked you not to return to the office with an end date of October 30. I do not not have any further information nor is there another alternative. If you wish to talk, we can; but please know that it will be in my capacity as counsel to the company. Susan |
| Susan Zaunbrecher | 2020-10-19 09:26:44 | | 2020-10-19 10:15:36 | iMessage | Incoming | [redacted] | Susan Zaunbrecher | Read | May I call you? If not now, let me know what works. |
| Susan Zaunbrecher | 2020-10-19 10:16:18 | 2020-10-19 10:16:19 | | iMessage | Outgoing | | | Delivered | Yes<br>After 10:30 would be fine, thank you |
| Susan Zaunbrecher | 2020-10-19 10:16:31 | | 2020-10-19 11:40:16 | iMessage | Incoming | [redacted] | Susan Zaunbrecher | Read | Ok. Thanks. |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Susan Zaunbrecher | 2020-10-19 10:57:32 | | 2020-10-19 11:40:16 | iMessage | Incoming | [redacted] | Susan Zaunbrecher | Read | Thanks for speaking with me. To put in writing what we discussed:<br>1. 18 months base salary<br>2. Retirement eligible items, including unvested equity.<br>3. Assist with communications messaging about your departure, on a cooperative basis.<br><br>On the comms piece, we need to get moving quickly to get it done in order to speak with your former team.<br><br>We will begin to work on the paperwork on the other items.<br>Thanks |
| Susan Zaunbrecher | 2020-10-19 16:32:32 | | 2020-10-19 17:03:20 | iMessage | Incoming | [redacted] | Susan Zaunbrecher | Read | Do you have a home email where I can send a draft separation agreement for your review? Thanks. |
| Susan Zaunbrecher | 2020-10-19 17:04:11 | 2020-10-19 17:04:12 | | iMessage | Outgoing | | | Delivered | Not yet |
| Susan Zaunbrecher | 2020-10-20 14:08:46 | | 2020-10-20 14:09:01 | iMessage | Incoming | [redacted] | Susan Zaunbrecher | Read | Phil, I will courier your separation agreement to your home this evening. Please call me in the morning to discuss it. Greg will be announcing your departure Thursday so please do let me know when we can talk in the morning. Thanks |
| Susan Zaunbrecher | 2020-10-20 15:01:29 | 2020-10-20 15:01:30 | | iMessage | Outgoing | | | Delivered | Yes, I can be available late morning, 11:00am would work best. |
| Susan Zaunbrecher | 2020-10-20 15:02:17 | | 2020-10-20 17:37:15 | iMessage | Incoming | [redacted] | Susan Zaunbrecher | Read | Ok. I will call. Thank you. |

EXHIBIT 1-C

**Subject:** Re: See Attached Letter
**From:** Phil Mchugh <mchugh.phil@yahoo.com>
**Date:** 10/21/2020, 11:06 AM
**To:** "Zaunbrecher, Susan" <Susan.Zaunbrecher@53.com>

Susan, Thank you.
I will be available. Phil

Sent from my iPad

> On Oct 21, 2020, at 10:55 AM, Zaunbrecher, Susan <Susan.Zaunbrecher@53.com> wrote:

> Thank you, Phil. I will need to postpone our 11:00 discussion in order to digest your letter and discuss it with the appropriate people here. I will get back to you once I have had that opportunity.
> Thanks,
> Susan
>
> Get Outlook for iOS
>
> ---
>
> **From:** Phil Mchugh <mchugh.phil@yahoo.com>
> **Sent:** Wednesday, October 21, 2020 10:42:39 AM
> **To:** Zaunbrecher, Susan <Susan.Zaunbrecher@53.com>
> **Subject:** See Attached Letter
>
> **CAUTION EXTERNAL EMAIL**
>
> **DO NOT open attachments or click on links from unknown senders or unexpected emails**
>
> Susan,
>
> Please see the attached letter. I look forward to our conversation at 11:00.
>
> Phil
>
> **CAUTION EXTERNAL EMAIL**
>
> **DO NOT open attachments or click on links from unknown senders or unexpected emails**
>
> ${If.App.WXP}Classification: Internal Use${If.End}
>
> This e-mail transmission contains information that is confidential and may be privileged. It is intended only for the addressee(s) named above. If you receive this e-mail in error, please do not read, copy or disseminate it in any manner. If you are not the intended recipient, any disclosure, copying, distribution or use of the contents of this information

McHugh 00901

> is prohibited. Please reply to the message immediately by informing the sender that the message was misdirected. After replying, please erase it from your computer system. Your assistance in correcting this error is appreciated.

Dear Susan,

I have received your proposal, and under the circumstances of my termination, find its financial terms to be remarkably insufficient.

Notwithstanding Greg's recent decisions, which both only run contrary to the earlier promises he made to me but also appear to be clear violations of the age anti-discrimination laws, I would like to resolve matters amicably with Fifth Third, both for its purposes and mine.

I will agree to an early retirement, and Fifth Third's prompt announcement of such, if, and only if, the bank signs a separation agreement which:

1. Pays my base compensation, variable compensation, and long-term incentive for two years;
2. Pays my deferred compensation, my tax planning benefit, and my unused vacation for 2020;
3. All my RSUs, SARs, and performance shares fully vest, to be paid in accordance with plan document;
4. My family continues on the medical and dental plan under active employee family costs until I reach Medicare eligibility, or secure equivalent coverage.

I also expect to be compensated for the lost financial opportunity to become CEO of one of the top ten commercial banks in the United States. Reference to the current proxy solicitation provides an easy calculation of the value of such a position, were it held for five or more years. As an inducement to settlement, I will discount that claim to $7.5 million.

I will of course refrain from competing against Fifth Third Bank through December 31, 2022, and will abide by the customary covenants upon departure.

If we are not able to resolve this separation both quickly and amicably, I will retain counsel to protect my interests.

I look forward to hearing from you, and hopefully, to conclude on a high note and in positive form my 34 years with Fifth Third Bank.

Phil

EXHIBIT 1-D

FIFTH THIRD BANCORP

October 21, 2020

Phil McHugh
8000 Finley Lane
Cincinnati OH 45242

Phil,

I read your note with some care and it does not sound like you are in a place to have a constructive discussion. Further, based on your demand, it does not appear that a constructive discussion is even possible. Please advise your counsel to contact me and I will decide whether to speak with them directly or engage outside counsel.

Very truly yours,

Susan B. Zaunbrecher
EVP, Chief Legal Officer and Corporate Secretary

Classification: Internal Use