EXHIBIT 2

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **PHILIP R. MCHUGH,** | : | Case No. 1:21-cv-00238 |
| Plaintiff, | : | Judge Michael R. Barrett |
| v. | : | |
| **FIFTH THIRD BANCORP, ET AL.** | : | **DECLARATION OF JOSHUA M. SMITH, ESQ. IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT – ABUSE OF PROCESS AND RETALIATION** |
| Defendants. | : | |

I, Joshua M. Smith, hereby certify pursuant to 28 U.S.C. § 1746 that the statements below are true and correct to the best of my knowledge, information and belief:

1. I have personal knowledge of the information presented herein.

2. I have served as Plaintiff's co-counsel since November, 2020.

3. Included as Exhibit 2-A to this Declaration is a true and accurate copy of text chain correspondence between Robert Shaffer and Susan Zaunbrecher, dated October 17, 2020, produced in discovery by Defendants.

4. Included as Exhibit 2-B to this Declaration is a true and accurate copy of text chain correspondence between Susan Zaunbrecher, Robert Shaffer, and Timothy Spence, dated October 18, 2020, produced in discovery by Defendants.

5. Included as Exhibit 2-C to this Declaration is a true and accurate copy of correspondence from Susan Zaunbrecher, dated October 23, 2020, submitted to Plaintiff's Counsel, and previously produced in discovery by Plaintiff.

6. Included as Exhibit 2-D to this Declaration is a true and accurate copy of e-mail correspondence from Michael Cioffi dated October 27, 2020, submitted to Plaintiff's Counsel, and previously produced in discovery by Plaintiff.

7. Included as Exhibit 2-E to this Declaration is a true and accurate copy of Defendant's Initial Disclosures submitted to Plaintiff.

I declare under penalty of perjury that the foregoing is true and correct.

__________________________
Joshua M. Smith

Dated: ___________________

# EXHIBIT 2-A

# [PRODUCED FOR *IN CAMERA* INSPECTION]

# EXHIBIT 2-B

# [PRODUCED FOR *IN CAMERA* INSPECTION]

EXHIBIT 2-C

FIFTH THIRD BANCORP

October 23, 2020

**Pursuant to Evidence Rule 408 Settlement Discussion**

John J. McHugh, III
McHugh & McCarthy, Ltd.
5580 Monroe Street
Sylvania, OH 43560

Dear John,

Our calls yesterday were very helpful to understand your client's claims. This will further that discussion under Rule 408 as we agreed.

As we discussed when I called you back, my client feels very strongly that we have the facts and evidence to dispute Phil's claims. It is important for you to know prior to making any filing that Fifth Third will not only strongly defend against these claims but will take whatever action is appropriate against both your client and you for inaccurate and frivolous claims that are based on lies and malice.

In order to substantiate our strong position, let me reiterate some of what I told you yesterday and provide further factual information, so that you can make clear decisions on your actions.

Last week, Greg told Phil that Tim was being elevated to president as a step to potentially becoming the next CEO, and that Greg wanted Phil to take the role of Head of Consumer Banking reporting to Tim. The position of Head of Consumer Banking is a proxy-level position, meaning that Phil would have become a Named Executive Officer in the 2021 proxy, with compensation in the top five executives in the Company. This is due to Consumer being responsible for 40% of the P & L of the company. Greg wanted Phil for this job because of his experience and abilities. Greg also hoped that Phil, in this position, would be beneficial to the company in assisting with the leadership succession beginning to take place with Tim becoming president. Phil refused the position and told Greg that he would stay in the regions position. Through a number of conversations over a couple of days, it was made clear to Phil that the regions position was going to someone else, and that if he did not take Consumer there was no other position available. Phil's refusal and subsequent departure from the company was a voluntary resignation. Moreover, during all of the discussions with Greg and Bob Shaffer (Chief Human Resources Officer) there was no discussion of the CEO position.

