**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| PHILIP R. McHUGH, | |
| *Plaintiff–Counterclaim Defendant,* | Case No. 1:21-cv-00238-MRB |
| vs. | Judge Michael R. Barrett |
| FIFTH THIRD BANCORP, *et al.*, | |
| *Defendants–Counterclaimants.* | |

**MOTION FOR SUMMARY JUDGMENT OF FIFTH THIRD BANCORP; FIFTH THIRD BANK, NATIONAL ASSOCIATION; AND GREGORY D. CARMICHAEL**

Pursuant to Federal Rule of Civil Procedure 56, Defendants, Fifth Third Bancorp; Fifth Third Bank, N.A.; and Gregory D. Carmichael (collectively, "Fifth Third"), move for summary judgment on each claim brought by Plaintiff, Philip McHugh. The reasons for this motion are set forth in the accompanying memorandum in support.

Dated: November 20, 2026

Respectfully submitted,

*s/ Michael L. Cioffi*

Michael L. Cioffi (0031098)
Trial Attorney
Jeffrey W. DeBeer (0089499)
Jason W. Palmer (0088336)
BLANK ROME LLP
1700 PNC Center
201 E. Fifth Street
Cincinnati, Ohio 45202
Tel.: (513) 362-8701
Fax: (513) 362-8702
Email: michael.cioffi@blankrome.com
jeffrey.debeer@blankrome.com
jason.palmer@blankrome.com

*Attorneys for Defendants–Counterclaimants, Fifth Third Bancorp; Fifth Third Bank, National Association; & Gregory D. Carmichael*

# CERTIFICATE OF SERVICE

I, Michael L. Cioffi, hereby certify that on November 20, 2026, a copy of the foregoing was filed using the Court's ECF system, which will provide service to the following counsel of record:

John J. McHugh
MCHUGH & MCCARTHY, LTD
5580 Monroe Street
Sylvania, Ohio 43560
mchugh@mchughlaw.com

Peter A. Saba
Joshua M. Smith
STAGNARO, SABA & PATTERSON CO., L.P.A.
2623 Erie Avenue
Cincinnati, Ohio 45208
pas@sspfirm.com
jms@sspfirm.com

*Attorneys for Plaintiff–Counterclaim Defendant*

**BLANK ROME LLP**

*s/ Michael L. Cioffi*
Michael L. Cioffi

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| PHILIP R. McHUGH, | : | |
| *Plaintiff–Counterclaim Defendant*, | : | Case No. 1:21-cv-00238-MRB |
| vs. | : | Judge Michael R. Barrett |
| FIFTH THIRD BANCORP, *et al.*, | : | |
| *Defendants–Counterclaimants.* | : | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS–COUNTERCLAIMANTS, FIFTH THIRD BANCORP; FIFTH THIRD BANK, NATIONAL ASSOCIATION; AND GREGORY D. CARMICHAEL**

# TABLE OF CONTENTS

**Page**


I. SUMMARY OF PRINCIPAL ARGUMENTS ....................1

II. FACTUAL BACKGROUND ....................6

A. Plaintiff's Tenure with Fifth Third ....................6

B. Tim Spence's Tenure with Fifth Third ....................7

C. Fifth Third Appoints Spence as President and then CEO ....................9

III. LEGAL STANDARDS ....................10

A. Summary Judgment ....................10

B. ADEA Claims ....................11

C. The But-For Causation Standard Applies to Both Direct and Indirect Methods of Proof in ADEA Cases ....................12

IV. ARGUMENT: FIFTH THIRD IS ENTITLED TO SUMMARY JUDGMENT ON ALL CLAIMS ....................13

A. Greg Carmichael Is Not a Proper Party ....................13

B. The National Bank Act Preempts Plaintiff's Ohio Law Claims ....................13

C. Fifth Third Is Entitled to Summary Judgment on Plaintiff's Failure-to-Promote Claim ....................15

*1. Plaintiff Has No Direct Evidence to Defeat Summary Judgment on Count I, Failure to Promote* ....................15

2. *Even if Plaintiff Could Establish a Prima Facie Case, He Cannot Show Pretext* ....................18

D. Plaintiff's Wrongful Termination Claim Fails Because Plaintiff Proffers No Direct Evidence and Cannot Establish a Prima Facie Case ....................21

E. Plaintiff's Age Discrimination Claims Also Fail Because He Is Not Entitled to Damages as a Matter of Law ....................24

F. The Court Should Grant Fifth Third Summary Judgment on Plaintiff's Retaliation Claim ....................26

*1. Fifth Third Pursued a Good-Faith Abuse-of-Process Counterclaim* ....................26

2. *Plaintiff's Retaliation Claim Relating to Subpoenas to His Family Members Fails* ....................27

V. CONCLUSION ....................27

# I. SUMMARY OF PRINCIPAL ARGUMENTS

After the United States Supreme Court's decision in *Gross* and the Sixth Circuit's decision in *Pelcha*, and its progeny, a plaintiff in this Circuit must prove that age discrimination was the but-for cause of—meaning ***the*** determinative reason for—an employer's alleged adverse employment action. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 174–78 (2009); *Pelcha v. MW Bancorp, Inc.*, 988 F.3d 318, 324 (6th Cir. 2021); *see also Obergefell v. Firelands Reg'l Med. Ctr.*, 2026 WL 228727, at *3 (6th Cir. Jan. 28, 2026), *reh'g en banc denied*, 2026 U.S. App. LEXIS 6143 (6th Cir. Mar. 2, 2026) (attached as Ex. 1). To defeat summary judgment under this case law, Plaintiff here must show that a majority of Fifth Third's 15 distinguished, well-qualified Board members took the action they did for the determinative reason of discriminating against Plaintiff because of his age. *Pelcha*, 988 F.3d at 324.

Plaintiff engaged in almost six years of litigation and extensive discovery.[1] At the end of it all, Plaintiff has no evidence required by the Supreme Court and Sixth Circuit to support his allegations and defeat summary judgment. All six Counts in the Amended Complaint should be dismissed.

Count I is a failure-to-promote claim alleging that "Defendants promoted Spence, a substantially younger and less qualified individual, to the position of President." Am. Compl., Doc. 9 at PageID# 1785, ¶ 43. On October 26, 2020, the Board of Directors (collectively the "Board" and each individually a "Director") of Fifth Third Bank, National Association (the "National

---

[1] In response to over ten separate document requests, Fifth Third produced over 214,000 pages of documents. Plaintiff deposed 14 of 15 Directors, 4–7 hours each. Plaintiff deposed both the current President and CEO (twice for a total of 9 hours) and the former President and CEO (three times for a total of over 16 hours). Plaintiff deposed three other senior officers (Chief Legal Officer, Chief Human Resource Officer, and Chief Risk Officer) for nearly 7 hours each.

Association") and Fifth Third Bancorp[2] (collectively with the National Association, "Fifth Third" or the "Bank") unanimously voted to promote Tim Spence as President. Plaintiff sued Fifth Third, claiming that the Board's decision violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq*. Yet there is no evidence in the record that would cause a reasonable jury to believe that intentional age discrimination was the "but-for" cause of the Board's unanimous decision. No evidence in the record shows that age discrimination was "the reason" 15 Board members promoted Tim Spence to President. In fact, the only evidence in the record is just the opposite. Fourteen[3] Directors testified at length as to the reasons for promoting Spence—he was outstanding—and why Plaintiff was not qualified at all to be President.[4] Their testimony is unrebutted and conclusively shows that age had nothing to do with the Board's decision, let alone the determinative cause.