After the issues, comments and behaviors of last week, Fifth Third can only believe that Phil has conjured up this CEO claim in a play for more money. To that end, we will be prepared to prove that he had absolutely no basis for the belief that he was promised the CEO position, nor should he be paid for not being named CEO. We are fully prepared with evidence and witnesses that clearly support that Phil was not in consideration for the position and that he knew it.

Just a few facts to help you understand why we are so bullish on our position:

- About two years ago, Greg asked Phil to take the Cincinnati President position. Bob Shaffer and the then Head of the Regions, Mike Michael, each had a conversation with Phil about this opportunity. Phil told each executive separately that he would not do it because he was only going

Classification: Confidential

to work five more years, and it would not be fair to the company because success would take longer and the need for continuity warranted someone who was going to work for more than five years.

- In August 2019, Greg had a private conversation with Phil and asked him if he would consider an interim CEO position, if the board agreed, until Tim Spence was ready to take over. At that time Greg's timeline to retirement was shorter than now. On the same day Bob Shaffer also had a conversation with Phil confirming a possible interim CEO position should the board support it.
- Between August 2019 and February 2020 there was no further discussion with Phil about this plan, nor did Phil initiate any such conversation.
- In February 2020, at Phil's performance review, Greg told Phil that his timeline to retirement had been extended and the other plan was no longer being considered. Greg did tell Phil he was doing a good job but nothing more about a CEO promotion promise.
- Between February and last week, there were no further discussions about Phil becoming CEO. Not by Greg, nor by Phil. However, there was definitely known activity vetting Tim for the position. In fact, Phil participated in some of it through an interview with the executive development agency hired to vet Tim. Moreover, he was aware of the Board meeting with this agency at our last board meeting in September. If he truly believed he was being considered, why didn't he ask Greg about it? Reasonable people would agree that if you think that you are being considered for the top job, someone would say something. Further, we would expect that a valid candidate would want to know about the timing and a development plan for any such transition. We believe he would have asked to speak with board members and there would have been a vetting process disclosed to him. None of this took place.
- As to promises/assurances - none were made. Indeed, Greg could not do so without Board approval. That approval was never given and in fact, we have the Human Capital board committee materials that indicate that Phil was never considered for the CEO position except as the second option after Tayfun in an emergency situation.

In light of the timeline and uncontestable facts set forth above, any claim of age discrimination is preposterous. Additionally, there is zero evidence that supports this conjured promise upon which Phil makes his contract claim. Doing a good job and being good at your job are prerequisites for any executive position. Recognition of good performance does not indicate preparedness for or a promise of a CEO position.

Additional facts will support the company's position. Pursuing them and vigorously stating them, which we are prepared to do, will inevitably cause harm and discomfort to your client.

While we don't want to litigate this matter now, the purpose of the letter is to ensure that you and Phil know how serious the company is about vigorously defending itself and taking strong action against untruths and inaccuracies.

Very truly yours,

Susan B. Zaunbrecher
Chief Legal Officer and Corporate Secretary

Classification. Confidential

EXHIBIT 2-D

**Joshua M. Smith, Esq.**

| | |
|---|---|
| **From:** | Cioffi, Michael L. <Cioffi@BlankRome.com> |
| **Sent:** | Tuesday, October 27, 2020 6:30 PM |
| **To:** | John J. McHugh III |
| **Subject:** | Phillip McHugh v. Fifth Third Bancorp, et al. |

Dear John:

This Firm has been retained by Fifth Third Bank, National Association ("Fifth Third Bank" or the "Bank"). We write in response to your last email communication with Fifth Third Bank Chief Legal Officer Susan Zaunbrecher regarding the recent events that have transpired involving your client, Phillip McHugh. We are also in receipt of your draft Complaint and have thoroughly reviewed its contents. The purpose of this letter is to provide you and your client notice, pursuant to Rule 11 of the Ohio Rules of Civil Procedure and Ohio Revised Code § 2323.51, that any action filed against Fifth Third Bank would be plainly frivolous and in violation of both Rule 11 and Ohio's frivolous conduct statute. Consequently, in the event you proceed with filing a frivolous lawsuit against Fifth Third Bank on behalf of Mr. McHugh, please be advised that the Bank will vigorously pursue all sanctions, as well as tort and other remedies—including but not limited to defamation— available under Ohio law.