And this was no ordinary Board. It was exceptional, composed of extraordinary leaders across industries and fields: Nicholas Akins (then-Chair, President, and CEO of American Electric Power Company); B. Evan Bayh, III (former Indiana two-term Governor and two-term Senator); Jorge Benitez (former CEO of Accenture); Katherine Brown Blackburn (Executive Vice President of the Cincinnati Bengals); Emerson Brumback (former President and COO of M&T Bank); Greg Carmichael (then-CEO of Fifth Third); Linda Clement-Holmes (retired CIO of The Procter & Gamble Company); C. Bryan Daniels (Co-founder and Principal of Prairie Capital); Mitchell

---

[2] Named defendants include Fifth Third Bancorp; Fifth Third Bank, National Association; and Gregory D. Carmichael. As explained below, only the National Association is a proper defendant.
[3] Although Plaintiff was permitted to depose all 15 Directors, Plaintiff ultimately did not depose one former Director, Jewell Hoover. Ms. Hoover was part of the unanimous decision to appoint Tim Spence as Fifth Third President.
[4] *See* App'x A (summarizing the dispositive and unrebutted Director testimony establishing that Spence was highly qualified; Plaintiff was totally unqualified; age was never considered or discussed by the Board; and the Board acted independently).

Feiger (former CEO of MB Financial, Inc. and Fifth Third Bank (Chicago)); Thomas Harvey (then-CEO of Energy Innovation: Policy and Technology, LLC, former Chair of MB Financial, Inc.); Gary Heminger (then-CEO of Marathon Petroleum Corporation); Jewell Hoover (retired senior officer of the Comptroller of the Currency, author of "Ultimate Guide for Bank Directors"); Eileen Mallesch (retired Senior Vice President and CFO of Nationwide Property & Casualty Segment, Nationwide Mutual Insurance Company); Michael McCallister (retired Chair and former CEO of Humana, Inc.); and Marsha Williams (retired Senior Vice President and CFO of Orbitz Worldwide, Inc.).

As the Sixth Circuit has explained many times, the court's role is to prevent unlawful employment practices, not to act "as a super personnel department and second guess" a Board's business judgment. *Gunn v. Senior Servs. of N. Ky.*, 632 F. App'x 839, 848 (6th Cir. 2015) (citation omitted). Plaintiff has come forward with absolutely no evidence that would allow a jury to reasonably believe that the determinative reason for the Board acting was to discriminate on the basis of age. He has not even identified the majority on the Board who acted unlawfully. He simply argues that he was a better or more deserving candidate, which impermissibly questions the soundness of the Board's business judgment. *Hedrick v. W. Rsrv. Care Sys.*, 355 F.3d 444, 462 (6th Cir. 2004) (citations omitted). Even if it were true (and it clearly is not), this assertion is not sufficient to defeat summary judgment. Here, the Board's decision need not be "perfect" or even correct. In this Circuit, to defeat summary judgment, a plaintiff must put forth evidence that would cause a reasonable jury to believe that the decision maker "did not honestly believe in the proffered reasons for acting." *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 286 (6th Cir. 2012) (internal quotation marks omitted). No such evidence exists.

Clear Supreme Court and Sixth Circuit precedent also disposes of Counts II, IV, and VI, Plaintiff's state law claims. They are preempted by the National Bank Act, 12 U.S.C. § 24 ("NBA"). *Barnett Bank, N.A. v. Nelson*, 517 U.S. 25, 32–33 (1996); *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003); *Arrow v. Fed. Rsrv. Bank of St. Louis*, 358 F.3d 392, 393 (6th Cir. 2004). In addition, the Sixth Circuit has long held that the elements and burden of proof in an Ohio age discrimination claim parallel those of the ADEA so that the federal and state claims rise or fall together. *Obergefell*, 2026 WL 228727, at *3 (citation omitted).

Plaintiff's wrongful termination claim (Count III) also fails as a matter of law. Plaintiff alleges that, on October 13, 2020, Fifth Third "created intolerable working conditions" that forced him "to leave his employment" when his supervisor—President and CEO Greg Carmichael—reassigned Plaintiff to be the Head of Consumer Banking. Am. Compl., Doc. 9 at PageID# 1786, ¶ 51. Plaintiff asserts that this assignment was intolerable for two reasons: (1) it required him to report to Spence, "a substantially younger and less qualified individual who, until that point, reported directly to [Plaintiff]," and (2) it was a "demotion." *Id.*

Plaintiff admits that if he had complied with his supervisor's request and accepted the position as Head of Consumer Banking, he would have continued working at Fifth Third with at least his same compensation ($2,200,000 per year) plus benefits (which had included medical, dental, deferred compensation, retirement benefits, retirement matching program, and two company-funded golf memberships at Kenwood Country Club and Valhalla Golf Club). Pl. Dep., Vol. II, at 11:7–11, 79:5–81:2. Plaintiff also would have maintained his EVP title and even been elevated to a proxy-level employee for the first time. As a matter of clear Sixth Circuit law, Plaintiff was not demoted and did not suffer an adverse employment action. The Sixth Circuit has repeatedly held that there is no demotion or adverse employment action for a reassignment absent

a change in salary, benefits, title, or work hours. *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 885 (6th Cir. 1996); *Yates v. Avco Corp.*, 819 F.2d 630, 638 (6th Cir. 1987); *Policastro v. Nw. Airlines, Inc.*, 297 F.3d 535, 539 (6th Cir. 2002); *Woods v. Facility Source, LLC*, 640 F. App'x 478, 489 (6th Cir. 2016). Also, disliking a potential supervisor—whether due to resentment of his age or otherwise—is not an "intolerable" working condition. *Powell v. Anthem Prescription Mgmt.*, 2005 WL 1652706, at *4 (S.D. Ohio June 15, 2005). As a matter of law, therefore, Plaintiff neither was demoted nor suffered "intolerable working conditions." He simply quit and walked away from substantial compensation of $2,200,000 and a rich array of executive perks. If he had accepted the assignment on October 13, 2020, all of this compensation would have been his.

Moreover, an employee's decision to voluntarily quit has dispositive detrimental consequences for his ADEA claims. A plaintiff who voluntarily quits his employment cannot recover front and back pay. *Lulaj v. Wackenhut Corp.*, 512 F.3d 760, 767 (6th Cir. 2008); *Edelstein v. Stephens*, 2024 WL 860906, at *6 (S.D. Ohio Feb. 29, 2024) (Barrett, J.). Here, even if Plaintiff's failure-to-promote claim could survive (it cannot), he has no recoverable lost earnings because he quit before the Board elected Spence President. When an ADEA claim has no damages, summary judgment is appropriate. *Glenn v. Frenchko*, 642 F. Supp. 3d 633, 637 (N.D. Ohio 2022) (citing *Wheeler v. McKinley Enters.*, 937 F.2d 1158, 1163 (6th Cir. 1991)).

Finally, Count V fails because it is based on Fifth Third's counterclaim and subpoenas, both proper and merit-based litigation activity. *Aday v. Westfield Ins. Co.*, 2022 WL 203327, at *13 (6th Cir. Jan. 24, 2022). Litigation activity cannot support a retaliation claim unless the employer both: (1) acted with retaliatory motive and (2) "lack[ed] a reasonable basis in fact or law." *Id*. Plaintiff cannot raise a genuine issue of material fact on either ground.

The Court should grant Defendants summary judgment and dismiss all of Plaintiff's claims.