## I. Ohio Civil Rule 11 & Ohio Revised Code § 2323.51

### A. Rule 11

Ohio Civil Rule 11 imposes the following duty on attorneys: "[t]he signature of an attorney or pro se party constitutes a certificate by the attorney or party that the attorney or party has read the document; that to the best of the attorney's or party's knowledge, information, and belief there is good ground to support it; and that it is not interposed for delay."[1] Under Rule 11, the obligation is on the attorney to satisfy himself that the document he presents to the court is presented for a proper purpose and is supported in fact and law.[2] This obligation places the burden of inquiry and research squarely on the shoulders of the attorney.[3] The "appropriate sanction" language of Rule 11 encompasses the imposition of an award to the opposing party of expenses and reasonable attorney fees incurred in bringing any filing under Rule 11, with courts having wide latitude in determining what type of sanction is appropriate in a given case.[4]

### B. R.C. § 2323.51

R.C. § 2323.51 provides, in pertinent part, that "any party adversely affected by frivolous conduct may file a motion for an award of court costs, reasonable attorney's fees, and other reasonable expenses incurred in connection with the civil action or appeal."[5] Under Ohio's frivolous conduct statute, where an opposing party institutes a civil action that is wholly meritless from the outset of litigation, a litigant may move to seek reimbursement of *all* costs incurred in defending the meritless suit.

In contrast to Rule 11—which requires a finding of willfulness—the imposition of sanctions under R.C. § 2323.51 requires a finding of "frivolous conduct" by a party or his counsel. "Frivolous conduct" includes conduct that: (1) serves merely to harass or maliciously injure another party or is intended to serve another improper purpose, such as causing unnecessary delay or needless increased litigation costs; (2) is not warranted under existing law; and (3) consists of allegations or other factual contentions that have no evidentiary support or are not likely to have such support after a reasonable opportunity for further investigation or discovery—all of which would be applicable in the event suit was filed against Mr. Carmichael.[6]

Importantly, if a party persists in relying on allegations or factual contentions when no evidence supports it after the party has had the opportunity to investigate the truth of those allegations or contentions—as would plainly be the case if you chose to pursue litigation following receipt of this letter—then the party has engaged in frivolous conduct as a matter of law.[7] In addition, when a reasonable inquiry by a party's attorney should reveal the inadequacy of a claim, a finding that the attorney has engaged in frivolous conduct is justified.[8]

## II. Factual Background & Discussion

In your draft Complaint, you allege that in August 2019 Mr. McHugh was "promised" that he would be recommended as the next President and Chief Executive Officer ("CEO") of Fifth Third Bank.[9] You further allege in the draft Complaint that Mr. McHugh was "discriminated against in his employment by the Bank because of his age" as a result of him not being appointed as CEO in October 2020.[10] These are patently false assertions and ones that, if pursued through litigation, would plainly satisfy the requirements for an award of sanctions under both Rule 11 and R.C. § 2323.51.

Outside of your client's naked assertions, there is virtually no support whatsoever for any of the allegations articulated in the draft Complaint. Nor are there any contemporaneous emails, evaluations, or other documents of any kind to provide even a scintilla of support for these bald accusations. Of note, we have reviewed Mr. McHugh's performance evaluations—and his 2019 evaluation in particular—and find no references whatsoever as to any promise relating to the CEO position at the Bank. Similarly, Mr. McHugh's 2019 Self-Evaluation is devoid of any reference to any promise or plan relating to an anticipated transition to the role of CEO. Furthermore, the Complaint fails as a matter of law because it only contains the conclusion that your client was "demoted," without alleging any facts that constitute a "demotion" under Ohio law. There are no such facts. We will address this defect in a Motion to Dismiss.

Ultimately, there is a complete absence of *any* basis in law or fact that would be sufficient to allow your client to pursue an age discrimination claim against Fifth Third Bank or any of its officers as it relates to the subject matter of your draft Complaint. Please provide any evidence in your possession that would support these assertions made by your client in the draft Complaint.