## II. FACTUAL BACKGROUND

### A. Plaintiff's Tenure with Fifth Third.

After holding various positions at Fifth Third, Plaintiff became President and CEO of the Bank's Louisville division in 2005. *See* Am. Compl., Doc. 9 at PageID# 1779, ¶ 8. He later moved to Cincinnati to become a Senior Vice President and Head of Investment Advisors. *See id.* at PageID# 1779–80, ¶ 9; Pl. Dep., Vol. I, at 99:8–16; Spence Dep. Ex. 5. Plaintiff was appointed to EVP in 2011. *See* Spence Dep. Ex. 6. In 2018, Plaintiff was offered, but declined, the position of President of Fifth Third's Cincinnati region. *See* Pl. Dep., Vol. I, at 139:16–141:1. Plaintiff believed the job "required five to seven years," and he was unwilling to commit to the position for that long. *Id*. On or about October 15, 2020, he quit when he refused a reassignment to the Head of Consumer Banking, at his full salary and benefits as requested by his supervisor, Greg Carmichael, and then refused to come to work to take that position. Pl. Dep., Vol. II, at 8:15–11:11; Pl. Dep. Ex. 23 at 3 (containing Plaintiff's handwritten notes recounting that, on October 15, "Bob [Shaffer of Fifth Third] stated that [Plaintiff] must accept the consumer bank role, or he must resign! . . . [and the next day, Plaintiff] called Bob to inform him that [Plaintiff] would not accept the consumer role."); Shaffer Dep., Vol. I, Doc. 77-14 at PageID# 3672–73, 259:1–262:6.

Plaintiff was a disgruntled employee who wanted to quit at least as far back as September 2019, and continuing through October 2020. He repeatedly denigrated and mocked his colleagues—Tim Spence and Bob Shaffer—and his supervisor, Greg Carmichael. Pl. Dep., Vol. I, at 119:10–183:19; Pl. Dep. Exs. 11–19 (Plaintiff text messages 2019–2020). When he did quit, Plaintiff told numerous people that he had retired, not that he was refused a promotion because of his age. Pl. Dep., Vol. I, at 188:6–210:23. In fact, Plaintiff was telling people that he had retired for over ten months from the time he left the Bank in October 2020. *Id*. at 199:10–201:16. One of Plaintiff's colleagues at the Bank, Ron Kaes, made a video at the request of Plaintiff's daughter.

*Id*. at 187:1–191:13; Pl. Dep. Ex. 20. On the video, Mr. Kaes says, "Phil, congratulations on your retirement." Pl. Dep. Ex. 20. Plaintiff saw the video in May or June of 2021. Pl. Dep., Vol. I, at 188:4–18. Kaes testified that he believed Plaintiff had retired from the Bank. Kaes Dep. at 18:8–11. Kaes also testified that he discussed the video with Plaintiff, who did not contradict or correct Kaes's understanding that Plaintiff had retired. *Id.* at 18:21–19:9, 20:11–19.

Based on years of observing Plaintiff at Board meetings, the Board unanimously judged Plaintiff as woefully unqualified to be President. *See* App'x A (summarizing the testimony of each Director relevant to this Motion, with pin cites) (attached as Ex. 2). In their fourteen depositions, the Board members clearly articulated the many deficiencies that made Plaintiff unqualified and unacceptable to be President. *Id.* The deficiencies included a lack of strategic vision; lack of knowledge and experience with Wall Street and the external financial community such as investment bankers and analysts; poor communication skills; lack of knowledge of fintech and other technology; lack of knowledge about the future of digital banking or any of the forces that continue to impact the banking industry; and no ability to drive change. *Id.* The Directors each testified over many hours and in detail about Plaintiff's lack of the skill, knowledge, and ability needed to be President of Fifth Third, one of the ten largest banks in America. *Id.*

**B. Tim Spence's Tenure with Fifth Third.**

Tim Spence's educational background and experience distinguished him from others inside Fifth Third, especially from Plaintiff. After graduating from Colgate University, Tim Spence eventually worked at Oliver Wyman (Spence Dep., Doc. 77-15 at PageID# 3728–30, 15:9–20:13), one of the most prestigious global consulting firms and the leading consulting firm to the banking and financial services sector (*e.g.*, Williams Dep., Doc. 66-1 at PageID# 2636, 36:8–12). While at Wyman, Spence consulted for many of the leading financial institutions in the world. Spence Dep., Doc. 77-15 at PageID# 3730–31, 23:13–26:1; Williams Dep., Doc. 66-1 at PageID# 2636–37,

36:2–37:4, 41:20–22. Through this experience, he gained knowledge valuable to Fifth Third in a number of areas, including strategic planning for financial institutions, M&A, digital banking and other emerging technologies, and fintech competitors who were threatening traditional commercial banks. *See* App'x A. In 2011, while Spence was a consultant at Oliver Wyman, the Fifth Third Board hired Spence to draft its strategic plans, because there was no one inside the Bank with the skill set to draft a sophisticated strategic plan. Spence Dep., Doc. 77-15 at PageID# 3731 & 3742, 26:17–27:23, 69:9–71:1; Williams Dep., Doc. 66-1 at PageID# 2635 & 2644, 35:12–23, 69:7–13. Impressed, the Board hired Spence to draft the 2013 strategic plan (Fifth Third drafts a strategic plan every two years). Williams Dep., Doc. 66-1 at PageID# 2635 & 2655, 35:12–13, 112:15–113:7. In 2015, the Board hired Spence directly to join the Bank as a full-time employee. Spence Dep., Doc. 77-15 at PageID# 3733, 34:16–35:9. Director Marsha Williams[5] testified extensively about Spence's background and why it was so valuable to the Board and Bank. *E.g.*, Williams Dep., Doc. 66-1 at PageID# 2635–38, 33:13–47:7.

As discussed above, the Board in the exercise of its business judgment found Plaintiff to be totally unqualified to be President. Its judgment of Spence, however, was the polar opposite. *See* App'x A. The Board judged Spence to be not only qualified, but exceptional. *Id.* Unanimously every Director who was deposed testified consistently over many hours of cross-examination that Spence had a superior grasp of the entire industry; had an unbelievable grasp and understanding of technology and the digital platform; was exceptional at communicating important analytics and data; had superior strategic vision; had a tremendous depth and breadth of knowledge of the fintech

[5] Ms. Williams is a graduate of Wellesley College, with a degree in economics, and holds a master's degree from the University of Chicago Business School. She was the lead independent director from 2014 until 2015, then Chairman of the Board from April 2015 until December 2018, then lead independent director from December 2018 until April 2022. Williams Dep., Doc. 66-1 at PageID# 2628–30, 7:18–20, 15:16–20.

platforms; was very knowledgeable about the merger landscape within the banking sector; and had great verbal and communication skills. *Id.*

### C. Fifth Third Appoints Spence as President and then CEO.

The Board's succession planning is a multi-year process. It is one of the Board's "primary goals." It requires the Board to do the following:

> "[E]valuate candidates, to look at the entire Enterprise team and determine if anyone on the Enterprise team or . . . of the top five people listed in the proxy would be appropriate successors when the time came. To think through the types of skills that we would need in a new president and CEO at the time that we would need [one]. And to generally speak to the people that would be possibly under consideration for that role, and to evaluate their performance and their capabilities and their experience and their education to make sure that whoever we ultimately chose to be the next president and CEO was qualified."

Williams Dep., Doc. 66-1 at PageID# 2631–32, 19:12–21:4. The Board met every December to review the Enterprise Committee's performance and succession potential for all senior executive positions. *Id.* at PageID# 2640, 52:19–53:4. As part of its own review of potential candidates to replace Carmichael, the Board determined that Spence was the ***only*** internal executive who was qualified to be Fifth Third's next CEO. *See* App'x A.

The Board then hired RHR International Inc. ("RHR") to provide an independent assessment of Spence. After an extensive review, RHR agreed that Spence was "exceptional." Williams Dep., Doc. 66-1 at PageID# 2665–66, 155:2–159:19 (describing Board decision); Executive Assessment Development Report ("RHR Report"), Benitez Dep. Ex. 8 at 2–3. Spence "demonstrate[d] a strong fit to the leadership characteristics desired in a chief executive officer at Fifth Third." *Id.* at 3. He was a "creative, forward-thinking strategic thinker who balance[d] objective data with his subjective experience to derive innovative solutions"; a "values-based leader who care[d] deeply about organizational culture and the well-being of his employees"; a "continuous learner" who was "very insightful regarding his strengths and weaknesses"; and "open to feedback and ongoing development." *Id*. RHR ranked Spence in the "top quartile of all President

and CEO successor candidates assessed by RHR." Sept. 21, 2020 National Association Board Meeting Minutes, Williams Dep. Ex. 8 at 2.