## III. Conclusion

Your client cannot maintain a cause of action for age discrimination under Ohio law against Fifth Third Bank or any officer or director of the Bank as it relates to the subject matter of your draft Complaint. Having been informed of the lack of viability of any claims against Fifth Third Bank, any litigation instituted against the Bank or any individual defendant—after having been informed by this letter that your client possesses no viable claim against our clients—would constitute a plain and unambiguous violation of Ohio Civil Rule 11 and R.C. § 2323.51 and, in turn, would warrant the imposition of sanctions as a result of such improper and frivolous conduct. As such, please consider this formal notice pursuant to Rule 11 and R.C. § 2323.51 that if you choose to proceed further with instituting litigation against Fifth Third Bank, we will vigorously pursue sanctions against you for the time, expense, and other damages incurred by the Bank in defending against your meritless claims. In addition to Rule 11 and R.C. § 2323.51, we will also vigorously pursue tort and other remedies, including but not limited to defamation, available under Ohio law.

**Michael L. Cioffi** | BLANKROME
1700 PNC Center | 201 East Fifth Street | Cincinnati, OH 45202
O: 513.362.8701 | F: 513.362.8702 | cioffi@blankrome.com

************************************************************************************************
******

This message and any attachments may contain confidential or privileged information and are only for the use of the intended recipient of this message. If you are not the intended recipient, please notify the Blank Rome LLP or Blank Rome Government Relations LLC sender by return email, and delete or destroy this and all copies of this message and all attachments. Any unauthorized disclosure, use, distribution, or reproduction of this message or any attachments is prohibited and may be unlawful.

************************************************************************************************
******

[1] Ohio Civ.R. 11.

[2] *Moore v. Greater Cleveland Regional Transit Auth.*, 44 Ohio Misc.2d 25, 29, 542 N.E.2d 359 (C.P. 1987).

[3] *Id.*

[4] *Neubauer v. Ohio Remcon, Inc.*, 10th Dist. Franklin No. 05AP-946, 2006-Ohio-1481, ¶ 28 (citing Civ.R. 11); *Stone v. House of Day Funeral Service, Inc.*, 140 Ohio App.3d 713, 721, 748 N.E.2d 1200 (6th Dist. 2000).

[5] R.C. § 2323.51.

[6] *Krohn v. Krohn*, 2017-Ohio-408, ¶ 29, 84 N.E.3d 249 (6th Dist.); R.C. § 2323.51.

[7] *Carasalina, LLC v. Bennett*, 10th Dist. Franklin No. 14AP-74, 2014-Ohio-5665, ¶¶ 35-36.

[8] *Ron Scheiderer & Assoc. v. London*, 81 Ohio St.3d 94, 98, 689 N.E.2d 552, 1998-Ohio-453.

[9] *See* Draft Complaint, ¶¶ 15-16.

[10] *See id.* at ¶ 31.

EXHIBIT 2-E

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| PHILIP R. McHUGH,<br><br>Plaintiff,<br><br>vs.<br><br>FIFTH THIRD BANCORP, *et al.*,<br><br>Defendants. | Case No. 1:21-cv-00238<br><br>Judge: Hon. Michael R. Barrett |

**DEFENDANTS FIFTH THIRD BANCORP'S, FIFTH THIRD BANK, NATIONAL ASSOCIATION'S, AND GREGORY D. CARMICHAEL'S INITIAL RULE 26(a) DISCLOSURES**

Defendants Fifth Third Bancorp, Fifth Third Bank, National Association, and Gregory D. Carmichael (collectively "Fifth Third Bank" or the "Bank"), by and through their undersigned counsel, Blank Rome LLP, hereby make the following Initial Disclosures pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure and the parties' Joint Discovery Plan.

These disclosures are made based on information reasonably available to Fifth Third Bank as of the present date. By making these disclosures, Fifth Third Bank does not represent that it is identifying every document, tangible thing, or witness that it may use in support of its claims and defenses in the above-captioned matter.