On October 13, 2020, Carmichael told Plaintiff about the Board's forthcoming decision to appoint Spence as President. Carmichael Dep., Vol. II, Doc. 77-16 at PageID# 3879–80, 458:1–460:11. As part of resulting organizational shifts, Carmichael offered Plaintiff the Head of Consumer Banking position. *Id.*; Pl. Dep., Vol. II, at 8:24–9:13; Carmichael Dep., Vol. I, Doc. 66-3 at PageID# 2816, 142:17–143:23. He would remain an EVP, stay on the Enterprise Committee, and keep his existing salary and benefits. *E.g.*, Pl. Dep., Vol. II, at 11:7–11. Plaintiff would even get a *raise* to include him (for the first time) in the Bank's proxy statement, as one of the five highest-paid executives. *See* Williams Dep., Doc. 66-1 at PageID# 2645, 74:1–21 ("[Plaintiff] was not in the proxy."); Pl. Dep., Vol. I, at 116:19–118:23; Carmichael Dep., Vol. II, Doc. 77-16 at PageID# 3879–80, 458:4–460:11.

Plaintiff told Carmichael that he did not want the reassignment and was unwilling to report to Spence. Carmichael Dep., Vol. II, Doc. 77-16 at PageID# 3879–80, 458:4–460:11. On October 15, Plaintiff formally refused the EVP role as Head of Consumer Banking. *Id.*; Pl. Dep., Vol. II, at 8:15–11:11; Pl. Dep. Ex. 23 at 3. He never returned to Fifth Third.

On October 26, 2020, the Board appointed Spence as President. The Bank's regulations required a simple majority (Doc. 70-1), but the Board's decision was unanimous (Heminger Dep. Ex. 27).

## III. LEGAL STANDARDS

### A. Summary Judgment.

As the Sixth Circuit has often explained, summary judgment is required "when the moving party shows, using evidence in the record, that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. When a moving party has met its burden

of production, 'its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Blizzard*, 698 F.3d at 282 (citations omitted). The non-moving party "must present ***significant*** probative evidence in support of his complaint to defeat the motion for summary judgment." *Pullen v. Maynard*, 2016 WL 4836516, at *1 (S.D. Ohio Sept. 15, 2016) (Barrett, J.) (emphasis added). Speculative, conclusory, and self-serving affidavits, "in the absence of any corroborating evidence," are insufficient. *Local Union No. 392 Pension Fund v. Humbert*, 2016 WL 705243, at *10 (S.D. Ohio Feb. 23, 2016).

**B. ADEA Claims.**

In *Gross*, 557 U.S. at 177–78, the Supreme Court held that to prevail on a claim under the ADEA, it is **not sufficient** for the plaintiff to show that age was a motivating factor in the adverse action. This principle arises from the statutory language. Specifically, the ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge . . . or otherwise discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, *because of* such individual's age." 29 U.S.C. § 623(a)(1) (emphasis added). The Court explained in *Gross* that the ADEA's "because of" language requires that a plaintiff "prove by a preponderance of the evidence (which may be direct or circumstantial) that age was the 'but-for' cause of the challenged employer decision." *Gross*, 557 U.S. at 177–78. In a subsequent decision four years later, the Supreme Court explained further that a plaintiff must prove "that age was **the 'reason'** that the employer decided to act." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 350 (2013) (emphasis added).

The Sixth Circuit has interpreted and applied *Gross* and *Nassar* a number of times, most notably in *Pelcha*, 988 F.3d at 323–24 (internal quotation marks omitted and emphasis added):

> "The ADEA prohibits employers from terminating employees because of such individual's age. 29 U.S.C. § 623(a)(1). **Meeting this because of requirement is no simple task.** Plaintiffs must prove by a preponderance of the evidence (which may be direct or

circumstantial) that age was the 'but-for' cause of the challenged employer decision. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177–78, 129 S. Ct. 2343, 174 L. Ed. 2d 119 (2009). This requires showing that age was *the* determinative reason they were terminated; that is, they must show that age was the 'reason' that the employer decided to act. *Scheick v. Tecumseh Pub. Schs*., 766 F.3d 523, 529 (6th Cir. 2014) (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 350–51, 133 S. Ct. 2517, 186 L. Ed. 2d 503 (2013)). Under *Gross*, satisfying but-for cause requires plaintiffs to show that age had a determinative influence on the outcome of the employer's decision-making process. *Gross*, 557 U.S. at 176 (quoting *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610, 113 S. Ct. 1701, 123 L. Ed. 2d 338 (1993)). So, to defeat summary judgment, *Pelcha* must show a genuine dispute of material fact that, if resolved in her favor, could persuade a reasonable juror that age was the but-for cause of her termination."

In the next paragraph of *Pelcha*, the Sixth Circuit made clear that the but-for causation standard in *Gross* means that an ADEA plaintiff must prove that age was "*the* determinative reason" for the adverse employment action. *Id.* (emphasis in original). The Court also explicitly rejected Pelcha's argument—relying on a post-*Gross* Supreme Court decision in *Bostock v. Clayton Cnty.*, 590 U.S. 644 (2020)—that she was not required under *Gross* to prove that age was the determinative cause and that she could prevail if age was merely one cause among multiple motivations. The Sixth Circuit unequivocally rejected this argument in *Pelcha*, 988 F.3d at 324 ("Two reasons compel us to disagree.") and the application of *Bostock* to ADEA cases.

Summary judgment dismissing all Counts of the Amended Complaint is required because, after extensive discovery over nearly six years, Plaintiff has no evidence that could persuade a reasonable jury that age was the but-for cause of the Board's decision to promote Spence, that is, no evidence that age discrimination was *the* determinative reason for its decision.

### C. The But-For Causation Standard Applies to Both Direct and Indirect Methods of Proof in ADEA Cases.

The Supreme Court in *Gross*, and the Sixth Circuit in *Pelcha* and subsequent cases, have made clear that the but-for causation standard is to be applied regardless of the type of evidence or method a plaintiff chooses. In a decision earlier this year, the Sixth Circuit explained:

> "A plaintiff can offer direct or indirect evidence to establish a prima facie age discrimination claim, but [n]o matter the type of evidence presented, the plaintiff retains the burden of persuasion to demonstrate by a preponderance of the evidence . . . that age was the 'but-for' cause of the challenged employer decision . . . . In other words, the plaintiff must use direct or indirect evidence to show that age was *the* determinative reason they were terminated."

*Obergefell*, 2026 WL 228727, at *3 (internal quotation marks omitted). In other words, at each step of the analytical framework for evaluating evidence on summary judgment in ADEA cases—whether direct evidence or circumstantial evidence under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)—a court must apply the "but-for" causation standard and determine whether the evidence is sufficient to cause a reasonable jury to conclude that age was the determinative reason for the alleged adverse employment decision.

## IV. ARGUMENT: FIFTH THIRD IS ENTITLED TO SUMMARY JUDGMENT ON ALL CLAIMS

### A. Greg Carmichael Is Not a Proper Party.

Plaintiff improperly sued former CEO Greg Carmichael. Mr. Carmichael is not a proper party because, as Plaintiff's former supervisor, he cannot be held liable in his personal capacity under the ADEA or Ohio law. *See Hiler v. Brown*, 177 F.3d 542, 546 (6th Cir. 1999) (finding the ADEA and its sister civil rights statutes do not recognize a cause of action against a supervisor in his individual capacity); *Wakefield v. Children's Hosp.*, 2008 WL 3833798, at *7 (S.D. Ohio Aug. 12, 2008) (Sargus, J.) (same). The Court should grant Mr. Carmichael summary judgment accordingly.