These disclosures are made without waiving: (1) the right to object on the grounds of competency, privilege, relevancy and materiality, hearsay or any other proper ground; and (2) the right to object on any and all grounds, at any time, to any other discovery request or proceeding involving or relating to the subject matter of these disclosures.

In making these disclosures, Fifth Third Bank is making a good faith attempt to produce the information presently known and available. Fifth Third Bank has not yet completed its investigation of the facts related to the action, has not yet completed discovery in this action, and has not yet completed preparation for trial. Fifth Third Bank expressly reserves the right to supplement these disclosures at a later time, should it deem such supplementation necessary or appropriate, in accordance with the Federal Rules of Civil Procedure at appropriate intervals during the discovery process as the issues raised by the pleadings are clarified, and as additional information is made known to the parties.

Any information or documents produced in these disclosures are produced solely for purposes of this action and are subject to all objections as to competence, relevance, materiality, propriety and admissibility, and any other objections or grounds that would require the exclusion of any evidence at trial or in any proceeding in this action. All applicable objections are reserved and may be interposed later. No incidental or implied admissions are intended by these disclosures. Further, Fifth Third Bank's disclosures herein do not waive, and Fifth Third Bank expressly reserves the right: (1) to object to any effort to use any disclosure in any step or proceeding in this action or any other action; (2) to request a stay of this action; and (3) to object on any ground to other discovery requests regarding the subject matter of any disclosure herein.

**A. Rule 26(a)(1)(A)(i): The name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment.**

Subject to the foregoing qualifications, based on Fifth Third Bank's reasonable, preliminary, ongoing investigation, the following individuals may have knowledge regarding the parties' claims and/or defenses in the above-captioned matter:

a. **Gregory D. Carmichael**
Chairman, President and Chief Executive Officer, Fifth Third Bancorp
Contactable through Blank Rome LLP

Gregory Carmichael has information relevant to the facts alleged in Plaintiff's Complaint and Fifth Third Bank's Counterclaim for abuse of process.

b. **Robert Shaffer**
Chief Human Resources Officer, Fifth Third Bancorp
Contactable through Blank Rome LLP

Robert Shaffer has information relevant to the facts alleged in Plaintiff's Complaint and Fifth Third Bank's Counterclaim for abuse of process.

c. **Michael B. McCallister**
Chair, Fifth Third Bank Human Capital and Compensation Committee
Contactable through Blank Rome LLP

Michael McCallister has information relevant to the facts alleged in Plaintiff's Complaint and Fifth Third Bank's Counterclaim for abuse of process.

d. **Gary R. Heminger**
Member, Fifth Third Bank Human Capital and Compensation Committee
Contactable through Blank Rome LLP

Gary Heminger has information relevant to the facts alleged in Plaintiff's Complaint and Fifth Third Bank's Counterclaim for abuse of process.

e. **Eileen A. Mallesch**
Member, Fifth Third Bank Human Capital and Compensation Committee
Contactable through Blank Rome LLP

Eileen Mallesch has information relevant to the facts alleged in Plaintiff's Complaint and Fifth Third Bank's Counterclaim for abuse of process.

f. **Marsha C. Williams**
Member, Fifth Third Bank Human Capital and Compensation Committee
Contactable through Blank Rome LLP

Marsha Williams has information relevant to the facts alleged in Plaintiff's Complaint and Fifth Third Bank's Counterclaim for abuse of process.

g. **Emerson L. Brumback**
Member, Fifth Third Bank Human Capital and Compensation Committee
Contactable through Blank Rome LLP

Emerson Brumback has information relevant to the facts alleged in Plaintiff's Complaint and Fifth Third Bank's Counterclaim for abuse of process.

h. **Plaintiff Philip McHugh**
800 Finley Lane
Cincinnati, Ohio 45242

Plaintiff Philip McHugh has information relevant to the facts alleged in Plaintiff's Complaint and Fifth Third Bank's Counterclaim for abuse of process.