### B. The National Bank Act Preempts Plaintiff's Ohio Law Claims.

Plaintiff's Ohio-law claims against the National Association (Counts II, IV, and VI) fail because they are preempted by the NBA. It grants banks, such as the National Association, powers "pre-empting . . . state law." *Nelson*, 517 U.S. at 32; *Anderson*, 539 U.S. at 10. Relevant here, the NBA allows banks to do the following:

> "To elect or appoint directors, and by its board of directors to appoint a president, vice president, cashier, and other officers, define their duties, require bonds of them and fix the penalty thereof, [and] dismiss such officers or any of them ***at pleasure***[.]"

12 U.S.C. § 24 (Fifth) (emphasis added).

This "at pleasure" language preempts state employment laws. *See Arrow*, 358 F.3d at 394 (finding that such language preempts state employment law claims). Plaintiff was an "officer" pursuant to the NBA, which specifically lists "vice president" as one of the covered positions. 12 U.S.C. § 24. Therefore, his Ohio-law claims against the National Association are preempted. *Id.*; *Arrow*, 358 F.3d at 394.

The NBA also preempts state law claims against Carmichael individually. *Gerard v. Merchants Nat'l Bank*, 1988 WL 33917, at *3 (E.D. Pa. Mar. 30, 1988) (finding NBA preemption precluded state employment claims against both defendant national bank and defendant officer of national bank named in her individual capacity). The same "at pleasure" language in the analogous Federal Reserve Act has also been read to preempt state law claims against individual officers of a Federal Reserve Bank. *Crowe v. Fed. Rsrv. Bank of St. Louis*, 2009 WL 140747, at *1–2 (E.D. Mo. Jan. 20, 2009) (finding state-law claims against individual Federal Reserve Bank employees to be preempted); *Evans v. Fed. Rsrv. Bank of Phila.*, 2004 WL 1535772, at *5 (E.D. Pa. July 8, 2004) (same).

Moreover, Fifth Third Bancorp is entitled to summary judgment on all of Plaintiff's claims because Plaintiff alleges in his Amended Complaint only that he was employed by the National Association, and not by its parent company Fifth Third Bancorp. Am. Compl., Doc. 9 at PageID# 1778, ¶ 1. In *Boesch v. Champaign Nat'l Bank*, 2008-Ohio-3282 (Ohio Ct. App.), Ohio's Ninth District Court of Appeals affirmed summary judgment on employment claims against a national bank, finding such claims preempted. The *Boesch* court declined to reach the question of whether the NBA also preempted claims against the holding company, concluding that summary judgment

was appropriate on those claims because the holding company was not the plaintiff's employer. *Boesch*, 2008-Ohio-3282, ¶¶ 27–30 ("Therefore, there is no need for us to consider whether [the holding company] is covered by the NBA provisions preempting Ohio employment law."). Here, because Plaintiff admits in his Complaint that he was employed by the National Association (and not Fifth Third Bancorp), Fifth Third Bancorp is entitled to summary judgment on all claims, regardless of whether it also enjoys the benefit of NBA preemption.

"Age discrimination claims brought under the Ohio statute are 'analyzed under the same standards as federal claims brought under the [ADEA].'" *Blizzard*, 698 F.3d at 283 (alteration in original). Fifth Third, therefore, is entitled to summary judgment on Plaintiff's state law claims for the same reasons that defeat Plaintiff's federal claims; the federal and state discrimination claims rise or fall together. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 357 (6th Cir. 1998).

### C. Fifth Third Is Entitled to Summary Judgment on Plaintiff's Failure-to-Promote Claim.

#### *1. Plaintiff Has No Direct Evidence to Defeat Summary Judgment on Count I, Failure to Promote.*

After *Gross* and *Pelcha*, a plaintiff in this Circuit must come forward with direct or circumstantial evidence that could persuade a reasonable jury that age was *the* "but-for" or determinative cause, not merely one of multiple motivations or causes. *Pelcha*, 988 F.3d at 324; *see also Darst v. Meigs Cnty.*, 2026 WL 1723624, at *13 (S.D. Ohio June 15, 2026) (ADEA plaintiff "cannot proceed if his termination was at least partly caused by . . . non-discriminatory reasons") (internal quotation marks and citation omitted). Plaintiff proffers nothing that comes close to meeting this burden. The undisputed record shows the opposite. Far from being the **determinative** cause for the Board's action, age was not even a factor, not even discussed, not even one of multiple motivations. *See* App'x A. Summary judgment dismissing all Counts of the Complaint is required because after extensive discovery over almost six years, Plaintiff has no

evidence that could persuade a reasonable jury that age was "the determinative reason" or but-for cause of any employment decision.

Direct evidence "proves the existence of a fact without requiring any inferences." *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 548 (6th Cir. 2004). A plaintiff's direct evidence must show "both a predisposition to discriminate and that the employer acted on that predisposition." *Obergefell*, 2026 WL 228727, at *4 (quoting *Scheick v. Tecumseh Pub. Schs.*, 766 F.3d 523, 530 (6th Cir. 2014)).

Although Plaintiff has no direct evidence of discrimination, he may attempt to rely on an alleged stray remark by Carmichael (which he denies making),[6] *i.e.*, that at some *unknown* future date when Carmichael would *eventually* retire, Plaintiff "*may* be too old" to be Fifth Third's President. *E.g.*, Pl. Dep., Vol. II, at 52:23–25 (emphasis added). To decide if an employer's statements are direct evidence, the Sixth Circuit considers whether the statements were: (1) made by a decision maker or by an agent within the scope of his employment; (2) related to the decision-making process; (3) more than merely vague, ambiguous, or isolated remarks; and (4) made proximate in time to the employment action. *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 478 (6th Cir. 2002). "This is a high bar." *Pelcha*, 988 F.3d at 325. No single factor is dispositive; courts "tak[e] all of the circumstances into account." *Peters*, 285 F.3d at 478. And when applying these factors, the Sixth Circuit dismisses "stray remark[s] . . . as insignificant." *Cartwright v. D.E. Foxx & Assocs.*, 2024 WL 3429296, at *4 (6th Cir. July 16, 2024).

Carmichael's purported comment is not direct evidence for three reasons. First, Carmichael was not the decision maker. The Board, not Carmichael, decided to promote Spence. *See* App'x A. When multiple decision makers are involved, a statement by one is not direct evidence of

---

[6] *See* Carmichael Dep., Vol. I, Doc. 66-3 at PageID# 2805, 97:7–98:9.

discrimination by the decision-making body as a whole. *See Sebest v. Campbell City Sch. Dist. Bd. of Educ.*, 94 F. App'x 320, 324–25 (6th Cir. 2004) (affirming that statements by one board member were not direct evidence of discrimination by "a majority of the Board—the only entity able to make decisions about [Plaintiff's] employment"); *Newcomb v. Allergy & ENT Assocs. of Middle Tenn., P.C.*, 2013 WL 1874257, at *8 (M.D. Tenn. May 3, 2013); *see also Cerutti v. BASF Corp.*, 349 F.3d 1055, 1066–67 (7th Cir. 2003); *DeSanzo v. AHS Southcrest Hosp., LLC*, 2020 WL 1105104, at *7 (N.D. Okla. Mar. 6, 2020). And in this case, it is clear that none of the Directors considered Plaintiff's age in any way when unanimously agreeing to make Spence President. *See* App'x A. Even if Carmichael had considered Plaintiff's age, he was just one Director; the majority vote needed to promote Spence would have happened regardless of Carmichael's views. To meet his burden of showing "but-for" causation, Plaintiff must come forward with ***evidence*** that would allow a reasonable jury to conclude that, for at least a majority of the Board members, age was the but-for cause or determinative factor. He cannot do so.