i. **Colleen Theresa McHugh Sweeney**
7248 Osceola Drive
Cincinnati, Ohio 45243

Colleen Theresa McHugh Sweeney has information relevant to the facts alleged in Plaintiff's Complaint and correspondence initiated and engaged in by Plaintiff's family members with employees of Fifth Third Bank after Plaintiff had voluntary resigned from his position at the Bank in October 2020.

j. **Suzanne McHugh**
800 Finley Lane
Cincinnati, Ohio 45242

Suzanne McHugh has information relevant to the facts alleged in Plaintiff's Complaint and correspondence initiated and engaged in by Plaintiff's family members with employees of Fifth Third Bank after Plaintiff had voluntary resigned from his position at the Bank in October 2020.

k. **Philip Raymond McHugh, Jr.**
800 Finley Lane
Cincinnati, Ohio 45242

Philip McHugh, Jr. has information relevant to the facts alleged in Plaintiff's Complaint and correspondence initiated and engaged in by Plaintiff's family members with employees of Fifth Third Bank after Plaintiff had voluntary resigned from his position at the Bank in October 2020.

l. **Patrick McHugh**
800 Finley Lane
Cincinnati, Ohio 45242

Patrick McHugh has information relevant to the facts alleged in Plaintiff's Complaint and correspondence initiated and engaged in by Plaintiff's family members with

employees of Fifth Third Bank after Plaintiff had voluntary resigned from his position at the Bank in October 2020.

m. **All Witnesses Identified in Plaintiff's Initial Rule 26(a) Disclosures/Discovery Responses**

Witnesses identified by Plaintiff in his Initial Rule 26(a) Disclosures and/or his discovery responses may have information relevant to the facts alleged in Plaintiff's Complaint and Fifth Third Bank's Counterclaim for abuse of process.

Fifth Third Bank expressly reserves the right to rely on any and all witnesses identified by Plaintiff to establish its claims and defenses in this case.

Fifth Third Bank expressly reserves the right to supplement this list of persons likely having discoverable information in the event that additional information becomes available to it during discovery or its investigation as permitted by the Federal Rules of Civil Procedure.

**B. Rule 26(a)(1)(A)(ii): A copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment.**

Subject to the foregoing qualifications, based on Fifth Third Bank's reasonable, preliminary, ongoing investigation, Fifth Third Bank may use the following categories of documents to support its claims in the above-captioned matter:

a. Business records of Fifth Third Bank.

b. Performance reviews of Plaintiff Philip McHugh and other employees of Fifth Third Bank.

c. Records of RHR International LLP relating to Fifth Third Bank's evaluation and vetting process for the position of Fifth Third Bancorp President and CEO.

Fifth Third Bank expressly reserves the right to rely on any and all documents produced by Plaintiff to establish its claims and defenses in this litigation.

Fifth Third Bank's investigation is ongoing, and Fifth Third Bank reserves the right to supplement its initial disclosures should any documents become available, and to identify

additional documents that may be disclosed or discovered, or which may become relevant in this action as permitted by the Federal Rules of Civil Procedure.

**C. Rule 26(a)(1)(A)(iii): A computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered.**

Subject to the foregoing qualifications, based on Fifth Third Bank's reasonable, preliminary, ongoing investigation, Fifth Third Bank provides the following computation of damages with respect to its abuse of process Counterclaim.

In order to establish the tort of abuse of process, a party must show that: (1) a legal proceeding was properly initiated with probable cause; (2) the proceeding was perverted to accomplish an ulterior motive for which it was not designed; and (3) direct damage ensued from the wrongful use of process.[1] As this is a tort action, damages for abuse of process can generally be recovered for injuries sustained as a natural and probable consequence of the wrongful conduct.[2]

More specifically, "[d]amages recoverable for abuse of process are compensatory for the natural results of the wrong, and may include recompense for physical or mental injury; expenses; loss of time; *and injury to business, property or financial standing*.[3] Moreover, intangible damages, such as reputational damages, are also recoverable on a claim for abuse of process where