Second, the alleged remark is vague and ambiguous, rather than a "smoking gun" that "explains itself." *Pelcha v. MW Bancorp, Inc.*, 455 F. Supp. 3d 481, 497 (S.D. Ohio 2020) (Cole, J.), *aff'd*, 988 F.3d 318 (6th Cir. 2021). "Only ***the most blatant remarks***, whose intent could be ***nothing other than to discriminate on the basis of age***," constitute direct evidence. *Id.* at 498 (emphasis added and citation omitted). A single speculative statement that Plaintiff "***may***" be too old"—at some unknown future time when Carmichael finally decided to retire—is not "blatant." The alleged remark requires myriad unsupported inferences, including that Carmichael actually believed Plaintiff ***was*** (not "*may be*") too old, that the Board shared that opinion, and that the Directors would act on that opinion. And the remark is hardly direct evidence that the Board would somehow consider Plaintiff "too old" for President and CEO in the eight months between the

alleged comment (when Plaintiff was 55) and Spence's promotion (when Plaintiff was 56). In fact, the undisputed evidence is that ***no*** Director considered Plaintiff's age or held age-based animus when unanimously deciding to appoint Spence as President. *See* App'x A. None of the Directors were even aware of any age-related comments by Carmichael. They all testified that they acted solely on Spence's impressive qualifications. Carmichael's alleged stray remark is thus not direct evidence that Plaintiff's age was ***the reason*** for, or "but-for" cause of, the decision to promote Spence. *Stromberger v. Tampico Bevs., Inc.*, 2021 WL 5883379, at *5–6 (S.D. Ohio Dec. 13, 2021) (Barrett, J.).

Third, the alleged statement was **not** made near the time of Spence's promotion. Rather, Plaintiff claims the remark was made in February of 2020. That was nearly ***eight months*** before the Board appointed Spence as President in October 2020. Pl. Dep., Vol. II, at 52:16–25; Spence Dep., Doc. 77-15 at PageID# 3769, 177:9–12; Heminger Dep. Ex. 27. Even if the statement were made, which the Bank and Mr. Carmichael deny, an eight-month gap is ***not*** proximate in time as a matter of law. *Pelcha*, 988 F.3d at 326 ("[S]pans of six or seven months can be temporally distant."); *Diebel v. L & H Res., LLC*, 492 F. App'x 523, 528 (6th Cir. 2012) ("[S]even months [is] longer than most cases in which this court has recognized temporal proximity."); *Garen v. Ohio Dep't of Nat. Res.*, 2014 WL 661609, at *19 (S.D. Ohio Feb. 18, 2014) (finding seven months to be "hardly proximate"). Plaintiff thus has no direct evidence of age discrimination and must proceed under the "mutually exclusive" standards for circumstantial evidence. *Hedrick*, 355 F.3d at 453 (citation omitted).

***2. Even if Plaintiff Could Establish a Prima Facie Case, He Cannot Show Pretext.***

If a plaintiff establishes a prima facie age discrimination case through circumstantial evidence, the employer must identify "a legitimate, nondiscriminatory reason" for the employment

decision. *Pelcha*, 988 F.3d at 325. "Once the employer identifies a reason, the burden shifts back to the plaintiff to prove the employer's reason is a mere pretext." *Id*. Even if Plaintiff could establish a circumstantial case of discrimination for his failure-to-promote claims (he cannot), summary judgment is still warranted because Fifth Third had nondiscriminatory reasons for its actions—*i.e.*, the independent Directors, exercising their business judgment and after considering an independent assessment by RHR, determined that Spence was the best fit for President. *See* App'x A. The burden thus shifts to Plaintiff to demonstrate that these stated reasons are pretextual. *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 811–12 (6th Cir. 2011).

Under Sixth Circuit law, "A reason cannot be a pretext for discrimination unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." *Gunn*, 632 F. App'x at 844 (emphasis added) (quoting *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 285 (6th Cir. 2012)). Thus, Plaintiff "always bears the burden of producing sufficient evidence from which the jury could reasonably reject the defendant's explanation and infer that the defendant intentionally discriminated against him." *Id.* (quoting *Seeger*, 681 F.3d at 285) (alterations omitted); *Bender v. Hecht's Dep't Stores*, 455 F.3d 612, 626–27 (6th Cir. 2006). Plaintiff cannot simply "second guess the business judgment" of the Board. *Immormino v. Lake Hosp. Sys.*, 127 F. Supp. 3d 829, 843 (N.D. Ohio 2015) (citing *Hedrick*, 355 F.3d at 462).

Plaintiff cannot show that Fifth Third's stated reasons for appointing Spence—namely, that Spence was the best choice for the position—were false and a cover-up for discrimination. *Bender*, 455 F.3d at 626–27. The Directors testified that Spence was the best candidate to lead Fifth Third. *See* App'x A. Where a multi-member board makes an employment decision, one member's alleged bias is imputed to the board only if that member supplied the deciding margin. *Blair v. Frenchko*, 2024 WL 400227, at *2 (6th Cir. Feb. 2, 2024); *Kendall v. Urban League of Flint*, 612 F. Supp.

2d 871, 873, 880–81, 887 (E.D. Mich. 2009) (granting summary judgment, despite evidence that the board chair made race-based remarks about the plaintiff, because the remaining directors independently voted on legitimate grounds in an 8–6 split). And when a board "must act by majority vote," a member's discriminatory intent "can be imputed to the Board only when she casts a decisive vote." *Blair*, 2024 WL 400227, at *2. Relatedly, "[W]hen higher-ups conduct their own evaluations and make their own independent decisions, they aren't liable for the discriminatory intent of a subordinate who merely influenced the decision process." *Id.* at *5 n.1 (citing *Clack v. Rock-Tenn Co.*, 304 F. App'x 399, 405 (6th Cir. 2008) (per curiam)).

Spence had the strategic vision and ability to execute on it; knowledge of the banking industry, the competitive landscape, evolving financial technology, and the threat posed by fintech platforms; contacts and ability to foster M&A opportunities; ability to communicate with external stakeholders, including investors, Wall Street, and regulators; and leadership qualities necessary to lead a major financial institution. *See* App'x A. Spence's qualifications were not merely assumed—they were extensively documented. Spence was originally hired around 2011 as a consultant to write the Bank's strategic plan. Williams Dep., Doc. 66-1 at PageID# 2635, 35:6–23. He was then recruited by the Bank in 2015 because the Board believed the Bank lacked sufficient internal talent to handle strategic planning. *Id*. His strategic vision was consistently evaluated as a strength by both Carmichael and the Board. *See, e.g.*, App'x A; Spence Dep. Ex. 20; Shaffer Dep. Ex. 7 at 15, Ex. 20 at 31, Ex. 26 at 9. RHR, an independent outside consultant, rated Spence's strategic vision and ability to execute at the highest level (5 out of 5). *See* Benitez Dep. Ex. 8 at 4, 10–11, 14–15. Spence was integral to developing and finalizing Fifth Third's $4.7 billion acquisition of MB Financial in 2019, which made Fifth Third one of the largest banks operating in the Chicago market. *See* App'x A at 1, 5, 16, 18, 25 (identifying Director testimony

regarding Spence's involvement in MB acquisition). American Banker named him its 2018 Digital Banker of the Year. *See* Suleman Din, *Digital Banker of the Year: Fifth Third's Tim Spence*, AM. BANKER (2018), *available at* https://web.archive.org/web/20201231024452/https://www.americanbanker.com/digital-banker-of-the-year-2018 (last visited Nov. 18, 2026).