---

[1] *Yaklevich v. Kemp, Schaeffer & Rowe Co., L.P.A.*, 68 Ohio St.3d 294, 298 (1994).
[2] *Johnson v. Thrift S. & L. Co.*, 1st Dist. Hamilton No. C-920115, 1993 WL 323380, at *9 (May 26, 1983).
[3] *Huggins v. Winn-Dixie Greenville, Inc.*, 252 S.C. 353, 362 (S.C. 1969) (emphasis added).

they could be considered the natural and probable consequence of the wrongful conduct.[4] Additionally, attorneys' fees are also recoverable as damages on an abuse of process claim as well.[5]

With respect to the reputational harm incurred by the Bank, because reputational damages are "hard-to-quantify injuries," evidence regarding the *specific* amount of resulting damages is not required.[6] Since reputational damages are not amenable to exact calculation, the factfinder must use "sound judgment" in determining the amount of such damages.[7] Similarly, a jury "[is] free to place any dollar amount on [the noneconomic] harm," so long as it is not "so grossly executive."[8] The precise amount of these damages will be established at trial.

With respect to the attorney's fees component of its damages claim, the Bank will be forced to expend approximately $1.25 million over the course of this litigation. This figure will be exacerbated and increased if Plaintiff proceeds to conduct the large number of depositions he identified during the parties' Rule 26(f) conference in April.

In addition to compensatory damages, Fifth Third Bank is also entitled to punitive damages as a result of Plaintiff's egregious and malicious conduct which, from the outset of this action, has

---

[4] *Id.* at 363; *Guilfoile v. Shields Pharmacy, LLC*, 2020 WL 291368, at *4 (D. Mass. Jan. 21, 2020); *Millennium Equity Holdings, LLC v. Mahlowitz*, 456 Mass. 627, 650 (Mass. 2010) (judgment affirmed by Massachusetts Supreme Judicial Court in favor of plaintiff on abuse of process claim; plaintiff could recover for "intangible harm to [plaintiff's] reputation separate from and in addition to any loss of business or any other pecuniary harm he may have suffered"); *Lawrence v. Grindle*, 534 N.W.2d 414 (Iowa 1995) (noting that damages to one's reputation have been held to be recoverable in actions of abuse of process).

[5] *Guilfoile*, 2020 WL 291368, at *4; *Millennium Equity Holdings*, 456 Mass. at 645 (stating that "[t]he 'natural and probable' consequences of an abuse of process lawsuit include the costs incurred in successfully defending the charge" and "[a]s such, fees for defending such a lawsuit are considered compensatory damages, not attorney's fees") (quoting *American Velodur Metal, Inc. v. Schinabeck*, 20 Mass. App. Ct. 460, 470 (1985)).

[6] *Sherwin-Williams Co. v. JB Collision Services, Inc.*, 768 Fed. Appx. 756, 759 (9th Cir. 2019).

[7] *Innovative Block of South Texas, Ltd. v. Valley Builders Supply, Inc.*, 603 S.W.3d 409, 423 (Tex. 2020).

[8] *Sherwin-Williams Co.*, 768 Fed. Appx. at 759 (citing *Rony v. Costa*, 210 Cal. App. 4th 746, 756, 148 Cal.Rptr.3d 642 (Cal. 2012)).

been designed for no purpose other than to damage the Bank's financial position and its reputation with customers, other consumers, and the community as a whole—all because the Bank did not capitulate and make him CEO.