And conversely, the Directors testified that they did not believe Plaintiff was qualified to be President or CEO.[7] Plaintiff lacked the strategic vision, knowledge, and leadership qualities required for the role. *See* App'x A. And Plaintiff has no evidence that he was "so significantly better . . . that no reasonable" board of directors "would have chosen" Spence over him. *Bender*, 455 F.3d at 627. The Board thus acted well within its even "greater flexibility in choosing a management-level employee"—indeed, *the* management-level employee of the entire company. *Wrenn v. Gould*, 808 F.2d 493, 502 (6th Cir. 1987); *Bender*, 455 F.3d at 627.

Nor does any evidence suggest that the Board's stated reasoning and exercise of its business judgment were a false front for age discrimination. Plaintiff deposed every single Director but one. Not a single Director—let alone a majority—considered the age of Plaintiff or Spence.

**D. Plaintiff's Wrongful Termination Claim Fails Because Plaintiff Proffers No Direct Evidence and Cannot Establish a Prima Facie Case.**

Plaintiff offers no direct evidence to support his wrongful termination claims, relying instead on a demotion or constructive discharge theory.

To establish a prima facie case of discrimination based upon the end of his employment, Plaintiff must show that: (1) he was a member of the protected class; (2) he suffered an adverse employment action (*i.e.*, wrongful involuntary termination); (3) he was qualified for his position; and (4) he was replaced by someone substantially younger. *See Mehr v. Starwood Hotels & Resorts*

[7] Far from singling out Plaintiff, the Board reached the same conclusion for every other Bank executive, except Spence. *See* App'x A.

*Worldwide, Inc.*, 72 F. App'x 276, 283 (6th Cir. 2003); *Stromberger*, 2021 WL 5883379, at *5–6 (Barrett, J.) (citing *Geiger v. Tower Auto.*, 579 F.3d 614, 622–23 (6th Cir. 2009)). Plaintiff bears the ultimate burden of proof. *Provenzano*, 663 F.3d at 811.

A prima facie case of discharge fails easily under the fourth prong. There is absolutely no evidence that Plaintiff was replaced by anyone, let alone by someone substantially younger.

Plaintiff cannot establish a prima facie wrongful termination claim for three other reasons. First, Plaintiff voluntarily resigned and thus was not "terminated." *Wilson v. Chipotle Mexican Grill, Inc.*, 2013 WL 6008623, at *20 (S.D. Ohio Nov. 13, 2013) (citing *Nance v. Goodyear Tire & Rubber Co.*, 527 F.3d 539, 555 (6th Cir. 2008) (affirming summary judgment for employer because plaintiff had quit)); *Hammon v. DHL Airways, Inc.*, 165 F.3d 441, 447 (6th Cir. 1999); *Sander v. Gray TV Grp., Inc.*, 478 F. App'x 256, 263 (6th Cir. 2012) (same); *Watson v. City of Cleveland*, 202 F. App'x 844, 854 (6th Cir. 2006) (same). Plaintiff knew that refusing his reassignment to Head of Consumer Banking and not reporting to work (unless he accepted this role) would constitute a voluntary resignation. *E.g.*, Shaffer Dep., Vol. I, Doc. 77-14 at PageID# 3673, 261:9–23. Plaintiff expressly refused his reassignment and never again returned to Fifth Third after October 15, 2020, thus confirming his decision to resign. Pl. Dep., Vol. II, at 10:6–11:11; Pl. Dep. Ex. 23 at 3.

Second, Plaintiff's reassignment was not an "adverse employment action." There was no "*materially adverse* change in the terms or conditions of [his] employment." *Wilson*, 2013 WL 6008623, at *6 (citing *Kocsis*, 97 F.3d at 885) (emphasis added); *see also Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998). It is undisputed that Plaintiff was offered a position with salary and benefits equal to his then-current role, with his same EVP title and authority. *See* Pl. Dep., Vol. II, at 11:7–11. Plaintiff was even offered *a raise* to become one of Fifth Third's five

highest compensated executives and a proxy-level employee. Carmichael Dep., Vol. I, Doc. 66-3 at PageID# 2799–800, 72:8–77:19. Based on the undisputed facts, Plaintiff cannot demonstrate an adverse employment action.

Third, there is no evidence that Fifth Third "force[d]" Plaintiff "to leave his employment" by "deliberately creat[ing] intolerable working conditions." *See* Am. Compl., Doc. 9 at PageID# 1786, ¶¶ 51–52. Fifth Third offered Plaintiff a "top five job in the company" and a $100,000 raise. *See* Carmichael Dep., Vol. II, Doc. 77-16 at PageID# 3879–84, 458:8–23, 459:24–460:3, 477:23–478:3; Carmichael Dep., Vol. I, Doc. 66-3 at PageID# 2799–801, 74:19–75:7, 76:23–77:6, 78:5–13, 82:11–14; Shaffer Dep., Vol. I, Doc. 77-14 at PageID# 3670–77, 251:15–22, 263:10–15, 278:18–279:4. Plaintiff disagrees by arguing that his working conditions would have been "intolerable" had Fifth Third forced him to "report directly to Spence," who is "younger"—demonstrating ***Plaintiff's*** own age-based animus. *See* Am. Compl., Doc. 9 at PageID# 1786, ¶ 51. Disliking a *potential* superior—whether due to resentment of his age or otherwise—is not an "intolerable" working condition. *Powell*, 2005 WL 1652706, at *4 ("If every . . . action by an employer that makes an employee unhappy or resentful were considered an adverse action, Title VII would be triggered by supervisor criticism or even facial expressions indicating displeasure.") (internal quotation marks and citation omitted). And while Plaintiff may have ***felt*** like quitting, a ***reasonable*** person is not constructively discharged through an offer of continued employment at no reduction of title, pay, benefits, or working conditions. *Kocsis*, 97 F.3d at 885–86; *Policastro*, 297 F.3d at 539; *Yates*, 819 F.2d at 638; *see also Vannoy v. OCSEA Local 11*, 36 F. Supp. 2d 1018, 1024 (S.D. Ohio 1999) (Marbley, J.) (citing *Wilson v. Firestone Tire & Rubber Co.*, 932 F.2d 510, 515 (6th Cir. 1991)) (offering "legitimate options for continued employment precludes a finding of constructive discharge"). For the same reason, he was not demoted. *See Woods*, 640 F. App'x

at 489 (holding that reassignment with the same salary did not constitute a "demotion"). Therefore, Plaintiff cannot establish a prima facie case on a wrongful termination claim.

Moreover, Plaintiff cannot establish pretext based on any employment decision related to the end of his employment. Fifth Third obviously did not view Plaintiff as too old for an EVP position—it offered him a top-five position, after all, at a higher salary—and Plaintiff cannot proffer evidence sufficient to question Fifth Third's business judgment.