The purpose of punitive damages is not to compensate the plaintiff, but to punish and deter certain conduct.[9] A punitive damages award "is more about [the] defendant's behavior than the plaintiff's loss."[10] The Ohio Supreme Court has instructed that the focus of the award should be the defendant.[11] "There is no magic formula for determining the proper amount of punitive damages. Rather, the amount that should be awarded is the amount that best accomplishes the twin aims of punishment and deterrence as to that defendant."[12] The Ohio Supreme Court has permitted punitive damages awards with a 6,250-to-one damages ratio to stand,[13] and such large disparities are allowable because a punitive damages award is more about the behavior of the party responsible for the wrongful conduct.[14]

While the Bank understands that punitive damages awards in amounts that are many times over the total amount of a total compensatory damages award is plainly admissible in Ohio, in adhering to the Ohio Supreme Court's guidance that punitive damages should "not require, or invite financial ruination of a defendant that is liable for punitive damages [and that a] punitive damages award should not go beyond what is necessary to achieve its goals,"[15] the Bank seeks punitive damages in the amount of $2,250,000—which represents the approximate total annual

---

[9] *Moskovitz v. Mt. Sinai Med. Ctr.*, 69 Ohio St.3d 638, 651, 635 N.E.2d 331 (1993).
[10] *Dardinger v. Anthem Blue Cross & Blue Shield*, 98 Ohio. St.3d 77, 781 N.E.2d 121, 2002-Ohio-7113, ¶ 178.
[11] *Id.*
[12] *Id.* ¶ 99.
[13] *Wightman v. Consolidated Rail Corp.*, 86 Ohio St.3d 431, 438, 715 N.E.2d 546, 1999-Ohio-119.
[14] *Id.* at 439.
[15] *Dardinger*, 98 Ohio St.3d at ¶ 178.

compensation Plaintiff would have received from the Bank in 2021 had he not voluntarily resigned his position and then immediately thereafter initiated this baseless, malicious litigation. More important than that, this figure is both reasonable—equal to one year of Plaintiff's pay—and accomplishes the twin aims of punishment and deterrence as to Plaintiff.

Fifth Third Bank expressly reserves the right to supplement this disclosure in the event that additional information becomes available to it during discovery or its investigation as permitted by the Federal Rules of Civil Procedure.

**D. Rule 26(a)(1)(A)(iv): For inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.**

Subject to the foregoing qualifications, Fifth Third Bank has standard D&O coverage, but with high self-insured retentions. As a practical matter, therefore, and subject to further review of the applicable policies, it appears unlikely that the Bank has insurance that would respond to satisfy all or part of any judgment in this case.

Fifth Third Bank expressly reserves the right to supplement this response in in the event that additional information becomes available to it during discovery or its investigation as permitted by the Federal Rules of Civil Procedure.

Respectfully submitted,

**Dated:** May 28, 2021

**BLANK ROME LLP**

*s/ Michael L. Cioffi*

Michael L. Cioffi, Esq. (0031098)
David J. Oberly, Esq. (0088410)
Thomas H. Stewart, Esq. (0059246)
1700 PNC Center
201 E. Fifth Street
Cincinnati, Ohio 45202
Tel.: (513) 362-8701
Fax: (513) 362-8702
Email: Cioffi@BlankRome.com
Email: DOberly@BlankRome.com
Email: Stewart@BlankRome.com

*Attorneys for Defendants/Counterclaimants Fifth Third Bancorp, Fifth Third Bank, National Association, and Gregory D. Carmichael*

## CERTIFICATE OF SERVICE

I, Michael L. Cioffi, Esquire, hereby certify that, on May 28, 2021, a copy of the foregoing Defendants Fifth Third Bancorp's, Fifth Third Bank, National Association's, and Gregory D. Carmichael's Initial Rule 26(a) Disclosures was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

John J. McHugh, Esq.
MCHUGH & MCCARTHY, LTD
5580 Monroe Street
Sylvania, Ohio 43560
mchugh@mchughlaw.com

Peter A. Saba, Esq.
Joshua M. Smith, Esq.
STAGNARO, SABA & PATTERSON CO., L.P.A.
2623 Erie Avenue
Cincinnati, Ohio 45208
pas@sspfirm.com
jms@sspfirm.com

*Attorneys for Plaintiff/Counterclaim Defendant, Philip McHugh*

**BLANK ROME LLP**

*s/ Michael L. Cioffi*
Michael L. Cioffi, Esq. (0031098)

*Attorney for Defendants Fifth Third Bancorp, Fifth Third Bank, National Association, and Gregory D. Carmichael*