**E. Plaintiff's Age Discrimination Claims Also Fail Because He Is Not Entitled to Damages as a Matter of Law.**

Even if Plaintiff could raise a question of pretext on his failure-to-promote claim, his claim would still fail because he voluntarily resigned from Fifth Third before the Board named Spence President. Under established Sixth Circuit precedent, "In a promotion case, the period of liability will end if plaintiff voluntarily quits his employment with the defendant absent a constructive discharge." *Lulaj*, 512 F.3d at 767 (quoting *EEOC v. Monarch Mach. Tool Co.*, 737 F.2d 1444, 1453 (6th Cir. 1980) (affirming elimination of front pay and limitation of back pay to the period between the denial of promotion and the plaintiff's resignation)); *see also id.* ("[I]n order for an employee to recover back pay for lost wages beyond the date of his retirement or resignation, the evidence must establish that the employer constructively discharged the employee.") (quoting *Jurgens v. EEOC*, 903 F.2d 386, 389 (5th Cir. 1990)); *Edelstein v. Stephens*, 2024 WL 860906, at *6 (S.D. Ohio Feb. 29, 2024) (Barrett, J.) (applying *Lulaj* and reducing back-pay award as a matter of law), *aff'd*, 2025 WL 2495863 (6th Cir. Aug. 19, 2025). Courts across the country agree. *See Boehms v. Crowell*, 139 F.3d 452, 461–62 (5th Cir. 1998) (ADEA failure-to-promote plaintiff who retired rather than accept a reassignment at the same salary reporting to his former subordinate was not constructively discharged; back pay limited to the period before retirement); *Klindt v. Honeywell Int'l Inc.*, 303 F. Supp. 2d 1206, 1217–19 (D. Kan. 2004) (granting summary judgment

limiting damages where failure-to-promote plaintiff resigned without constructive discharge); *Hertzberg v. SRAM Corp.*, 261 F.3d 651, 659 (7th Cir. 2001) ("A victim of discrimination that leaves his or her employment as a result of the discrimination must show either an actual or constructive discharge in order to receive . . . back and front pay."); *Key v. Bender Shipbuilding & Repair Co.*, 2000 WL 1005840, at *1–2 (S.D. Ala. July 10, 2000) (denying front pay to ADEA plaintiff whose salary and benefits were undiminished and who resigned without constructive discharge); *Jurgens*, 903 F.2d at 389. And under the ADEA, summary judgment is appropriate when damages cannot be recovered. *Glenn*, 642 F. Supp. 3d at 637 (citing *Wheeler*, 937 F.2d at 1163); *see also Lacey v. City of Desoto*, 2006 WL 2285479, at *6 (N.D. Tex. Aug. 8, 2006) ("[S]ummary judgment in an ADEA case is appropriate where no damages can be proven.") (internal quotation marks and citation omitted).

As shown above, Plaintiff was ***not*** constructively discharged. He declined the Head of Consumer Banking role with a raise, despite Fifth Third repeatedly asking him to stay. *E.g.*, Carmichael Dep., Vol. II, Doc. 77-16 at PageID# 3883–84, 473:22–478:10. He chose to leave before the Board elected Spence President, and before Plaintiff would have received any President- or CEO-level compensation had he been selected instead. Because no President- or CEO-level compensation was paid to Spence before Plaintiff's departure, and Plaintiff's own compensation was undiminished, his recoverable back pay is zero, and he is not entitled to front pay. *Any* lost compensation is unrecoverable as a matter of law under binding Sixth Circuit authority. *Lulaj*, 512 F.3d at 767; *Edelstein*, 2024 WL 860906, at *6. And since Plaintiff cannot recover any back pay, he also cannot recover liquidated damages under the ADEA, which are "capped at an equal amount of the award for back pay." *Glenn*, 642 F. Supp. 3d at 637 (citing *Wheeler*, 937 F.2d at 1163). As no damages are recoverable, Plaintiff's ADEA failure-to-promote claim fails.

### F. The Court Should Grant Fifth Third Summary Judgment on Plaintiff's Retaliation Claim.

Plaintiff's retaliation claim is based on two acts: Fifth Third filing an abuse-of-process counterclaim and issuing subpoenas to Plaintiff's family members. Am. Compl., Doc. 9 at PageID# 1787, ¶¶ 61–62. Retaliation claims based on litigation activity require proof of "bad faith, baselessness, or frivolousness." *Morrissey v. CCS Servs., PLLC*, 2020 WL 5878214, at *3 (E.D. Mich. Oct. 2, 2020). Plaintiff must also prove that: (1) Fifth Third "acted with retaliatory motive"; and (2) its conduct lacked "a reasonable basis in fact or law." *Aday*, 2022 WL 203327, at *13; *Carr v. TransCanada USA Servs., Inc.*, 2014 WL 6977651, at *2–3 (M.D. Tenn. Dec. 8, 2014). Plaintiff cannot meet his burden of proof for his retaliation claim, whether based on (1) the counterclaim or (2) the subpoenas.

#### *1. Fifth Third Pursued a Good-Faith Abuse-of-Process Counterclaim.*

The undisputed evidence shows that Fifth Third acted with no retaliatory motive in filing the counterclaim, and that it had a reasonable, good-faith basis in fact and law. The counterclaim challenges efforts by Plaintiff and his brother/attorney John McHugh to improperly "coerce Fifth Third into changing their decision [to appoint Spence as President]" through litigation. *See* Zaunbrecher Dep. at 21:7–17, 23:1–21. The counterclaim thus addresses Plaintiff's misuse of the litigation process to secure a result he was not entitled to receive, which is sufficient to support a claim for abuse of process. *Robb v. Chagrin Lagoons Yacht Club*, 75 Ohio St. 3d 264, 271 (1996) ("[A]buse of process occurs where someone attempts to achieve through use of the court *that which the court is itself powerless to order*.") (emphasis added) (citing PROSSER & KEETON ON THE LAW OF TORTS § 121, at 898 (5th ed. 1984)). Therefore, Fifth Third is entitled to summary judgment on Plaintiff's retaliation claim premised on the counterclaim.

### 2. *Plaintiff's Retaliation Claim Relating to Subpoenas to His Family Members Fails.*

Fifth Third is also entitled to summary judgment on Plaintiff's retaliation claim based on subpoenas to his family members. Fifth Third had legitimate, non-retaliatory reasons for these subpoenas because Plaintiff's family members have knowledge of relevant information. *See, e.g.*, Sweeney Dep. at 34:11–39:25; Pl. Dep., Vol. I, at 211:24–219:18; Pl. Dep. Ex. 21. Even Plaintiff admits that he spoke with his family about his departure from Fifth Third. *See* Pl. Dep., Vol. I, at 216:17–217:13. Seeking such evidence in discovery is routine litigation activity, and not improper retaliation. *See Aday*, 2022 WL 203327, at *14 (finding no retaliation claim based on actions "entirely reasonable" during litigation brought by former employee).

This Court's prior ruling also shows that Fifth Third had a good-faith basis for the subpoenas. The Court performed an *in camera* review of Fifth Third's proposed areas of inquiry. Afterwards, the Court deemed the subpoenas premature but, importantly, gave Fifth Third leave to re-raise them later. If the Court had believed the subpoenas were baseless or frivolous—the threshold for establishing a retaliation claim—then the Court would have simply quashed them. Thus, Fifth Third is entitled to summary judgment on the retaliation claim based on these subpoenas.

## V. CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court grant them summary judgment on all Counts of the Amended Complaint.

Dated: November 20, 2026

Respectfully submitted,

*s/ Michael L. Cioffi*
Michael L. Cioffi (0031098)
Trial Attorney
Jeffrey W. DeBeer (0089499)
Jason W. Palmer (0088336)
BLANK ROME LLP
1700 PNC Center
201 E. Fifth Street
Cincinnati, Ohio 45202
Tel.: (513) 362-8701
Fax: (513) 362-8702
Email: michael.cioffi@blankrome.com
jeffrey.debeer@blankrome.com
jason.palmer@blankrome.com

*Attorneys for Defendants–Counterclaimants, Fifth Third Bancorp; Fifth Third Bank, National Association; & Gregory D. Carmichael*

**CERTIFICATE OF SERVICE**

I, Michael L. Cioffi, hereby certify that on November 20, 2026, a copy of the foregoing was filed using the Court's ECF system, which will provide service to the following counsel of record:

John J. McHugh
McHUGH & McCARTHY, LTD
5580 Monroe Street
Sylvania, Ohio 43560
mchugh@mchughlaw.com

Peter A. Saba
Joshua M. Smith
STAGNARO, SABA & PATTERSON CO., L.P.A.
2623 Erie Avenue
Cincinnati, Ohio 45208
pas@sspfirm.com
jms@sspfirm.com

*Attorneys for Plaintiff–Counterclaim Defendant*

**BLANK ROME LLP**

*s/ Michael L. Cioffi*
Michael L. Cioffi